[SEE SIGNATURE BLOCK FOR COUNSEL]

PAID

Filed
OCT 05 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DIVISION

Misc. Case No. CV 12 80237 MISC EJD PSG

CHEVRON CORPORATION,

    Plaintiff,

    v.

STEVEN DONZIGER, et al.,

    Defendants

DEFENDANTS' MOTION TO QUASH CHEVRON CORPORATION'S SUBPOENAS TO GOOGLE INC. AND YAHOO! INC.

Hearing Date:
Hearing Time:

    Defendants Javier Piaguaje Payaguaje, Hugo Gerardo Camacho Naranjo, Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC file this motion to quash the non-party subpoenas Chevron Corporation served on Google Inc. and Yahoo! Inc. seeking production of records concerning the identity and email/internet usage of the user of more than 70 email addresses, including personal and business addresses of Piaguaje, Donziger, and numerous attorneys who once worked for and with Donziger. The Court should quash these subpoenas because they (1) call for the production of email correspondence in violation of federal law, (2) are overly broad because they seek nine years of information that is in no way relevant to the claims and defenses now pending in the Southern District of New York and much of which may be privileged, and (3) demand production of users' private information.

## FACTUAL BACKGROUND

Chevron's nonparty subpoenas open a new front in the all-out war it has waged against residents of Ecuador's Amazonian rainforest because those residents demanded that Chevron be held accountable for the environmental devastation and despoliation of their homeland caused by decades of substandard oil field operations. Chevron declared this war after it got what it asked for—the 2002 dismissal on *forum non conveniens* grounds of a lawsuit brought by these residents against Chevron's predecessor Texaco[1] in federal court in New York. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470 (2d Cir. 2002). Following that dismissal, the case was filed against Chevron in Ecuador and—after another decade of litigation—the Ecuadorian court entered a $19 billion dollar judgment against Chevron. Chevron filed suit in the Southern District of New York against the Ecuadorian Plaintiffs[2] and their lawyers, experts, and others associated with exposure of the Ecuadorian oil pollution alleging nine different causes of action. The suit included RICO and tort claims and sought a declaratory judgment that the Ecuadorian judgment was unenforceable and a worldwide injunction against enforcement of the judgment. After Chevron's declaratory judgment claim was severed, the Court of Appeals for the Second Circuit vacated the district court's preliminary injunction against enforcement and ordered Chevron's declaratory relief claim dismissed in its entirety as legally baseless. *Chevron Corp. v. Naranjo*, 667 F.3d 232, 247 (2d Cir. 2012).

The pollution of Ecuador's Amazonian rainforest—the harm which prompted the lawsuit against Chevron—is indisputable. Audits by U.S. environmental consulting firms commissioned by Chevron identified hydrocarbon contamination of the rain forest and river basin at all Chevron production stations and a majority of drilling sites in Ecuador's Oriente region, documented Chevron's use of unlined pits containing toxic chemical waste associated with drilling and crude oil, the contents of which pits routinely spilled into the rivers and streams of the concession. Chevron's Ecuadorian lawyer admitted that Chevron discharged more than 16 billion gallons of untreated production water into Ecuador's rivers and streams, and it is

---

[1] For the sake of convenience, Chevron and its predecessor Texaco will be referred to collectively as "Chevron."

[2] The Ecuadorian Plaintiffs are the 47 individuals named as plaintiffs in the Ecuadorian litigation against Chevron. Piaguaje and Camacho are two of the named plaintiffs in the Ecuadorian litigation.

undisputed that Chevron discharged the waste products from many of the production stations in the Napo Concession, including human sewage from Chevron's workers, into the rivers and streams. Chevron's drilling practices for thirty years in the Napo Concession violated Ecuadorian and United States environmental laws as well as standard industry practices. Chevron's operations would not have been permitted in the United States but, in a classic case of corporate imperialism, the company thought it would escape notice and responsibility if it cut corners deep in the jungle, regardless of injury to the lives and land of the indigenous peoples living there. These violations and the resulting contamination formed the basis of the suit in Ecuador.

Even before the Ecuadorian court issued the judgment against Chevron, Chevron filed its present RICO and third-party fraud claims in the Southern District of New York – the same court Chevron had fought to avoid a decade earlier. Lacking any defense on the merits – the pollution indisputably occurred and unlike the recent BP spill in the Gulf of Mexico, Chevron's pollution occurred in the middle of inhabited and environmentally sensitive land – Chevron has turned to bashing the lawyers and the Ecuadorian judicial system. Paying its law firms well over a $100 million to wage this worldwide battle, Chevron has brought more than two dozen independent actions in courts around the country seeking to harass and burden anyone associated with the case through discovery actions. In its latest iteration of that effort, Chevron has issued three subpoenas seeking user and usage information on more than one hundred email accounts, including the subpoenas to Google and Yahoo (attached as Exhibits 1 and 2). A simultaneous subpoena directed to Microsoft regarding other accounts is pending in another district.

The present subpoenas seeks all documents related to "(A) the identity of the user" of each email address and (B) "the usage of" the email address, including "IP logs, IP address information at the time of registration and subsequent usage, computer usage logs, or other means of recording information concerning the email or Internet usage of the email address."[3] Chevron's definition of "document" incorporates "correspondence" and "electronic mail messages." The subpoena covers all records for the past 9 years and purports to require rolling

---

[3] The Google subpoena also seeks "IP address information" for a specific email sent in April 2008. Ex. 1, Schedule A at 2.

production of each user's future email and internet usage *with no end date*. Ex. 1, Schedule A at 2 (Instruction No. 6). The email addresses include one of Steven Donziger's primary accounts for email communications with co-counsel and others regarding the ongoing litigation in Ecuador as well as with his own attorneys regarding the defense of this litigation: sdonziger@gmail.com, and Chevron has already obtained Steven Donziger's emails and other documents through a proceeding brought under 28 U.S.C. § 1782 and through discovery served in the case now pending in the Southern District of New York. Defendant Javier Piaguaje's email address is also included in the subpoena: javipi002@gmail.com. Chevron served discovery on Piaguaje in the New York action demanding production of any documents—including email correspondence—related to Chevron or the Ecuadorian litigation. Chevron has served subpoenas on or filed applications under 28 U.S.C. § 1782 seeking discovery from attorneys who worked with Donziger and are owners of other email addresses at issue, including Aaron Page: ampage@gmail.com, Laura Garr: lauragarr@gmail.com, and Andrew Woods: drewwoods3@gmail.com and drewwoods3@yahoo.com. Litigation over production of privileged documents from these individuals continues in New York and elsewhere.

## ARGUMENT

Chevron's subpoenas to Google and Yahoo should be quashed because they demand production of email communications in violation of federal law, are overly broad, call for the production of irrelevant and privileged material, and invade the privacy rights of the email address users.

### I.   THE COURT SHOULD QUASH THESE SUBPOENAS IN THEIR ENTIRETY.

These are unusual circumstances. These subpoenas continue a pattern of ambush and intimidation that knows no bounds. Chevron rejected a request for an extension of the return dates of these subpoenas as to all affected email addresses, a request made in an effort to secure time to contact all affected users, who could then raise their own objections. As to intimidation, Chevron has already threatened to make one email address owner a RICO defendant in the New York proceeding. Clearly, Chevron hopes that the email address owners not file objections, whether out of confusion, the assumption that Google or Yahoo as the direct targets of the subpoenas will object, lack of notice, or intimidation. Chevron will then trot out its oft-used

waiver arguments, hoping the Court will simply overlook the egregious nature of requests that seek nine years of email and internet usage data without regard to the data's relevance or the privacy interests of the email users. Defendants urge the Court to find that these circumstances, far beyond those considered by the Central District of California in *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005), are unusual and that these subpoenas are overbroad on their faces and exceed the bounds of fair discovery. On this basis, this Court, like the *Moon* court should quash these subpoenas to nonparties in their entirety based on the following objections of Defendants. *Id.* at 638 (granting motion to quash subpoena to nonparty based on objections raised by defendants); *see also G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148, at *3-4 (D. Nev. Jan. 9, 2007) (a party may challenge subpoenas issued to non-parties which seek irrelevant information).

## II. CHEVRON'S SUBPOENA CALLS FOR PRODUCTION OF THE CONTENTS OF ELECTRONIC COMMUNICATIONS IN VIOLATION OF FEDERAL LAW.

The Stored Communications Act (the "Act"), 18 U.S.C. § 2701 *et seq.*, prohibits the disclosure of the contents of users' communications by an electronic communication service provider. 18 U.S.C. § 2702(a). Google and Yahoo are electronic communication service providers subject to the Act, *see Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2003) (recognizing NetGate as a service provider under the Act); *see also Crispin v. Christian Audiger, Inc.*, 717 F. Supp. 2d 965, 978 (C.D. Cal. 2010) (service that enables users to send and receive electronic communications is service provider under Act), and Chevron's subpoenas violate the Act's prohibitions.

As written, Chevron's subpoenas call for the production of all email correspondence for a nine year period for every listed email address. Schedule A to each subpoena demands production of "All DOCUMENTS" related to the identity of the user of each email address *and* the usage of that email address. Ex. 1, Schedule A at 2; Ex. 2, Schedule A, at 2. "DOCUMENTS" is a defined term under both subpoenas, and its definition includes all "correspondence" and "electronic mail messages." Ex. 1, Schedule A, at 1; Ex. 2, Schedule A, at 1. Obviously, an "electronic mail message" relates to the usage of an email address. Similarly, the subpoenas call for production of the "means of recording information concerning the email . . .

. usage of the email address." Ex. 1, Schedule A, at 2; Ex. 2, Schedule A, at 2. Once again, the email messages themselves are a primary means of recording information concerning the usage of an email address. Thus, the subpoenas call for production of the substance of email communications in violation of the Stored Communications Act, and the Court should quash both subpoenas. *Crispin*, 717 F.Supp.2d at 976 (rejecting argument that the SCA permits the disclosure of the contents of communications pursuant to a civil discovery subpoena); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008) (noting that the Act does not authorize disclosure of communications pursuant to a civil discovery subpoena).

### III. CHEVRON'S SUBPOENA CALLS FOR PRODUCTION OF PRIVILEGED INFORMATION TO WHICH CHEVRON IS NOT ENTITLED.

The subpoenas also call for disclosure of privileged information, including information to which Chevron is not entitled according to the court in the Southern District of New York. Of course, the Court may quash a subpoena that seeks disclosure of privileged information. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 489, 496 (C.D. Cal. 1981) (quashing subpoena as "unreasonable and oppressive" because it sought to invade journalist's privilege). For example, in the New York action Chevron requested disclosure of documents concerning travel to countries other than Ecuador by Donziger and other attorneys representing the Ecuadorian Plaintiffs. Declaration of Garland Murphy ("Murphy Decl."), Ex. B (Non-Party Paton Boggs LLP's Responses and Objections to Plaintiff's Subpoena to Produce Documents), at 45 (Request No. 4), 50 (Request No. 6). Chevron also requested documents concerning enforcement activities in other countries. *Id.* at 140 (Request No. 39), 154 (Request No. 46). In recent hearings over objections to a subpoena issued by Chevron to Patton Boggs, the court in the Southern District of New York sustained objections to such requests. Murphy Decl., Ex. C at 22:25-20 (Request No. 4), 25:1-6 (Request No. 6); Murphy Decl., Ex. D[4] at 25-26 (Request No. 39), 30 (Request No. 46). Here, Chevron seeks IP logs which would reveal the locations from which email accounts were accessed and could potentially reveal, by providing information on foreign travel up to the present day and beyond, information about enforcement

---

[4] For the sake of convenience, the page numbers referenced for this document are highlighted numbers at the bottom of each printed page and do not refer to the reporter's pagination.

activities and the Ecuadorian Plaintiffs' enforcement strategy, even though the court in the Southern District of New York has already ruled that Chevron is not entitled to such information. The enforcement activities and strategies of the Ecuadorian Plaintiffs and their attorneys are protected by the attorney-client privilege and work product protection and are not relevant to Chevron's claims and defenses. Defendants Piaguaje and Camacho therefore object to disclosure of any privileged or protected information, and the Court should quash the subpoenas.

## IV. REQUESTS FOR EMAIL AND INTERNET USAGE INFORMATION FOR THE PAST NINE YEARS AND ON A GOING FORWARD BASIS ARE OVERLY BROAD ON THEIR FACE AND IRRELEVANT.

Aside from the violation of federal law and the production of privileged information, the Court should quash the Google and Yahoo subpoenas because they are overly broad on their faces and call for the production of vast amounts of irrelevant material. Federal Rule of Civil Procedure 45(c)(3) authorizes the Court to quash subpoenas in such circumstances. In evaluating whether a subpoena poses an undue burden under Rule 45, the Court considers "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Moon*, 232 F.R.D. at 636 (internal quotation marks and citation omitted). An analysis of these factors reveal that the Google and Yahoo subpoenas are "overbroad on [their] face[s] and exceed[] the bounds of fair discovery." *Id.* at 636, 638 (granting defendants' motion to quash notwithstanding non-party's failure to object).

On their faces, these subpoenas represent a fishing expedition of global proportions. The time period covers nine years and is a continuing request, meaning that the subpoenas call for production of nine years of records of internet and email usage *regardless of the purpose or subject matter of such usage* and also demand continued production *for an unlimited time period of future* records that document any time the owner of one of the 70 email addresses at issue logs in to Google or Yahoo, performs an internet search, or composes an email, and the user's whereabouts when doing so. *See, e.g.,* Ex. 1, Schedule A, at 2 (Instruction 6). The documents sought are not described with particularity: "All DOCUMENTS related to the identity of the user" and "All DOCUMENTS related to . . . the usage of the . . . email addresses" including

"other means of recording information concerning the email or Internet usage of the email address." *See, e.g., id.* at 2. These requests are overly broad on their face and exceed the bounds of fair discovery.

The *Moon* decision is instructive. There the district court quashed a subpoena that requested ten or more years of records from a non-party regarding pool winter covers because the document requests were not properly limited in time or geographical scope. *Moon*, 232 F.R.D at 637-38. Here, Chevron did not limit its request to email or internet usage that pertains in some way to Chevron or the litigation in Ecuador. Instead, it intends to hoover up the details of every communication a user had with family, friends, business associates, employers, and significant others, as well as the details of every internet search performed by the email user for nine years. Next, Chevron demands the details of the internet searches a user performs and the emails a user sends and receives *tomorrow and the next day*! Chevron makes these demands even though the events at issue in its Amended Complaint extend only through early 2011, and Chevron has insisted that it need not produce documents in discovery that post-date February 14, 2011, the date the judgment in Ecuador was issued. Murphy Decl., Ex. A (Chevron Corp.'s Objections and Responses to [Donziger Defendants'] First Request to Plaintiff for the Production of Documents), General Objection No. 9.

Though Chevron is prohibited by law from obtaining the contents of email communications, the very fact of the communications and their details—where they originated, from what device, who they were sent to, and where they were received—are irrelevant to the claims and defenses pending in the Southern District of New York. So too, the subject and details of any internet searches performed by the email address owners are irrelevant. For example, IP address logs and user billing information have no possible relevance to Chevron's RICO and third party fraud claims about the conduct of litigation in Ecuador over claims of environmental devastation caused by Chevron in Ecuador. Certainly information about email and internet usage that postdates the filing of Chevron's lawsuit in January 2011 and the Ecuadorian Court's judgment on February 14, 2011 is not relevant. Because the information

sought, to the extent it could be produced without violating federal law, is irrelevant,[5] it is beyond the scope of permissible discovery and its production would impose an undue burden. *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) ("Obviously, if the sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed upon Acer would be by definition 'undue'."). "A subpoena imposes an undue burden on a party when a subpoena is overbroad." *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d at 612.

At the very least, the Court should require Chevron to provide its plans for the requested information. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D. Cal. 2006) ("In determining whether the information sought is reasonably calculated to lead to admissible evidence, the party seeking the information must first provide the Court with its plans for the requested information."). Such information would permit the Court to evaluate whether these subpoenas are "reasonably calculated to lead to admissible evidence" or intended solely for harassment. Given that Chevron's subpoena included email addresses belonging to Defendants and non-parties who have received subpoenas and produced documents as well as the email address of a law professor who once exchanged two emails with Steven Donziger,[6] Chevron is unlikely to be able to articulate its plans for the information from each email address. Chevron have already requested the only relevant information—the emails themselves—from Defendants Donziger and Piaguaje and from Garr, Woods, and Page. Chevron could have contacted the law professor *using the email address included in the subpoena* with any questions it had about his identity or involvement. Instead, it chose to issue blunderbuss subpoenas to Google and Yahoo. This is not an appropriate approach to discovery.

---

[5] The Stored Communications Act forecloses production of only those non-substantive records that relate to communications about Chevron or the Ecuadorian litigation. The production of such records would require disclosure of the contents of the communications because the production would necessarily reveal the subject matter of the communications.

[6] *See* Kevin Jon Heller, My Encounter with a Chevron Subpoena – and the ACLU's Assistance, available at http://opiniojuris.org/2012/09/28/my-encounter-with-a-chevron-subpoena-and-the-aclus-assistance. ("Chevron was merely trying to harass and intimidate me.").

## V. THE SUBPOENAS SEEK USERS' PRIVATE, PROTECTED INFORMATION.

Next, the Court should quash the Google and Yahoo subpoenas because they request private, protected personal information. An individual has a privacy interest in preventing release of his or her name, address, financial information, online profile, and email. *See, e.g., Painting Indus. of Hawaii Market Recovery Fund v. U.S. Dept. of Air Force*, 26 F.3d 1479, 1483 (9th Cir. 1994) (privacy interest in name, address and financial information); *Crispin.*, 717 F. Supp. 2d at 974 (recognizing privacy interest in internet account profile and webmail); *id.* at 991 (stating that webmail is "inherently private"). Donziger and Piaguaje, like every other email address owner, have clear, recognized privacy interests in their email accounts and in the records of their email and internet usage.

The Google subpoenas call for production of each email user's name, address, billing information, account information, and email and internet usage. Ex. 1, Schedule A, at 2; Ex. 2, Schedule A, at 2. There is no justification for the production of this private information. For example, an account's billing information—sensitive financial information—has nothing to do with Chevron's RICO or third-party fraud claims now pending in the Southern District of New York. Nor is such information reasonably calculated to lead to admissible evidence.

As noted, Defendant Piaguaje's email address is javipi002@gmail.com, one of the email addresses listed in the Google subpoena. In document requests in the Southern District of New York litigation directed to Mr. Piaguaje – who operates a canoe in the Amazon river basin – Chevron never requested the information it requests here from Google. So, too, Chevron never made this type of request to Steven Donziger or his law firms, whose email addresses are also included in these subpoenas. Chevron has, however, already obtained Donziger's documents and emails—including his work product and privileged communications—and has requested from all Defendants in the New York action virtually every document in any way related to Chevron or the Ecuadorian litigation. To the extent Defendants, including Piaguaje and Donziger, have relevant, non-privileged emails, they have already been or will be produced in the New York action. There is no need, then, to invade Piaguaje's or Donziger's privacy by demanding production from a non-party of their personal account information, billing

information, and email or internet usage—none of which have any relevance to Chevron's claims and defenses. Any relevant information can be obtained via discovery from Defendants in the New York litigation. *See Moon*, 232 F.R.D. at 638 (quashing subpoena where "requests all pertain to defendant, who is a party, and thus, plaintiffs can more easily and inexpensively obtain the documents from opposing party rather than nonparty"). Of course, the other email address owners have similar privacy interests in their email account information and their email and internet usage.[7]

## CONCLUSION

The Court should therefore quash Chevron's subpoenas to nonparties Google Inc. and Yahoo! Inc. The subpoenas are unnecessary, extremely overbroad, call for production of email communications in violation of the Stored Communications Act, demand production of privileged information and reams of irrelevant information, and violate the privacy rights of email and internet users.

---

[7] These subpoenas may also violate users' First Amendment rights by seeking the identity of anonymous users. Production of nine years of internet and email usage as well as future internet and email usage cannot help but have a "significant chilling effect on Internet communications and thus on First Amendment rights." *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001). Doe concerned the protection of the anonymity of users posting in online fora, and the court, acknowledging the posters' First Amendment rights to post anonymously, adopted a standard for the evaluating a subpoena calling for disclosure of the identities of non-parties. *Id.* at 1095. That standard involves four factors:

1. whether the subpoena was issued in good faith and not for any improper purpose;
2. whether the information sought relates to a core claim or defense;
3. whether the identifying information is directly and materially relevant to the claim or defense; and
4. whether the information sufficient to establish or to disprove the claim or defense is unavailable from any other source.

*Id.* Here, the subpoena is "extremely broad," showing an "apparent disregard for the privacy and First Amendment rights of the [email] users." *Id.* at 1095-96. The identity of these users is not needed to advance Chevron's claims and is not directly and materially relevant to such claims. Finally, Chevron has not established that the information it needs to establish its supposed claims is unavailable from any other source. *Id.* at 1097 (quashing subpoena to nonparty). Thus, the Court should quash Chevron's subpoenas because, besides seeking irrelevant information, they threaten the First Amendment and privacy rights of the non-party email users.

DEFENDANTS' MOTION TO QUASH CHEVRON CORPORATION'S SUBPOENAS TO GOOGLE, INC. AND YAHOO, INC.
Page 11

Respectfully submitted,

/s/ Ty Doyle
Tyler G. Doyle
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 221-2300
Facsimile: (713) 221-2320
Email: tydoyle@skv.com

*Attorneys for Defendants Javier Piaguaje Payaguaje and Hugo Gerardo Camacho Naranjo*

/s/ John W. Keker
John W. Keker
Jan Nielsen Little
Matthew M. Werdegar
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391-5400
Facsimile: (415) 397-7188
Email: jkeker@kvn.com
Email: jlittle@kvn.com
Email: mwerdegar@kvn.com

*Attorneys for Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record pursuant to Federal Rules of Civil Procedure on this the 5th day of October, 2012.

/s/ Ty Doyle
Tyler G. Doyle