THEODORE J. BOUTROUS JR., SBN 132099
tboutrous@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-1512
Telephone: 213.229.7000
Facsimile: 213.229.7520

ETHAN D. DETTMER, SBN 196046
edettmer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Plaintiff
CHEVRON CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CHEVRON CORPORATION,

Plaintiff,

v.

STEVEN DONZIGER, *et al.*,

Defendants

Case No. C 12-80237 MISC CRB NC

**CHEVRON CORPORATION'S OPPOSITION TO THE RICO DEFENDANTS' MOTION TO QUASH SUBPOENAS TO GOOGLE INC. AND YAHOO! INC.**

<u>Hearing</u>
Date:
Time:
Place: Courtroom A, 15th Floor
Judge: Hon. Nathanael Cousins

Chevron Corporation ("Chevron") hereby submits its Opposition to the Motion to Quash Subpoenas to Google Inc. and Yahoo! Inc. filed by certain defendants in the underlying case, *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), currently pending in the Southern District of New York ("Defendants").

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

III. ARGUMENT ........ 6

A. Defendants Failed to Meet and Confer With Chevron as Required by The Court's Rules Prior to Filing The Motion to Quash. ........ 6

B. Defendants Do Not Have Standing to Bring This Motion to Quash. ........ 7

1. Defendants Do Not Have Standing Regarding Accounts They Do Not Own ........ 7

2. Defendants Do Not Have Standing to Assert Burden ........ 8

C. Chevron's Subpoenas Contain Reasonable Requests That Courts Routinely Grant. ........ 9

D. The Limited Documents Sought Are Relevant to The RICO Action. ........ 12

E. The Subpoenas Do Not Call for The Disclosure of Privileged Information. ........ 13

F. The Subpoenas Do Not Implicate Defendants' Privacy Rights. ........ 14

IV. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

Page(s)

### Cases

*AF Holdings LLC v. Doe*, No. 12-cv-02416-WHA, 2012 U.S. Dist. LEXIS 75806 (N.D. Cal. May 31, 2012) .................... 10

*Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240 (D. Me. 2008) ........................................ 7

*Boyle v. United States*, 556 U.S. 938 (2009) ........................................ 12

*Brown v. Braddick*, 595 F.2d 961 (5th Cir. 1979) ........................................ 7

*California v. FCC*, 75 F.3d 1350 (9th Cir. 1996) ........................................ 15

*Chevron Corp. v. Champ*, Nos. 1:10-mc-27, 1:10-mc-28, 2010 WL 3418394 (W.D.N.C. Aug. 30, 2010) ........................... 2

*Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581 (S.D.N.Y. 2011), *rev'd on unrelated grounds*, 667 F.3d 232 (2nd Cir. 2012) ........................................ 1

*Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 2150450 (S.D.N.Y. May 31, 2011) ..................................... 1

*Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), slip op. (S.D.N.Y. July 31, 2012), ECF No. 550 ............................... 2

*Chevron Corp. v. Naranjo*, 667 F.3d 232 (2nd Cir. 2012) ........................................ 1

*Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2207555 (S.D.N.Y. June 2, 2011) ....................................... 7

*Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2581784 (S.D.N.Y. June 24, 2011) ..................................... 1

*Conopco, Inc. v. Wein*, No. 05 Civ. 9899 (RCC) (THK), 2007 WL 1040676 (S.D.N.Y. Apr. 3, 2007) ........................... 12

*Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010) ........................................ 14

*Doe v. SEC*, No. 11-mc-80184 CRB (NJV), 2011 WL 4593181 (N.D. Cal. Oct. 4, 2011) ............................. 14

*Erickson v. Microaire Surgical Instruments LLC*, No. 08-cv-5745 BHS, 2010 WL 1881946 (W.D. Wash. May 6, 2010) ........................................ 8

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148 (D. Nev. Jan. 9, 2007) .................................. 9

*Goldinger v. Boron Oil Co.*, 60 F.R.D. 562 (W.D. Pa. 1973) ........................................ 11

*In re Appt. of a Comm'r re Request for Judicial Assistance*, No. 11-mc-80136-RS (MEJ), 2011 WL 2747302 (N.D. Cal. July 13, 2011) ............................. 10

*In re Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y. 2010) ........................................ 3



Gibson, Dunn & Crutcher LLP

*In re Chevron Corp.*,
749 F. Supp. 2d 170 (S.D.N.Y. 2010), *aff'd*, 409 F. App'x 393 (2d Cir. 2010) ........................ 1, 3

*In re Chevron Corp.*,
No. 1:10-mc-00021 (JH/LFG), slip op. (D.N.M. Sept. 2, 2010), ECF No. 77 .............................. 2

*In re Chevron Corp.*,
No. 11-cv-24599-MGC-WCT, 2012 WL 3636925 (S.D. Fla. June 12, 2012) .............................. 2

*In re Roebers*,
No. 12-mc-80145-RS (LB), 2012 WL 2862122 (N.D. Cal. July 11, 2012) ............................ 9, 10

*In re United States*,
830 F. Supp. 2d 114 (E.D. Va. 2011)........................................................................................ 14

*Insubuy, Inc. v. Cmty. Ins. Agency, Inc.*,
No. 11-mc-0008-PHX-FJM, 2011 WL 836886 (D. Ariz. Mar. 9, 2011)....................................... 8

*Jerry T. O'Brien, Inc. v. SEC*,
704 F.2d 1065 (9th Cir. 1983), *rev'd on other grounds*, 467 U.S. 735 (1984)............................. 7

*Kadant Johnson Inc. v. D'Amico*,
No. 3:12-mc-00126, 2012 WL 1576233 (D. Or. May 4, 2012)...................................................... 8

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
No. 03 Civ. 5560 (RMB) (HBP), 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008) .......................... 12

*Kremen v. Cohen*,
No. 11-cv-05411 LHK (HRL), 2012 WL 2277857 (N.D. Cal. June 18, 2012)......................... 6, 8

*Langford v. Chrysler Motors Corp.*,
513 F.2d 1121 (2d Cir. 1975)......................................................................................................... 7

*London v. Does 1-4*,
279 F. App'x 513 (9th Cir. 2008) .................................................................................................. 10

*Los Angeles Mem. Coliseum v. Nat'l Football League*,
89 F.R.D. 489 (C.D. Cal. 1981) ..................................................................................................... 13

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
No. 07-cv-03952-JW (HRL), 2008 WL 2783206 (N.D. Cal. July 15, 2008) ............................. 10

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995)........................................................................................................................ 15

*McNaughton-McKay, Elec. Co. v. Linamar Corp.*,
09-CV-11165, 2010 WL 2560047 (E.D. Mich. June 15, 2010).................................................. 13

*Moon v. SCP Pool Corp.*,
232 F.R.D. 633 (C.D. Cal. 2005) ................................................................................................ 8, 9

*Painting Indus. of Haw. Mkt. Recovery Fund v. U.S. Dep't of the Air Force*,
26 F.3d 1479 (9th Cir. 1994)........................................................................................................ 14

*Rhodes Cos. v. Litig. Trust of the Rhodes Cos. (In re Rhodes Cos.)*,
475 B.R. 733 (D. Nev. 2012) ................................................................................................. 7, 8, 9

*Sams v. Yahoo!, Inc.*,
No. 10-cv-05897-JF, 2011 WL 1884633 (N.D. Cal. May 16, 2011)........................................... 10

*San Antonio Cmty. Hosp. v. So. Cal. Dist. Council of Carpenters*,
125 F.3d 1230 (9th Cir. 1997)....................................................................................................... 15

*TMP Worldwide Adver. & Commc'ns, LLC v. LATCareers*, LLC,
No. 08-cv-5019 RBL, 2008 WL 5348180 (W.D. Wash. Dec. 16, 2008)....................................... 8

*United States v. Li*,
No. 07-cr-2915-JM, 2008 WL 789899 (S.D. Cal. Mar. 20, 2008) .......... 14

*United States v. Miller*,
425 U.S. 435 (1976) .......... 7

*Vogue Instrument Corp. v. Lem Instruments Corp.*,
41 F.R.D. 346 (S.D.N.Y. 1967) .......... 7

*Xcentric Ventures, LLC v. Karsen, Ltd.*,
No. 11-cv-01055-PHX-FJM, 2012 U.S. Dist. LEXIS 121888 (D. Ariz. Aug. 28, 2012).......... 10

**Statutes and Rules**

18 U.S.C. § 2701 .......... 10

18 U.S.C. § 2702(c)(6) .......... 10

28 U.S.C. § 1782 .......... 1, 2, 10

Fed. R. Civ. P. 37 .......... 6

Fed. R. Civ. P. 45(c)(3)(A) .......... 8

Fed. R. Evid. 803(6) .......... 13

Civ. L.R. 37-1(a) .......... 6, 7, 11

**Other Authorities**

9 J.W. MOORE *et al.*, MOORE'S FEDERAL PRACTICE § 45.50[3] (3d ed. 2012) .......... 7

9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
§ 2459 .......... 7

9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
§ 2463.1 .......... 7

SCHWARZER *et al.*, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL .......... 8

# I. INTRODUCTION

Defendants' instant Motion to Quash ("Motion" or "Mot.") has no merit, and like Defendants' past efforts to delay or prevent discovery, it should be rejected.[1]

Defendants' Motion is predicated on a misreading of the subpoenas—a misreading that likely could have been resolved had Defendants fulfilled their obligation to meet and confer before bringing their Motion. Contrary to Defendants' assertions, Chevron is not seeking email content, the content of Internet searches, or the ongoing production of future information. *See* Exs. 1 & 2 (subpoenas).[2] Rather, the subpoenas seek user information and Internet Protocol ("IP") logs, the same information that courts in this circuit routinely allow email providers like Google, Inc. ("Google") and Yahoo! Inc. ("Yahoo!") to provide to litigants in response to subpoenas. In fact, *the Defendants themselves previously subpoenaed Google and Yahoo! for this same type of user and IP information with regard to a number of their own email accounts*. Because Chevron is not requesting the content of emails held by Google or Yahoo!, the vast majority of the arguments made by Defendants are irrelevant.

Defendants also lack standing to challenge these subpoenas' requests for information about third parties' email accounts. Defendants claim to be the current owners of only two of the email accounts at issue. As a matter of well-settled law, Defendants have no standing to quash a subpoena to accounts they do not own. Moreover, even as to the accounts they do own, Defendants have no standing to object to any burden imposed on the third-party email providers to whom the subpoenas are directed.

Defendants cannot overcome these substantive legal problems by arguing that the fraudulent

---

[1] *See, e.g.*, *Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2581784, at *2 (S.D.N.Y. June 24, 2011) (describing Defendants' "thwart or delay" strategy); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010) (describing strategy "to gain tactical advantage" through delay), *aff'd*, 409 F. App'x 393 (2d Cir. 2010); *Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581, 610 (S.D.N.Y. 2011) ("there is extensive evidence that counsel for the [Defendants] and Donziger made Herculean and perhaps questionable efforts in the Section 1782 proceedings to prevent or delay the disclosure of [evidence]"), *rev'd on unrelated grounds sub nom. Chevron Corp. v. Naranjo*, 667 F.3d 232 (2nd Cir. 2012); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 2150450, at *6 (S.D.N.Y. May 31, 2011) (describing the "previous delaying tactics in the Section 1782 proceedings").

[2] Unless otherwise indicated, "Ex." refers to exhibits to the Declaration of Jason B. Stavers, filed concurrently herewith.

Ecuadorian lawsuit underlying the RICO action was actually meritorious. Mot. at 2-3. And this Court need not adjudicate the merits of the Ecuadorian case or the resulting RICO litigation in New York. It is relevant to the current Motion, however, for this Court to understand that the kind of discovery Defendants seek to prevent here has unearthed massive, direct evidence of corruption and fraud,[3] as courts throughout the country have recognized.[4] At each stage in this litigation, Defendants have claimed that Chevron is abusing the discovery process to invade their privacy, violate First Amendment rights, or intimidate Defendants and their allies. And yet, at every stage, once discovery is permitted, more evidence of Defendants' misconduct has come to light. For example:

- Defendants resisted discovery into the outtakes of *Crude*, a documentary film they financed, claiming that discovery would violate privacy rights and journalistic privileges, but when those outtakes were revealed, "[t]he release of many hours of [*Crude* outtakes] sent shockwaves through the nation's legal communities, primarily because the footage shows, with unflattering frankness, inappropriate, unethical and perhaps illegal conduct." *In re Chevron Corp.*, No. 1:10-mc-00021-JCH-LFG, slip op. at 3-4 (D.N.M. Sept. 2, 2010), ECF No. 77.
- Defendants resisted the production of their internal documents on privilege grounds, but when courts found that the privilege had been waived, the resulting documents provided "uncontradicted evidence" that a report filed by a court expert in Ecuador, which Defendants had been promoting for years as "independent" conclusive proof of Chevron's liability, was "not entirely or even predominantly his own work," but in fact had been drafted by Defendants' own team and "tainted by fraud." Ex. 4 at 90-91 (*Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK) (S.D.N.Y. July 31, 2012), ECF No. 550) (hereinafter "RICO MSJ Order").
- Defendants resisted discovery into the work product of their experts in the underlying Ecuadorian litigation, claiming a consultant privilege, but when the documents were revealed, they showed that Defendants' own experts repeatedly concluded that the oil production activities carried out by a Texaco subsidiary in the 1970's (later acquired by Chevron) had not resulted in significant environmental harm or human health effects. Exs. 5, 6, 7, 8.

---

3 *See* Ex. 3. Exhibit 3 will be lodged with the Clerk's Office and Chambers on a CD-ROM. This exhibit is an annotated and hyperlinked version of Chevron's Amended Complaint in *Chevron Corp. v. Donziger, et al.*, 11-cv-0691 LAK (S.D.N.Y.). Chevron has created this document to provide easy reference to the voluminous exhibits supporting Chevron's allegations in the RICO action. Clicking on an exhibit number within the document will pull up the indicated exhibit.

4 *See, e.g.*, *Chevron Corp. v. Champ*, No. 1:10-mc-27, No. 1:10-mc-28, 2010 WL 3418394, at *6 (W.D.N.C. Aug. 30, 2010) ("While this court is unfamiliar with the practices of the Ecuadorian judicial system, the court must believe that the concept of fraud is universal, and that what has blatantly occurred in this matter would in fact be considered fraud by any court."); *In re Chevron Corp.*, No. 11-cv-24599-MGC-WCT, 2012 WL 3636925, at *2 (S.D. Fla. June 12, 2012) ("Chevron has obtained mounds of evidence, in multiple § 1782 proceedings, that suggests that the judgment [that Defendants obtained in Ecuador] itself was . . . ghostwritten [and includes] verbatim passages that were taken from various pieces of the LAP lawyers' internal, unfiled, work product.").

Defendants' current request to quash the subpoenas here is no different. The evidence sought is relevant to several elements of Chevron's RICO claim—it relates to the structure and management of the RICO enterprise, the location of RICO predicate acts, and the storage and distribution of Defendants' internal documents and data, some of which was filed as if it were the work of an "independent" Ecuadorian court expert, and some of which is found verbatim in the $19 billion judgment itself. *See* Exs. 2-3 (subpoenas), Ex. 4 (RICO MSJ Order) at 27-30.

For these and other reasons, Chevron is entitled to the limited discovery it seeks through these subpoenas. Individual account holders have been notified of the subpoenas by Google and Yahoo!, and indeed, several have contacted Chevron to negotiate reasonable accommodations in the subpoenas' scope. If Defendants have any legitimate concerns, they are of course welcome to do the same—in fact, they were obligated to do so prior to filing the instant Motion, but did not. For that reason alone, but also because the Motion is factually and legally meritless, Defendants' Motion to Quash should be denied.

## II. BACKGROUND

The background of the Ecuador litigation and the RICO litigation is set out is great detail in a series of decisions from the Southern District of New York. *See In re Chevron Corp.*, 709 F. Supp. 2d 283, 285-90 (S.D.N.Y. 2010); *In re Chevron Corp.*, 749 F. Supp. 2d 141, 143-59 (S.D.N.Y. 2010), *aff'd*, 409 F. App'x 393 (2d. Cir. 2010); Ex. 4 (RICO MSJ Order) at 4-42.

In short, in 2003, a group of plaintiffs' lawyers led by New York lawyer (and a moving Defendant here) Steven Donziger, sued Chevron in Ecuador on behalf of a group of Ecuadorian plaintiffs (some of whom are also moving Defendants here). *In re Chevron Corp.*, 749 F. Supp. 2d at 149. Despite the fact that Texaco Petroleum Company ("TexPet")[5] ceased operations in Ecuador in 1990, thereafter conducted a $40 million remediation program, and received a release of liability from the Republic of Ecuador in 1998, the government of Ecuador pledged its full support to the plaintiffs and lawyers behind the lawsuit (collectively, the "Lago Agrio Plaintiffs" or "LAPs"). *In re Chevron Corp.*, 709 F. Supp. 2d 283, 286-87 (S.D.N.Y. 2010).

5 In 2001, Texaco, the parent of TexPet, merged with a Chevron subsidiary.

Internal documents gathered by Chevron in discovery show that Defendants' claims of "undisputed" "environmental devastation," Mot. at 2, were actually unsupported by the scientific evidence and disputed by their *own* experts. For example, one of the Defendants' lead environmental experts, David Russell, explained to Donziger that "we are not finding any of the highly carcinogenic compounds one would hope to see when investigating the oil pits," Ex. 9, and that "[t]o date I have seen no data which would indicate that there is any significant surface or groundwater contamination caused by petroleum sources in Ecuador," Ex. 5 at 1.[6]

With the environmental evidence undermining their case, the Defendants pressured the Ecuadorian court to appoint their co-conspirator, Richard Stalin Cabrera Vega, as an "independent" "global damages assessment" court expert. Ex. 11. As Donziger privately described it, the expert would "ha[ve] to totally play ball with us and let us take the lead while projecting the image that he is working for the court." Ex. 12 at 30. Publicly, however, Defendants denied any relationship with Cabrera. In one court filing, Defendants called it "[a]nother infamy" to suggest "that there is a close relationship between the Plaintiffs and the Independent Expert." Ex. 13 at 2. Cabrera himself filed statements with the court declaring it an "insult" to suggest that he might "have any relation or agreement with the plaintiff." Ex. 14 at 1.[7] But as the Southern District of New York found, "Cabrera had been working with the LAPs [Lago Agrio Plaintiffs] for some time, and he continued to do so" after his appointment as the court expert. Ex. 4 (RICO MSJ Order) at 35. "[T]here is no genuine dispute as to exactly what happened. As Donziger has admitted, '[LAPs' consultant] Stratus

---

6 The Defendants also claim that "audits" show that TexPet's conduct impacted the environment and "violated Ecuadorian and United States environmental laws as well as standard industry practices." Mot. at 2-3. But as Chevron has noted to Defendants several times, the audits Defendants cite expressly reach the opposite conclusion—namely, that TEXPET's practices for waste handling, spill prevention and control, and abandonment and restoration were conducted according to Ecuadorian law and regulation and industry practices, and had not resulted in any significant impact to the environment. *See* Ex. 10; *see also id.* at 6-32 ("TEXPET's practice of disposing of drill muds and cuttings in reserve pits is in accordance with standard industry practice from 1964 through 1990."); *id.* at 6-29 ("The environmental audit was unable to identify any impacts from TEXPET's practices beyond those associated with normal industrial development.").

7 Evidence now shows that those "Cabrera" statements actually were written by Lago Agrio Plaintiffs' lawyer Pablo Fajardo. Ex. 15 (Expert Declaration of Gerald R. McMenamin) at ¶¶ 3, 9(c)(iii-iv).

wrote the bulk of the report adopted by Cabrera and submitted to the court.'" *Id.* at 38-39. "This uncontradicted evidence demonstrates that the report and subsequent responses filed in Cabrera's name were tainted by fraud." *Id.* at 91.

Defendants' more audacious fraud, however, appears to have been ghostwriting the $19 billion judgment itself. The Ecuadorian judgment includes material copied from several of Defendants' internal, unfiled legal memoranda, emails, documents, and record summaries. Ex. 16 (Expert Report of Michael L. Younger) at 17. Further, errors and idiosyncrasies are imported from those documents into the judgment. *See id.* at 9-17. Multiple experts have concluded that the author of the judgment had access to these internal LAP materials. *See, e.g.*, *id.* The Southern District of New York found that this "disturbing" evidence established "serious questions concerning the preparation of the Judgment itself." Ex. 4 (RICO MSJ Order) at 97. And the District of Maryland found that this evidence—and Defendants' failure to offer any explanation for their language appearing in the judgment—constitutes "a sure fire 'pass the smell test' presentation" of "fraudulent activity." Ex. 17 (transcript of proceedings) at 11:2-10.

As they do here, the Defendants have fought discovery exposing their fraud because they know that public revelation of the fraud could have devastating effects—one of the LAP attorneys emailed Donziger to tell him that if the truth about Cabrera was revealed, "apart from destroying the proceeding, all of us, your attorneys, might go to jail." Ex. 18. The LAPs' lawyers have adopted a strategy to delay, as one proposed in an email to Donziger and others: "What about the following? Appeal; move for stay; if we win with [the District Court Judge] great; if we lose, we produce whatever we want (narrow read); [Gibson Dunn] complains and then we move for clarification. If we lose again, we think about another appeal." Ex. 19; *see also* Ex. 20 (email showing that the LAPs withheld documents they deemed "non-privileged but potentially damaging").

The subpoenas at issue here continue the process of developing evidence regarding Defendants' fraud—a process that has been drawn out, delayed, and assailed in court and in the press by Defendants at every turn. Many of the email accounts at issue here were identified through discovery obtained from Defendant Steven Donziger, and many of these email accounts were only identified when the Southern District of New York ordered Donziger to turn over to Chevron images

of his hard drives after he failed to comply with repeated production orders. *See* Ex. 21 (Order). As the court noted in its order compelling production, Donziger's use of an email account to "store documents of obvious possible relevance" that had not been produced was one of the "reason[s] to believe that Donziger has not complied full[y] and promptly with the subpoenas served on him and this Court's orders that he do so." *Id*; Ex. 22 (Deposition of Steven Donziger) at 3007-12.

## III. ARGUMENT

### A. Defendants Failed to Meet and Confer With Chevron as Required by The Court's Rules Prior to Filing The Motion to Quash.

This Court's rules are clear: "The Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues." Civ. L.R. 37-1(a). Defendants made no such attempt, and this Motion can and should be denied on that basis alone. *See Kremen v. Cohen*, No. 11-cv-05411-LHK (HRL), 2012 WL 2277857, at *2 (N.D. Cal. June 18, 2012) (a motion to quash may be denied solely on the basis of a failure to meet and confer). Indeed, had Defendants met and conferred, the parties could have substantially narrowed, or even eliminated entirely, the need for a motion. For example, the fundamental premise of Defendants' Motion—that Chevron is seeking the contents of email, the contents of Internet searches, and information continuing into the future—is wrong, as a single conversation would have clarified.

Defendants' failure to raise these issues with Chevron prior to filing the Motion cannot be the result of ignorance—moving counsel are sophisticated attorneys with extensive experience before this Court, in this very case. Yet the only communication from Defendants' counsel to Chevron regarding these subpoenas prior to filing the Motion was a single voicemail. *See* Declaration of Rebecca Gray ("Gray Decl.") ¶ 2, Ex. A. In the voicemail, counsel raised only the possibility that the time to respond could be extended—he did not raise concerns regarding the scope of the subpoena, nor concerns about privacy or privilege, nor did he indicate that Defendants were contemplating a motion to quash. *Id*. Counsel for Chevron promptly replied by email and offered to extend the time to respond upon reasonable request—but Defendants made no such request. *Id*. at ¶¶ 3-5. Two days later, Defendants filed this Motion, predicated on misstatements about the subpoenas' scope. Under

these circumstances, the Motion should be denied for Defendants' failure to meet and confer alone.

Defendants' failure to meet and confer, moreover, stands in sharp contrast to the conduct of, other account holders who *did* elect to meet and confer with Chevron. Based on negotiations with the account holders themselves, Chevron has offered to tailor the scope of documents to be produced. *E.g.*, Gray Decl. Exs. C, D, E (correspondence with various account holders); *see also id.* ¶¶ 8-12. Defendants should not be rewarded for their refusal to comply with Civil Local Rule 37-1(a).

**B. Defendants Do Not Have Standing to Bring This Motion to Quash.**

**1. Defendants Do Not Have Standing Regarding Accounts They Do Not Own.**

Beyond the failure to meet and confer, Defendants' Motion should be denied because Defendants lack standing to quash subpoenas over accounts that they do not own. A litigant has no standing to move to quash a subpoena issued to a third party, except to the limited extent that the litigant claims some personal right or privilege with regard to the documents sought. *Jerry T. O'Brien, Inc. v. SEC*, 704 F.2d 1065, 1068 (9th Cir. 1983), *rev'd on other grounds*, 467 U.S. 735 (1984).[8] Defendants are well aware of this rule, as Judge Kaplan has specifically reminded them of it in related litigation: "It is well to note also that the standing of the LAP Representatives to object to the non-party witness subpoenas generally would be limited to the assertion of claims of personal rights or privileges." *Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2207555, at *2 n.11 (S.D.N.Y. June 2, 2011) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); 9 J.W. MOORE *et al.*, MOORE'S FEDERAL PRACTICE § 45.50[3] (3d ed. 2012)).

In this case, Defendants have indicated in their Motion that they currently own two of the email accounts at issue. Mot. at 4:2-8 (identifying sdonziger@gmail.com and javipi002@gmail.com). As to the remainder of the accounts, Defendants do not articulate any protectable interest, and instead assert only that "the other email address owners have similar privacy

[8] *See also Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Rhodes Cos. v. Litig. Trust of the Rhodes Cos. (In re Rhodes Cos.)*, 475 B.R. 733, 740 (D. Nev. 2012); *Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346, 348 (S.D.N.Y. 1967); *Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 253 (D. Me. 2008); 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 (note 6 and accompanying text), § 2463.1 (note 7 and accompanying text); *cf. United States v. Miller*, 425 U.S. 435, 444 (1976) (recognizing "the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant").

interests." Mot. at 11:5-7. It is well-settled that Defendants have "no basis for asserting a challenge based on alleged rights violations against the [other] subpoenaed parties, who do not challenge the subpoenas." *Kremen*, 2012 WL 2277857, at *3; *see also TMP Worldwide Adver. & Commc'ns, LLC v. LATCareers, LLC*, No. 08-cv-5019 RBL, 2008 WL 5348180, at *1 (W.D. Wash. Dec. 16, 2008); *Insubuy, Inc. v. Cmty. Ins. Agency, Inc.*, No. 11-mc-0008-PHX-FJM, 2011 WL 836886, at *2 (D. Ariz. Mar. 9, 2011). Accordingly, Defendants have no standing to quash the subpoena as to accounts they do not own.

**2. Defendants Do Not Have Standing to Assert Burden.**

Even as to the accounts they do own, Defendants have no standing to quash on the basis of "undue burden," vagueness, or relevance, because they do not bear the burden of responding to the subpoenas. *See Rhodes*, 475 B.R. at 740 ("only the party subject to the subpoena may bring a motion to quash under Rule 45(c)(3)(A)"); *Erickson v. Microaire Surgical Instruments LLC*, No. 08-cv-5745 BHS, 2010 WL 1881946, at *2 (W.D. Wash. May 6, 2010) ("A party generally does not have standing to object to a subpoena served on a nonparty on grounds of the undue burden imposed on the nonparty, especially where the nonparty itself has not objected."); *Kadant Johnson Inc. v. D'Amico*, No. 3:12-mc-00126, 2012 WL 1576233, at *4 (D. Or. May 4, 2012) (rejecting party defendants' arguments that subpoena was "unduly burdensome" and sought "irrelevant" and "confidential" information). This undermines the instant Motion, which relies substantially on the supposed "undue burden" created by Chevron's subpoenas. *See, e.g.*, Mot. at 7:9-8:3, 8:27-9:7.

Ignoring these legal precedents, Defendants cite *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005), to support their assertion that they have standing to quash based on overbreadth. Mot. at 7-8. In that case, the magistrate judge cited SCHWARZER, *et al.*, CALIFORNIA PRACTICE GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL ("Rutter Guide") ¶ 11:2291, for the following proposition: "A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash." *See Moon*, 232 F.R.D. at 636. Yet paragraph 11:2286 of the *same* treatise elaborates: "The general rule is that a party has no standing to move to quash a subpoena served upon a third party except as to *privilege* claims relating to any documents being sought." Rutter Guide ¶ 11:2286 (emphasis in original). The very treatise relied

upon by the *Moon* court states the correct rule, but the court apparently erred in its reading of that authority.[9] Simply put, *Moon* was mistaken. The case has neither precedential nor persuasive value, and is overwhelmingly outweighed by cases reaching the opposite conclusion.[10]

**C. Chevron's Subpoenas Contain Reasonable Requests That Courts Routinely Grant.**

In addition to its legal deficiencies, Defendants' Motion rests on the factually inaccurate contention that Chevron's subpoenas are "unusual" and "egregious" because they "call for production of the substance of email communications in violation of the Stored Communications Act," seek "internet searches," and seek "production of each user's future email and internet usage *with no end date*." Mot. at 4-6, 8 (emphasis in original). These are straw man arguments: The subpoenas do not call for any of these categories of documents, but seek only information routinely sought and produced from email service providers in civil discovery. *See, e.g.*, *In re Roebers*, 2012 WL 2862122, at *3 ("Internet service providers and operators of communications systems are generally familiar with this type of discovery request.").

On their face, the subpoenas call for account information and all documents regarding "the usage of the following email addresses, including but not limited to DOCUMENTS that provide IP logs, IP address information at time of registration and subsequent usage, computer usage logs, or

[9] Indeed, even the other case cited by Defendants, *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148 (D. Nev. Jan. 9, 2007), recognizes: "A party's objection that the subpoena issued to the non-party seeks irrelevant information or imposes an undue burden on the nonparty are not grounds on which a party has standing to move to quash a subpoena issued to a non-party, especially where the non-party, itself, has not objected." *Id.* at *3.

[10] *Jerry T. O'Brien, Inc. v. SEC*, 704 F.2d 1065, 1068 (9th Cir. 1983), *rev'd on other grounds*, 467 U.S. 735 (1984); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Rhodes Cos. v. Litig. Trust of the Rhodes Cos. (In re Rhodes Cos.)*, 475 B.R. 733, 740 (D. Nev. 2012); *Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 253 (D. Me. 2008); *Sterling Merchandising, Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 84 (D.P.R. 2006); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004); *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999); *Gatewood v. Stone Container Corp.*, 170 F.R.D. 455, 460 (S.D. Iowa 1996); *Oliver B. Cannon & Son, Inc. v. Fid. & Cas. Co. of New York*, 519 F. Supp. 668, 680 (D. Del. 1981); *Clayton Brokerage Co., Inc. of St. Louis v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980); *Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346, 348 (S.D.N.Y. 1967); *see* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2459 (3d ed. 2008) (note 6 and accompanying text), § 2463.1 (note 7 and accompanying text); *cf.* *United States v. Miller*, 425 U.S. 435, 444 (1976) (recognizing "the general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant").

other means of recording information concerning the email or Internet usage of the email address." Exs. 1-2 (subpoenas). This language mirrors the standard reports that email providers, including Google and Yahoo!, have developed to respond to these types of requests, and it describes information that the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, expressly authorizes email providers to disclose. *See* 18 U.S.C. § 2702(c)(6) (authorizing disclosure of "information pertaining to a subscriber to or customer of such service"); *Sams v. Yahoo!, Inc.*, No. 10-cv-05897-JF, 2011 WL 1884633, at *1, 6-7 (N.D. Cal. May 16, 2011) (rejecting claim that disclosure of IP addresses and other identifying information violated the SCA).[11] Were there any doubt about the scope of the requests—and there is none given the plain language of the requests—Chevron has confirmed with every account holder who has inquired that it is not seeking email contents, *see* Gray Decl. ¶¶ 6-7, 13-14, Exs. F, G, and would have confirmed it with Defendants had they fulfilled their meet and confer obligations prior to filing the Motion, *see* Gray Decl. ¶ 15, Ex. H (Oct. 13 letter to Defendants, confirming Chevron's position after reviewing this Motion).

But Defendants should already know of this, because Yahoo! has explained it to Defendant Donziger. In connection with earlier discovery proceedings in the RICO case, Donziger himself served similar subpoenas on Google and Yahoo!, including subpoenas for information about some of the accounts at issue here. *See* Ex. 23 (Donziger subpoenas to Yahoo!). In response, Google and Yahoo! sent Donziger several letters detailing their legal obligations and procedures. *E.g.*, Exs. 24, 25, 26. Specifically, Yahoo! explained to Donziger that it would not produce "the contents of

---

[11] This information is commonly provided to civil litigants via subpoena. *See*, *e.g.*, *London v. Does 1-4*, 279 F. App'x 513, 514-15 (9th Cir. 2008) (affirming this Court's denial of motion to quash subpoena on Yahoo! seeking documents disclosing IP address from which email accounts were created); *AF Holdings LLC v. Doe*, No. 12-cv-02416-WHA, 2012 U.S. Dist. LEXIS 75806, at *2-3 (N.D. Cal. May 31, 2012) (granting early discovery of IP log, for purpose of determining identity of infringing IP address holder); *Xcentric Ventures, LLC v. Karsen, Ltd.*, No. 11-cv-01055-PHX-FJM, 2012 U.S. Dist. LEXIS 121888, at *1-3 (D. Ariz. Aug. 28, 2012) (denying motion to quash subpoena seeking discovery of IP address information from Google); *In re Roebers*, 2012 WL 2862122, at *1, 3 (granting § 1782 discovery of subpoenaing party's IP address information for purpose of proving unauthorized access by estranged husband); *In re Appt. of a Comm'r re Request for Judicial Assistance*, No. 11-mc-80136-RS (MEJ), 2011 WL 2747302, at *3 (N.D. Cal. July 13, 2011) (granting discovery of IP addresses and "personally identifying details, such as name, e-mail addresses, physical addresses, age, etc." to identify anonymous blogger); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, No. 07-cv-03952-JW (HRL), 2008 WL 2783206, at *3 (N.D. Cal. July 15, 2008) (granting motion to compel Internet access logs in trademark and copyright infringement case).

electronic communications[.]" Ex. 24 at 1. Yahoo! subsequently produced to Donziger its standard report, containing the same type of user account and IP information Chevron seeks in its subpoenas. Ex. 27 ("Yahoo! Account Management Tool" report). As Yahoo!'s letters and production to Donziger demonstrate, the information produced in response to these types of subpoenas by Google and Yahoo! is limited, and Donziger previously had no objection to its production.[12]

Defendants' interpretation of the subpoenas as requiring the "production of each user's future email and internet usage *with no end date*" is also incorrect. *See* Mot. at 4:1. Chevron's subpoenas establish the end date as the date of service, September 7, 2012: "The time period covered by these document requests runs from 2003 to the present." Defendants ignore this limitation, and instead seize on the phrase "continuing request." *See* Mot. at 7:20-26. But what the subpoenas actually say is: "This is a continuing request. Any DOCUMENT obtained or located after the date of production that would have been produced had it been available or had its existence been known at that time should be produced immediately." Exs. 1 & 2, Instruction No. 6. This means that Google and Yahoo! are required to produce any already extant responsive documents they might locate in the future. It does not alter the preceding date limitation. The subpoenas do not seek documents being created into the indefinite future—as Chevron would have told Defendants if they had met and conferred with Chevron pursuant to Civil Local Rule 37-1(a).[13]

---

[12] Donziger subpoenaed Google and Yahoo! in December of 2010 and January of 2011 to obtain user account and IP information for eight email addresses, including four of the email addresses at issue here. Ex. 23. In those subpoenas, Donziger indicated that he consented to the release of user and IP information by the email service providers, a position directly contrary to the position he and the other Defendants are advancing before this Court. *Id.* Moreover, the fact that Donziger was required to subpoena Google and Yahoo! to obtain the same type of user account and IP address information sought by Chevron undermines Defendants' assertions that "[a]ny relevant information can be obtained via discovery from Defendants in the New York litigation," and that "plaintiffs can more easily and inexpensively obtain the documents from [an] opposing party rather than [a] nonparty." *See* Mot. at 11.

[13] Defendants' assertion that "Chevron has insisted that it need not produce documents in discovery that post-date February 14, 2011" is false, as Defendants' own cited source, Chevron's discovery responses, makes clear in language Defendants ignore. *See* Dkt. 4-1 (Declaration of Garland Murphy) ¶ 9 ("except as otherwise specified in response to a Request"). Moreover, contrary to Defendants' suggestion, Mot. 8:12-17, the discovery of documents that post-date certain of their fraudulent acts is entirely appropriate in a case involving an *ongoing* conspiracy to commit fraud and extortion. *See Goldinger v. Boron Oil Co.*, 60 F.R.D. 562, 564 (W.D. Pa. 1973) ("Discovery is permitted to acts and events transpiring subsequent to those giving rise to the cause of action where there is a possibility that the information sought may be relevant to the subject matter of the pending action . . . ."); *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03

*(Cont'd on next page)*

**D. The Limited Documents Sought Are Relevant to The RICO Action.**

Here, it is beyond legitimate question that the information sought is relevant to multiple aspects of Chevron's claims in the RICO Action. Chevron already has obtained thousands of emails sent to and from Defendants and those associated with them. These emails provide evidence of fraud, extortion, and other wrongful conduct. The identity of the email account users involved and the location from which those users communicated are directly relevant to Chevron's RICO case.

*First*, identifying the owners of the email accounts used to further the various RICO predicate acts of extortion, wire fraud, and money laundering will provide evidence regarding the RICO enterprise's structure and management, an essential element of Chevron's claim. *See Boyle v. United States*, 556 U.S. 938, 951 (2009).

*Second*, despite the fact that Defendants' scheme was designed by U.S. lawyers, carried out largely in the United States and directed at a U.S. victim, Defendants argue that that the activities Chevron complains of took place overseas, and that Chevron's complaint constitutes an extra-territorial application of the RICO statute. Ex. 28 (filing by Defendants so arguing) at 2-5. IP information will prove that substantial portions of the RICO predicate acts originated in the United States.

*Third*, Defendants and their affiliates established email accounts for the purpose of storing and exchanging documents in furtherance of their fraudulent conduct. For example, to plan for ghostwriting the purportedly independent expert's report, Donziger and his primary Ecuadorian counterpart, Pablo Fajardo, set up a new email account, and Fajardo instructed Donziger "do not insert any names in the document," but instead to use the code names "Lagarto 2" and "Lagarto 3." Ex. 29; Ex. 22 (Deposition of Steven Donziger) at 3057-58. Similarly, the evidence establishes that the Defendants' unfiled documents were secretly shared with the author of the $19 billion judgment

*(Cont'd from previous page)*

Civ. 5560 (RMB) (HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) (approving request for documents "from January 1, 1999 to the present"); *see also Conopco*, *Inc. v. Wein*, No. 05 Civ. 9899 (RCC) (THK), 2007 WL 1040676, at *3 (S.D.N.Y. Apr. 3, 2007) (allowing discovery from third-party law firm for ongoing RICO conspiracy).

itself. Information about where and when these shared email accounts were accessed is of self-evident relevance to Chevron's claims.

Further, Chevron is entitled to receive this information in the form of a regularly collected business record, so that it will be admissible at trial. *See, e.g.*, Fed. R. Evid. 803(6).

**E. The Subpoenas Do Not Call for The Disclosure of Privileged Information.**

Defendants' unsubstantiated assertion that the request for IP logs implicates the attorney-client privilege and work product doctrine is without merit. Defendants cite *no* authority holding that IP logs—which are created and maintained in the normal course of business by third-party email service providers—can or should be protected as privileged communications or work product. This alone is fatal to their argument. *See McNaughton-McKay, Elec. Co. v. Linamar Corp.*, 09-CV-11165, 2010 WL 2560047, at *2 (E.D. Mich. June 15, 2010) (denying party's motion to quash where the allegations of privilege were "neither specific nor substantiated").

Defendants assert that information about login locations potentially disclosed in the IP logs might reveal the "enforcement activities and strategies of the Ecuadorian Plaintiffs and their attorneys." *See* Mot. at 7:3. Defendants, however, cite no authority for the proposition that the facts concerning a lawyer's whereabouts comprise a privileged communication or protected work product.[14] Instead, they misstate Judge Kaplan's recent oral ruling in the underlying RICO action. *See* Mot. at 7:1-2 ("the Southern District of New York has already ruled that Chevron is not entitled to such information"). In fact, Judge Kaplan sustained an objection from a non-party, not a party, regarding discovery about travel to countries other than the United States and Ecuador. *See* Ex. 30 (transcript of proceedings) at 23:20. And Judge Kaplan clarified that he was not passing on the "relevance as a purely legal matter of the material sought" (*id.* at 6:18-23) or on any questions of privilege at all. *See id.* at 4-5, 12:25-13:1 ("But you understand that I'm not passing on privilege

[14] The only case Defendants do cite in support of their privilege argument—for the uncontroversial proposition that a court may quash a subpoena seeking the disclosure of privileged information—has no factual relationship to the instant case. *See Los Angeles Mem. Coliseum v. Nat'l Football League*, 89 F.R.D. 489 (C.D. Cal. 1981) (holding discovery sought from journalists by National Football League was not sought for its defense against any of the underlying claims and that subpoenaed journalists were protected by California's journalists' "shield" law).

questions today."); 17:24-18:2. Judge Kaplan's ruling in no way limits the discovery of IP log information sought here, and provides no basis for a claim of privilege.

**F. The Subpoenas Do Not Implicate Defendants' Privacy Rights.**

Defendants have no privacy interest in the data Chevron seeks. Courts "routinely reject the argument that subscribers have a privacy interest in their account information." *Doe v. SEC*, No. 11-mc-80184 CRB (NJV), 2011 WL 4593181, at *4 (N.D. Cal. Oct. 4, 2011) (rejecting motion to quash administrative subpoena that "d[id] not seek the content of any of Movant's communications but rather 'addressing information' that will allow the SEC to identify Movant").[15]

None of the cases Defendants cite holds to the contrary. They cite *Painting Indus. of Haw. Mkt. Recovery Fund v. U.S. Dep't of the Air Force*, 26 F.3d 1479, 1483 (9th Cir. 1994), for the proposition that there is a privacy interest in "name, address and financial information." Mot. at 10:6. But the *Painting Industry* case involved a request made under the Freedom of Information Act ("FOIA") and therefore did not implicate an interest in relevant discovery in connection with an underlying litigation. *See id.* at 1481. Furthermore, the FOIA request sought "particularized information about wages" of the individuals, information that Chevron does not seek. *See id.* at 1484. Defendants' reliance on *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010), is likewise unavailing. For the purposes of standing, the *Crispin* court recognized a "personal right in information in his or her profile and inbox on a social networking site," *id.* at 974, but the court did not hold that user information or IP logs were private or protected. *See id.* at 991 (holding only that the content of webmail and private messages sent via a social networking account are private).

In a footnote, Defendants' Motion also argues that the subpoenas "may" violate users' First Amendment rights "by seeking the identity of anonymous users." Mot. at 11 n.7. But the vast majority of the email addresses covered by the subpoenas are simple variations on the names of the

---

[15] *See also United States v. Li*, No. 07-cr-2915-JM, 2008 WL 789899, at *15 (S.D. Cal. Mar. 20, 2008) ("[T]he SCA . . . clearly does not communicate to subscribers or customers that they have a reasonable expectation of privacy in their IP addresses and log-in histories."); *In re United States*, 830 F. Supp. 2d 114, 131-33 (E.D. Va. 2011) (holding that petitioners, through their voluntary transmission of their IP addresses to Twitter, had no expectation of locational privacy in IP logs).

account holders (e.g., wilsonaguinda@gmail.com for Wilson Aguinda, katiafachgomez@gmail.com for Katia Fach Gomez, or alex_anchudia2007@gmail.com for Alexandra Anchudia, among many others). This hardly suggests a "decision to remain anonymous." *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) ("[A]n author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment."). To the extent that participants in Defendants' enterprise have ever evinced a desire to conceal their identities (e.g., "Lagarto 2" and "Lagarto 3"), it has been to facilitate fraudulent conduct. *See* Ex. 29. And "[t]he First Amendment does not protect fraud." *San Antonio Cmty. Hosp. v. So. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1239 (9th Cir. 1997). Moreover, the terms of service for each of the email service providers indicates that user account information will be disclosed in response to legal process, a policy each account owner agreed to when setting up his or her account. *See* Ex. 31 at 6; Ex. 32 at 2. These subpoenas do not implicate First Amendment rights any more than a request for phone numbers, which has long been held permissible. *See, e.g.*, *California v. FCC*, 75 F.3d 1350, 1362 (9th Cir. 1996) ("Exposure of a telephone number does not violate the First Amendment right not to speak.").

## IV. CONCLUSION

The Defendants' Motion to Quash is predicated on an unsupportable claim of standing, a misreading of the subpoenas, and an improper assertion of privilege. Most of the arguments raised could have been resolved, or at least narrowed, had Defendants complied with their obligation to meet and confer before filing the Motion. The limited discovery sought is relevant to Chevron's RICO claims and should not be further delayed by Defendants' obstruction. For the foregoing reasons, Chevron respectfully requests that the Court deny Defendants' Motion to Quash.

Dated: October 19, 2012

THEODORE J. BOUTROUS JR.
ETHAN D. DETTMER
GIBSON, DUNN & CRUTCHER LLP

By: /s/ Ethan D. Dettmer
Theodore J. Boutrous Jr.
Ethan D. Dettmer

Attorneys for Plaintiff
CHEVRON CORPORATION