# EXHIBIT 15

# DECLARATION OF GERALD R. McMENAMIN

I, Gerald R. McMenamin, declare as follows:

1. I am Professor Emeritus of Linguistics and former Chair of the Department of Linguistics at California State University, Fresno. My academic and professional areas of specialization are in General Linguistics, Spanish Linguistics, and the discipline of Applied Linguistics known as Forensic Linguistics, with specific training in the analysis of variation and style in spoken and written language. Attached to this Declaration as **Exhibit A** is my *Curriculum Vitae*. On past occasions, the last five years of which are set forth in my *Curriculum Vitae*, I have qualified as an expert witness in forensic linguistics and have testified in courts in the State of California and in other States and countries, as well as in Federal Courts, to render conclusions and opinions on stylistics, questioned authorship and questioned meaning.

2. I was retained in this matter by GIBSON DUNN and was asked to determine, to the extent possible, the authorship of (1) Ing. Richard Cabrera's *INFORME SUMARIO DEL EXAMEN PERICIAL* AND *ANEXOS*, also referred to as the *Cabrera Report*, (2) Ing. Cabrera's *RESPUESTAS A LAS PREGUNTAS DE LA PARTE DEMANDANTE RELACIONADAS CON EL INFORME PERICIAL*, also referred to as his *Supplemental Report*, and (3) other court filings of Ing. Cabrera. I am being compensated at a rate of $200 per hour for analysis and $400 per hour for conferences and testimony. My compensation is not dependent on the outcome of or my opinions in this matter.

3. **Opinions: First**, it is *highly probable* that (1) Richard Cabrera is <u>not</u> the author of the *INFORME PERICIAL,* and (2) Ing. Cabrera is <u>not</u> the author of responses which make up the *Supplemental Report*. **Second**, it is *highly probable* that (1) the Stratus consulting group, in conjunction with Lago Agrio Plaintiffs and consultants in Quito (hence Stratus and Quito), are the joint authors of the *INFORME PERICIAL,* and (2) Stratus and Quito are the joint authors of the responses of the *Supplemental Report*. **Third**, it is *highly probable* that the **Cabrera Filings** examined have multiple authors. **Fourth**, it is also *highly probable* that, of a subset of seventeen of those **QUESTIONED-Cabrera Filings** purported to have been written by Ing. Cabrera, fifteen of them were written by Pablo Fajardo Mendoza. Analysis of other **QUESTIONED-Cabrera Filings** is ongoing.

4. **Forensic Stylistic Analysis**: I used stylistic analysis, or "stylistics," in this case to reach a conclusion related to the authorship of questioned writings. Stylistics is the scientific study of patterns of variation in written language. The object of study is the language of a single individual, resulting in a description of his/her respective identifying linguistic characteristics. Literary stylistics studies works of literature whose authorship is in doubt. Stylistics is *forensic* when its purpose is to resolve a disputed question related to written language, such as the authorship question of this case. In cases of disputed authorship, the linguist analyzes and describes the style of documents known to be written by one or more given suspect authors and compares and contrasts their internal linguistic patterns to those of the questioned writing. The result of this analysis may be exclusion or inclusion of

writings within a common cannon of writings, exclusion or identification of a suspect author, or inconclusive with respect to data that supports neither of the latter outcomes.

5. This approach to author identification is based on two generally-accepted principles that are well documented in peer-reviewed contexts: (1) that author-specific linguistic patterns are present in unique combinations in the style of every writer, and (2) that these underlying patterns can be empirically described and often measured by careful linguistic analysis, making author identification possible.

6. A language is *owned* by its whole group of speakers but uniquely *used* by individuals from that group. Why one writer chooses linguistic form A and another chooses form B has two possible causes: differences in what the individuals know of the language and differences in how each one uses the core of linguistic knowledge they have in common as speakers and writers. Individual differences in writing style are often also due to an individual's choice among available alternatives within a large, shared pool of linguistic forms. At any given moment, a writer picks and chooses just those elements of language that will best communicate what he/she wants to say. The writer's "choice" of available alternate forms is often determined by external conditions and becomes the unconscious result of habitually using one form instead of another. Individuality in writing style results from a given writer's own unique set of habitual linguistic choices. Identification and analysis of a writer's choices, *i.e.,* his or her style markers, constitute stylistic analysis, which is well established as a generally-accepted and peer-reviewed method of author identification in both literary and forensic contexts.

7. **Method for Part 1**: Writings used for **Part 1** of my review and analysis include the following:

> **QUESTIONED WRITINGS:**
> (a) *Informe Sumario del Examen Pericial y Anexos*
> (b) Supplementary Report: Responses to Plaintiffs' reactions to *Informe Pericial*
> (c) Other Court Filings of Ing. Cabrera
>
> **KNOWN WRITINGS:**
> (a) Various emails and documents generated during the course of writing reports, responses and drafts.

8. In order to accomplish **Part 1** of this assignment, I read and analyzed the language (Spanish and English) of the above-mentioned writings to determine their author(s). The first step in a matter of this type would typically be to compare and contrast the Questioned writings to Known writings of the putative author. In this case, however, there are no authenticated exemplar writings known to have been authored by Richard Cabrera. The next step, then, was to exclude or identify Ing. Cabrera's technical consultants (writers in Colorado, *i.e.* Stratus Consulting, and in Quito) as the authors of the Questioned writings. To do this, I made systematic observations of two kinds of linguistic data: (1) the language of the English-language writings and that of their Spanish-language translations, and (2) the email meta-discussions surrounding the creation of those writings and translations.

**9. Findings for Part 1**:

**(a) AUTHORSHIP OF THE *INFORME SUMARIO DEL EXAMEN PERICIAL* AND *ANEXOS***

Analysis of the *Informe Sumario del Examen Pericial* (hence the "Cabrera Report") and its various *Anexos* demonstrates first, that Ing. Richard Cabrera did not author the report, and second that Stratus Consulting and Lago Agrio Plaintiffs' team in Quito did write the report.

Internal and external evidence support this conclusion. *Internal evidence* relates solely to the linguistic characteristics of the language used within the report itself. *External evidence* refers to linguistic and non-linguistic findings related to English- and Spanish-language drafts of and email communications about the Cabrera Report.

### (i) Internal evidence of authorship of the Cabrera Report

#### (1) Error analysis

The language of the Cabrera Report contains errors in Spanish grammar that persist throughout the report. These errors are highly patterned insofar as (1) they form an identifiable set, and (2) tokens of the types of errors identified occur again and again over the course of the whole report. Refer to **Exhibit B** for examples of the Spanish-language errors present throughout the Cabrera Report.

The Spanish-language errors that occur in the Cabrera Report are grammatical deviations that make possible at least two observations about the language of the Cabrera Report: (1) most of the errors are the type that a college-educated, native speaker of Spanish would simply not demonstrate in his or her writing, and (2) many of these Spanish-language errors reflect the underlying influence of the syntactic structure of English.

The above observations lead to one or both of the following conclusions: (1) the Spanish of the Cabrera Report was written by an under-educated or non-native speaker/writer of Spanish, or (2) the Cabrera Report was written in English and then translated to Spanish by translators with less than adequate translation skills. A review of the Cabrera Report's *Anexos* demonstrates errors similar to those found in the Cabrera Report itself.

After I had performed my independent analysis, I was provided with Professor Teresa Turell's March 24, 2010 report entitled "Expert Witness Report on Disputed Authorship of the Text: Informe Sumario del Examen Pericial." I note that Prof. Turell likewise found that significant parts of the Cabrera Report had "definitely NOT been written first hand by a native writer of Spanish," which is consistent with my independent findings.

#### (2) Pronominal identification of the Cabrera Report writer

The named author of the Cabrera Report, Richard Cabrera, narrates what was done to satisfy the request of the Court by consistently using the first person, singular pronoun, I, to describe his work on the report itself (*what my charge was*, *how I approached my work,* and

*what I describe in the report*), as well as to say what his research involved (*what I focused on, what I evaluated, what data I reviewed, what data I analyzed, what technical reports of other experts I reviewed, what data I considered important, what I based my analysis on*, and *what I myself actually analyzed*)*.* Refer to **Exhibit C** for just a few examples of the first-person references present throughout the Cabrera Report. Such frequent self-reference implies that Ing. Cabrera did much of the research for the report and actually wrote the report, though this is contradicted by other evidence reviewed herein.

It appears then that Stratus made at least indirect efforts to hide its own authorship of the Cabrera Report by making it appear to have been written by Ing. Cabrera, even though it was actually authored by Stratus and Plaintiffs' Quito team within a timeline that likely did not permit either review or revision by Ing. Cabrera. In fact, there are effectively no changes between Quito's last draft of the Cabrera Report and the filed Cabrera Report.

There is at least one instance of the use of the third-person possessive adjective "his," indicating a writer other than Ing. Cabrera, which was probably intended to be a temporary editorial reminder:

SN068513-p. 2 of English Draft of Cabrera Report: I, Richard Cabrera, … [**his** credentials]
SN048281-p. 2 of Spanish Draft of Cabrera Report: Yo, Richard Cabrera, … [**sus** credenciales]

A review of the Cabrera Report's *Anexos also* demonstrates first-person usage similar to that found in the Cabrera Report itself.

### (3) The linguistic observations of the Quito technical team on the Cabrera Report

As has been pointed out, the language of the Stratus consultant group demonstrates significant absence of descriptive objectivity. On the contrary, the Stratus language demonstrates advocacy for Lago Agrio Plaintiffs throughout the Cabrera Report. It is significant that Lago Agrio Plaintiffs' own Quito team also recognized this as a deficiency of the Cabrera Report in their post-submission remarks to Stratus. Among the various observations made by the Quito group were these two concerning the language of the Cabrera Report:

SN062133-051908: "El lenguaje nota una traducción."
[The language is indicative of a translation.]

SN062133-051908: "El lenguaje es tendencioso no es imparcial."
[The language is tendentious (i.e., biased), it is not impartial.]

### (ii) External evidence of Cabrera Report/ANEXOS authorship: Stratus internal emails

The many Stratus email communications (830 files, most with multiple emails and attachments) provide substantial external linguistic evidence that Ing. Cabrera did not author the Cabrera Report. Data to support this observation may be found in **Exhibit D**.

First, the Stratus communications illustrate an elaborate process for managing the construction of the Cabrera Report - from suggesting content to outlining the scope and sequence of writing, including meetings in the U.S. and Ecuador, work assignments, timelines, deadlines and urgent-completion requirements.

Second, there are multiple indications that Stratus intended to reassign authorship of the Cabrera Report to Ing. Cabrera. For example, they make direct statements that Cabrera wrote the Cabrera Report. They also tell potential reviewers that the Cabrera Report was first written in Spanish and subsequently translated to English, when it was the other way around. Finally, and most egregiously, Stratus did not disclose the redactive process (*proceso de redacción*) of the Cabrera Report to potential peer reviewers.

Third, there are written emails demonstrating that Stratus intended to hide the true authorship of the Cabrera Report.

Fourth, there are many places in the Stratus emails (especially those from Mr. Beltman to encourage his 'Scientific Team,' as well as those from Stratus requesting participants to peer review the Cabrera Report) where Stratus demonstrates that it has moved away from what could be considered neutral technical advising and into the role of unrestrained advocacy.

Lastly, writings indicate that Stratus acted as Lago Agrio Plaintiffs' advocate through the process of writing, submitting, critically reacting to, answering their own criticisms regarding, and finally, purporting to peer review the Cabrera Report. However, it is also clear from their own writings that (1) Stratus knew what their usual technical role was and what it should have been in this matter, as indicated by Mr. Beltman's encouraging his staff to avoid writing in their usual technical manner on this case, and (2) they were aware of the Court's charge to *Perito* Cabrera to be neutral and impartial. With respect to the latter, Stratus, in publicly released "Comments," compared Ing. Cabrera's role to that of a Technical Special Master in American federal courts.

### (b) AUTHORSHIP OF *DEMANDANTES'* RESPONSES TO THE CABRERA REPORT

On June 9, 2008, Mr. Beltman emailed a work plan for developing responses to the Cabrera Report itself, wherein he says (p.3), "… the following are the tasks and approximate costs that we anticipate from now through September (when comments on the Cabrera expert report are due to the Court):"

### (i) Stratus plans responses$_1$: responses to the *Cabrera Report.*

Mr. Beltman's email and attached work plan appear to be the first step in a joint effort by Quito and Stratus to present Plaintiffs' response to the Cabrera Report, labeled herein as **responses$_1$**:

SN069610-060508:  [This is the Spanish-language work plan attached to Mr. Beltman's June email.  Note that it includes the category, *"What we the Demandantes should do"* among its five columnar listings related to Quito and Stratus tasks for constructing responses$_1$. Thus, they are including themselves among the "Demandantes" or Plaintiffs:]

| 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|
| ARGUMENTOS DE CHEVRON | QUE DEBEMOS HACER LOS DEMANDANTES | RESPONSABLE DE LA ELABORACION | FECHA DE BORRADOR | FECHA DE ENTREGA |
| Chevron's positions | What we the Demandantes should do | Responsible for doing the work: Colorado or Quito | Due date for draft | Delivery date |

### (c) AUTHORSHIP OF CABRERA RESPONSES: THE SUPPLEMENTAL REPORT

Ing. Cabrera presented a *Supplemental Report* entitled *RESPUESTAS A LAS PREGUNTAS DE LA PARTE DEMANDANTE RELACIONADAS CON EL INFORME PERICIAL* (hence *RESPONSES*) to the **Corte Superior de Justicia de Nueva Loja**.  This document purports to be a response by Ing. Cabrera to the Lago Agrio Plaintiffs' response to the Cabrera Report.

### (i) General observations on the authorship of the *RESPONSES*

Analysis of the *RESPONSES* demonstrates that Ing. Cabrera did not author the report.  As with the Cabrera Report, two types of linguistic evidence support this observation: (1) the *internal* linguistic characteristics of language used in the *RESPONSES,* and (2) external findings related to email communications about the process of redaction.

Considerable written material in the *RESPONSES* appears to follow a pattern of work activity similar to that used by Stratus to construct the Cabrera Report, *i.e.*, that the fundamental language and content of the response was created in English, then translated to Spanish, and finally edited for content and Spanish-language by the Quito legal team.

The first sentence of the response to *Pregunta 11* on groundwater cleanup is a small but readily-observable example of the developmental sequence of the writing process:

**STRATUS:**
SN114206-110508:1		English$_1$:	*The Demandantes are correct.*
SN114214-110508:1		English$_2$:	*The Demandantes are correct.*
SN114210-110608:1		Spanish$_1$:	*El Demandantes están correcto.*
SN069544-110608:1		Spanish$_2$:	*Los Demandantes están correcto.*

**QUITO:**
SN042625-112808:12     Spanish$_3$:     *Los Demandantes están en lo correcto.*

### (ii) Specific observations on the authorship of the RESPONSES

A broader and more substantive look at the writing process could then include the redactive development of the whole response to the same *Pregunta 11*:

**STRATUS:**
SN115054-101508:1     English$_1$:     Outline for response on groundwater cleanup
SN114214-110408       English$_2$:     (black print with green edits)
SN114206-110508       English$_3$:     (black print with blue edits)
SN114212-110508       English$_4$:     (all seen together in black print)
SN069542-110608       Spanish$_1$:     (sent to Quito)
SN114210-110608       Spanish$_2$:     (sent to Quito, but slightly different)
**QUITO:**
SN042625-112808       Spanish$_3$:     Cabrera responses as submitted to the Court

Note that the English and Spanish versions of the RESPONSES are written in the first person, indicating their source to be Ing. Cabrera. See, *e.g.,* SN119184-102808, or the following from SN068161-110508:

SN068161-110508:1     *Me gustaría revisar la estimación ....*
SN068161-110508:1     *En mi análisis original, incluí el coste ....*
SN068161-110508:1     *... utilicé costes de una 1985 encuesta de residuos ....*
SN068161-110508:1     *No incluí costes para disponer de residuos ....*
SN068161-110508:1     *Utilcé los costes ..., que es constante*

Some of the writings related to the RESPONSES are also sufficient to allow for a stepwise analysis of the Stratus redaction process:

### (1) Step 1: Stratus plans responses$_2$: responses-to-their-responses$_1$.

SN047826-103108     [This appears to be a Stratus work plan similar in form to that described above in Section 9(b)(i). This is a three-column table which includes the following: PREGUNTA [Question], RESPONSABLE [Responsible], RESPUESTA DE EQUIPO DOUGLAS [Response of the Douglas team], all aimed at developing responses$_2$ to Plaintiffs' responses$_1$ to Ing. Cabrera's *Informe Pericial.*]

### (2) Step 2: Stratus prepares English-language outline for responses$_2$.

SN127675-082310     [This is an outline of the response related to the release of contaminants from pits, which appears to have been edited with additions and deletions appearing in purple print.]

**(3) Step 3: Stratus consultants prepare English-language drafts of certain responses$_2$ to Plaintiffs' responses$_1$ to the *Informe Pericial*.**

SN015963-102908: [This is an English version of a revision of Anexo T: Unjust Enrichment. Note that the text is prepared as if coming from Ing. Cabrera, *i.e.,* in the first person]:

    1    I would like to revise the estimate I presented ....
    1    For this analysis, I used costs from a 1985 production waste ....

**(4) Step 4: Stratus then translates these to Spanish for the Quito team.**

The language of the RESPONSES contains errors in Spanish grammar that are consistent with the error-types of the Cabrera Report itself, as noted in Section 9(a)(i)(1) above. It is significant that, of the multiple types of language errors that writers or translators might make, the very same much narrower set of error types co-occur in both sets of writings: the Cabrera Report and the RESPONSES. This means that these Spanish-language writings were most likely written or translated by the same person(s) who wrote/translated the Cabrera Report.

In addition, the Spanish-language errors of the RESPONSES are similar to those of the Cabrera Report insofar as they demonstrate grammatical deviations pointing to either or both (1) an undereducated native-speaker of Spanish, or (2) a speaker/writer of Spanish as a second language whose translations reflect the underlying influence of English, often referred to as *bilingual interference*.

The errors sampled from the following responses may be reviewed in the following writings in **Exhibit E**:

SN119184-102808: *Vías de reparación y valoración económica*
SN012954-110408: *Reinyección y Uso de Gas Asociado*
SN055943-110408: *Reinyección y Uso de Gas Asociado*
SN068161-110508: *Anexo T: Unjust enrichment*
SN069542-110608: *Valor total de la reparación* [Spanish is painful!]

The presence of the same error types leads to the singular conclusion that the RESPONSES for which such documentation is available were written in English and then translated to Spanish by translators with less than adequate translation skills. This, of course, agrees with Stratus' comments that such was the case as well as with English-language edits that became part of the ultimate Spanish-language responses, for example:

SN069542-110608   [In a Stratus email, which includes an answer to *Valor total de reparación* question, 'Jenny' makes the following comments: ]

> Repase por favor cuidadosamente la lengua en esto y el comentario anterior sobre piscinas. No utilizamos nuestro traductor generalmente.
>
> Translation: [Please review carefully the language in this and the previous commentary on pools reservoirs. We did not use our usual translator.]

SN114206-110508: [This is an English version of the *Valor total de reparacion*, edited in blue and green, with all edits included in subsequent Spanish-language version.]

### (5) Step 5: The *Demandantes*' Quito consultants make additions and deletions of language and content to the Stratus drafts.

SN042625-112808 [This is the final version of the RESPONSES, which demonstrates two characteristics: (1) Spanish grammar that is improved over the initial Stratus Spanish-language versions, and (2) the text of the submitted Spanish-language version retains most of the language, content and sequence of ideas first created in the original English-language drafts.]

**(iii) Method for Part 2**: I have reviewed the *Cabrera Filings*, most of which are documents that Ing. Cabrera filed with the *Corte Superior de Justicia de Nueva Loja*. I examined these writings to determine if their respective internal-style characteristics indicated single or multiple authorship. (The writings reviewed are available on request.)

I have also reviewed two other sets of writings: (1) a subset of seventeen *Cabrera Filings*, which I will call **QUESTIONED-Cabrera Filings,** and (2) a set of sixteen writings known to have been written by Pablo Fajardo Mendoza, which I will call **KNOWN-Fajardo Writings.** I used these writings to determine if Pablo Fajardo could be either excluded or identified as the author of the **QUESTIONED-Cabrera Filings**. All of these writings are listed below and are available for review upon request:

**QUESTIONED CABRERA FILINGS**

| Date | Record No. | Pages | Description (English from Certified Translations) | Author (identified through analysis) |
|---|---|---|---|---|
| 071207 | 131336 | 2 | Filing specifying sites that will be included in the Peritaje Global and asking that Petroecuador's or PEPDA's activities (i.e., remediation) be halted at sites. | Fajardo |
| 071207 | 131338 | 2 | Filing complaining to the court about incidents and pressure received from Chevron during site inspections and refers to "the complete and absolute impartiality | Fajardo |

| | | | with which I must act in carrying out the expert evaluation . . . ." | |
|---|---|---|---|---|
| 072307 | 131971 | 1 | Cabrera filing in which he gives notice of future well-site inspections. | Fajardo |
| 072307 | 131972 | 1 | Letter stating "I should clarify that I do not have any relation or agreements with the plaintiff, and it seems to me to be an insult against me that I should be linked with the attorneys of the plaintiffs." | Fajardo |
| 082307 | 132263 | 1 | Letter stating "In order to demonstrate the transparency, impartiality and objectivity with which I am developing the field work and, especially, so that the disputing parties have sufficient information about the samples and the status of these samples, which are sent to the laboratory, in July this year, I chose to create a sample record sheet, noting basic technical information for each sample." | Fajardo |
| 101107 | 133178 | 3 | Cabrera's filing in response to Chevron's questions about his impartiality: "Your Honor, being the professional that I am and in compliance with the orders issued by you regarding my designation, confirmation and acceptance of my appointment as Expert, I have performed my work with absolute impartiality, honesty, transparency and professionalism. I reject the descriptions or attacks that have been leveled against me alleging that I am biased toward one of the parties, and I also reject the unfounded accusations that I am performing my work surreptitiously. That is completely untrue." | Undetermined |
| 101607 | 133254 | 1 | Cabrera filing in which he states his duty as expert is to comply | Fajardo |

| | | | | |
|---|---|---|---|---|
| | | | with the law and that all matters concerning the completion of his duties will be included in the report: "It is not within my power to comment in advance what parts my report should contain or should not contain. I clarify that my duty as expert is to comply with the law, with the timely requests of the parties, and with the orders of the judge in the case." | |
| 103107 | 133465 | 1 | Cabrera filing in which he confirms his commitment to continue his work with absolute impartiality, honesty, and transparency: "In response to each and every one of said briefs, Your Honor, I can only confirm my commitment to continue my work with absolute impartiality, honesty and transparency." | Fajardo |
| 110507 | 133469 | 3 | Cabrera letter claiming that he and his team have been harassed, followed, potentially had his phone tapped, and is in fear. | Fajardo |
| 110807 | 133582 | 1 | Cabrera's request for a 30-day extension to file the report, in which he mentions his investigation was impartial: "In order to conduct a thorough, impartial and objective investigation in strict observance of the law and the facts of the case, since July and August of this year I have asked you, Your Honor, to send official letters to various public and private institutions requesting that they provide me with essential information related to the expert examination for which I am overseeing." | Fajardo |
| 120707 | 133882 | 2 | Cabrera's response to Court order regarding the fact that other teams are assisting him in his examination: "Given the scope and | Undetermined |

| | | | | |
|---|---|---|---|---|
| | | | complexity of the expert examination I am leading, it was absolutely necessary to have other teams, all under my responsibility and supervision. It is true that I did not submit an itemized list with details of these teams, but that was done for reasons that have already been explained and that have nothing to do with secrecy, clandestinity or illegality." | |
| 121007 | 133907 | 1 | Cabrera's response to Court order, in which he objects to the parties' telling him how and where to take samples and states that his report is absolutely impartial: "Your Honor, I do not believe it is proper for the parties to tell me where and how I should collect the samples. I have stated that I accept the technical suggestions the parties make to me, but I cannot subject myself to their criteria, as this would mean becoming biased toward one party or the other. . . . Your Honor, I hope and I am certain that my report, which is completely impartial, will help bring to light the truth of the matters in dispute." | Fajardo |
| 010708 | 2008.01.07 | 1 | Cabrera filing in which he requests the parties to supply him with documents and states that he has almost completed his report. | Fajardo |
| 100708 | 151316 | 6 | Cabrera's response to Chevron's deposition request. He says that his conduct as the expert in this case has been the most professional, impartial, and objective as possible: "Mr. President, I am an honest man with nothing to hide, and my conduct as an expert in this case has been as professional, impartial and objective as possible, as can be | Fajardo |

| | | | seen from my expert report." | |
|---|---|---|---|---|
| 110708 | 152783 | 2 | Cabrera's letter to the Court, stating why he cannot or will not comply with Chevron's request for information: "I understand, Your Honor, that, as an expert, my legal obligation was to deliver the report at the time appointed and answer the questions of the parties, but I did not know of any obligation to store all the drafts I used in the preparation of my work." | Fajardo |
| 030409 | 154580 | 10 | Cabrera's response to Chevron's accusations that he colluded with Plaintiffs: "To ensure that there is no doubt as to the impartiality, integrity, and transparency of my work, I would like to clarify, at this time, certain details about the questions posed by the Chevron attorneys in view of the results of the control sample, results that were delivered by the representative of the CORLAB [sic] laboratory. . . . Once more I make it a matter of record that I have done my work, with my technical team, in adherence to my principles and my integrity and, without a desire to negatively affect or benefit either party, I have limited myself to providing a documented report of everything that I am convinced is the truth." | Fajardo |
| 032210 | 168513 | 3 | Cabrera's response to Chevron's accusations regarding Cabrera having a conflict of interest: "Chevron accuses me of having a conflict of interest . . . . Your Honor, this is a serious and false accusation. . . . I prepared my report and submitted my expert opinion, based on technical and scientific results and the | Fajardo |

|  |  |  | documentary information I received from different sectors, to the best of my knowledge and that of my of team of professionals that participated in the study." |  |

**KNOWN FAJARDO WRITINGS**

| Date   | Bates No.        | Pages | Description |
|--------|------------------|-------|-------------|
| 013107 | DONZ-HDD-0098059 | 4 | *SEÑOR PRESIDENTE DE LA CORTE …* |
| 100507 | DONZ-HDD-0129624 | 2 | *YO DIGO* |
| 082406 | DONZ00041437     | 3 | *SEÑOR PRESIDENTE DE LA CORTE …* |
| 100406 | DONZ00041699     | 3 | *SEÑOR PRESIDENTE DE LA CORTE …* |
| 041907 | DONZ00043021     | 3 | *Estimados colegas.* |
| 091707 | DONZ00044370     | 3 | *SEÑOR PRESIDENTE DE LA CORTE …* |
| 100406 | DONZ00041697     | 2 | *SEÑOR PRESIDENTE DE LA CORTE …* |
| 102907 | DONZ00044733     | 4 | *SEÑOR PRESIDENTE DE LA CORTE …* |
| 101106 | DONZ00019965     | 2 | Email to Steven Donziger: meeting with the Court |
| 082206 | DONZ00023319     | 2 | Email to Steven Donziger: *Providencia* from the Court |
| 110706 | DONZ00023941     | 2 | Email to Steven Donziger: meeting with the Court |
| 081407 | DONZ00024855     | 2 | Email to Steven Donziger: *Mis precoupaciones* |
| 083007 | DONZ00024950     | 2 | Email to Alejandro Ponce et al.: *Emergencias* |
| 100907 | DONZ00025241     | 2 | Email to Alejandro Ponce et al.: *Increíble urgente* |
| 061907 | DONZ00038783     | 2 | Email to Julio Prieto el al.: *Urgente – situación conflictiva* |
| 040709 | DONZ00039092     | 2 | Email to Luis Yanza et al.: *La batalla* |

Analysis of all writings produced an aggregate set of eighteen patterned and reoccurring markers of writing style:

> **Format:**
> 1. PLACE AND DATE AT TOP OF PAGE
> 2. FORM OF ADDRESS FOR THE COURT
> 3. HEADINGS OF PARAGRAPHS AND SUBSECTIONS
> 4. FORM OF DATE
> 5. FORM OF TIME-OF-DAY
> 6. BLOCKED PARAGRAPH WITHOUT LINE-SPACING
> 7. LINE-SPACING OF 3+ SPACES BETWEEN SECTONS
> 8. INTRA-TEXT CAPITALS USED FOR EMPHASIS
> 9. STRUCTURE OF SECTIONS AND SUBSECTIONS

**Spelling:**
10. CAPITALIZATION OF USTED: *Usted/usted*
11. ACCENT ON DEMONSTRATIVE ADJECTIVES: *este/esta*
12. DROPPED ACCENTS
13. DROPPED LETTERS

**Punctuation:**
14. SEMICOLON FOR COMMA
15. INTRUSIVE COMMA
16. SEMICOLON + y + comma: *... operaron[; y,] no ...*

**Syntax:**
17. GRAMMATICAL AGREEMENT ABSENT
18. PERIODIC SENTENCES

    **(iv) Findings for Part 2**: Each of these markers is discussed and listed with its accompanying data in **Exhibit F**. Their pervasive presence in the **QUESTIONED-Cabrera Filings** and **KNOWN-Fajardo Writings** indicates that Pablo Fajardo is the author of all the **QUESTIONED-Cabrera Filings** considered, except Nos. 133178 and 133882. Thus, for example, Pablo Fajardo, not Ing. Cabrera, wrote the March 22, 2010 letter where Ing. Cabrera purportedly answered allegations of a conflict of interest. See No. 168513.

## 10. Discussion of Part 1

**(a) SCOPE AND SEQUENCE OF EVENTS AS EVIDENCED BY WRITINGS CONSIDERED**

Historians of the French Revolution use the term *le magouillage* for the kinds of complex, multi-level schemes underlying many of the tragic events of late-18th century France. The context surrounding the writings of and related to the Cabrera Report, demonstrated above by the internal and external linguistic evidence, leads me to propose *magouillage* as the best descriptive analog for the linguistic circumstances. What follows is my construct of events as deduced only from the writings I have read and reviewed in this matter:

1. *demandantes* sue the *compañía demandada*;
2. Court appoints *perito* to be impartial and sort things out;
3. <u>Plaintiffs' consultants</u> commit to assist *perito* with technical tasks;
4. Stratus at some point becomes Plaintiffs' advocate;
5. <u>Plaintiffs' consultants</u> construct *perito's* report and recommendations in English;
6. <u>Plaintiffs' consultants</u> then translate the report to Spanish;
7. Stratus sends translated report to Plaintiffs' technical team in Quito for review;
8. *perito* files the final Spanish-language report with the Court;
9. <u>Plaintiffs' consultants</u> prepare Plaintiffs' responses$_1$ to *perito's* report;
10. <u>Plaintiffs' consultants</u> then prepare *perito's* responses$_2$ to Plaintiffs' responses$_1$;
11. meanwhile, Stratus seeks positive peer review of *perito's* original report;
12. Stratus tells reviewers that *perito* and his *equipo técnico* wrote the report;

13. Stratus tells reviewers the original report was written in Spanish;
14. English-speaking reviewers press for a translation of *perito's* original report;
15. Stratus quickly fixes the original English-language drafts to match the Spanish of the final report;
16. unknowing reviewers use the first-draft English versions as 'translations' of *perito's* report.

**(b) INTERNAL LINGUISTIC EVIDENCE AND EXTERNAL LINGUISTIC AND NON-LINGUISTIC EVIDENCE**

The internal linguistic facts related to the language of the various questioned writings in this matter are frequently occurring and convincingly patterned enough to posit a *high probability* level of opinion for non-Cabrera authorship.

The internal linguistic data is complemented by external linguistic evidence present and observed in communications that describe authorial intent and the extensive and sometimes meticulous details of a complicated redactive process.

In addition, the whole of the linguistic evidence is also complemented by the external, non-linguistic evidence of, for example, completion dates that were so close to filing deadlines that Ing. Cabrera would hardly have had time to read the completed report let alone participate in writing it, or even suggest or make changes to it. Indeed, there are effectively no changes between Quito's last draft of the Cabrera Report and the filed Cabrera Report.

**11. Discussion for Part 2:**

The large number of style markers identified in the **QUESTIONED-Cabrera Filings** and in the **KNOWN-Fajardo Writings**, and their highly patterned and frequent occurrence in both sets of writings serve as a basis for the following well-founded authorship conclusions in this matter: (1) the fifteen Cabrera filings identified as a subset of all the Cabrera filings reviewed have a single author, and (2) the author of this subset is Pablo Fajardo Mendoza.

**Summary of Conclusions**: **First**, given the absence of authenticated exemplar writing by Ing. Cabrera, there is no direct internal linguistic evidence that Ing. Cabrera is or is not the author of the Reports attributed to him. There is substantial external linguistic evidence that Ing. Cabrera is not the author of the *Cabrera Report* or *Supplemental Report* attributed to him. **Second**, there is substantial internal and external linguistic evidence that Stratus consultants are the source authors of the Cabrera Report and of a number of the Responses of the *Supplementary Report*. There is substantial internal and external linguistic evidence that Plaintiffs' Quito legal advisors edited language and content of the *Cabrera Report*, wrote a number of the Responses of the *Supplementary Report*, and edited the language and content of Responses prepared by Stratus consultants. **Third**, the Cabrera Filings have multiple authors. And **fourth**, Pablo Fajardo Mendoza is the author of all but two of the sub-set of seventeen **QUESTIONED-Cabrera Filings** considered herein.

Date: 6-30-11          *[signature]*
                       Gerald R. McMenamin