# EXHIBIT 17

```
                  UNITED STATES DISTRICT COURT FOR
                      THE DISTRICT OF MARYLAND


   ----------------------------x
   CHEVRON CORPORATION,         :
             Plaintiff          :
                                :
                                :
   vs                           :Civil Action: RWT-11-1942
                                :
   AARON MARR PAGE,             :   EXCERPTED PROCEEDINGS
             Defendants.        :
   ----------------------------x


                                Wednesday, August 31, 2011
                                Greenbelt, Maryland



        The above-entitled action came on for a Motions
   Hearing before the HONORABLE CHARLES B. DAY, United
   States Magistrate Judge, in courtroom 2A, commencing at
   2:05 p.m.


        APPEARANCES:

        On behalf of the Plaintiff:
        PETER E. SELEY, Esquire
        ANNE CHAMPION, Esquire

        On behalf of the Defendants:
        JULIO C. GOMEZ, Esquire (Pro Hac Vice)
        RICHARD D. CARTER, Esquire
```

Tracy Rae Dunlap, RPR, CRR                    (301) 344-3912
Official Court Reporter

**I N D E X**

Page

Reporter's Certificate .......................14

1  THE COURT: Thank you.
2  I want to thank you both for excellent
3 presentations. I know it's high stakes litigation and,
4 certainly, both counsel have brought A games to the
5 table. The first one -- the first issue up for me is
6 whether the Donziger waiver of the attorney-client and
7 work product privileges apply to the Page documents. I
8 would agree with the respondents on one particular and
9 that is that this was not a truly voluntary waiver at
10 all. But it is clear to me that all of the work that was
11 performed here was performed under Mr. Donziger.
12  And I will quote as the defense, as the moving
13 party, has quoted to me more than once, Chevron -- in
14 In Re: Chevron 749 F. Supp 2d, 170 at 185, Southern
15 District of New York. The Court declared, based upon,
16 quote, "the law on the facts, and in the exercise of
17 discretion, that each and every privilege claim with
18 respect to the documents sought by the subpoenas has been
19 waived." This declaration related to the legal work and
20 privilege claims associated with Mr. Donziger.
21 Therefore, in my opinion, the Pages cannot assert
22 privilege.
23  I do find the Fonar versus Johnson & Johnson case
24 out of the District of Massachusetts to be instructive.
25 There was a single privilege between the client and the

1  firm, and one waiver waives the privilege as to all
2  attorneys working jointly on that case.
3         As to the voluntariness.  Again, it's not a true
4  voluntary waiver, it was a court sanction, but the Court
5  has still required full production of the requested
6  materials as to Donziger.  The Pages worked under his
7  production.  There is no reason for the documents that
8  were in their possession not to have been produced with
9  the other Donziger materials.
10        The Court's decision from <u>In Re: Chevron</u> I find is
11 controlling on this issue, and <u>Fonar</u> is equally
12 applicable.  There, the Court found that Donziger's
13 actions were calculated and represented a deliberate
14 attempt to obtain a tactical advantage.  Judge Kaplan's
15 original summary order, in his subsequent decision,
16 reached all of the documents in Mr. Donziger's
17 protection, custody, as well as those in the Pages.
18        "Where an attorney-client or work product claim
19 was asserted, Donziger had the practical ability," closed
20 quote, to obtain those documents.  There is no difference
21 here just because you're injecting other players who may
22 have worked under him.  It's not as if the privilege is
23 somehow protected because he may have 5 other people in 5
24 other states working under his direction.  There is no
25 difference here, because they're working on the same

1  case, they're working under his direction with respect to
2  the same crime.
3         I find that this is virtually the same conclusion
4  that was reached by magistrate judge Francis.  Theirs
5  related to other legal inference and other co-counsel who
6  were aligned with Mr. Donziger.  So, the motion to compel
7  will be granted on that basis alone.  And I am requiring,
8  just like Judge Francis did, that all responsive
9  documents be produced forthwith.
10         Now, it may be that I am in error but I will
11  proceed to walk through some of the other arguments that
12  both sides have taken a lot of time to educate me on.
13         The second one on deck to me is what privilege has
14  been waived by some disclosure to third parties.
15  Basically, Chevron is talking about the *Crude* movie, the
16  expert Mr. Cabrera, the Ecuadorian court, Amazon Watch
17  and sundry folks.  And the question is whether or not
18  it's about an intentional waiver of the attorney-client
19  work product privileges.
20         I, again, am borrowing from other litigation
21  involving these same folks in the <u>In Re: Chevron</u> decision
22  out of the Southern District of Texas in 2010.  There,
23  the Court found that the privileges were in fact waived
24  by a plaintiff's failure to establish privileges and by a
25  disclosure of information to Mr. Cabrera.  The privilege

1  there were claims regarding the report involving that 3TM
2  Consulting Services which were provided and given to
3  Mr. Cabrera.  I see no reason to disturb these findings
4  of the court from the Southern District of Texas, and I
5  adopt them.  As there was a waiver as to the information
6  provided to Mr. Cabrera there, it also results in a
7  waiver here.
8          I also borrow from the Fourth Circuit's decision
9  in <u>Sheet Metal Workers International Association versus</u>
10 <u>Sweeney</u> found in 29 F. 3d 120, Page 125, a 1994 decision,
11 which basically said voluntary disclosures to third
12 parties of attorney-client privileged communications
13 results in a subject matter waiver.
14         There was some discussion by the respondents about
15 disclosure of work product to a third party as a waiver
16 only when it's inconsistent with the shielding of
17 documents from adversaries, and I think that's been
18 modified a little bit even though the decision that was
19 relied upon was a 2004 Fourth Circuit decision of <u>Hanson</u>
20 <u>versus USAID</u>.  I think that the Federal Rules of Evidence
21 502 has made it clear that we're not talking about a
22 consistency any more.  We're talking about fairness when
23 you're speaking about some kind of intentional waiver.
24         The respondents indicate that Mr. Cabrera would
25 not be compelled to share his Ecuadorian -- with the

1  Ecuadorian plaintiffs documents that were provided by
2  Chevron.  Therefore, the disclosure of Mr. Cabrera was
3  not inconsistent with the intent to shield it from
4  adversaries relying upon that strain of the law.
5         But I think this ignores the information that
6  Chevron presented by Exhibit No. 84, which represents
7  that the Ecuadorian court ordered disclosure of all
8  information provided to Mr. Cabrera, and I quote,
9  "Concerning its content and petition, the judicial
10 decision issued October 22nd 2007 at 5:10 p.m. is
11 expanded upon to the effect that all the documents that
12 serve as support or a source of information for the work
13 performed by the expert," here we're speaking about Mr.
14 Cabrera, "must be presented, together with the report."
15        And here is this last sentence.  "At that time,
16 all of these documents would be provided to the parties."
17 There is no intent by the Court at that time to have
18 anything else held in secrecy or withheld from the
19 parties.  In fact, it's just the opposite.  The
20 Ecuadorian plaintiffs suggest that Chevron has not been
21 prejudiced, because the Court did not rely upon it.  I do
22 not find that the law requires that kind of prejudice
23 component in order to find a waiver of materials
24 presented to Mr. Cabrera.
25        Moreover, Chevron has made a very persuasive

1  argument in its reply brief, which is supported by a
2  court decision that the Cabrera report still tainted
3  judgment from Ecuador, and that's the decision from the
4  Southern District of New York in 2011 found at 768 F.
5  Supp.
6       I personally do not find it good policy to suggest
7  that there has been a complete waiver of the attorney-
8  client or work product -- work protection privileges by a
9  court in Texas and then in some way the same information
10 provided to the same expert does not result in the same
11 conclusion here.  Whether it was compelled disclosure or
12 not, the more probative question to me is whether
13 Cabrera, under the applicable rule, would be prohibited
14 from disclosing the information to Chevron.  That was not
15 the case, and the court was not intending it to be the
16 case.  We didn't spend a lot of time on it and, I think,
17 rightfully so.
18      All those communications with respect to the
19 making of the movie *Crude*?  I do not find them to have
20 been privileged at all.  It was not -- they were not made
21 in confidence.  There was outtakes in many instances and
22 all instances.  While I do not agree that Chevron should
23 be collaterally estopped from re-arguing that, I still
24 adopt the reasoning of the court from the Third Circuit.
25 And I find no privilege ever existed as to the

1 communications, because they were not made in confidence.
2      Prong number three was that there a waiver due to
3 the filing of inadequate privilege logs?  Here the movant
4 relies upon Nuzum versus Morgan State, a District of
5 Maryland decision from 2010, noting that failure to
6 provide a privilege log may constitute a waiver.  They're
7 right, it may constitute a waiver.  There is no per se
8 rule resulting in automatic waiver.
9      And I think the respondent respondents rightfully
10 rely upon the Richardson decision from this year.  And
11 this court and some courts require a finding of
12 unjustified delay or inexcusable conduct or bad faith,
13 and we are borrowing from the Herbal Life decision out of
14 the Northern District of West Virginia in 2006.
15      Sadly, the Federal Rules of Civil Procedure,
16 whether it's Rule 26, whether it's Rule 45, nor do our
17 local rules set forth a timeline for the production of a
18 privilege log.  I think the practice is one in question.
19 I side with the movant on that one.  I think the practice
20 is when you make the objections and at a minimum by the
21 time you produce responsive documents and you are
22 withholding some, that's when the log should be provided.
23      I do have the logs before me.  I overlooked that.
24 But I do not find that the late production of the log
25 here would result in a waiver, not on these facts.  Not

given the breadth and scope of the efforts of the respondents to produce.  I just don't find that it does enough, which brings me to the fourth prong and that is the crime fraud exception.

There is a court in the Southern District of New York that ruled this year that there is ample evidence of fraud in those proceedings.  The Third Circuit did not reach the issue and directed the trial court to make further factual findings on that subject.  I have entered into this thicket with great hesitancy, but I do find that there is a crime fraud exception applicable here.

I do think that the movant has couched it correctly saying that there is no burden to demonstrate knowledge by counsel.  Yes, there is the need to have it tied to the documents or the subject matter at hand.  I do think it reaches opinion work product, and I do think that probable cause has been established if for no other reason than for the production of the admittedly co-authored, or documents co-authored by the Pages, which has found its way into the decision in Ecuadorian court, buttressed by at least the submission by plaintiff, I'm sorry, the movant here or the analytical report of their expert, shown to me in a presentation to me that was very effective and certainly supported by the submissions to the court, that it is a virtual line-by-line entry on

Case5:12-mc-80237-EJD   Document27-17   Filed10/19/12   Page12 of 15

11

1  many occasions.
2       And with those submissions made to the court, for
3  them not to be addressed or not to be responded to with
4  some record evidence or some reference to the record of
5  the Ecuadorian court, that is a sure fire
6  pass the smell test" presentation of more probable than
7  not.  I have no reservations in that instance alone, and
8  there is a lot of other information that the movants have
9  provided to support the notion that there is fraudulent
10 activity.  And I do accept the findings, the factual
11 findings, of my colleagues in the federal courts of the
12 United States on this issue where it has been made.
13      I agree with the respondents that not every court
14 -- in fact, most courts do not reach that issue, but I
15 have read their decisions and I accept them not because
16 of the decision but because of the factual underpinning.
17 We could spend a good deal of time here today spelling
18 those out.
19      So, at the end of the day, regardless of how I get
20 there, and I get there, I get to the same place by at
21 least four or five different routes.  This information is
22 very much discoverable.  It is no longer privileged, and
23 it is to be produced immediately.  I'm hoping that there
24 will be full compliance with that order.
25      Anything further from the movants?

1     MR. SELEY:  No.  Thank you very much, Your Honor.
2     THE COURT:  Thank you.  Anything further from the
3 respondents?
4     MR. GOMEZ:  Yes, Your Honor.  I would respectfully
5 request a stay of your order pending an application and
6 decision on reconsideration.
7     THE COURT:  Well, I'll deny that.  If there is a
8 motion for reconsideration that is filed that presents
9 information and supporting affidavits or evidence that
10 was not presented today or submitted in your previous
11 submissions and I am persuaded that that information was
12 not available to you today, then I, in the essence of the
13 word, will gladly take a long and closer look at that.
14 Our local rules do not entertain a mulligan, if you will,
15 just for the sake of further thought.  If you've got some
16 new information, absolutely.  I would welcome that.  But
17 a rehashing or re-chewing on the same information will
18 not be productive.  I will not enter a stay at this time.
19     You have a hearing date, I believe, of September
20 16th on some issues, and then you've got something else
21 coming down the pipe in November, unless the dates have
22 been moved.
23     MR. SELEY:  Your Honor, we have the trial date in
24 November.  November 14th is the set date in trial, and
25 we've got discovery closing in mid-September.  It closes

Case5:12-mc-80237-EJD   Document27-17   Filed10/19/12   Page14 of 15

13

1  in part on September 15th, I believe, and then we've got
2  experts on the 29th.  So the 15th is really the time to
3  close.
4         THE COURT:  Yes.  I picked this up and had to deal
5  with it on an expedited basis for those reasons, and I
6  don't think that a stay would be of assistance or within
7  the spirit of that exercise.
8         So, with that, I will step down.  I thank you all
9  again for your presentations.  More to be said?
10        MR. GOMEZ:  Your Honor, not to run afoul of your
11 order.  Forthwith?  Can we have more specificity as to a
12 deadline, Your Honor?
13        THE COURT:  Now.  So if you've got the documents,
14 start handing them over.
15        MR. GOMEZ:  Thank you, Your Honor.
16        THE COURT:  Okay.  Thank you all.  I wish you
17 well.
18        MR. SELEY:  Thank you, Your Honor.
19                 (Off the record at 3:51 p.m.)

## CERTIFICATE

I, Tracy Rae Dunlap, RPR, CRR, an Official Court Reporter for the United States District Court of Maryland, do hereby certify that I reported, by machine shorthand, the proceedings had in the case of CHEVRON CORPORATION versus AARON MARR PAGE, et al, Civil Action Number RWT-11-1942, on August 31, 2011.

In witness whereof, I have hereto subscribed my name, this 1st day of September 2011.

        __/S/__Tracy Rae Dunlap__
        TRACY RAE DUNLAP, RPR, CRR
        OFFICIAL COURT REPORTER