# EXHIBIT 22

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 10 MC 00002(LAK)

----------------------------------x

In re:

 APPLICATION OF CHEVRON

----------------------------------x
                    January 18, 2011
                    9:30 a.m.


        Continued Videotaped Deposition of

STEVEN DONZIGER, pursuant to Subpoena,

held at the offices of Gibson Dunn &

Crutcher LLP, 200 Park Avenue, New York,

New York, before Todd DeSimone, a

Registered Professional Reporter and

Notary Public of the State of New York.

## Page 2990

```
 1
 2  A P P E A R A N C E S :
 3  EMERY CELLI BRINCKERHOFF & ABADY LLP
    75 Rockefeller Plaza, 20th Floor
 4  New York, New York 10019
         Attorneys for Ecuadorian Plaintiffs
 5  BY:   O. ANDREW F. WILSON, ESQ.
         awilson@ecbalaw.com
 6       JONATHAN ABADY, ESQ.
         jabady@ecbalaw.com
 7
 8
 9  COVINGTON & BURLING LLP
    620 Eighth Avenue
10  New York, New York 10018-1405
         Attorneys for Ricardo Reis Veiga
11  BY:   ALAN VINEGRAD, ESQ.
         avinegrad@cov.com
12
13
14
    RIVERO MESTRE LLP
15  2525 Ponce De Leon Blvd.
    Suite 1000
16  Miami, Florida 33134
         Attorneys for Rodrigo Perez
17       Pallares
    BY:   CATHERINE C. GRIEVE, ESQ.
18       cgrieve@riveromestre.com
19
20
21
22
23
24
25
```

## Page 2991

```
 1
 2  A P P E A R A N C E S : (Continued)
 3  GIBSON DUNN & CRUTCHER LLP
    200 Park Avenue
 4  New York, New York 10166
         Attorneys for Chevron Corporation
 5  BY:   RANDY MASTRO, ESQ.
         rmastro@gibsondunn.com
 6       KRISTEN HENDRICKS, ESQ.
         khendricks@gibsondunn.com
 7       MARY BETH MALONEY, ESQ.
         mmaloney@gibsondunn.com
 8       VIKRAM KUMAR, ESQ.
         vkumar@gibsondunn.com
 9       JEFFREY COREN, ESQ.
         jcoren@gibsondunn.com
10
11
12  WINSTON & STRAWN LLP
    200 Park Avenue
13  New York, New York 10166
         Attorneys for Republic of Ecuador
14  BY:   C. MacNEIL MITCHELL, ESQ.
         cmitchell@winston.com
15
16
17  FREIDMAN KAPLAN SEILER & ADELMAN LLP
    1633 Broadway
18  New York, New York 10019-6708
         Attorneys for Steven Donziger
19  BY:   BRUCE S. KAPLAN, ESQ.
         bkaplan@fklaw.com
20
21
22
23
24
25
```

## Page 2992

```
 1
 2  A P P E A R A N C E S : (Continued)
 3
 4
    ALSO PRESENT:
 5
      MAX GITTER, ESQ., Special Master
 6
      JUSTIN ORMAND, ESQ., Assistant to
 7  Special Master
 8  JAMES ROBERTS, Videographer
 9  VINCE MAGGIANO, Videographer
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 2993

```
 1            DONZIGER
 2        THE VIDEOGRAPHER:  Good morning.
 3  We are going on the record.  My name is
 4  James Roberts of Veritext Reporting with
 5  offices in New York City, New York.
 6       Today's date is January 18th,
 7  2011.  The time is approximately 9:30 a.m.
 8  The deposition is being held at Gibson
 9  Dunn & Crutcher located at 200 Park
10  Avenue, New York City, New York.  The
11  caption of the case, In Re Application of
12  Chevron, in the U.S. District Court,
13  Southern District of New York, case number
14  MC 00002(LAK).  The name of the witness is
15  Steven Donziger.  This is Volume XI.
16        THE SPECIAL MASTER:  We are
17  going to be talking only among counsel for
18  a little bit.  The witness is not here.
19  And I understand that Mr. Kaplan would
20  like to say something before we begin with
21  the testimony.  What I had to say can
22  probably wait until the lunch break.  So
23  why don't you go ahead and say what you
24  wanted to say, Mr. Kaplan.
25        MR. KAPLAN:  Thank you, sir.  I
```

2 (Pages 2990 to 2993)

Page 3006

DONZIGER

1          DONZIGER
2    back on the record at 10:03 a.m.
3        *  *  *
4    S T E V E N   D O N Z I G E R,
5    having been previously duly sworn,
6    testified further as follows:
7    EXAMINATION BY MR. MASTRO:
8        Q.    Mr. Donziger, you are still
9    under oath.
10       A.    Yes.
11       Q.    Mr. Donziger, I want to ask you
12   some questions about the document
13   production that was just made by your
14   lawyers. Did you participate in helping
15   your lawyers make that document production
16   over the past 48 hours?
17       A.    Not in any level of detail, no.
18       Q.    When you say "not in any level
19   of detail," in what ways did you
20   participate?
21       A.    Well, we had discussions about
22   the negotiations to produce the documents,
23   but once an agreement was reached it was
24   handled 100 percent by Mr. Kaplan's law
25   firm.

Page 3007

DONZIGER

1          DONZIGER
2        Q.    Are there any other e-mail
3    accounts that you've had access to in
4    connection with the Lago Agrio litigation
5    that you have not informed your lawyers
6    about?
7        A.    I don't believe so.
8        Q.    Am I correct that originally
9    you didn't inform your lawyers when they
10   initially made their document production
11   about your Yahoo account?
12       A.    Which Yahoo account? Because I
13   did inform them about sdonziger@yahoo.com.
14       Q.    How about the account
15   Documents2010@ymail.com, when your lawyers
16   originally made the document production in
17   this case did you inform them that you had
18   that Yahoo account?
19       A.    I didn't remember that at the
20   time.
21       Q.    Am I correct that you formed
22   that account in early 2010, January 2010,
23   because you were concerned about account
24   security surrounding the Donziger &
25   Associates existing e-mail accounts may

Page 3008

DONZIGER

1          DONZIGER
2    have been compromised?
3        A.    It was formed around that time
4    for that purpose, yes.
5        Q.    You started using that account
6    in January 2010?
7        A.    Sometime around that time. It
8    might have been earlier. I'm not sure.
9        Q.    And when you say you were
10   concerned about security surrounding
11   Donziger & Associates existing e-mail
12   accounts being compromised, you are
13   referring to Donziger & Associates' files
14   relating to the Lago Agrio litigation,
15   correct?
16       A.    Yes. But it was all the e-mail
17   accounts. There was a Gmail account as
18   well that I had concerns about.
19       Q.    So starting in or about January
20   2010 you were using that Yahoo account for
21   your e-mail relating to your cases,
22   including the Lago Agrio case, correct?
23       A.    Generally, no.
24       Q.    But you were using that
25   account, including for documents relating

Page 3009

DONZIGER

1          DONZIGER
2    to the Lago Agrio litigation, correct,
3    starting in January 2010?
4        A.    Yes, in a very limited way.
5        Q.    Did there come a time when you
6    ceased to use that account?
7        A.    Yes.
8        Q.    When was that?
9        A.    I don't remember exactly. But
10   shortly after it was set up.
11       Q.    Did something occur that caused
12   you to believe you no longer had the
13   security concerns that caused you to
14   create the account in the first place?
15       A.    No.
16       Q.    Tell me approximately for how
17   long you believe you used that account
18   for -- strike that.
19             Tell me for how long you think
20   you used that Yahoo account in 2010.
21       A.    I would say the account was in
22   use for a few weeks.
23       Q.    Was there some precipitating
24   event that caused you to stop using that
25   account?

6 (Pages 3006 to 3009)

62b2b517-f555-4e4e-bae2-aed052d067e7

Page 3010

```
                    DONZIGER
 1
 2     A.    I don't believe so.
 3     Q.    Was there some reason why you
 4  would have erased all of the contents of
 5  the account?
 6     A.    I didn't erase all the
 7  contents.
 8     Q.    Do you know of any reason why
 9  there wouldn't be any contents in that
10  account now?
11     A.    No.
12     Q.    What's the password to that
13  account?
14     A.    I don't know.
15     Q.    You set up that account,
16  correct?
17     A.    No.
18     Q.    Did you ever change the
19  password to that account?
20     A.    I don't believe so, but I can't
21  say for sure.
22     Q.    Did you ever know the password
23  to that account?
24     A.    I think I was told it at one
25  point by my associate.
```

Page 3011

```
                    DONZIGER
 1
 2     Q.    So it is your testimony that
 3  Mr. Woods set up the password to that
 4  account?
 5     A.    I believe so, yes.
 6     Q.    At some point the password
 7  changed.  Are you aware of that?
 8     A.    No.
 9     Q.    Did you change that password?
10     A.    It is possible.
11     Q.    And can you think of any reason
12  as you sit here today why you would have
13  done that?
14     A.    For security reasons.
15     Q.    So you set the account up for
16  security reasons, correct?  You may have
17  changed the --
18        THE SPECIAL MASTER:  Did the
19  witness answer that question?
20     A.    Yes.
21     Q.    You may have changed the
22  account password for security reasons,
23  correct?
24     A.    Yes.
25     Q.    Yet you say you only used it
```

Page 3012

```
                    DONZIGER
 1
 2  for a few weeks in 2010?
 3     A.    That's my belief as I sit here
 4  today.
 5     Q.    As you sit here today, can you
 6  think of any reason why anyone at your law
 7  firm would have erased the contents of
 8  that account?
 9     A.    No.
10     Q.    And it's your testimony under
11  oath that you did not erase the contents
12  of that account?
13     A.    I don't believe I did, no.
14     Q.    Tell me what documents from the
15  Lago Agrio litigation did you put into
16  that account, Mr. Donziger?
17     A.    I believe they related to work
18  being done by an investigator, Grant Fine,
19  and based on what my associate told me I
20  think drafts of documents being prepared
21  by the Winston & Strawn lawyers relating
22  to the litigation they were working on
23  against Chevron.  Maybe some others too.
24  I don't remember.
25     Q.    When you say the Winston &
```

Page 3013

```
                    DONZIGER
 1
 2  Strawn lawyers, you mean the Winston &
 3  Strawn lawyers representing the Republic
 4  of Ecuador against Chevron, correct?
 5     A.    Yes.
 6     Q.    You were receiving drafts of
 7  their potential court submissions in 2010,
 8  correct?
 9     A.    I believe so.
10     Q.    And you were commenting on
11  those drafts, correct?
12     A.    I believe so.
13     Q.    Did you cease using the Yahoo
14  account, Documents2010, before or after
15  the subpoena issued against you in this
16  case in early August?
17     A.    I believe before.
18     Q.    Did you cease using that
19  account, Documents2010, before or after
20  the subpoena issued to Stratus in 2010?
21     A.    To the best of my recollection,
22  and I want to emphasize that my
23  recollection is vague, I believe after.
24     Q.    Did you cease using that
25  account because you saw subpoenas coming
```

7 (Pages 3010 to 3013)

62b2b517-f555-4e4e-bae2-aed052d067e7

Page 3054

DONZIGER

1
2    Q.    There were a lot of special
3  accounts set up to plan the Cabrera
4  report?
5    A.    No, for various reasons.
6    Q.    I'm just talking now about
7  planning the Cabrera report.
8         Do you remember setting up a
9  special e-mail account with special
10 passwords, you and Mr. Fajardo setting up
11 a special account to plan the Cabrera
12 report, just after Cabrera was sworn in in
13 mid-June 2007?  Do you remember that, sir?
14   A.    I don't know.
15   Q.    Do you remember a password,
16 special password, lizard, does that ring a
17 bell for you, sir?
18   A.    I have a vague recollection.
19   Q.    Another vague recollection.
20 Lagarto, l-a-g-a-r-t-o, a Spanish word,
21 right, it means lizard, correct?
22   A.    I don't know that.
23   Q.    And Lagarto 3, that was you,
24 wasn't it, sir?  Lagarto 3 was you,
25 correct?

Page 3055

DONZIGER

1
2    A.    I don't know.
3    Q.    Do you remember using a code
4  name to gain access to a Hotmail account,
5  your code name being Lagarto 3?
6    A.    No.
7    Q.    And Mr. Fajardo giving you
8  instructions on June 22nd, 2007 for how to
9  access this Hotmail account so you could
10 get a copy about the plan?
11   A.    It is possible.
12   Q.    Does that ring any bells for
13 you?
14   A.    It is possible.
15   Q.    Do you remember the address of
16 the account being
17 examen_pericial@hotmail.com; do you
18 remember that, sir?
19   A.    It is possible.
20   Q.    And examen_pericial --
21      THE SPECIAL MASTER:  Spell that
22 for the court reporter.
23      MR. MASTRO:  e-x-a-m-e-n,
24 underscore, p-e-r-i-c-i-a-l.
25   Q.    Do you have a vague memory of

Page 3056

DONZIGER

1
2  that, sir?
3    A.    It is possible.
4    Q.    Do you remember it or not?
5    A.    Well, as you are reading it
6  back --
7    Q.    I'm asking questions.  You will
8  get to read it later.  Do you remember it?
9  Do you recall it?
10   A.    I have a vague recollection
11 hearing you ask the question.
12   Q.    Thank you.  And "examen
13 pericial," that literally means expert,
14 "pericial," examination, correct?
15   A.    Yes.
16   Q.    And this was a special e-mail
17 account set up one week after Cabrera was
18 sworn in to learn about the plan that
19 plaintiffs' counsel had for Cabrera,
20 correct?
21   A.    I don't know.
22   Q.    I'm going to show you the
23 document and see if it refreshes your
24 recollection.
25      Can you please also tell us

Page 3057

DONZIGER

1
2  Lagarto 3, does that now -- is that
3  something that you, you know, have a vague
4  recollection of, too?
5    A.    No.
6    Q.    Who were the other Lagartos?
7  Who were Lagarto 1 and 2?
8    A.    I don't know.
9    Q.    For an account like this, in
10 addition to yourself and Mr. Fajardo, who
11 else would have had access to it?
12   A.    I don't know.
13      MR. MASTRO:  We will have it
14 marked as Exhibit 1605.
15      (Exhibit 1605 marked for
16 identification.)
17   Q.    Mr. Donziger, have you had a
18 chance to review that document?
19   A.    Yes.
20   Q.    I just want to try to refresh
21 your recollection, your vague
22 recollection.
23      Do you see that the document is
24 dated June 22nd, 2007?
25   A.    Yes.

18 (Pages 3054 to 3057)

62b2b517-f555-4e4e-bae2-aed052d067e7

Page 3058

DONZIGER
1
2    Q.    And it is from Pablo Fajardo?
3    A.    Yes.
4    Q.    To you, correct?
5    A.    Yes.
6    Q.    "Subject, Account." And he
7 addresses it "Hello, Lagarto 3." That's
8 apparently you, correct?
9    A.    Yes.
10    Q.    To learn about the plan,
11 correct? And as you look at this e-mail
12 now, does it refresh your recollection
13 that the plan he is referring to is the
14 plan for how to work with the global
15 damages assessment expert on his report?
16    A.    I believe so, yes.
17    Q.    And this is access to a special
18 Hotmail account, correct?
19    A.    Yes.
20    Q.    And you can see that address,
21 examen_pericial, correct?
22    A.    Yes.
23    Q.    Do you remember using that
24 e-mail account as we sit here today?
25    A.    I might have on occasion.

Page 3059

DONZIGER
1
2    Q.    This would have been a pretty
3 important account, wouldn't it, working on
4 the plan, the global damages assessment
5 expert report? Would it or would it not
6 have? Yes or no.
7    A.    This is --
8    Q.    Yes or no.
9    A.    Somewhat.
10    Q.    And the password you see there
11 is CVX.666. Do you know what that refers
12 to?
13    A.    I believe CVX is Chevron.
14    Q.    And do you recall --
15    THE SPECIAL MASTER: Was CVX
16 the ticker symbol for Chevron on the Stock
17 Exchange?
18    THE WITNESS: Yes, I believe it
19 is.
20    Q.    So you think this would have
21 been only somewhat important, this
22 particular plan, one week after the
23 court-appointed -- strike that.
24    It is your testimony that this
25 account would have only been somewhat

Page 3060

DONZIGER
1
2 important relating to planning the global
3 damages assessment expert's report; is
4 that your testimony?
5    A.    Well --
6    Q.    Yes or no.
7    A.    The account itself was to me
8 not the issue.
9    THE SPECIAL MASTER: Strike
10 that. Answer the question.
11    Q.    Was the plan important?
12    A.    The work we were doing, yes.
13    Q.    Yes, that was very important,
14 wasn't it?
15    A.    Yes.
16    Q.    In fact, it was top secret
17 among the plaintiffs' counsel, wasn't it?
18    A.    We did not want the other side
19 to know about our litigation strategy.
20    THE SPECIAL MASTER: So the --
21    Q.    So the answer is yes, correct?
22    A.    Yes.
23    Q.    In fact, Mr. Fajardo made --
24    THE SPECIAL MASTER: Hold on a
25 second. I want to strike the answer that

Page 3061

DONZIGER
1
2 was first given, "we did not want the
3 other side to know about it."
4    The answer to the question is
5 yes; is that correct, Mr. Donziger?
6    THE WITNESS: We wanted to keep
7 it confidential.
8    THE SPECIAL MASTER: Sir, yes
9 or no. You already answered yes.
10    Q.    The plan was top secret among
11 plaintiffs' counsel, wasn't it?
12    A.    We wanted to keep it
13 confidential.
14    Q.    Yes or no, the plan for
15 preparing the global damages assessment
16 expert's report was top secret among
17 plaintiffs' counsel, correct? Yes or no.
18    A.    We wanted to keep it
19 confidential.
20    THE SPECIAL MASTER: That is
21 not responsive. Answer the question.
22    A.    No.
23    Q.    It was not?
24    A.    I wouldn't characterize it as
25 top secret.

19 (Pages 3058 to 3061)

62b2b517-f555-4e4e-bae2-aed052d067e7

Page 3310

```
 1
 2          CERTIFICATION
 3
 4     I, TODD DeSIMONE, a Notary Public for
 5   and within the State of New York, do
 6   hereby certify:
 7     That the witness whose testimony as
 8   herein set forth, was duly sworn by me;
 9   and that the within transcript is a true
10   record of the testimony given by said
11   witness.
12     I further certify that I am not related
13   to any of the parties to this action by
14   blood or marriage, and that I am in no way
15   interested in the outcome of this matter.
16     IN WITNESS WHEREOF, I have hereunto set
17   my hand this 18th day of January, 2011.
18
19
         _____
20          TODD DESIMONE
21
22
23
24
25
```

Page 3311

```
 1
 2          ERRATA SHEET
            VERITEXT REPORTING COMPANY
 3
    CASE NAME: IN RE CHEVRON
 4  DATE OF DEPOSITION: 1/18/11
    WITNESS' NAME: STEVEN DONZIGER
 5
    PAGE/LINE(S)/  CHANGE     REASON
 6   ___/___/_____/_____/
 7   ___/___/_____/_____/
 8   ___/___/_____/_____/
 9   ___/___/_____/_____/
10   ___/___/_____/_____/
11   ___/___/_____/_____/
12   ___/___/_____/_____/
13   ___/___/_____/_____/
14   ___/___/_____/_____/
15   ___/___/_____/_____/
16   ___/___/_____/_____/
17   ___/___/_____/_____/
18   ___/___/_____/_____/
19   ___/___/_____/_____/
20
         _____
21          STEVEN DONZIGER
22
    SUBSCRIBED AND SWORN TO BEFORE ME
23  THIS _____ DAY OF _____, 2011.
24
25  (NOTARY PUBLIC)   MY COMMISSION EXPIRES:
```

62b2b517-f555-4e4e-bae2-aed052d067e7