# EXHIBIT 28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, et al.,<br><br>　　　　　　　Defendants. | CASE NO. 11-CV-0691-LAK |

**STEVEN DONZIGER'S AND THE LAW OFFICES OF STEVEN R. DONZIGER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS CHEVRON'S COMPLAINT**

*Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).

B. **Chevron's First Claim for Relief for violations of RICO, 18 U.S.C. § 1962(c), fails to state a claim upon which this Court may grant relief.**

Chevron's First Claim for Relief for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), suffers from multiple fatal defects and, thus, fails to state a claim upon which this Court may grant relief.

1. **Chevron's Complaint impermissibly seeks to apply RICO to conduct that is overwhelmingly extraterritorial.**

In *Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010), the Second Circuit addressed the question "whether a United States federal court can properly hear a claim under [RICO] arising from allegations of a conspiracy which primarily involves foreign actors and foreign acts." *Id.* at 30-31. The Second Circuit concluded, unequivocally, that a federal court cannot do so, and that a claim that seeks extraterritorial application of RICO is subject to dismissal pursuant to Rule 12(b)(6). *Id.* at 32-33; *accord Cedeño v. Intech Group, Inc.*, 733 F. Supp. 2d 471 (S.D.N.Y. 2010). The decision in *Norex* is controlling here, and it necessitates the dismissal of Chevron's First Claim for Relief.

Chevron's RICO allegations leave no doubt that the RICO defendants' purported racketeering scheme is centered in and focused on Ecuador and overwhelmingly involves conduct occurring outside the United States. At the heart of Chevron's RICO allegations is the *Aguinda* case, which commenced in Ecuador in May 2003. Chevron claims that that case, and the RICO defendants' prosecution of that case in Ecuador over the last eight years, constitutes a pattern of racketeering activity in violation of RICO. *See, e.g.*, Complaint ¶¶ 3, 62-64, 312, 314. Indeed, Chevron describes the defendants' alleged "criminal scheme" as involving three lines of attack: (1) intimidating or corrupting the Lago Agrio court to obtain a judgment against Chevron in the *Aguinda* litigation; (2) colluding with the Republic of Ecuador to procure criminal charges against Chevron's attorneys; and (3) conducting a public relations campaign against Chevron regarding the *Aguinda* litigation. *Id.* ¶ 67. Each of these "lines of attack" relates directly to the *Aguinda* case and events in Ecuador.

Moreover, the great majority of the racketeering conduct alleged by Chevron relating to

the Ecuadorian *Aguinda* litigation occurred *outside* the United States. Specifically, Chevron accuses the RICO defendants of:

- Colluding with Ecuadorian government to engineer a favorable change in Ecuadorian environmental laws. See Complaint ¶¶ 58-62.

- Attempting to influence and intimidate the judges presiding over the *Aguinda* litigation through the creation of a "private army" to conduct demonstrations in front of the Lago Agrio courthouse and at site inspections, through *ex parte* meetings with the judges, and through enlisting Ecuadorian officials to pressure the judiciary. See id. ¶¶ 70-77, 79-83.

- Attempting to corrupt the judicial inspection process, and submitting false and biased expert reports to the Lago Agrio court. See id. ¶¶ 87-112.

- Arranging Richard Cabrera's appointment as global assessment expert, recruiting him "to join their conspiracy" and to allow defendants' to "ghostwrite" his report, which was later submitted to the Lago Agrio court, facilitating "mock inspections," and paying Cabrera for work he allegedly did not perform. See id. ¶¶ 113-134, 152, 171-175.

- Colluding with the Republic of Ecuador to bring criminal charges against Chevron's attorneys in Ecuador. See id. ¶¶ 185-198.

All of this alleged wrongful conduct, which constitutes not only the foundation, but also the superstructure of Chevron's RICO claim, occurred—if it occurred at all—*in Ecuador*, and not in the United States.

Additionally, the RICO defendants are predominantly Ecuadorian in citizenship and residency. Pablo Fajardo Mendoza (who allegedly is "primarily responsible for prosecuting the sham litigation" and "one of the heads of the criminal enterprise"), Luis Yanza and the Frente de Defensa de la Amazonia (who allegedly are "primarily responsible" for exerting influence over and colluding with the Ecuadorian courts and government), and Selva Viva (who allegedly is a "conduit for funding" the RICO enterprise), all are Ecuadorian. See Complaint ¶¶ 10-13, 306(a)-(d). This leaves only Donziger and the Stratus Consulting defendants as United States-based RICO defendants, and the Stratus Consulting defendants' alleged role is limited to only a small piece of the alleged overall scheme—"coordinating the drafting of and actually ghostwriting the Cabrera Report" and promoting that report as independent. See id. ¶ 306(e).

Cognizant of *Norex*, Chevron also includes in its Complaint allegations of conduct

occurring inside the United States. The Second Circuit, however, has made clear that "simply alleging that some domestic conduct occurred cannot support a claim for domestic application." 631 F.3d at 33; *accord U.S. v. Philip Morris USA, Inc.*, Civ. Action No. 99-2496 (GK), – F. Supp. 2d – , 2011 WL 1113270, at *4 (D.D.C. Mar. 28, 2011) ("[I]solated domestic conduct does not permit RICO to apply to what is essentially foreign activity."). The Supreme Court also has strongly warned against using subsidiary allegations of domestic conduct to avoid or overcome the prohibition on extraterritorial application of federal statutes, such as RICO, that were not expressly intended by Congress to apply outside the United States: *"[I]t is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case."* *Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869, 2883 (2010) (emphasis added); *see also Cedeño*, 733 F. Supp. 2d at 473 (rejecting plaintiffs "attempt to sidestep *Morrison* by arguing that their complaint alleges predicate acts" occurring within the United States). What is more, even before *Morrison* and *Norex* confirmed that RICO does not have *any* extraterritorial reach, it was settled law in this Circuit that domestic conduct that is "merely preparatory to the fraud, rather than conduct that is both material to the completion of the fraud and the direct cause of the alleged injury" cannot justify the application of RICO to claims that relate predominately to foreign conduct. *North South Finance Corp. v. Al-Turki*, 100 F.3d 1046, 1053 (2d Cir. 1996).

The domestic conduct alleged by Chevron in this case is either preparatory or peripheral to the RICO defendants' alleged overarching scheme to procure a fraudulent judgment in the Ecuadorian *Aguinda* litigation and to secure criminal charges against Chevron's attorneys in Ecuador in order to extort Chevron into agreeing to a sizeable settlement. This is especially true if Chevron's many allegations of alleged wrongdoing that cannot support a RICO claim as a matter of law are stripped away, including Chevron's allegations regarding the RICO defendants' (1) public relations efforts within the United States (*see* Complaint ¶¶ 201-220, 244-245); (2) purported false statements to state and federal officials (*see* Complaint ¶¶ 221-227, 246); and (3) supposed efforts to cover up their misconduct by obstructing and tampering with

Chevron's 28 U.S.C. § 1782 discovery efforts (*see* Complaint ¶ 248; *see also id.* ¶¶ 249-292). As explained in Sections B.3.a. & B.3.c., *infra*, these allegations do not support any predicate act under RICO and, therefore, cannot justify extending RICO's reach to an alleged criminal scheme centered in and on Ecuador.

What is left are allegations relating to domestic efforts to prepare expert reports for use in Ecuador and the wiring of funds from United States banks to support activities relating to the *Aguinda* litigation. Complaint ¶¶ 92-111, 135-142, 147-157, 161-170, 176, 185, 322. These limited contacts with the United States, which are not alleged to be the direct cause of Chevron's injuries, "are insufficient to support extraterritorial application of the RICO statute." *Norex*, 631 F.3d at 33; *cf. Cedeño*, 733 F. Supp. 2d at 472 (alleged money laundering inside the United States insufficient to justify application of RICO to alleged scheme that overwhelmingly involved foreign conduct); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 540 F. Supp. 2d 438, 443-444 (S.D.N.Y. 2007) (allegations that defendants "operated and directed the Illegal Scheme from [the Southern District of New York]," wired money from United States accounts to bribe foreign officials, and committed money laundering and wire fraud within the United States "do not support ... jurisdiction of the RICO claim asserted in this case").

In sum, permitting Chevron to proceed with its RICO claim in this case would violate the prohibition on extraterritorial application of the Act. The Court, therefore, should dismiss Chevron's First Claim for Relief.

### 2. Chevron has not alleged a pattern of racketeering activity.

To state a claim for a violation of 18 U.S.C. § 1962(c), Chevron must plead, *inter alia*, that the RICO defendants committed "two or more acts constituting a pattern of racketeering activity ...." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Chevron's Complaint, despite its length, fails adequately to plead this essential element. Rather, Chevron's Complaint makes clear that all of the wrongful acts that Chevron accuses the RICO defendants of committing relate to—and were in alleged furtherance of—a single, even if wide-ranging, effort to extort Chevron into paying a sizeable settlement in the *Aguinda* case. In Chevron's own words: "The enterprise's ultimate aim is to create enough pressure on Chevron in the United

*Id.* (emphasis added); *see also Dole Food Co., Inc. v. Gutierrez*, 2004 WL 3737123, at *15 (C.D. Cal. 2004) (dismissing declaratory relief claims seeking to invalidate a foreign judgment and explaining that "[i]f and when the Managua Defendants obtain a judgment against Dole and attempt to enforce it, Dole will have an opportunity to challenge Special Law 364 and any actual judgment rendered thereunder," but until that happens, the court lacks subject matter jurisdiction).

In short, the New York Act defines the boundaries of Chevron's rights to challenge the *Aguinda* judgment, and the New York Act simply does not confer upon Chevron any rights to the sweeping declaratory and injunctive relief requested in its Ninth Claim. Chevron's Ninth Claim for Relief, therefore, fails to state a claim upon which this Court properly may grant relief.

### III. CONCLUSION

For all the foregoing reasons, the Court should dismiss Chevron's Complaint in its entirety.

Respectfully submitted,

Dated: March 30, 2011

By: */s/ Elliot R. Peters*
ELLIOT R. PETERS
JOHN W. KEKER (admitted *pro hac vice*)
JAN NIELSEN LITTLE (admitted *pro hac vice*)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: 415.391.5400
Facsimile: 415.397.7188
Email: epeters@kvn.com
Email: jkeker@kvn.com
Email: jlittle@kvn.com

**Attorneys for STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER**