Cindy A. Cohn (SBN 145997)
cindy@eff.org
Marcia Hofmann (SBN 250087)
marcia@eff.org
Nathan Cardozo (SBN 259097)
nate@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Marco Simons (SBN 237314)
marco@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188

Attorneys for Non-Party John Doe Movants

## UNITED STATES DISTRICT COURT

### FOR THE NOTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEVRON CORP., | ) Case No. 5:12-mc-80237 CRB (NC) |
| Plaintiff, | ) |
| v. | ) **NOTICE OF MOTION AND MOTION OF** |
| | ) **NON-PARTY JOHN DOE MOVANTS TO** |
| | ) **QUASH SUBPOENAS TO GOOGLE, INC.** |
| STEVEN DONZIGER, *et al.* | ) **AND YAHOO!, INC. SEEKING IDENTITY** |
| | ) **AND EMAIL USAGE INFORMATION;** |
| Defendants. | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT OF** |
| | ) **MOTION TO QUASH** |

)
) Date:  November 28, 2012
) Time: 1:00 PM
) Hon. Nathanael Cousins
) Courtroom A - 15th Floor
)

1

**NOTICE OF MOTION AND MOTION**

2 TO PLAINTIFF CHEVRON CORP. AND ALL COUNSEL OF RECORD:

3     **PLEASE TAKE NOTICE** that on November 28, 2012 at 1:00 PM at 450 Golden Gate

4 Avenue, Courtroom A, 15th Floor, San Francisco, California, the Non-Party John Doe Movants

5 hereby move the District Court for the Northern District of California to quash the subpoenas

6 issued by Plaintiff Chevron Corporation on or around September 18, 2012 to non-party companies

7 Google and Yahoo! in the District Court for the Northern District of California.  The subpoenas

8 seek identity and email usage information associated with 44 Gmail addresses and 27 Yahoo! email

9 addresses.  The subpoenas were issued in support of a civil action filed in the District Court for the

10 Southern District of New York on February 1, 2011 captioned *Chevron Corp. v. Donziger, et al.*,

11 Case No. 11-cv-0691 (LAK). A date and time at which this motion will be heard are to be

12 determined.

13     As discussed in the memorandum below, Chevron's subpoenas should be quashed

14 because they violate the constitutional rights of anonymity, freedom of association, and privacy of

15 non-party online users.  This motion, made pursuant to Federal Rule of Civil Procedure 45(c) and

16 California Civil Procedure Code § 1987.1, is based on this notice, the attached memorandum of

17 points and authorities, all accompanying declarations and exhibits, and on such oral argument as

18 may be received by this Court.  The Non-Party John Doe Movants respectfully request that this

19 Court grant this motion and quash the subpoenas issued by Chevron in their entirety.

20

21 DATED:  October 22, 2012          Respectfully submitted,

22                               ELECTRONIC FRONTIER FOUNDATION

23                               _____/s/ Marcia Hofmann_____
                                Marcia Hofmann, Esq.
24                               Cindy A. Cohn, Esq.
                                Nathan Cardozo, Esq.
25                               454 Shotwell Street
                                San Francisco, CA 94110
26                               Telephone:  (415) 436-9333
                                Facsimile:   (415) 436-9993
27

28                                        1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Marco Simons (SBN 237314)
marco@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188

*Counsel For Non-Party John Doe Movants*

2

MOTION TO QUASH

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................... 1

       A.     Chevron's September 18, 2012 Subpoenas to Google, Yahoo!, and Microsoft .... 2

       B.     The Non-Party John Doe Movants .......................................................... 3

       C.     The Nature of the Information Sought by Chevron ................................. 5

III.   LEGAL STANDARD .......................................................................................... 7

IV.    ARGUMENT ....................................................................................................... 9

       A.     The Subpoenas Violate the Does' Constitutional Rights Under the First
              Amendment. ............................................................................................ 9

              1.     The Subpoenas Violate the Does' First Amendment Right to Anonymous
                     Speech. .......................................................................................... 9

                     a.     The Right to Engage in Anonymous Speech is Protected By the
                            First Amendment. .............................................................. 9

                     b.     Anonymous Speakers Enjoy a Qualified Privilege Under the
                            First Amendment. ............................................................ 11

                     c.     As Chevron's Subpoena Demands for Identity Information
                            Cannot Survive the Scrutiny Required By the First Amendment,
                            It Must Be Quashed Under Federal Rule of Civil Procedure 45
                            and California Civil Procedure Code § 1987.1. ............................ 13

                            i.     Chevron Did Not Issue These Subpoenas in Good Faith
                                   or for Any Proper Purpose. ................................................. 13

                            ii.    Chevron Has Made No Showing that the Information
                                   Sought Relates to a Core Claim or that it is Directly and
                                   Materially Relevant to that Claim. ..................................... 14

                            iii.   Chevron Has Made No Showing that the Information
                                   Sought Is Unavailable from Any Other Source. .............. 15

              2.     The Subpoenas Violate the Does' First Amendment Right to Association. 16

                     a.     The Does Enjoy a First Amendment Right to Political Association
                            and to Advocate Controversial Views as a Group. ....................... 16

i

b.   The Does Have a Qualified First Amendment Privilege Subject to Heightened Scrutiny That Can Only be Overcome by a Compelling Interest. ................................................................ 18

i.   The Does' Right to Association Will be Harmed if Their Identities and Email Usage Information is Disclosed ...... 19

ii.  Disclosure of the Does' Information Does Not Serve a Compelling Interest and Is Not the Least Restrictive Means of Furthering a Compelling Interest. ................... 20

B.   The Subpoenas Unnecessarily Violate The Does' Privacy Interests Under the California Constitution. ........................................................................... 22

C.   The Subpoenas Are Facially Overly Broad and Should be Quashed in Their Entirety. ........................................................................................................... 24

V.   CONCLUSION ........................................................................................................... 25

ii

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bada Co. v. Montgomery Ward & Co.*,
   32 F.R.D. 208 (S.D. Cal. 1963)............................................................................14

*Bates v. City of Little Rock*,
   361 U.S. 516 (1960) ................................................................................16, 17

*Brock v. Local 375, Plumbers International Union of America, AFL-CIO*,
   860 F.2d 346 (9th Cir. 1988)................................................................................19

*Buckley v. Am. Constitutional Law Found.*,
   525 U.S. 182 (1999).........................................................................11, 16, 20

*Columbia Ins. Co. v. Seescandy.com*,
   185 F.R.D. 573 (N.D. Cal. 1999) ........................................................................12

*Compaq Computer Corp. v. Packard Bell Elecs.*,
   163 F.R.D. 329 (N.D. Cal. 1995) ........................................................................24

*Doe v. 2theMart.com*,
   140 F. Supp. 2d 1088 (W.D. Wash. 2001) ............................................*passim*

*Dole v. Service Employees Union, AFL-CIO, Local 280*,
   950 F.2d 1456 (9th Cir. 1991)..............................................................................19

*Enterline v. Pocono Medical Center*,
   751 F. Supp. 2d 782 (M.D. Pa. 2008) .................................................................12

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938)................................................................................................8

*Fallon v. Locke, Liddell & Sapp, LLP*,
   2005 U.S. Dist. LEXIS 46987 (N.D. Cal. Aug. 4, 2005).....................................24

*Fed. Election Comm'n v. Larouche Campaign*,
   817 F.2d 233 (2d Cir. 1987)................................................................................18

*Gibson v. Florida Legislative Investigation Comm.*,
   372 U.S. 539 (1963) ............................................................................................17

*Grandbouche v. Clancy*,
   825 F.2d 1463 (10th Cir. 1987)...........................................................................11

*Highfields Capital Management, L.P. v. Doe*,
   385 F. Supp. 2d 969 (N.D. Cal. 2005) ..................................................................8

iii

*In re Motor Fuel Temperature Sales Practices Litig.,*
 641 F.3d 470 (10th Cir. 2011)......................................................................18

*Knox v. SEIU, Local 1000,*
 132 S. Ct. 2277 (2012)................................................................................18

*Leonel v. American Airlines, Inc.,*
 400 F.3d 702 (9th Cir. 2005).................................................................22, 23

*Mattel, Inc. v. Walking Mountain Productions,*
 353 F.3d 792 (9th Cir. 2003)..........................................................................8

*McIntyre v. Ohio Elections Comm'n,*
 514 U.S. 334 (1995).......................................................................................9

*Meyer v. Grant,*
 486 U.S. 414 (1988).......................................................................................9

*Moon v. SCP Pool Corp.,*
 232 F.R.D. 633 (C.D. Cal. 2005) ................................................................24

*NAACP v. Button,*
 371 U.S. 415 (1963).................................................................................17, 18

*NAACP v. State of Alabama ex rel. Patterson,*
 357 U.S. 449 (1958)...........................................................................16, 17, 18

*New York Times v. Sullivan,*
 376 U.S. 254 (1964).....................................................................................11

*Perry v. Schwarzenegger,*
 591 F.3d 1126 (9th Cir. 2010)..........................................................8, 18, 19, 20

*Reno v. ACLU,*
 521 U.S. 844 (1997).....................................................................................10

*Roberts v. United States Jaycees,*
 468 U.S. 609 (1984).....................................................................................18

*Shelley v. Kraemer,*
 334 U.S. 1 (1948).........................................................................................11

*Shelton v. Tucker,*
 364 U.S. 479 (1960).....................................................................................16

*Silkwood v. Kerr-McGee Corp.,*
 563 F.2d 433 (10th Cir. 1977).....................................................................11

*Sony Music Entm't Inc. v. Does 1-40,*
 326 F. Supp. 2d 556 (S.D.N.Y. 2004).........................................................11

iv

*Talley v. California,*
    362 U.S. 60 (1960) ...................................................................................... 9

*Thomas v. Collins,*
    323 U.S. 516 (1945) .................................................................................. 18

*United States ex rel. Newsham v. Lockheed Missiles and Space Co.,*
    190 F.3d 963 (9th Cir. 1999) ..................................................................... 8

*United States v. Jones,*
    132 S. Ct. 945 (2012) ............................................................................... 17

*United States v. Maynard,*
    615 F.3d 544 (D.C. Cir. 2010),
    *aff'd sub nom. Jones,* 132 S. Ct. 945 ...................................................... 17

*USA Technologies, Inc. v. Doe,*
    713 F. Supp. 2d 901 (N.D. Cal. 2010) ................................................ 9, 12

*Xcentric Ventures, LLC v. Arden,*
    2010 U.S. Dist. LEXIS 13076 (N.D. Cal. Jan. 27, 2010) ....................... 24

**STATE CASES**

*Dendrite Int'l v. Doe No. 3,*
    775 A.2d 756 (N.J. App. 2001) ................................................................ 11

*Doe v. Cahill,*
    884 A.2d 451 (Del. 2005) ........................................................................ 12

*Hill v. Nat'l Collegiate Athletic Ass'n,*
    7 Cal. 4th 1 (1994) .................................................................................. 23

*Hooser v. Superior Court,*
    84 Cal. App. 4th 997 (Cal. Ct. App. 2000) ............................................ 23

*Mobilisa, Inc. v. Doe,*
    170 P.3d 712 (Ariz. App. 2007) .............................................................. 12

*Planned Parenthood Golden Gate v. Superior Court,*
    83 Cal. App. 4th 347 (Cal. Ct. App. 2000) ....................................... 23, 24

*Rittenhouse v. Superior Court,*
    235 Cal. App. 3d 1584 (Cal. App. Ct. 1991) ............................................ 8

*Tien v. Superior Court,*
    139 Cal. App. 4th 528 (Cal. Ct. App. 2006) ..................................... 22, 23

v

## STATE STATUTES

California Civil Procedure Code § 1987 .................................................................................1, 8, 13

## FEDERAL RULES

Federal Rule of Civil Procedure 26 ........................................................................................7, 8, 24

Federal Rule of Civil Procedure 45 ....................................................................................1, 8, 9, 13

## FEDERAL CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ...........................................................................................................*passim*

## STATE CONSTITUTIONAL PROVISIONS

CA Const., Article 1, section 1 ......................................................................................................22

## OTHER AUTHORITIES

David R. Baker, *Chevron seeks e-mail logs in Ecuador suit*, S.F. CHRONICLE (Oct. 1, 2012)...10, 22

Barbara Leonard, *Ecuadoreans Win Asset Seizure Against Chevron*, COURTHOUSE NEWS
    SERVICE (October 17, 2012)................................................................................................2

Declan McCullagh, *Chevron targets Google, Yahoo, Microsoft e-mail accounts*, CNET
    (Oct. 11, 2012) ....................................................................................................21, 22

5:12-mc-80237 CRB (NC)                    MOTION TO QUASH

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3          Pursuant to Federal Rule of Civil Procedure 45(c) and California Civil Procedure Code

4    § 1987.1, the Non-Party John Doe Movants hereby move to quash Chevron's subpoenas issued

5    from this Court on or around September 18, 2012 to Google and Yahoo! seeking identity and email

6    usage information about 71 email accounts from 2003 to the present.  In addition to linking their

7    identities with their speech, this information will likely reveal the location and associations of these

8    non-parties, traceable over nearly a decade.

9          Chevron's sweeping subpoenas would reveal an enormous amount of sensitive details about

10   the Does, despite the fact that they are not parties to the underlying litigation. Chevron seeks

11   identities and nine years of information about the Does' use of their email accounts—including IP

12   addresses, which correlate to specific geographic locations, and the date and time of each log-in.

13   This information would allow Chevron to create a comprehensive and detailed map of each

14   person's movements over a nine-year period.  This information would also allow Chevron a virtual

15   itinerary of who each individual has met with, what buildings they have worked out of, what

16   organizations they have worked with, and other potentially sensitive information implicating

17   associational freedoms, which are protected by the First Amendment. In the aggregate, such

18   information could be incredibly revealing—resulting in not only a violation of privacy, but for

19   some, a fear for their personal safety. Furthermore, the subpoenas are facially overbroad and seek

20   information well beyond the permissible scope of discovery.

21   **II.    STATEMENT OF FACTS**

22         This case arises from two decades of contentious environmental litigation.  In 1993, a group

23   of Ecuadorian citizens sued Texaco, Inc. in the United States for pollution and other damage

24   caused by oil extraction activities in the Amazon. Chevron Corporation acquired Texaco in 2001,

25   and successfully fought to move the litigation to Ecuador's judicial system in 2003.  In 2011, an

26   Ecuadorian court handed down a judgment of more than $17 billion against the oil company.

27

28                                             1

Chevron's strong feelings about its opponents in the litigation are well documented. Chevron's former company spokesman Donald Campbell, for instance, once said, "we're going to fight this until hell freezes over—and then we'll fight it out on the ice."[1]  On February 1, 2011, Chevron filed suit against more than 50 lawyers, organizations, plaintiffs, and other individuals involved in the environmental case in Ecuador, alleging that they obtained the judgment through fraud and other illegal means. *Chevron Corp. v. Donziger, et al.*, Case No. 11-cv-0691 (LAK) (S.D.N.Y.).  This case is the source of the subpoenas at issue here.

**A.     Chevron's September 18, 2012 Subpoenas to Google, Yahoo!, and Microsoft**

On September 18, 2012, Chevron served sweeping subpoenas upon Google, Yahoo!, and Microsoft demanding identity and email usage information associated with 101 email accounts from 2003 to present.  The subpoenas to Google and Yahoo! were issued by this Court, and are the ones this motion seeks to quash.[2]

The subpoena to Google specifically seeks identity information and email usage records associated with 44 email addresses. The subpoena issued to Yahoo! seeks the same information with respect to 27 email addresses. They each demand the production of all documents related to

(A) identity of the users of all of the listed email addresses, including but not limited to documents that provide all names, mailing addresses, phone numbers, billing information, date of account creation, account information and all other identifying information associated with the email address under any and all names, aliases, identities or designations related to the email address; [and]

(B) the usage of all of the listed email addresses, including but not limited to documents that provide IP logs, IP address information at time of registration and subsequent usage, computer usage logs, or other means of recording information concerning the email or Internet usage of the email address[.][3]

---

[1] Barbara Leonard, *Ecuadoreans Win Asset Seizure Against Chevron*, COURTHOUSE NEWS SERVICE (October 17, 2012) https://www.courthousenews.com/2012/10/17/51369.htm.

[2] The subpoena to Microsoft was issued by the District Court for the Northern District of New York, and the Does have separately moved to quash that subpoena in that court.

[3] The Google subpoena contains an additional request for IP address information associated with a specific email.  Harrison Decl. Ex. 1.  This information is also likely covered by category (B).

Declaration of Michelle Harrison (hereafter "Harrison Decl.") Ex. 1.

Despite the broad wording of category (B), Chevron's attorneys have verbally clarified that this description was not intended to include any contents of communications or email header information, which would reveal the names and IP addresses of senders and recipients of messages. Nevertheless, Chevron seeks IP addresses associated with the computers that logged into the email accounts, the dates and times of log-in, session durations, and possibly information about other services used by the account holder.[4]  Based on informal conversations between Does' counsel and Google and Yahoo!, it appears that the providers' policy is not to keep nine years of this IP-related information. However, neither provider has given the precise timeframe or amount of information retained for each Doe.

Google and Yahoo! attempted to notify the affected account holders about the subpoenas by email, though it is unclear how many actually received notice. The account holders of 29 of these accounts now bring this motion to quash the subpoenas in their entirety because they infringe upon fundamental constitutional rights to anonymity, association, and privacy, and are facially overbroad.

### B.      The Non-Party John Doe Movants

None of the Does who bring this motion is a defendant in Chevron's underlying case.

As the representative declarations submitted with this motion show, some of the Does worked briefly on the litigation in Ecuador as volunteer summer interns several years ago.[5]  *See, e.g.,* Declaration of John Doe 1 (Owner of cortelyou@gmail.com) (hereafter "John Doe 1 Decl.") ¶ 5; Declaration of John Doe 2 (Owner of firger@gmail.com) (hereafter "John Doe 2 Decl.") ¶ 5. Others had no direct connection with the litigation, but have engaged in broader environmental advocacy efforts concerning oil extraction in the Amazon. *See, e.g.,* Declaration of Declaration of

---

[4] The information responsive to Chevron's subpoenas may vary from provider to provider, because they may not all retain precisely the same data.

[5] As noted in the Harrison Declaration filed herewith, the Does have provided the Court representative declarations to illustrate the basic issues the Does here face.  Should the Court deem it necessary, counsel can provide declarations from all 29 Does.

John Doe 3 (Owner of tegelsimeon@gmail.com) (hereafter "John Doe 3 Decl.") ¶¶ 4-5; Declaration of Declaration of John Doe 4 (Owner of kevinkoenigquito@gmail.com) (hereafter "John Doe 4 Decl.") ¶ 4. Some of the Does are attorneys who have worked on the litigation in the past. *See, e.g.,* John Doe 1 Decl. ¶¶ 4-5; John Doe 2 Decl. ¶¶ 4-5; Declaration of John Doe 5 (Owner of ampage@gmail.com) (hereafter "John Doe 5 Decl.") ¶ 5. One Doe is an attorney who never worked on the litigation, but is simply a personal friend of Steven Donziger. Declaration of John Doe 6 (Owner of eriktmoe66@yahoo.com) (hereafter "John Doe 6 Decl.") ¶¶ 4-5. These attorney Does have all use their email accounts not only for personal correspondence, but also to engage in privileged, confidential communications related to their legal representations, including legal work unconnected to the Chevron matter.  John Doe 1 Decl. ¶ 7; John Doe 2 Decl. ¶ 7; John Doe 5 Decl. ¶ 7.

Some of the Does check their email accounts regularly when they travel, and are concerned that the disclosure of their IP logs to Chevron will produce a virtual itinerary of their whereabouts over nine years, including the places they have visited, the buildings they have worked out of, and the organizations they have worked with. *See* John Doe 2 Decl. ¶ 9; John Doe 5 Decl. ¶ 9.

A number of the Does are bloggers and/or journalists, and have been published in many well-known and respected newspapers and other media sources. *See, e.g.,* John Doe 2 Decl. ¶ 4; John Doe 3 Decl. at ¶ 4; Declaration of John Doe 7 (Owner of richard.clapp@gmail.com) (hereafter "John Doe 7 Decl.") at ¶ 4.  Some of these Does have used their email accounts to communicate with confidential sources.  John Doe 2 Decl.  ¶ 7; John Doe 3 Decl. ¶ 10. Sources may take great risks to speak with journalists, and one Doe has said his use of email account to communicate with them would be chilled if he believed Chevron might be able to obtain his account details. John Doe 3 Decl. ¶ 10.[6]

An example of the staggering overbreadth of Chevron's demand is the fact that the email address kevinjonheller@gmail.com was originally included in the subpoena to Google. That email

---

[6] This motion's use of masculine pronouns to refer to any John Doe is generic and should not be construed as an admission of gender.

MOTION TO QUASH

account belongs to Kevin Jon Heller, an Australian law professor and well-known blogger and journalist. Professor Heller's information was apparently sought because he had exchanged two non-substantive emails with the Ecuadorian plaintiffs' lead attorney, Steven Donziger. Harrison Decl. Ex. 2. After Professor Heller learned of the subpoena for nine years of information about his email use and secured legal representation from the American Civil Liberties Union, Chevron abruptly withdrew its demand for information about his account. In a blog post about the incident, Professor Heller said he felt Chevron's demand was nothing more than an attempt "to harass and intimidate me." *Id*.

Some of the Does understand that others have been subjected to harassment, threats, and intimidation for working in connection with the litigation against Chevron in Ecuador or related activism efforts. *See* John Doe 4 Decl. ¶ 11; John Doe 5 Decl. ¶ 10. Indeed, some Does have declined opportunities to work on the case against Chevron for fear that they might experience retribution.  John Doe 1 Decl. ¶ 10; John Doe 6 Decl. ¶ 9. Other Does are concerned that their personal safety could be endangered by the disclosure of the information Chevron seeks. John Doe 4 Decl. ¶¶ 8 & 10; John Doe 5 Decl. ¶ 10.  Many of the Does assert that if their account information is disclosed to Chevron, their future expressive activities will be chilled. John Doe 1 Decl. ¶ 11; John Doe 2 Decl. ¶¶ 11-12; John Doe 3 Decl. ¶¶ 9-10; John Doe 4 Decl. ¶¶ 11-13; John Doe 5 Decl.  ¶ 11; John Doe 6 Decl. ¶¶ 10-11; John Doe 7 Decl. ¶¶ 10-11.

Chevron has made no attempt to explain why the Does—against whom Chevron has alleged no cause of action—have been targeted by these discovery requests, nor given any indication why it has demanded over nine years of usage records about each of them.

### C.     The Nature of the Information Sought by Chevron

The information Chevron seeks will enable the company to identify and track the locations of the Does over time, as well as learn when the Does likely met with other people.  This is due to the nature of Internet Protocol (IP) addresses.

An IP address is a numeric value used to identify the network location of a computer or set of computers on the Internet. Internet routers use the IP address to decide where to send

MOTION TO QUASH

communications addressed to a particular computer user. Declaration of Seth Schoen ¶ 3 (hereafter "Schoen Decl.").

IP addresses are allocated to Internet service providers and often reflect the general physical location of the area they serve. This means that servers located in New York have IP addresses roughly trackable to New York, and servers in Ecuador have IP addresses roughly trackable to Ecuador. This geographic location information is generally publicly available. For instance, the IP address 199.83.220.233 is easily trackable to San Francisco through free public websites such as www.geobytes.com. Even when location information is not publicly available, a subpoena to an ISP can generally elicit the specific geographic location for a particular IP address.  Schoen Decl. ¶ 12.

ISPs can further delegate these addresses to smaller entities such as businesses, Internet cafés, or smaller ISPs. ISPs can also assign an IP address directly to an individual computer. Schoen Decl. ¶ 4.   Because IP addresses are allocated in this way, they can convey not only approximate information about a computer's location, but also how the computer is connected to the Internet, and what individual or entity is using that computer to connect.  Schoen Decl. ¶ 5.

Many host computers of websites, including the operators of popular web-based email services like Microsoft Hotmail, Yahoo! Mail and Gmail maintain logs that list the IP address of visitors along with date and time information.  Websites that utilize a log-in feature typically maintain a log of IP addresses and other data associated with the particular user who logged in, such as the date and time of log-in and the duration of time the user visited the website. Schoen Decl. ¶ 8.

A large amount of data accumulated over a lengthy period of time that includes IP addresses and dates and times of usage sessions—as one might get from a heavily trafficked and frequently used web service such as an email provider—can readily present a detailed picture of a person's movements from one location to another, especially if that person is an avid laptop or tablet user.   Schoen Decl. ¶ 9. For instance, a laptop will receive a different IP address when it connects to the Internet from different locations.  If a laptop's owner uses the machine from her

6

workplace in the morning, a café in the afternoon, and her home in the evening, she will present at least three different IP addresses over the course of a single day. This information could demonstrate that a person accessed the Internet from a precise physical location, like a building or even a particular organization's office.  Schoen Decl. ¶ 11.

Moreover, this information can reveal a person's physical proximity to other Internet users who may share the same IP address through a wireless device, a router or another form of shared Internet connection. Schoen Decl. ¶ 15. This information could be used to map a person's associates. For example, if Internet usage records showed that two individuals were accessing the Internet from the same IP address on a particular day and time, this would tend to show that they were accessing the same Internet network at the same time. This would suggest they were in the same physical location at the same time, and could create a reasonable inference that they met with each other.  Schoen Decl. ¶ 16.

A person who checks email frequently might access a given email service multiple times per day, and a long-term view of data about that use could reflect significant facts about that person's work habits and personal relationships that could be quite intimate. For example, if the IP logs show that a person signed into his account from an IP address associated with another person's home, that information suggests the user visited that home. If the user signs into his email account using that same IP address late at night and again the following morning, that information creates a reasonable inference that the user spent the night at that home, which may suggest that he has an intimate relationship with the person who lives there.  If the user repeats this log-in pattern over time, it might suggest he spends many nights at that home, and that his relationship with the person living there is a relatively serious one.  Schoen Decl. ¶ 18.

## III.    LEGAL STANDARD

The Federal Rules of Procedure generally provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]"  Fed. R. Civ. P. 26(b)(1). However, the courts impose a higher standard when a party seeks discovery encroaching upon freedoms protected by the First Amendment. Under those circumstances, the

7

1   party must show that the "information sought is *highly relevant* to the claims or defenses in the

2   litigation—a more demanding standard of relevance than that under Federal Rule of

3   Procedure 26(b)(1)." *Perry v. Schwarzenegger*, 591 F.3d 1126, 1141 (9th Cir. 2010) (emphasis

4   added).   Furthermore, the discovery request must be "carefully tailored to avoid unnecessary

5   interference with protected activities, and the information must be otherwise unavailable." *Id*.

6        A court may quash a subpoena if it "requires disclosure of privileged or other protected

7   matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv).   *See, e.g.,*

8   *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir. 2003).   Similarly, under

9   the California Civil Procedure Code, a court may quash a subpoena and "make any other order as

10  may be appropriate to protect the person from unreasonable or oppressive demands, including

11  unreasonable violations of the right of privacy of the person." Cal. Civ. Proc. Code § 1987.1; *see*

12  *also, e.g., Rittenhouse v. Superior Court*, 235 Cal. App. 3d 1584, 1587 (Cal. App. Ct. 1991).

13  California Civil Procedure Code § 1987.1(b)(5) specifically authorizes "[a] person whose

14  personally identifying information . . . is sought in connection with an underlying action involving

15  that person's exercise of free speech rights" to bring a motion to quash under section 1987.1.[7]

16       This Court is the appropriate venue for this motion because subpoenas must be challenged

17  before the issuing court, not the court that oversees the underlying litigation.   *See* FED. R. CIV.

18  P. 45(c)(3)(A) ("On timely motion, the *issuing court* must quash or modify a subpoena[.]")

19  (emphasis added).   *See also Highfields Capital Management, L.P. v. Doe*, 385 F. Supp. 2d 969, 972

20  (N.D. Cal. 2005) (quashing subpoena issued under color of the Northern District of California in

21

22  _____

    [7] While technically procedural, the specifically articulated protections for anonymous speakers in
23  California Civil Procedure Code § 1987.1 are substantive and are based upon the same free speech
    concerns which animate California's anti-SLAPP statute. *See, e.g., United States ex rel. Newsman*
24  *v. Lockheed Missiles and Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding that California's
    anti-SLAPP statute, while procedural, is manifestly substantive in design and intent and thus not
25  barred in federal court under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).   To the extent that
    Chevron seeks discovery in support of at least one non-federal claim challenging exercise of First
26  Amendment rights, the movants' motion to quash is appropriate under not only Federal Rule of
    Civil Procedure 45, but also California Civil Procedure Code § 1987.1.   Here, the underlying
27  complaint alleges non-federal claims for damages under New York state law.

28                                                      8

1   civil action filed in District of Massachusetts); *USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d

2   901, 905 (N.D. Cal. 2010) ("This motion to quash is properly before the Court pursuant to Fed. R.

3   Civ. P. 45(c) because the subpoena in question was issued to Yahoo! by the Northern District of

4   California.").

5   **IV.    ARGUMENT**

6   **A.    The Subpoenas Violate the Does' Constitutional Rights Under the First
7          Amendment.**

8           The subpoenas should be quashed in their entirety because they violate the Does' First

9   Amendment rights to anonymous speech and association.  The Court should treat these subpoenas

10  with particular skepticism because compliance will chill political speech about damage to the

11  environment and harm to people caused by oil exploration and related activities—speech that

12  receives the highest level of First Amendment protection.  *Meyer v. Grant*, 486 U.S. 414, 422, 425

13  (1988) (describing the First Amendment protection of "core political speech" to be "at its zenith").

14  **1.  The Subpoenas Violate the Does' First Amendment Right to Anonymous
        Speech.**

15          Under the broad protections of the First Amendment, speakers have not only a right to

16  organize and engage in political advocacy, but also the right to do so anonymously.  Accordingly,

17  the First Amendment requires that those who seek to discover the identities of their critics

18  demonstrate a compelling need for such identity-related information before obtaining that

19  discovery.  There is no such need in this case.

20  **a.  The Right to Engage in Anonymous Speech is Protected By the First
21       Amendment.**

22          The United States Supreme Court has consistently defended the right to anonymous speech

23  in a variety of contexts, noting that "[a]nonymity is a shield from the tyranny of the majority . . .

24  [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from

25  retaliation . . .  at the hand of an intolerant society."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S.

26  334, 357 (1995).  *See also Talley v. California*, 362 U.S. 60, 64 (1960) (finding a municipal

27  ordinance requiring identification on hand-bills unconstitutional, noting that "[a]nonymous

28

9

pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind"). Anonymity receives the same constitutional protection whether the means of communication is a political leaflet or an Internet message board or an email. *See Reno v. ACLU*, 521 U.S. 844, 870 (1997). *See also*, *e.g.*, *Doe v. 2theMart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) ("The right to speak anonymously extends to speech via the Internet. Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas."). These fundamental rights protect anonymous speakers from forced identification, be they from overbroad statutes or unwarranted discovery requests.

Email addresses that appear to reflect an individual's name are entitled to just as much protection as email addresses that do not. By its very request for identity information associated with every email address listed in the subpoenas, Chevron apparently agrees that the identity of each account holder remains in dispute. In a statement to the San Francisco Chronicle, Chevron admitted as much, explaining that the company seeks the identities behind the accounts because it "is trying to find out whether some of the e-mail addresses actually belong to key figures in the case[.]"[8]

Yet in its Opposition to Defendants' Motion to Quash these subpoenas, Chevron takes a different approach, claiming that it is entitled to learn the identities of the Does because it already knows them from the names embedded in some of the addresses. *See* Chevron Corporation's Opposition to the RICO Defendants' Motion to Quash Subpoenas to Google Inc. and Yahoo! Inc. ("Chevron Opp. Defs.' Mot. Quash"), filed October 19, 2012, Docket No. 26, at 14-15. That, of course, would make these requests redundant and wholly unnecessary. Chevron further states that "participants in Defendants' enterprise have [not] evinced a desire to conceal their identities [except to] facilitate fraudulent conduct." *Id*. at 15. However, Chevron has made no allegations of fraud against the Does, the First Amendment right to anonymous speech does not place a burden

---

[8] David R. Baker, *Chevron seeks e-mail logs in Ecuador suit*, S.F. CHRONICLE (Oct. 1, 2012), http://www.sfgate.com/business/article/Chevron-seeks-e-mail-los-in-Ecuador-suit-3904006.php.

1   on a speaker to "evince a desire," and, of course, many of the email addresses listed on the

2   subpoenas clearly are not the names of the individuals involved (*e.g.*, coldmtn@gmail.com).

3       If Chevron believes that some of the email addresses are owned, used, or controlled by the

4   parties to the litigation, the proper vehicle for confirming that belief would be a discovery request

5   directed to those parties.   However, because Chevron has requested identifying information

6   regarding non-parties—some of whose identities are not known with certainty by Chevron, and

7   some of whose identities are entirely unknown by Chevron—this Court should treat all of the Does

8   as anonymous speakers, regardless of whether their email addresses appear to reflect a name.

9       **b.   Anonymous Speakers Enjoy a Qualified Privilege Under the First
         Amendment.**

10      Because the First Amendment protects anonymous speech and association, efforts to use

11  the power of the courts[9] to pierce anonymity are subject to a qualified privilege.   Courts must "be

12  vigilant . . . [and] guard against undue hindrances to . . . the exchange of ideas."  *Buckley v. Am.*

13  *Constitutional Law Found.*, 525 U.S. 182, 192 (1999).  This vigilant review "must be undertaken

14  and analyzed on a case-by-case basis," where the court's "guiding principle is a result based on a

15  meaningful analysis and a proper balancing of the equities and rights at issue."  *Dendrite Int'l v.*

16  *Doe No. 3*, 775 A.2d 756, 761 (N.J. App. 2001).   Just as in other cases in which litigants seek

17  information that may be privileged, courts must consider the privilege before authorizing

18  discovery.  *See*, *e.g.*, *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y.

19  2004) ("Against the backdrop of First Amendment protection for anonymous speech, courts have

20  held that civil subpoenas seeking information regarding anonymous individuals raise First

21  Amendment concerns."); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing

22  *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a

23  discovery order claims a First Amendment privilege not to disclose certain information, the trial

24  court must conduct a balancing test before ordering disclosure.").  As this Court described in an

25

---

26  [9] A court order, even if granted to a private party, is state action and hence subject to constitutional
    limitations.  *See, e.g., New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*,
27  334 U.S. 1, 14 (1948).

28

early Internet anonymity case, "[p]eople who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

The constitutional privilege to remain anonymous is not absolute. Plaintiffs may properly seek information necessary to pursue meritorious litigation. *Id.* at 578 (First Amendment does not protect anonymous Internet users from liability for tortious acts such as defamation); *Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005) ("Certain classes of speech, including defamatory and libelous speech, are entitled to no constitutional protection."). However, litigants may not use the discovery power to uncover the identities of people who have simply made statements the litigants dislike or who associate with those whom they dislike. Accordingly, courts evaluating attempts to unmask anonymous speakers in cases similar to the one at hand have adopted standards that balance one person's right to speak anonymously with a litigant's legitimate need to pursue a claim.

Here the subpoenas chiefly seek identity and location information from non-parties. While several of the email addresses do appear to belong to parties in the case, Chevron has made no attempt to identify them as such or segregate them from non-parties. *See* Defendants' Motion to Quash Chevron Corporation's Subpoenas to Google Inc. and Yahoo! Inc., filed October 5, 2012, Docket No. 4.

The seminal case setting forth First Amendment restrictions upon a litigant's ability to compel an online service provider to reveal an anonymous non-party's identity is *Doe v. 2theMart.com*, *supra*, in which the Western District of Washington adopted a four-part test for protecting anonymous speakers that has been followed by courts around the country[10] (including by this Court in *USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d at 906). In order for the litigant to obtain the anonymous non-party's identity, he must show:

---

[10] *See, e.g., Enterline v. Pocono Medical Center*, 751 F. Supp. 2d 782, 787 (M.D. Pa. 2008); *Mobilisa, Inc. v. Doe*, 170 P.3d 712, 719 (Ariz. App. 2007).

(1) the subpoena seeking the information was issued in good faith and not for any improper purpose,

(2) the information sought relates to a core claim or defense,

(3) the identifying information is directly and materially relevant to that claim or defense, and

(4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*2theMart.com*, 140 F. Supp. 2d at 1095 (line breaks added for clarity).  The district court further stated "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker." *Id*.

As the *2theMart.com* court accurately and cogently outlined the important First Amendment interests implicated when a party seeks to unmask anonymous third-party speakers, and as this Court has already endorsed this approach in the past, the holding and reasoning of *2theMart.com* and its progeny should apply here.

c. **As Chevron's Subpoena Demands for Identity Information Cannot Survive the Scrutiny Required By the First Amendment, It Must Be Quashed Under Federal Rule of Civil Procedure 45 and California Civil Procedure Code § 1987.1.**

At the outset, it appears clear that Chevron fails at least two of the four steps of the *2theMart.com* First Amendment test.  While it has not yet made a showing on the remaining two steps, they seem unlikely to succeed on those, either.  Thus, the subpoenas must be quashed.

i. **Chevron Did Not Issue These Subpoenas in Good Faith or for Any Proper Purpose.**

Chevron has failed to explain the purpose of its subpoenas for information regarding individuals against whom it has not alleged any causes of action.  The subpoenas seek the identities of the owners of 71 email addresses, along with associated IP address and other information related to those accounts. Many of the addresses appear to include names similar to both parties and non-parties mentioned by Chevron in the underlying complaint, while others do not appear to include names at all.

13

5:12-mc-80237 CRB (NC)

MOTION TO QUASH

1    Assuming Chevron did not choose the email addresses randomly, it is likely that Chevron

2    suspects they belong to individuals somehow associated with or supportive of its opponents in

3    either its underlying lawsuit in New York or the third lawsuit that case relates to, which started in

4    the New York but was transferred to Ecuador at Chevron's demand.  As discussed in greater detail

5    below, the risk that a political opponent or critic may have his or her identity, location, emailing

6    habits, and other personal information over *nine years* revealed simply by dint of association with

7    other activists critical of Chevron, even activists who might themselves be legitimately subject to

8    litigation, will have a tangible chilling effect on future political speech.  Indeed, many of the non-

9    parties named by Chevron in its subpoenas feel harassed and intimidated by Chevron's pursuit of

10   their personal information, and the litigation tactics employed by Chevron in this case have already

11   silenced some.  *See* John Doe 1 Decl. ¶¶ 9-12; John Doe 2 ¶¶ 11-12; John Doe 3 ¶¶ 9-11; John Doe

12   4 Decl. ¶¶ 11-13; John Doe 5 Decl. ¶¶ 9-11; John Doe 6 Decl. ¶¶ 9-12; John Doe 7 Decl. ¶¶ 10-12.

13   The fact that the Does feel intimidated by Chevron's tactics raises a serious concern that

14   Chevron has issued these subpoenas for an improper purpose under the first step of the

15   *2theMart.com* test.

16          ii.      **Chevron Has Made No Showing that the Information Sought**
                     **Relates to a Core Claim or that it is Directly and Materially**
17                   **Relevant to that Claim.**

18   As the Southern District of California has long ago observed, litigants should undertake

19   discovery from non-party witnesses only if party discovery has been exhausted: "These witnesses

20   are not parties to the action, and they should not be burdened with the annoyance and expense of

21   producing the documents sought unless the plaintiff is unable to discover them from the

22   defendant." *Bada Co. v. Montgomery Ward & Co.*, 32 F.R.D. 208, 209-10 (S.D. Cal. 1963).

23   Accordingly, in order for Chevron to obtain the discovery it seeks, the company must show that the

24   information requested relates to a core claim or defense *and* that the identity information is directly

25   and material relevant to that claim or defense.  *See 2theMart.com*, 140 F. Supp. 2d at 1096.  It

26   cannot do so. The subpoenas at issue here seek the disclosure of the identity of as many as 71

27   individuals, along with IP logs reflecting locations and all other "usage logs" held by Yahoo! and

28

14

**MOTION TO QUASH**

1   Google associated with the accounts, over the course of nine years. It is exceedingly unlikely that

2   all this information, or even a sizeable percentage of it, is in any way relevant to Chevron's claims,

3   much less directly and materially relevant to those claims.

4         An example of the staggering overbreadth of Chevron's subpoenas is the inclusion of

5   Professor Heller's email address in the subpoena to Google.  Heller—a blogger, journalist, and law

6   professor—has no apparent connection to Chevron's underlying lawsuit.  The "sum total" of his

7   interaction with defendant Steven Donziger was a pair of non-substantive emails.  Harrison Decl.

8   Ex. 2. Chevron has made no allegations against Professor Heller, has never sought to add him as a

9   defendant to the underlying lawsuit, and was already aware of his identity at the time it issued the

10  subpoenas.  And yet, as Professor Heller notes, Chevron sought nine years of information related to

11  his use of his email account. He considered it "a remarkably intrusive request; I haven't even been

12  blogging for nine years." Professor Heller secured counsel and attempted to ascertain why exactly

13  Chevron was seeking such an extensive amount of his personal information.  Although Chevron

14  refused to explain why they sought his information in the first place, the company quietly dropped

15  its request for information about him alone.  *Id.*

16        Chevron could not show that its request for information about Professor Heller had the

17  slightest relationship to any claim or defense it might have in the underlying litigation, much less

18  that nine years of IP logs are directly and materially relevant to that case. Yet if Chevron's

19  subpoenas are to survive, Chevron must now make this showing as to each email address listed in

20  its subpoenas.  It cannot.

21                 **iii.**      **Chevron Has Made No Showing that the Information Sought**
22                                **Is Unavailable from Any Other Source.**

23        In order for Chevron to enforce its subpoenas, it must demonstrate that "the information it

24  needs to establish its defense is unavailable from any other source."  *See 2theMart.com*, 140 F.

    Supp. 2d at 1097.  It cannot do so.
25

26        Chevron already has in its possession a vast amount of email from the parties and direct

27  witnesses.  Chevron Opp. Defs.' Mot. Quash at 4.  If the question Chevron seeks to answer with

28

15

these subpoenas is truly whether the owners of the email addresses acted in concert with the parties, then surely the best way to learn the answer would be to ask the parties directly in regular discovery.  If Chevron opposes this motion based on the grounds that the email addresses about which they seek information are in fact not anonymous, then the request to Yahoo! and Google for their identities is mere confirmation of what Chevron already knows.  But if that is true, then Chevron cannot show that the information it seeks is unavailable from any other source; it could simply propound discovery on the people it suspects of controlling those addresses for any further confirmation it requires.  If Chevron seeks to map the relationship between parties and non-parties via the IP logs it requests, then surely the best evidence of those relationships is the testimony of those very people, testimony that could be obtained in party discovery.

In sum, Chevron cannot satisfy the *2theMart.com* test, and its attempt to seek the identities of the Does must be quashed because it violates the Does' First Amendment right to anonymity.

### 2.   The Subpoenas Violate the Does' First Amendment Right to Association.

Chevron's subpoenas intrude upon the Does' constitutionally guaranteed right to association. For this reason alone, the subpoenas should be quashed in their entirety.

### a.   The Does Enjoy a First Amendment Right to Political Association and to Advocate Controversial Views as a Group.

The First Amendment protects the freedom to associate and express political views as a group.  *NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449, 460-62 (1958).  This right is intertwined with the right to freedom of expression, and "like free speech, lies at the foundation of a free society."  *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) (quoting *Shelton v. Tucker*, 364 U.S. 479, 486 (1960) (internal quotation marks omitted)).  This constitutional protection is critical because "[e]ffective advocacy of both public and privacy points of view, particularly controversial ones, is undeniably enhanced by group association[.]"  *NAACP v. Alabama*, 357 U.S. at 460; *Bates v. City of Little Rock*, 361 U.S. 516, 522-23 (1960) (the Constitution protects freedom of association to encourage the "advancing ideas and airing grievances").  The Does' politically charged advocacy efforts are precisely the sort of expression the First Amendment seeks to protect.

16

The Supreme Court has repeatedly held that compelled disclosure of an advocacy group's membership lists harms freedom of association because "it may induce members to withdraw from the association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of their exposure." *NAACP v. Alabama*, 357 U.S. at 462-63. *See also Bates*, 361 U.S. at 523; *Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539 (1963). This rule applies with equal force to attempts to compel disclosure of the Does' identities here.

Privacy in one's associational ties is also closely linked to freedom of association: "Inviolability of privacy in group association may in many circumstances be indispensible to preservation of freedom of association, particularly where a group espouses dissident beliefs." *NAACP v. Alabama*, 357 U.S. at 462. Allowing Chevron access to information about the Does' locations over time would reveal a wealth of details about their habits and day-to-day patterns that are intimately tied to their associational activities. *United States v. Jones*, 132 S. Ct. 945, 954 (2012) (Sotomayor, J., concurring) (continual location monitoring over a prolonged period "reflects a wealth of detail about [a person's] familial, political, professional, religious, and sexual associations."). As the D.C. Circuit has noted, such observation of a person's movements

> reveals types of information not revealed by short-term surveillance, such as what a person does repeatedly, what he does not do, and what he does ensemble. . . . A person who knows all of another's travels can deduce whether he is a weekly church goer, a heavy drinker, a regular at the gym, an unfaithful husband, an outpatient receiving medical treatment, an associate of particular individuals or political groups—and not just one such fact about a person, but all such facts.

*United States v. Maynard,* 615 F.3d 544, 562 (D.C. Cir. 2010), *aff'd sub nom. Jones*, 132 S. Ct. 945.

Chevron's subpoenas are squarely aimed at identifying and mapping the movements of individuals it believes are involved in political expression: specifically, environmental litigation against the oil company and related activism activities, all of which is highly protected speech. *See, e.g.*, *NAACP v. Button*, 371 U.S. 415, 429-31 (1963) (litigation is a form of political speech);

17

1   *Thomas v. Collins*, 323 U.S. 516, 537 (1945) (First Amendment protects advocacy to "persuade to

2   action").

3       Among other things, the information Chevron seeks could tell the company when the Does

4   were in the United States or Ecuador; when they were in a particular town, building, or even a

5   particular organization's office; and when each Doe was in the same place at the same time as

6   other individuals whose email usage information is revealed, presumably meeting with each other.

7   *See* Schoen Decl. ¶ 17. These discovery requests directly implicate the movants' right to "engage

8   in association for the advancement of beliefs and ideas," and are therefore subject to heightened

9   scrutiny. *NAACP v. Alabama*, 357 U.S. at 460.

10          **b.   The Does Have a Qualified First Amendment Privilege Subject to**
               **Heightened Scrutiny That Can Only be Overcome by a Compelling**
11             **Interest.**

12      Individuals may assert privilege to protect such information when a civil discovery request

13   threatens the freedom of association.  *NAACP v. Alabama*, 357 U.S. at 460-63; *Perry*, 591 F.3d at

14   1140; *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 481 (10th Cir. 2011)

15   (First Amendment privilege protects rights of association affected by civil discovery demands).

16   When discovery requests infringe upon political expression and association, the courts apply

17   heightened discovery standards to protect those constitutional values. *Perry,* 591 F.3d at 1140; *Fed.*

18   *Election Comm'n v. Larouche Campaign*, 817 F.2d 233, 234-35 (2d Cir. 1987) (requiring agency

19   to demonstrate need beyond mere relevance to an investigation to justify compelling disclosure of

20   the names of campaign contributors).

21      The Supreme Court has made clear that infringements on freedom of association may be

22   survive constitutional scrutiny only when they "serve compelling state interests, unrelated to the

23   suppression of ideas, that cannot be achieved through means significantly less restrictive of

24   associational freedoms." *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984); *see also*

25   *NAACP v. Button*, 371 U.S. at 341; *Knox v. SEIU, Local 1000*, 132 S. Ct. 2277, 2291 (2012)

26   (burden on freedom of association "must serve a compelling interest and must not be significantly

27   broader than necessary to serve that interest.").

28                                        18

1      The Ninth Circuit has held that members of an association may assert a qualified First

2   Amendment privilege in associational information sought by a subpoena by making a *prima facie*

3   showing that compliance "will result in (1) harassment, membership withdrawal, or

4   discouragement of new members, or (2) other consequences which objectively suggest an impact

5   on, or 'chilling' of, the members' associational rights."   *Brock v. Local 375, Plumbers*

6   *International Union of America, AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988); *Dole v. Service*

7   *Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1460-61 (9th Cir. 1991); *Perry,* 591 F.3d

8   at 1140. Declarations are sufficient to make this showing. *Perry,* 591 F.3d at 1143.

9      When the Does satisfy this standard, the burden shifts to Chevron to show that the

10   information sought is "rationally related to a compelling government interest . . . [and is] the 'least

11   restrictive means' of obtaining the desired information." *Id.* at 1140 (quoting *Brock,* 860 F.2d at

12   350).

13      **i.      The Does' Right to Association Will be Harmed if Their Identities and
             Email Usage Information is Disclosed.**

14      As the declarations filed with this motion show, disclosure of the Does' identities and email

15   usage information to Chevron is likely to result in harassment, membership withdrawal, and a

16   chilling of the Does' political expression.

17      As a practical matter, Chevron's litigation tactics have already chilled the Does' political

18   expression and resulted in membership withdrawal. And as two declarants noted, they have refused

19   opportunities to work on the Chevron litigation after seeing what Chevron had put others through

20   who worked on the case and related activism.  John Doe 1 Decl. ¶ 10; John Doe 6 Decl. ¶ 9.

21      Moreover, the Does feel harassed by Chevron's attempt to obtain the information it seeks,

22   and fear further harassment if Chevron actually gains access to personal information about their

23   email use. *See* John Doe 1 Decl. ¶ 12; John Doe 2 Decl. ¶ 13; John Doe 3 Decl. ¶ 10; John Doe 4

24   Decl. ¶ 9; ; John Doe 6 Decl. ¶ 12; John Doe 7 Decl. ¶ 12.

25      Some Does state that other individuals have been subjected to harassment, threats, and

26   intimidation for working in connection with the litigation against Chevron in Ecuador or related

27   activism efforts. *See* John Doe 4 Decl. ¶ 11; John Doe 5 Decl. ¶ 10.  Two declarants express

28                                              19

concern for their physical safety if Chevron gains access to the information it seeks. John Doe 4 Decl. ¶ 11; John Doe 5 Decl. ¶ 10.

The Does' declarations also reflect a likelihood of chilled expression in the future. Many of the Does state that if they had known that their email usage information and location would be revealed to Chevron, their political expression at the time they was assisting with the litigation or participating in related advocacy efforts would have been chilled. John Doe 1 Decl. ¶ 9; John Doe 2 Decl. ¶ 10; John Doe 3 Decl. ¶ 8; John Doe 7 Decl. ¶ 9. They say their future political and associational activities related to Chevron will be chilled if the company obtains the personal information it seeks. John Doe 1 Decl. ¶ 10; John Doe 2 Decl. ¶ 11; John Doe 3 Decl. ¶ 9; John Doe 4 Decl. ¶ 11; John Doe 6 Decl. ¶ 9, John Doe 7 Decl. ¶ 9. They believe their associational activities will likely be chilled more generally, as well. John Doe 1 Decl. ¶ 11; John Doe 2 Decl. ¶ 10; John Doe 3 Decl. ¶ 10; John Doe 4 Decl. ¶ 12; John Doe 6 Decl. ¶ 11; John Doe 7 Decl. ¶ 11.

Thus, the Does have made a *prima facie* showing that the service providers' compliance with Chevron's subpoenas will chill their constitutionally protected associational rights.

> ## ii. Disclosure of the Does' Information Does Not Serve a Compelling Interest and Is Not the Least Restrictive Means of Furthering a Compelling Interest.

Chevron cannot satisfy its burden of showing that the information it seeks about the Does is "rationally related to a compelling government interest . . . [and] the least restrictive means of obtaining the desired information." *Perry,* 591 F.3d at 1140 (internal quotation marks omitted). To determine whether Chevron should obtain the discovery it seeks, the Court must balance the "burdens imposed on individuals and associations against the   . . . interest in disclosure" to determine whether the "interest in disclosure . . . outweighs the harm" to the Does' associational rights.  *Perry,* 591 F.3d at 1140 (quoting *Buckley v. Valeo*, 424 U.S. at 72). Critically, Chevron must demonstrate that the information sought is "highly relevant to the claims or defenses in the litigation," that the subpoenas were "carefully tailored to avoid unnecessary interference with protected activities," and that the information sought is "otherwise unavailable." *Id*. Chevron can show none of these things.

The government may well have a compelling interest in making sure that parties to litigation receive the information they need to properly litigate their cases in the interest of the fair administration of justice. But the scope of Chevron's subpoenas far exceed any such interest. The company seeks a vast amount of information that is not "highly relevant" to the claims in the underlying litigation. Indeed, a Chevron spokesman readily admitted to the press that some of these email accounts are likely to be "legitimate" and "used for benign purposes."[11]  Professor Heller's experience, discussed above in Section A.1.b.ii, further underscores this likelihood: Chevron's request for his information had no connection whatsoever to the company's legal claims.  There is no reason to believe this is not true the case for information sought about many other individuals through these subpoenas.

Furthermore, there is no indication that the subpoenas were carefully tailored to avoid infringing the Does' associational freedoms.  Indeed, the discovery demands indiscriminately seek information about each and every one of the 101 email accounts since 2003, without any tailoring or limitation whatsoever. The careless scope of these subpoenas is underscored by the fact that Google did not even launch Gmail until 2004, meaning that Google is unlikely to have any responsive information for more than a year covered by Chevron's subpoena simply because its email service did not exist.[12]

Finally, the subpoenas to the email providers are not the least restrictive means of obtaining the information Chevron seeks.  A company spokesperson told the San Francisco Chronicle that subpoenas were issued for the purpose of

> trying to find out whether some of the e-mail addresses actually belong to key
> figures in the case, including the opposing side's lawyers and a court-appointed
> expert whom Chevron accuses of fraud. Some of the participants, he said, have set
> up multiple e-mail accounts, and tracing the communication among them could

---

[11] Declan McCullagh, *Chevron targets Google, Yahoo, Microsoft e-mail accounts*, CNET (Oct. 11, 2012), http://news.cnet.com/8301-13578_3-57530915-38/chevron-targets-google-yahoo-microsoft-e-mail-accounts/.

[12] Gmail, http://en.wikipedia.org/w/index.php?title=Gmail&oldid=518861456 (last visited Oct. 22, 2012).

help the company prove its contention that the lawsuit is nothing more than an elaborate extortion scheme.

Baker, *Chevron seeks e-mail logs in Ecuador suit*, S.F. CHRONICLE.[13] Chevron could learn this information by seeking discovery directly from those "key figures" and "participants" to ask whether the email addresses belong to them, rather than issuing sweeping subpoenas to third-party service providers that implicate the First Amendment rights of scores of people who are not parties to the case.

Chevron's fishing expedition violates the Does' associational rights, and the subpoenas should be quashed in their entirety for this reason alone.

**B.      The Subpoenas Unnecessarily Violate The Does' Privacy Interests Under the California Constitution.**

For many of the reasons why Chevron's subpoenas fail under the United States Constitution, they independently violate the Does' right to privacy under the California Constitution, Article 1, section 1.  "The right of privacy is an 'inalienable right' secured by article I, section 1 of the California Constitution.  It protects against the unwarranted, compelled disclosure of various private or sensitive information regarding one's personal life, including his or her . . . political affiliations . . . and confidential personnel information."  *Tien v. Superior Court*, 139 Cal. App. 4th 528, 539 (Cal. Ct. App. 2006).  The right of privacy in California is "in many respects broader than its federal constitutional counterpart, [in that it] protects individuals from the invasion of their privacy not only by state actors but also by private parties."  *Leonel v. American Airlines, Inc.*, 400 F.3d 702, 711 (9th Cir. 2005).  In order for information to be protected from discovery under the California right to privacy, the Does must demonstrate three elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) a showing that production would lead to a serious invasion of the protected privacy interest.

---

[13] Chevron explained its rationale similarly to another media outlet: "We know the plaintiffs' lawyers created e-mail addresses intended to be aliases to disguise the ultimate user, and used dozens of email accounts to transfer fraudulent documents and to try to conceal their scheme. Among other things, the subpoenas serve to flush out which e-mail addresses are legitimate and have been used for benign purposes." McCullagh, *Chevron targets Google, Yahoo, Microsoft e-mail accounts*, CNET.

5:12-mc-80237 CRB (NC)                        MOTION TO QUASH

1   *Id.* at 712, citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994).  Movants'

2   privacy interests on the one hand, must then be balanced against "right of a civil litigant to discover

3   relevant facts" on the other.  *Tien*, 139 Cal. App. 4th at 539, quoting *Hooser v. Superior Court*, 84

4   Cal. App. 4th 997, 1004 (Cal. Ct. App. 2000).

5       The Does have a legally protected privacy interest in their identities and locations,

6   particularly the location of their homes. *See, e.g., Planned Parenthood Golden Gate v. Superior*

7   *Court*, 83 Cal. App. 4th 347, 358-60 (Cal. Ct. App. 2000) ("Human experience compels us to

8   conclude that disclosure [of identity and location] carries with it serious risks which include, but

9   are not limited to: the nationwide dissemination of the individual's private information, the

10  offensive and obtrusive invasion of the individual's neighborhood for the purpose of coercing the

11  individual to stop constitutionally-protected associational activities and the infliction of threats,

12  force and violence.").  The Does' privacy interests in their identities and locations are particularly

13  potent in the context of a global activism campaign that has included threats to various Does'

14  personal safety.  Many of the individuals whose names and location information Chevron seeks

15  have already been subjected to harassment due to their connection with the litigation against

16  Chevron or related activism.

17      The Does have a reasonable expectation of privacy in their identity and location

18  information. The mere fact that some Does participated in litigation against Chevron or associated

19  advocacy gave them little reason to expect that their identities and information that could track

20  their location over nearly a decade would be handed to Chevron.  And finally, for all of the reasons

21  discussed above, including harm to the Does' free speech and associational interests, the chilling

22  effects of disclosure, the likelihood of harassment, and the threat to some of the Does' physical

23  safety, disclosure of the information Chevron seeks would lead to a "serious invasion" of the Does'

24  privacy interests.  *See Hill*, 7 Cal. 4th at 37.

25      Balanced against Chevron's stated need for the information—to discover whether these

26  email accounts belong to "key figures" in the litigation—the Does' privacy interests prevail.  There

27  are other, better, methods to discover the information Chevron seeks, such as in regular party

28

23

discovery.  Chevron cannot show that its need for these subpoenas, which seek nearly a decade's worth of location information for dozens of non-party lawyers, bloggers, journalists, and activists, outweighs the privacy interests of those non-parties.  If Chevron is unable to make such a showing, the California Constitution mandates that these subpoenas be quashed. *See Planned Parenthood Golden Gate*, 83 Cal. App. 4th at 369.

### C.    The Subpoenas Are Facially Overly Broad and Should be Quashed in Their Entirety.

Finally, the Court should quash these subpoenas under Federal Rule of Civil Procedure 26(c) because they are grossly overbroad as drafted, and are therefore oppressive and unreasonable.  *See, e.g.*, *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995) (non-party may contest subpoena on irrelevancy grounds); *Fallon v. Locke, Liddell & Sapp, LLP*, 2005 U.S. Dist. LEXIS 46987, at **4-5 (N.D. Cal. Aug. 4, 2005) (same); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (subpoena overly broad where it sought 10 years of records); *Xcentric Ventures, LLC v. Arden*, 2010 U.S. Dist. LEXIS 13076, at **5-8 (N.D. Cal. Jan. 27, 2010) (limiting scope of overly broad subpoena for user information served on Google).

The subpoenas are overly broad as drafted because they seek nine years of detailed email usage information about 71 separate email addresses, thus demanding a catalog of the account holders' daily movements since 2003. Even as verbally clarified by Chevron, the data disclosed here would not only constitute an invasion of the Does' personal privacy, but also include a tremendous amount of information wholly irrelevant to Chevron's claims and defenses, which is beyond the scope of reasonable or fair discovery.

Quashing the subpoenas in their entirety is especially important here, where it is likely that a number of the non-parties whose information is sought are not present in the United States and do not speak English sufficiently to engage in sophisticated American litigation. Many may not have understood the notices that Google and Yahoo! emailed (which were presumably in English), much

24

1   less been able to muster the wherewithal to secure counsel in Northern California to represent them

2   here.

3          It is also important because of the reasonable concern that the real purpose of these

4   subpoenas is to harass and intimidate the activists, interns, young lawyers, volunteers and

5   journalists, both in the United States and around the world, who have shown some sympathy for or

6   supported the Ecuadoran plaintiffs who sought judicial recourse against Chevron. Regardless of

7   whether those fears are well founded, the Court should not permit Chevron's unnecessary and

8   unwarranted fishing expedition into these individuals' day-to-day activities without a serious and

9   well-documented showing that each of these individuals was in fact part of the conspiracy it

10  alleges.

11  **V.      CONCLUSION**

12         For the foregoing reasons, the September 18, 2012 subpoenas served by Chevron upon

13  Google and Yahoo! should be quashed in their entirety.

14  DATED:  October 22, 2012                  Respectfully submitted,

15                                            ELECTRONIC FRONTIER FOUNDATION

16                                            _____/s/ Marcia Hofmann_____

17                                            Marcia Hofmann, Esq.
                                              Cindy A. Cohn, Esq.
18                                            Nathan Cardozo, Esq.
                                              454 Shotwell Street
19                                            San Francisco, CA 94110
                                              Telephone:  (415) 436-9333
20                                            Facsimile:   (415) 436-9993

21
                                              Marco Simons (SBN 237314)
22                                            marco@earthrights.org
                                              EARTHRIGHTS INTERNATIONAL
23                                            1612 K Street NW, Suite 401
                                              Washington, DC 20006
24                                            Telephone: (202) 466-5188

25
                                              *Counsel For Non-Party John Doe Movants*
26

27

28                                        25