1  Cindy A. Cohn (SBN 145997)
   cindy@eff.org
2  Marcia Hofmann (SBN 250087)
   marcia@eff.org
3  Nathan Cardozo (SBN 259097)
   nate@eff.org
4  ELECTRONIC FRONTIER FOUNDATION
   454 Shotwell Street
5  San Francisco, CA 94110
   Telephone: (415) 436-9333
6  Facsimile: (415) 436-9993

7  Marco Simons (SBN 237314)
   marco@earthrights.org
8  EARTHRIGHTS INTERNATIONAL
   1612 K Street NW, Suite 401
9  Washington, DC 20006
   Telephone: (202) 466-5188
10

11 Counsel for Non-Party Movants

12             **UNITED STATES DISTRICT COURT**

13        **FOR THE NOTHERN DISTRICT OF CALIFORNIA**

14             **SAN FRANCISCO DIVISION**

15 CHEVRON CORP.,                    ) Case No. 5:12-mc-80237 CRB (NC)
                                     )
16                       Plaintiff,  ) **NOTICE OF MOTION AND MOTION OF**
                                     ) **NON-PARTY MOVANTS TO QUASH**
17                                   ) **SUBPOENAS TO GOOGLE, INC. AND**
        v.                           ) **YAHOO! INC. SEEKING IDENTITY AND**
18                                   ) **EMAIL USAGE INFORMATION;**
   STEVEN DONZIGER, et al.           ) **MEMORANDUM OF POINTS AND**
19                                   ) **AUTHORITIES IN SUPPORT OF**
                      Defendants.    ) **MOTION TO QUASH**
20                                   )
21                                   )
                                     ) Date:  January 16, 2013
22                                   ) Time: 1:00 PM
                                     ) Place: Courtroom A - 15th Floor
23                                   ) Hon. Nathanael Cousins
                                     )
24 _____ )

25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2

TO PLAINTIFF CHEVRON CORP. AND ALL COUNSEL OF RECORD:

3

    **PLEASE TAKE NOTICE** that on January 16, 2013 at 1:00 PM at 450 Golden Gate

4

Avenue, Courtroom A, 15th Floor, San Francisco, California, the Non-Party Movants hereby move

5

the District Court for the Northern District of California to quash the subpoenas issued by Plaintiff

6

Chevron Corporation on or around September 19, 2012 to non-party companies Google and

7

Yahoo! in the District Court for the Northern District of California.  The subpoenas seek identity

8

and email usage information associated with 44 Gmail addresses and 27 Yahoo! email addresses.

9

The subpoenas were issued in support of a civil action filed in the District Court for the Southern

10

District of New York on February 1, 2011 captioned *Chevron Corp. v. Donziger, et al.*, Case

11

No. 11-cv-0691 (LAK).

12

    As discussed in the memorandum below, Chevron's subpoenas should be quashed

13

because they violate the constitutional rights of anonymity, freedom of association, and privacy of

14

non-party online users.  This motion, made pursuant to Federal Rule of Civil Procedure 45(c) and

15

California Code of Civil Procedure § 1987.1, is based on this notice, the attached memorandum of

16

points and authorities, all accompanying declarations and exhibits, and on such oral argument as

17

may be received by this Court.  The Non-Party Movants respectfully request that this Court grant

18

this motion and quash the subpoenas issued by Chevron in their entirety.

19

20

DATED:  December 19, 2012        Respectfully submitted,

21

                ELECTRONIC FRONTIER FOUNDATION

22

                    /s/ Marcia Hofmann

23

                Marcia Hofmann, Esq.
                Cindy A. Cohn, Esq.

24

                Nathan Cardozo, Esq.
                454 Shotwell Street

25

                San Francisco, CA 94110
                Telephone:  (415) 436-9333

26

                Facsimile:   (415) 436-9993

27

28

1

Marco Simons (SBN 237314)
marco@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188

*Counsel for Non-Party Movants*

2

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS .....................................................................................1

     A.   Chevron's September 19, 2012 Subpoenas to Google, Yahoo!, and Microsoft .....2

     B.   The Non-Party Movants ...................................................................................4

     C.   The Nature of the Information Sought by Chevron.................................................6

III.    LEGAL STANDARD ............................................................................................8

IV.     ARGUMENT ........................................................................................................9

     A.   The Subpoenas Violate the Non-Party Movants' Constitutional Rights Under
        the First Amendment. .......................................................................................9

          1.   The Subpoenas Violate the Does' First Amendment Right to
             Anonymous Speech. ...................................................................................10

               a.   The Right to Engage in Anonymous Speech is Protected by the
                  First Amendment. .........................................................................10

               b.   Anonymous Speakers Enjoy a Qualified Privilege Under the
                  First Amendment. .........................................................................11

               c.   As Chevron's Subpoena Demands for Identity Information
                  Cannot Survive the Scrutiny Required By the First Amendment,
                  It Must Be Quashed Under Federal Rule of Civil Procedure 45
                  and California Civil Procedure Code § 1987.1. ............................13

                   i.   Chevron Did Not Issue These Subpoenas in Good Faith
                      or for Any Proper Purpose.................................................14

                     ii.   Chevron Has Made No Showing that the Information
                      Sought Relates to a Core Claim or that it is Directly and
                      Materially Relevant to that Claim. ....................................14

                     iii.   Chevron Has Made No Showing that the Information
                      Sought Is Unavailable from Any Other Source.................15

          2.   The Subpoenas Violate the Non-Party Movants' First Amendment Right
             to Association. ..........................................................................................16

i

a. The Non-Party Movants Enjoy a First Amendment Right to Political Association and to Advocate Controversial Views as a Group. .........................................................................................16

b. The Non-Party Movants Have a Qualified First Amendment Privilege Subject to Heightened Scrutiny That Can Only be Overcome by a Compelling Interest. .............................................18

i. The Non-Party Movants' Right to Association Will be Harmed if Their Identities and Email Usage Information is Disclosed ..................................................19

ii. Disclosure of the Non-Party Movants' Information Does Not Serve a Compelling Interest and Is Not the Least Restrictive Means of Furthering a Compelling Interest. ...21

B. The Subpoenas Unnecessarily Violate The Non-Party Movants' Privacy Interests Under the California Constitution. ...........................................23

C. The Subpoenas Are Facially Overly Broad and Should be Quashed in Their Entirety. ..................................................................................24

V. CONCLUSION .......................................................................................25

ii

MOTION TO QUASH

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anonymous Online Speakers v. U.S. Dist. Court*,
    661 F.3d 1168 (9th Cir. 2011) ................................................................ 9, 10, 18, 19

*Bada Co. v. Montgomery Ward & Co.*,
    32 F.R.D. 208 (S.D. Cal. 1963) ............................................................................ 15

*Bates v. City of Little Rock*,
    361 U.S. 516 (1960) ............................................................................................. 17

*Brock v. Local 375, Plumbers International Union of America, AFL-CIO*,
    860 F.2d 346 (9th Cir. 1988) ............................................................................... 19

*Buckley v. Am. Constitutional Law Found.*,
    525 U.S. 182 (1999) ................................................................................. 11, 16, 21

*Columbia Ins. Co. v. Seescandy.com*,
    185 F.R.D. 573 (N.D. Cal. 1999) ........................................................................ 12

*Compaq Computer Corp. v. Packard Bell Elecs.*,
    163 F.R.D. 329 (N.D. Cal. 1995) ........................................................................ 24

*Doe v. 2theMart.com*,
    140 F. Supp. 2d 1088 (W.D. Wash. 2001) ................................................... *passim*

*Doe v. SEC*,
    No. 11-cv-80184 CRB (NJV), 2011 WL 4593181 (N.D. Cal. Oct. 4, 2011) ....................... 9

*Doe v. SEC*,
    No. 11-cv-80184 CRB (NJV), 2011 U.S. Dist. LEXIS 132983 (N.D. Cal. Nov. 17, 2011). 9

*Dole v. Service Employees Union, AFL-CIO, Local 280*,
    950 F.2d 1456 (9th Cir. 1991) ............................................................................. 19

*Enterline v. Pocono Medical Center*,
    751 F. Supp. 2d 782 (M.D. Pa. 2008)................................................................... 13

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ............................................................................................... 9

*Fallon v. Locke, Liddell & Sapp, LLP*,
    2005 U.S. Dist. LEXIS 46987 (N.D. Cal. Aug. 4, 2005) ..................................... 24

*Fed. Election Comm'n v. Larouche Campaign*,
    817 F.2d 233 (2d Cir. 1987) ................................................................................ 19

iii

*Gibson v. Florida Legislative Investigation Comm.*,
   372 U.S. 539 (1963) ............................................................................ 17

*Grandbouche v. Clancy*,
   825 F.2d 1463 (10th Cir. 1987) ......................................................... 12

*In re Motor Fuel Temperature Sales Practices Litig.*,
   641 F.3d 470 (10th Cir. 2011) ........................................................... 18

*Knox v. SEIU, Local 1000*,
   132 S. Ct. 2277 (2012) ....................................................................... 19

*Leonel v. American Airlines, Inc.*,
   400 F.3d 702 (9th Cir. 2005) ............................................................. 23

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995) ........................................................................... 10

*Meyer v. Grant*,
   486 U.S. 414 (1988) ........................................................................... 10

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) ...................................................... 24

*NAACP v. Button*,
   371 U.S. 415 (1963) ..................................................................... 18, 19

*NAACP v. State of Alabama ex rel. Patterson*,
   357 U.S. 449 (1958) ............................................................... 16, 17, 18

*New York Times v. Sullivan*,
   376 U.S. 254 (1964) ........................................................................... 11

*Perry v. Schwarzenegger*,
   591 F.3d 1126 (9th Cir. 2010) ............................................. 8, 18, 19, 21

*Reno v. ACLU*,
   521 U.S. 844 (1997) ........................................................................... 10

*Roberts v. United States Jaycees*,
   468 U.S. 609 (1984) ........................................................................... 19

*Shelley v. Kraemer*,
   334 U.S. 1 (1948) ............................................................................... 11

*Shelton v. Tucker*,
   364 U.S. 479 (1960) ........................................................................... 17

*Silkwood v. Kerr-McGee Corp.*,
   563 F.2d 433 (10th Cir. 1977) ........................................................... 12

iv

*Sony Music Entm't Inc. v. Does 1-40,*
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) .................................................................. 12

*Thomas v. Collins,*
    323 U.S. 516 (1945) ............................................................................................ 18

*United States ex rel. Newsham v. Lockheed Missiles and Space Co.,*
    190 F.3d 963 (9th Cir. 1999) ................................................................................ 9

*United States v. Jones,*
    132 S. Ct. 945 (2012) ................................................................................... 17, 18

*United States v. Maynard,*
    615 F.3d 544 (D.C. Cir. 2010),
    *aff'd sub nom. Jones,* 132 S. Ct. 945 ................................................................. 18

*USA Technologies, Inc. v. Doe,*
    713 F. Supp. 2d 901 (N.D. Cal. 2010)............................................................ 9, 13

*Xcentric Ventures, LLC v. Arden,*
    2010 U.S. Dist. LEXIS 13076 (N.D. Cal. Jan. 27, 2010)................................... 25

**STATE CASES**

*Dendrite Int'l v. Doe No. 3,*
    775 A.2d 756 (N.J. App. 2001) .......................................................................... 12

*Hill v. Nat'l Collegiate Athletic Ass'n,*
    7 Cal. 4th 1 (1994)....................................................................................... 23, 24

*Hooser v. Superior Court,*
    84 Cal. App. 4th 997 (Cal. Ct. App. 2000)........................................................ 23

*Mobilisa, Inc. v. Doe,*
    170 P.3d 712 (Ariz. App. 2007) ......................................................................... 13

*Planned Parenthood Golden Gate v. Superior Court,*
    83 Cal. App. 4th 347 (Cal. Ct. App. 2000)................................................... 23, 24

*Tien v. Superior Court,*
    139 Cal. App. 4th 528 (Cal. Ct. App. 2006)...................................................... 23

**STATE STATUTES**

California Code of Civil Procedure § 1987.1 ....................................................... 1, 8, 13

v

**FEDERAL RULES**

Federal Rule of Civil Procedure 26 ............................................................................ 8, 24

Federal Rule of Civil Procedure 45 .................................................................... 1, 8, 9, 13

**FEDERAL CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I..............................................................................................*passim*

**STATE CONSTITUTIONAL PROVISIONS**

CA Const., Article 1, section 1 ...................................................................................... 23

vi

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 45(c) and California Code of Civil Procedure Code § 1987.1, the Non-Party Movants hereby move to quash Chevron's subpoenas issued from this Court on or around September 19, 2012 to Google and Yahoo! seeking identity and email usage information about 71 email accounts from 2003 to the present.  In addition to linking their identities with their speech, this information will likely reveal the location and associations of these non-parties, traceable over nearly a decade.

Chevron's sweeping subpoenas would reveal an enormous amount of sensitive details about the Non-Party Movants, despite the fact that Chevron has alleged no causes of action against them in the underlying litigation.  Chevron seeks identities and nine years of information about the Non-Party Movants' use of their email accounts—including IP addresses, which correlate to specific geographic locations, and the date and time of each log-in.  This information would allow Chevron to create a comprehensive and detailed map of each person's movements over a nine-year period. This information would also allow Chevron a virtual itinerary of who each individual has met with, what buildings they have worked out of, what organizations they have worked with, and other potentially sensitive information implicating associational freedoms, which are protected by the First Amendment.  In the aggregate, such information could be incredibly revealing—resulting in not only a violation of privacy, but for some, a fear for their personal safety.  Furthermore, the subpoenas are facially overbroad and seek information well beyond the permissible scope of discovery.

## II.      STATEMENT OF FACTS

This case arises from two decades of contentious environmental litigation.  In 1993, a group of Ecuadorian citizens sued Texaco, Inc. in the United States for pollution and other damage caused by oil extraction activities in the Amazon.  Chevron Corporation acquired Texaco in 2001, and successfully fought to move the litigation to Ecuador's judicial system in 2003.  In 2011, an Ecuadorian court handed down a judgment of more than $17 billion against the oil company.

1

Chevron's strong feelings about its opponents in the litigation are well documented. Chevron's former company spokesman Donald Campbell, for instance, once said, "we're going to fight this until hell freezes over—and then we'll fight it out on the ice."[1]  On February 1, 2011, Chevron filed suit against more than 50 lawyers, organizations, plaintiffs, and other individuals involved in the environmental case in Ecuador, alleging that they obtained the judgment through fraud and other illegal means.  *Chevron Corp. v. Donziger, et al.*, Case No. 11-cv-0691 (LAK) (S.D.N.Y.).  This case is the source of the subpoenas at issue here.

**A.      Chevron's September 19, 2012 Subpoenas to Google, Yahoo!, and Microsoft**

On September 19, 2012, Chevron served sweeping subpoenas upon Google, Yahoo!, and Microsoft demanding identity and email usage information associated with 101 email accounts from 2003 to present.  The subpoenas to Google and Yahoo! were issued by this Court, and are the ones this motion seeks to quash.[2]

The subpoena to Google specifically seeks identity information and email usage records associated with 44 email addresses.  The subpoena issued to Yahoo! seeks the same information with respect to 27 email addresses.  They each demand the production of all documents related to

(A)      identity of the users of all of the listed email addresses, including but not limited to documents that provide all names, mailing addresses, phone numbers, billing information, date of account creation, account information and all other identifying information associated with the email address under any and all names, aliases, identities or designations related to the email address; [and]

(B)      the usage of all of the listed email addresses, including but not limited to documents that provide IP logs, IP address information at time of registration and subsequent usage, computer usage logs, or other means of recording information concerning the email or Internet usage of the email address[.][3]

---

[1] Barbara Leonard, *Ecuadoreans Win Asset Seizure Against Chevron*, COURTHOUSE NEWS SERVICE (October 17, 2012) https://www.courthousenews.com/2012/10/17/51369.htm.
[2] The subpoena to Microsoft was issued by the District Court for the Northern District of New York, and the Non-Party Movants have separately moved to quash that subpoena in that court.
[3] The Google subpoena contains an additional request for IP address information associated with a specific email.  Harrison Decl. Ex. 1.  This information is also likely covered by category (B).

1    Declaration of Michelle Harrison (hereafter "Harrison Decl.") Ex. 1.

2         Despite the broad wording of category (B), Chevron's attorneys have verbally clarified that

3    this description was not intended to include any contents of communications or email header

4    information, which would reveal the names and IP addresses of senders and recipients of messages.

5    Nevertheless, Chevron seeks IP addresses associated with the computers that logged into the email

6    accounts, the dates and times of log-in, session durations, and possibly information about other

7    services used by the account holder.[4]   Based on informal conversations between Non-Party

8    Movants' counsel and Google and Yahoo!, it appears that the providers' policy is not to keep nine

9    years of this IP-related information.  However, neither provider has given the precise timeframe or

10   amount of information retained for each Non-Party Movant.

11        Google and Yahoo! attempted to notify the affected account holders about the subpoenas by

12   email, though it is unclear how many actually received notice.  The Non-Party Movants and

13   Chevron engaged in an extended meet-and-confer process between September 25, 2012 and

14   October 30, 2012, culminating in the filing of a Joint Letter Brief on November 6, 2012, in an

15   attempt to resolve this dispute. (Docket No. 35) ("Joint Letter Brief"). The account holders of 31 of

16   these accounts now bring this motion to quash the subpoenas in their entirety because they infringe

17   upon fundamental constitutional rights to anonymity, association, and privacy, and are facially

18   overbroad.[5]

19

20

21   _____

[4] The information responsive to Chevron's subpoenas may vary from provider to provider, because
22   they may not all retain precisely the same data.

[5] In addition to the 29 anonymous Non-Party Movants, two additional non-parties, John Rodgers
23   and Laura Belanger, who previously represented themselves *pro se* in this action, have retained the
     same counsel as the Non-Party Movants and join the Non-Party Movants' efforts to resolve this
24   dispute.  Mr. Rodgers and Ms. Belanger have confirmed in writing to Chevron their ownership of
     the email addresses rodgers.john@gmail.com and belanger.laura@gmail.com, as well as the time
25   period of their involvement in the Ecuadorian matter.  As such, Chevron has withdrawn its request
     for identity information for Ms. Belanger and Mr. Rodgers, and has limited its request for computer
26   usage and IP log information to those time periods.  Ms. Belanger and Mr. Rodgers still object to
     the subpoena to Google in its limited form and join Non-Party Movants' motion to that extent.

27

28

1

   **B.      The Non-Party Movants**

2       None of the Non-Party Movants who bring this motion is a defendant in Chevron's

3  underlying case.  As the representative declarations submitted with this motion show, some of the

4  Non-Party Movants (the anonymous Non-Party Movants are referred to here as "John Doe," or

5  collectively "Does") worked briefly on the litigation in Ecuador as volunteer summer interns

6  several years ago.[6]  *See, e.g.,* Declaration of John Doe 1 (Owner of cortelyou@gmail.com)

7  (hereafter "John Doe 1 Decl.") ¶ 5; Declaration of John Doe 2 (Owner of firger@gmail.com)

8  (hereafter "John Doe 2 Decl.") ¶ 5.  Others had no direct connection with the litigation, but have

9  engaged in broader environmental advocacy efforts concerning oil extraction in the Amazon.  *See,*

10 *e.g.,* Declaration of Declaration of John Doe 3 (Owner of tegelsimeon@gmail.com) (hereafter

11 "John Doe 3 Decl.") ¶¶ 4-5; Declaration of Declaration of John Doe 4 (Owner of

12 kevinkoenigquito@gmail.com) (hereafter "John Doe 4 Decl.") ¶ 4.  Some of the Does are attorneys

13 who have worked on the litigation in the past.  *See, e.g.,* John Doe 1 Decl. ¶¶ 4-5; John Doe 2 Decl.

14 ¶¶ 4-5; Declaration of John Doe 5 (Owner of ampage@gmail.com) (hereafter "John Doe 5 Decl.")

15 ¶ 5.  One Doe is an attorney who never worked on the litigation, but is simply a personal friend of

16 Steven Donziger.  Declaration of John Doe 6 (Owner of eriktmoe66@yahoo.com) (hereafter "John

17 Doe 6 Decl.") ¶¶ 4-5.  These attorney Does have all use their email accounts not only for personal

18 correspondence, but also to engage in privileged, confidential communications related to their legal

19 representations, including legal work unconnected to the Chevron matter.  John Doe 1 Decl. ¶ 7;

20 John Doe 2 Decl. ¶ 7; John Doe 5 Decl. ¶ 7.

21       Some of the Does check their email accounts regularly when they travel, and are concerned

22 that the disclosure of their IP logs to Chevron will produce a virtual itinerary of their whereabouts

23 over nine years, including the places they have visited, the buildings they have worked out of, and

24 the organizations they have worked with.  *See* John Doe 2 Decl. ¶ 9; John Doe 5 Decl. ¶ 9.

25

---

[6] As noted in the Harrison Declaration filed herewith, the Does have provided the Court
26 representative declarations to illustrate the basic issues the Does here face.  Should the Court deem
   it necessary, counsel can provide declarations from all 29 Does, as well as Mr. Rodgers and Ms.
27 Belanger.

28

A number of the Does are bloggers and/or journalists, and have been published in many well-known and respected newspapers and other media sources. *See, e.g.,* John Doe 2 Decl. ¶ 4; John Doe 3 Decl. at ¶ 4; Declaration of John Doe 7 (Owner of richard.clapp@gmail.com) (hereafter "John Doe 7 Decl.") at ¶ 4. Some of these Does have used their email accounts to communicate with confidential sources. John Doe 2 Decl. ¶ 7; John Doe 3 Decl. ¶ 10. Sources may take great risks to speak with journalists, and one Doe has said his use of email account to communicate with them would be chilled if he believed Chevron might be able to obtain his account details. John Doe 3 Decl. ¶ 10.[7]

An example of the staggering overbreadth of Chevron's demand is the fact that the email address kevinjonheller@gmail.com was originally included in the subpoena to Google. That email account belongs to Kevin Jon Heller, an Australian law professor and well-known blogger and journalist. Professor Heller's information was apparently sought because he had exchanged two non-substantive emails with the Ecuadorian plaintiffs' lead attorney, Steven Donziger. Harrison Decl. Ex. 2. After Professor Heller learned of the subpoena for nine years of information about his email use and secured legal representation from the American Civil Liberties Union, Chevron abruptly withdrew its demand for information about his account. In a blog post about the incident, Professor Heller said he felt Chevron's demand was nothing more than an attempt "to harass and intimidate me." *Id.*

Some of the Does understand that others have been subjected to harassment, threats, and intimidation for working in connection with the litigation against Chevron in Ecuador or related activism efforts. *See* John Doe 4 Decl. ¶ 11; John Doe 5 Decl. ¶ 10. Indeed, some Does have declined opportunities to work on the case against Chevron for fear that they might experience retribution. John Doe 1 Decl. ¶ 10; John Doe 6 Decl. ¶ 9. Other Does are concerned that their personal safety could be endangered by the disclosure of the information Chevron seeks. John Doe 4 Decl. ¶¶ 8 & 10; John Doe 5 Decl. ¶ 10. Many of the Does assert that if their account

---

[7] This motion's use of masculine pronouns to refer to any John Doe is generic and should not be construed as an admission of that individual's gender.

1    information is disclosed to Chevron, their future expressive activities will be chilled. John Doe 1

2    Decl. ¶ 11; John Doe 2 Decl. ¶¶ 11-12; John Doe 3 Decl. ¶¶ 9-10; John Doe 4 Decl. ¶¶ 11-13; John

3    Doe 5 Decl. ¶ 11; John Doe 6 Decl. ¶¶ 10-11; John Doe 7 Decl. ¶¶ 10-11.

4        Other than a bald assertion that the Non-Party Movants have associated with Mr. Donziger,

5    *see* Joint Letter Brief at 4-5, Chevron has made no attempt to explain why these individuals—

6    against whom Chevron has alleged no cause of action or any wrongdoing—have been targeted by

7    these discovery requests.   Nor has Chevron given any indication why it has demanded usage

8    records about each and every Non-Party Movant over the full nine-year span of Mr. Donziger's

9    alleged activities.

10       **C.    The Nature of the Information Sought by Chevron**

11       The information Chevron seeks will enable the company to identify and track the locations

12   of the Non-Party Movants over time, as well as learn when the Non-Party Movants likely met with

13   other people.  This is due to the unique nature of Internet Protocol (IP) addresses.

14       An IP address is a numeric value used to identify the network location of a computer or set

15   of computers on the Internet. Internet routers use the IP address to decide where to send

16   communications addressed to a particular computer user.  Declaration of Seth Schoen ¶ 3 (hereafter

17   "Schoen Decl.").

18       IP addresses are allocated to Internet service providers and often reflect the general physical

19   location of the area they serve.  This means that servers located in New York have IP addresses

20   roughly trackable to New York, and servers in Ecuador have IP addresses roughly trackable to

21   Ecuador.  This geographic location information is generally publicly available.  For instance, the IP

22   address 199.83.220.233 is easily trackable to San Francisco through free public websites such as

23   www.geobytes.com.  Even when location information is not publicly available, a subpoena to an

24   ISP can generally elicit the specific geographic location for a particular IP address.  Schoen Decl.

25   ¶ 12.

26       ISPs can further delegate these addresses to smaller entities such as businesses, Internet

27   cafés, or smaller ISPs.  ISPs can also assign an IP address directly to an individual computer.

28

1    Schoen Decl. ¶ 4.   Because IP addresses are allocated in this way, they can convey not only

2    approximate information about a computer's location, but also how the computer is connected to

3    the Internet, and what individual or entity is using that computer to connect.   Schoen Decl. ¶ 5.

4         Many host computers of websites, including the operators of popular web-based email

5    services like Microsoft Hotmail, Yahoo! Mail and Gmail maintain logs that list the IP address of

6    visitors along with date and time information.   Websites that utilize a log-in feature typically

7    maintain a log of IP addresses and other data associated with the particular user who logged in,

8    such as the date and time of log-in and the duration of time the user visited the website.   Schoen

9    Decl. ¶ 8.

10        Chevron claims that its request for nine years of IP logs implicates data no more sensitive

11   than a request for a phone number.   Joint Letter Brief at 4-5.   This argument fails even a cursory

12   analysis.   A large amount of data accumulated over a lengthy period of time that includes IP

13   addresses and dates and times of usage sessions—as one might get from a heavily trafficked and

14   frequently used web service such as an email provider—can readily present a detailed picture of a

15   person's movements from one location to another.   Schoen Decl. ¶ 9.   For instance, if a laptop's

16   owner uses the machine from her workplace in the morning, a café in the afternoon, and her home

17   in the evening, she will present at least three different IP addresses over the course of a single day.

18   This information could demonstrate that a person accessed the Internet from a precise physical

19   location, like a building or a home or even a particular organization's office.   Schoen Decl. ¶ 11.

20        Moreover, this information can reveal a person's physical proximity to other Internet users

21   who may share the same IP address through a wireless device, a router or another form of shared

22   Internet connection.   Schoen Decl. ¶ 15.   This information could be used to map a person's

23   associates.   For example, if Internet usage records showed that two individuals were accessing the

24   Internet from the same IP address on a particular day and time, this would tend to show that they

25   were accessing the same Internet network at the same time.   This would suggest they were in the

26   same physical location at the same time, and could create a reasonable inference that they met with

27   each other.   Schoen Decl. ¶ 16.

28

5:12-mc-80237 CRB (NC)                        MOTION TO QUASH

1    A person who checks email frequently might access a given email service multiple times

2    per day, and a long-term view of data about that use could reflect significant facts about that

3    person's work habits and personal relationships that could be quite intimate.  For example, if the IP

4    logs show that a person signed into his account from an IP address associated with another person's

5    home, that information suggests the user visited that home.  If the user signs into his email account

6    using that same IP address late at night and again the following morning, that information creates a

7    reasonable inference that the user spent the night at that home, which may suggest that he has an

8    intimate relationship with the person who lives there.  If the user repeats this log-in pattern over

9    time, it might suggest he spends many nights at that home, and that his relationship with the person

10   living there is a relatively serious one.  Schoen Decl. ¶ 18.

11   **III.    LEGAL STANDARD**

12   When a party seeks discovery encroaching upon freedoms protected by the First

13   Amendment, the party must show that the "information sought is *highly relevant* to the claims or

14   defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of

15   Procedure 26(b)(1)."  *Perry v. Schwarzenegger*, 591 F.3d 1126, 1141 (9th Cir. 2010) (emphasis

16   added).  Furthermore, the discovery request must be "carefully tailored to avoid unnecessary

17   interference with protected activities, and the information must be otherwise unavailable."  *Id*.

18   This Court must also quash a subpoena if it "requires disclosure of privileged or other

19   protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv).

20   Similarly, under the California Code of Civil Procedure § 1987.1, a court may quash a subpoena

21   and "make any other order as may be appropriate to protect the person from unreasonable or

22   oppressive demands, including unreasonable violations of the right of privacy of the person.

23   Section 1987.1(b)(5) specifically authorizes "[a] person whose personally identifying

24   information . . . is sought in connection with an underlying action involving that person's exercise

25   of free speech rights" to bring a motion to quash.[8]

26

27   _____

[8] While ostensibly procedural, the specifically articulated protections for anonymous speakers in California Code of Civil Procedure § 1987.1 are substantive and are based upon the same free

28   *(footnote continued on following page)*

This Court is the appropriate venue for this motion because subpoenas must be challenged before the issuing court, not the court that oversees the underlying litigation.  *See* Fed. R. Civ. P. 45(c)(3)(A); *see also USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d 901, 905 (N.D. Cal. 2010) ("This motion to quash is properly before the Court pursuant to Fed. R. Civ. P. 45(c) because the subpoena in question was issued to Yahoo! by the Northern District of California.").

## IV.    ARGUMENT

### A.    The Subpoenas Violate the Non-Party Movants' Constitutional Rights Under the First Amendment.

The subpoenas should be quashed in their entirety because they violate the Non-Party Movants' First Amendment rights to anonymous speech and association. Internet users enjoy a First Amendment interest in their Internet subscriber information. *Anonymous Online Speakers v. U.S. Dist. Court*, 661 F.3d 1168, 1173 (9th Cir. 2011); *see also Doe v. SEC*, No. 11-mc-80184 CRB (NJV), 2011 U.S. Dist. LEXIS 132983, at *8 (N.D. Cal. Nov. 17, 2011) (finding a "protectable speech interest in ISP subscriber information").[9] Chevron's desire to fish through nearly a decade of personal information about non-parties to its lawsuit does not trump these constitutional rights.

The Court should treat these subpoenas with particular skepticism because compliance will chill political speech about damage to the environment and harm to people caused by oil exploration and related activities—speech that receives the highest level of First Amendment

---

*(footnote continued from preceding page)*
speech concerns which animate California's anti-SLAPP statute. *See, e.g., United States ex rel. Newsham v. Lockheed Missiles and Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding that California's anti-SLAPP statute, while procedural, is manifestly substantive in design and intent and thus not barred in federal court under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  To the extent that Chevron seeks discovery in support of at least one non-federal claim challenging exercise of First Amendment rights, the movants' motion to quash is appropriate under not only Federal Rule of Civil Procedure 45, but also California Code of Civil Procedure § 1987.1. Here, the underlying complaint alleges non-federal claims for damages under New York state law.
[9] In the Joint Letter Brief at 5, Chevron cites an earlier order issued by Magistrate Judge Vadas in *Doe v. SEC,* No. 11-mc-80184 CRB (NJV), 2011 WL 4593181, at *4 (N.D. Cal. Oct. 4, 2011). This order was superseded a month later by Judge Breyer's *de novo* decision in No. C 11-80184 CRB, 2011 U.S. Dist. LEXIS 132983.

5:12-mc-80237 CRB (NC)

protection.   *Meyer v. Grant*, 486 U.S. 414, 422, 425 (1988) (describing the First Amendment protection of "core political speech" to be "at its zenith").

### 1. The Subpoenas Violate the Does' First Amendment Right to Anonymous Speech.

Under the broad protections of the First Amendment, speakers have not only a right to organize and engage in political advocacy, but also the right to do so anonymously. Accordingly, the First Amendment requires that those who seek to discover the identities of their critics demonstrate a compelling need for such identity-related information before obtaining that discovery.[10] There is no such need in this case.

### a. The Right to Engage in Anonymous Speech is Protected By the First Amendment.

The United States Supreme Court has consistently defended the right to anonymous speech in a variety of contexts, noting that "[a]nonymity is a shield from the tyranny of the majority . . . [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from retaliation . . . at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). Anonymity receives the same constitutional protection whether the means of communication is a political leaflet or an Internet message board or an email. *See Reno v. ACLU*, 521 U.S. 844, 870 (1997); *Anonymous Online Speakers*, 661 F.3d at 1173. *See also*, *e.g.*, *Doe v. 2theMart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) ("The right to speak anonymously extends to speech via the Internet. Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas."). These fundamental rights protect anonymous speakers from forced identification, either from overbroad statutes or unwarranted discovery requests.

Email addresses that appear to reflect an individual's name are entitled to just as much protection as those that do not. And in a statement to the San Francisco Chronicle, Chevron confirmed that the identity of each account holder remains in dispute, explaining that the company

---

[10] As discussed above, Chevron has dropped its request for identity information as to Mr. Rodgers and Ms. Belanger. As such, the arguments in this section apply only to the anonymous "John Doe" Non-Party Movants.

**MOTION TO QUASH**

seeks the identities behind the accounts because it "is trying to find out whether some of the e-mail addresses actually belong to key figures in the case[.]"[11]

Yet here Chevron takes a different approach, claiming that it is entitled to learn the identities of the Does because it already knows them from the names embedded in some of the addresses. *See* Joint Letter Brief at 4. That, of course, would make these requests redundant and wholly unnecessary. Chevron further states that "[t]he only email accounts at issue whose owners are not already publicly known were used in connection with the alleged fraud[.]" *Id*. at 5. However, Chevron has made no allegations of fraud against the Does, and, of course, many of the email addresses listed on the subpoenas are not the names of the individuals involved (*e.g.*, coldmtn@gmail.com).

If Chevron believes that some of the email addresses are owned, used, or controlled by the parties to the litigation, the proper vehicle for confirming that belief would be a discovery request directed to those parties. However, because Chevron has requested identifying information regarding non-parties—some of whose identities are not known with certainty by Chevron, and some of whose identities are entirely unknown by Chevron—this Court should treat all of the Does as anonymous speakers, regardless of whether their email addresses appear to reflect a name.

### b. Anonymous Speakers Enjoy a Qualified Privilege Under the First Amendment.

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts to pierce anonymity are subject to a qualified privilege.[12] Courts must "be vigilant . . . [and] guard against undue hindrances to . . . the exchange of ideas." *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 192 (1999). This vigilant review "must be undertaken and analyzed on a case-by-case basis," where the court's "guiding principle is a result based on a

---

[11] David R. Baker, *Chevron seeks e-mail logs in Ecuador suit*, S.F. CHRONICLE (Oct. 1, 2012), http://www.sfgate.com/business/article/Chevron-seeks-e-mail-los-in-Ecuador-suit-3904006.php.

[12] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations. *See, e.g., New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

1  meaningful analysis and a proper balancing of the equities and rights at issue." *Dendrite Int'l v.*

2  *Doe No. 3*, 775 A.2d 756, 761 (N.J. App. 2001).   Just as in other cases in which litigants seek

3  information that may be privileged, courts must consider the privilege before authorizing

4  discovery.  *See, e.g.*, *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y.

5  2004) ("Against the backdrop of First Amendment protection for anonymous speech, courts have

6  held that civil subpoenas seeking information regarding anonymous individuals raise First

7  Amendment concerns."); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing

8  *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a

9  discovery order claims a First Amendment privilege not to disclose certain information, the trial

10  court must conduct a balancing test before ordering disclosure.").   As this Court described in an

11  early Internet anonymity case, "[p]eople who have committed no wrong should be able to

12  participate online without fear that someone who wishes to harass or embarrass them can file a

13  frivolous lawsuit and thereby gain the power of the court's order to discover their identity."

14  *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999).

15       The constitutional privilege to remain anonymous is not absolute.  Plaintiffs may properly

16  seek information necessary to pursue meritorious litigation.  *Id.* at 578 (First Amendment does not

17  protect anonymous Internet users from liability for tortious acts such as defamation).  However,

18  litigants may not use the discovery power to uncover the identities of people who have simply

19  made statements the litigants dislike or who associate with those whom the litigants dislike.

20  Accordingly, courts evaluating attempts to unmask anonymous speakers in cases similar to the one

21  at hand have adopted standards that balance one person's right to speak anonymously with a

22  litigant's legitimate need to pursue a claim.

23       Here the subpoenas chiefly seek identity and location information from non-parties.  While

24  several of the email addresses do appear to belong to parties in the case, Chevron has made no

25  attempt to identify them as such or segregate them from non-parties.

26        The seminal case setting forth First Amendment restrictions upon a litigant's ability to

27  compel an online service provider to reveal an anonymous non-party's identity is *Doe v.*

28

*2theMart.com*, *supra*, in which the Western District of Washington adopted a four-part test for protecting anonymous speakers that has been followed by courts around the country, including by this Court in *USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d at 906.[13] In order for the litigant to obtain the anonymous non-party's identity, he must show:

> (1)     the subpoena seeking the information was issued in good faith and not for any improper purpose,
>
> (2)     the information sought relates to a core claim or defense,
>
> (3)     the identifying information is directly and materially relevant to that claim or defense, and
>
> (4)     information sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*2theMart.com*, 140 F. Supp. 2d at 1095 (line breaks added for clarity).   The district court further stated "non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker."  *Id*.

As the *2theMart.com* court accurately and cogently outlined the important First Amendment interests implicated when a party seeks to unmask anonymous third-party speakers, and as this Court has already endorsed this approach in the past, the holding and reasoning of *2theMart.com* and its progeny should apply here.

### c.   As Chevron's Subpoena Demands for Identity Information Cannot Survive the Scrutiny Required By the First Amendment, It Must Be Quashed Under Federal Rule of Civil Procedure 45 and California Code of Civil Procedure § 1987.1.

At the outset, it appears clear that Chevron fails at least two of the four steps of the *2theMart.com* First Amendment test.  While it has not yet made a showing on the remaining two steps, they seem unlikely to succeed on those, either.  Thus, the subpoenas must be quashed.

---

[13] *See also, e.g., Enterline v. Pocono Medical Center*, 751 F. Supp. 2d 782, 787 (M.D. Pa. 2008); *Mobilisa, Inc. v. Doe*, 170 P.3d 712, 719 (Ariz. App. 2007). Chevron claims that the subpoenas at issue here are "comparable to similar requests that courts have allowed," citing *Enterline*. Joint Letter Brief at 4. But *Enterline* found that a civil subpoena seeking anonymous commenters' identities from a third-party website violated the speakers' First Amendment rights.  751 F. Supp. 2d at 789.

5:12-mc-80237 CRB (NC)                              MOTION TO QUASH

1

   **i.**    **Chevron Did Not Issue These Subpoenas in Good Faith or for Any Proper Purpose.**

2

   Chevron has failed to explain the purpose of its subpoenas for information regarding

3

individuals against whom it has not alleged any causes of action.  The subpoenas seek the identities

4

of the owners of 71 email addresses, along with associated IP address and other information related

5

to those accounts.  Many of the addresses appear to include names similar to both parties and non-

6

parties mentioned by Chevron in the underlying complaint, while others do not appear to include

7

names at all.

8

   Assuming Chevron did not choose the email addresses randomly, it is likely that Chevron

9

suspects they belong to individuals somehow associated with or supportive of its opponents in

10

either its underlying lawsuit in New York or the third lawsuit that case relates to, which started in

11

the New York but was transferred to Ecuador at Chevron's demand.  As discussed in greater detail

12

below, the risk that a political opponent or critic may have his or her identity, location, emailing

13

habits, and other personal information over *nine years* revealed simply by dint of association with

14

other activists critical of Chevron, even activists who might themselves be legitimately subject to

15

litigation, will have a tangible chilling effect on future political speech.  Indeed, many of the non-

16

parties named by Chevron in its subpoenas feel harassed and intimidated by Chevron's pursuit of

17

their personal information, and the litigation tactics employed by Chevron in this case have already

18

silenced some.  *See* John Doe 1 Decl. ¶¶ 9-12; John Doe 2 ¶¶ 11-12; John Doe 3 ¶¶ 9-11; John Doe

19

4 Decl. ¶¶ 11-13; John Doe 5 Decl. ¶¶ 9-11; John Doe 6 Decl. ¶¶ 9-12; John Doe 7 Decl. ¶¶ 10-12.

20

   The fact that the Does feel intimidated by Chevron's tactics raises a serious concern that

21

Chevron has issued these subpoenas for an improper purpose under the first step of the

22

*2theMart.com* test.

23

   **ii.**    **Chevron Has Made No Showing that the Information Sought Relates to a Core Claim or that it is Directly and Materially Relevant to that Claim.**

24

25

   As the Southern District of California has long ago observed, litigants should undertake

26

discovery from non-party witnesses only if party discovery has been exhausted: "These witnesses

27

are not parties to the action, and they should not be burdened with the annoyance and expense of

28

producing the documents sought unless the plaintiff is unable to discover them from the defendant." *Bada Co. v. Montgomery Ward & Co.*, 32 F.R.D. 208, 209-10 (S.D. Cal. 1963). Accordingly, in order for Chevron to obtain the discovery it seeks, the company must show that the information requested relates to a core claim or defense *and* that the identity information is directly and material relevant to that claim or defense. *See 2theMart.com*, 140 F. Supp. 2d at 1096. It cannot do so. The subpoenas at issue here seek the disclosure of the identity of as many as 71 individuals, along with IP logs reflecting locations and all other "usage logs" held by Yahoo! and Google associated with the accounts, over the course of nine years. It is exceedingly unlikely that all this information, or even a sizeable percentage of it, is in any way relevant to Chevron's claims, much less directly and materially relevant to those claims.

An example of the staggering overbreadth of Chevron's subpoenas is the inclusion of Professor Heller's email address in the subpoena to Google. Heller—a blogger, journalist, and law professor—has no apparent connection to Chevron's underlying lawsuit. The "sum total" of his interaction with defendant Steven Donziger was a pair of non-substantive emails. Harrison Decl. Ex. 2. Chevron has made no allegations against Professor Heller, has never sought to add him as a defendant to the underlying lawsuit, and was already aware of his identity at the time it issued the subpoenas seeking nine years of information related to his use of his email account.

Chevron could not show that its request for information about Professor Heller had the slightest relationship to any claim or defense it might have in the underlying litigation, much less that nine years of IP logs are directly and materially relevant to that case. Yet if Chevron's subpoenas are to survive, Chevron must now make this showing individually as to each email address listed in its subpoenas. It cannot.

        **iii.**    **Chevron Has Made No Showing that the Information Sought Is Unavailable from Any Other Source.**

In order for Chevron to enforce its subpoenas, it must demonstrate that "the information it needs to establish its defense is unavailable from any other source." *See 2theMart.com*, 140 F. Supp. 2d at 1097. It cannot do so.

15

Chevron already has in its possession a vast amount of email from the parties and direct witnesses.  If the question Chevron seeks to answer with these subpoenas is truly whether the owners of the email addresses acted in concert with the parties, then the best way to learn the answer would be to ask the parties directly in regular discovery.  If Chevron opposes this motion based on the grounds that the email addresses about which they seek information are in fact not anonymous, then the request to Yahoo! and Google for their identities is mere confirmation of what Chevron already knows.  But if that is true, then Chevron cannot show that the information it seeks is unavailable from any other source; it could simply propound discovery on the people it suspects of controlling those addresses for any further confirmation it requires.  If Chevron seeks to map the relationship between parties and non-parties via the IP logs it requests, then surely the best evidence of those relationships is the testimony of those very people, testimony that could be obtained in party discovery.

In sum, Chevron cannot satisfy the *2theMart.com* test, and its attempt to seek the identities of the Does must be quashed because it violates the Does' First Amendment right to anonymity.

### 2.  The Subpoenas Violate the Non-Party Movants' First Amendment Right to Association.

Chevron's subpoenas intrude upon the Non-Party Movants' constitutionally guaranteed right to association.  Disclosure of the information Chevron seeks about *any* of the email accounts affects the associational rights of the other account holders, as well. For this reason alone, the subpoenas should be quashed in their entirety.[14]

### a.  The Non-Party Movants Enjoy a First Amendment Right to Political Association and to Advocate Controversial Views as a Group.

The First Amendment protects the freedom to associate and express political views as a group.  *NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449, 460-62 (1958).  This right is intertwined with the right to freedom of expression, and "like free speech, lies at the foundation of a free society." *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) (quoting *Shelton v. Tucker*, 364 U.S. 479,

---

[14] The arguments in this section and the sections that follow apply in full to all Non-Party Movants, including Mr. Rodgers and Ms. Belanger.

MOTION TO QUASH

486 (1960) (internal quotation marks omitted)).  This constitutional protection is critical because "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association[.]"  *NAACP v. Alabama*, 357 U.S. at 460; *Bates v. City of Little Rock*, 361 U.S. 516, 522-23 (1960) (the Constitution protects freedom of association to encourage the "advancing ideas and airing grievances").  The Non-Party Movants' politically charged advocacy efforts are precisely the sort of expression the First Amendment seeks to protect.

The Supreme Court has repeatedly held that compelled disclosure of an advocacy group's membership lists harms freedom of association because "it may induce members to withdraw from the association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of their exposure."  *NAACP v. Alabama*, 357 U.S. at 462-63.  *See also Bates*, 361 U.S. at 523; *Gibson v. Florida Legislative Investigation Comm.*, 372 U.S. 539 (1963).  This rule applies with equal force to attempts to compel disclosure of the Does' identities here.

Privacy in one's associational ties is also closely linked to freedom of association: "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs."  *NAACP v. Alabama,* 357 U.S. at 462.  Allowing Chevron access to information about the Non-Party Movants' locations over time would reveal a wealth of details about their habits and day-to-day patterns that are intimately tied to their associational activities. *United States v. Jones*, 132 S. Ct. 945, 954 (2012) (Sotomayor, J., concurring) (continual location monitoring over a prolonged period "reflects a wealth of detail about [a person's] familial, political, professional, religious, and sexual associations.").  As the D.C. Circuit has noted, such observation of a person's movements

> reveals types of information not revealed by short-term surveillance, such as what a person does repeatedly, what he does not do, and what he does ensemble. . . . A person who knows all of another's travels can deduce whether he is a weekly church goer, a heavy drinker, a regular at the gym, an unfaithful husband, an outpatient receiving medical treatment, an associate of particular individuals or political groups—and not just one such fact about a person, but all such facts.

1   *United States v. Maynard,* 615 F.3d 544, 562 (D.C. Cir. 2010), *aff'd sub nom. Jones*, 132 S.

2   Ct. 945.

3   Chevron's subpoenas are squarely aimed at identifying and mapping the movements of

4   individuals it believes are involved in political expression: specifically, environmental litigation

5   against the oil company and related activism activities, all of which is highly protected speech.

6   *See, e.g.*, *NAACP v. Button*, 371 U.S. 415, 429-31 (1963) (litigation is a form of political speech);

7   *Thomas v. Collins*, 323 U.S. 516, 537 (1945) (First Amendment protects advocacy to "persuade to

8   action").

9   Among other things, the information Chevron seeks could tell the company when the Non-

10   Party Movants were in the United States or Ecuador; when they were in a particular town, building,

11   home or even a particular organization's office; and when each Non-Party Movant was in the same

12   place at the same time as other individuals whose email usage information is revealed, presumably

13   meeting with each other.  *See* Schoen Decl. ¶ 17.  Because the Non-Party Movants have a right to

14   associate with each other, the disclosure of IP location information related to any of the targeted

15   email accounts implicates the associational rights of the other account holders, as well.

16   These discovery requests for IP logs over time, unlike a request for a telephone number or

17   even a single IP address, directly implicate the Non-Party Movants' right to "engage in association

18   for the advancement of beliefs and ideas," and are therefore subject to heightened scrutiny.

19   *NAACP v. Alabama*, 357 U.S. at 460; *see also Perry*, 591 F.3d at 1140.

20
21   **b.   The Non-Party Movants Have a Qualified First Amendment Privilege Subject to Heightened Scrutiny That Can Only be Overcome by a Compelling Interest.**

22   Individuals may assert privilege to protect information from disclosure when a civil

23   discovery request threatens their freedom of association.  *NAACP v. Alabama*, 357 U.S. at 460-63;

24   *Perry*, 591 F.3d at 1140; *Anonymous Online Speakers*, 661 F.3d at 1174-76; *In re Motor Fuel*

25   *Temperature Sales Practices Litig.*, 641 F.3d 470, 481 (10th Cir. 2011) (First Amendment privilege

26   protects rights of association affected by civil discovery demands).  When discovery requests

27   infringe upon political expression and association, the courts apply heightened discovery standards

28

1   to protect those constitutional values.  *Perry,* 591 F.3d at 1140; *Anonymous Online Speakers*, 661

2   F.3d at 1176; *Fed. Election Comm'n v. Larouche Campaign*, 817 F.2d 233, 234-35 (2d Cir. 1987)

3   (requiring agency to demonstrate need beyond mere relevance to an investigation to justify

4   compelling disclosure of the names of campaign contributors).

5       The Supreme Court has made clear that infringements on freedom of association may

6   survive constitutional scrutiny only when they "serve compelling state interests, unrelated to the

7   suppression of ideas, that cannot be achieved through means significantly less restrictive of

8   associational freedoms."  *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984); *see also*

9   *NAACP v. Button*, 371 U.S. at 341; *Knox v. SEIU, Local 1000*, 132 S. Ct. 2277, 2291 (2012)

10  (burden on freedom of association "must serve a compelling interest and must not be significantly

11  broader than necessary to serve that interest").

12      The Ninth Circuit has held that members of an association may assert a qualified First

13  Amendment privilege in associational information sought by a subpoena by making a *prima facie*

14  showing that compliance "will result in (1) harassment, membership withdrawal, or

15  discouragement of new members, or (2) other consequences which objectively suggest an impact

16  on, or 'chilling' of, the members' associational rights."  *Brock v. Local 375, Plumbers*

17  *International Union of America, AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988); *Dole v. Service*

18  *Employees Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1460-61 (9th Cir. 1991); *Perry,* 591 F.3d

19  at 1140.  Declarations are sufficient to make this showing.  *Perry,* 591 F.3d at 1143.

20      When the Non-Party Movants satisfy this standard, the burden shifts to Chevron to show

21  that the information sought is "rationally related to a compelling government interest . . . [and is]

22  the 'least restrictive means' of obtaining the desired information."  *Id.* at 1140 (quoting *Brock,* 860

23  F.2d at 350).

24              **i.      The Non-Party Movants' Right to Association Will be Harmed if Their**
                **Identities and Email Usage Information is Disclosed.**

25      The Non-Party Movants have a First Amendment right to engage in anonymous online

26  political speech. *Anonymous Online Speakers*, 661 F.3d at 1173. The also have a First Amendment

27  right to right to associate with each other to advance their political beliefs and ideas. *Perry*, 591

28                                          19

F.3d at 1140. As the declarations filed with this motion show, disclosure of the Non-Party Movants' identities and email usage information to Chevron is likely to result in harassment, membership withdrawal, and a chilling of the Non-Party Movants' political expression.

As a practical matter, Chevron's litigation tactics have already chilled the Non-Party Movants' political expression and resulted in membership withdrawal. As two Doe declarants noted, they have refused opportunities to work on the Chevron litigation after seeing what Chevron had put others through who worked on the case and related activism. John Doe 1 Decl. ¶ 10; John Doe 6 Decl. ¶ 9.

Moreover, the Does feel harassed by Chevron's attempt to obtain the information it seeks, and fear further harassment if Chevron actually gains access to personal information about their email use. *See* John Doe 1 Decl. ¶ 12; John Doe 2 Decl. ¶ 13; John Doe 3 Decl. ¶ 10; John Doe 4 Decl. ¶ 9; John Doe 6 Decl. ¶ 12; John Doe 7 Decl. ¶ 12.

Some Does state that other individuals have been subjected to harassment, threats, and intimidation for working in connection with the litigation against Chevron in Ecuador or related activism efforts. *See* John Doe 4 Decl. ¶ 11; John Doe 5 Decl. ¶ 10. Two declarants express concern for their physical safety if Chevron gains access to the information it seeks. John Doe 4 Decl. ¶ 11; John Doe 5 Decl. ¶ 10.

The Does' declarations also reflect a likelihood of chilled expression in the future. Many of the Does state that if they had known that their email usage information and location would be revealed to Chevron, their political expression at the time they was assisting with the litigation or participating in related advocacy efforts would have been chilled. John Doe 1 Decl. ¶ 9; John Doe 2 Decl. ¶ 10; John Doe 3 Decl. ¶ 8; John Doe 7 Decl. ¶ 9. They say their future political and associational activities related to Chevron will be chilled if the company obtains the personal information it seeks. John Doe 1 Decl. ¶ 10; John Doe 2 Decl. ¶ 11; John Doe 3 Decl. ¶ 9; John Doe 4 Decl. ¶ 11; John Doe 6 Decl. ¶ 9, John Doe 7 Decl. ¶ 9. They believe their associational activities will likely be chilled more generally, as well. John Doe 1 Decl. ¶ 11; John Doe 2 Decl. ¶ 10; John Doe 3 Decl. ¶ 10; John Doe 4 Decl. ¶ 12; John Doe 6 Decl. ¶ 11; John Doe 7 Decl. ¶ 11.

20

Thus, the Non-Party Movants have made a *prima facie* showing that the service providers' compliance with Chevron's subpoenas will chill their constitutionally protected associational rights.

        **ii.**       **Disclosure of the Non-Party Movants' Information Does Not Serve a Compelling Interest and Is Not the Least Restrictive Means of Furthering a Compelling Interest.**

Chevron cannot satisfy its burden of showing that the information it seeks about the Non-Party Movants is "rationally related to a compelling government interest . . . [and] the least restrictive means of obtaining the desired information." *Perry,* 591 F.3d at 1140 (internal quotation marks omitted). To determine whether Chevron should obtain the discovery it seeks, the Court must balance the "burdens imposed on individuals and associations against the . . . interest in disclosure" to determine whether the "interest in disclosure . . . outweighs the harm" to the Non-Party Movants' associational rights. *Perry,* 591 F.3d at 1140 (quoting *Buckley v. Valeo*, 424 U.S. at 72). Critically, Chevron must demonstrate that the information sought is "highly relevant to the claims or defenses in the litigation," that the subpoenas were "carefully tailored to avoid unnecessary interference with protected activities," and that the information sought is "otherwise unavailable." *Id.* Chevron can show none of these things.

The government may well have a compelling interest in making sure that parties to civil litigation receive the information they need to properly litigate their cases in the interest of the fair administration of justice. But the scope of Chevron's subpoenas far exceed any such interest. The company seeks a vast amount of information that is not "highly relevant" to the claims in the underlying litigation. Indeed, a Chevron spokesman readily admitted to the press that some of these email accounts are likely to be "legitimate" and "used for benign purposes."[15] Professor Heller's experience, discussed above in Section A.1.b.ii, further underscores this likelihood: Chevron's request for his information had no connection whatsoever to the company's legal

---

[15] Declan McCullagh, *Chevron targets Google, Yahoo, Microsoft e-mail accounts*, CNET (Oct. 11, 2012), http://news.cnet.com/8301-13578_3-57530915-38/chevron-targets-google-yahoo-microsoft-e-mail-accounts/.

claims.  There is no reason to believe this is not true the case for information sought about many other individuals through these subpoenas.

Furthermore, there is no indication that the subpoenas were carefully tailored to avoid infringing the Non-Party Movants' associational freedoms.  Indeed, the discovery demands indiscriminately seek information about each and every one of the 101 email accounts since 2003, without any tailoring or limitation whatsoever on the face of the subpoenas.  The careless scope of these subpoenas is underscored by the fact that Google did not even launch Gmail until April 2004, meaning that it is virtually impossible for Google to have any responsive information for more than a year covered by Chevron's subpoena simply because its email service did not exist.[16]

Finally, the subpoenas to the email providers are not the least restrictive means of obtaining the information Chevron seeks.  A company spokesperson told the San Francisco Chronicle that subpoenas were issued for the purpose of

> trying to find out whether some of the e-mail addresses actually belong to key figures in the case, including the opposing side's lawyers and a court-appointed expert whom Chevron accuses of fraud. Some of the participants, he said, have set up multiple e-mail accounts, and tracing the communication among them could help the company prove its contention that the lawsuit is nothing more than an elaborate extortion scheme.

Baker, *Chevron seeks e-mail logs in Ecuador suit*, S.F. CHRONICLE.[17]  Chevron could learn this information by seeking discovery directly from those "key figures" and "participants" to ask whether the email addresses belong to them, rather than issuing sweeping subpoenas to third-party service providers that implicate the First Amendment rights of scores of people who are not parties to the case.

---

[16] Gmail, http://en.wikipedia.org/w/index.php?title=Gmail&oldid=528664350 (last visited Dec. 19, 2012).

[17] Chevron explained its rationale similarly to another media outlet: "We know the plaintiffs' lawyers created e-mail addresses intended to be aliases to disguise the ultimate user, and used dozens of email accounts to transfer fraudulent documents and to try to conceal their scheme. Among other things, the subpoenas serve to flush out which e-mail addresses are legitimate and have been used for benign purposes." McCullagh, *Chevron targets Google, Yahoo, Microsoft e-mail accounts*, CNET.

Chevron's fishing expedition violates the Non-Party Movants' associational rights, and the subpoenas should be quashed in their entirety for this reason alone.

### B. The Subpoenas Unnecessarily Violate The Non-Party Movants' Privacy Interests Under the California Constitution.

For many of the reasons why Chevron's subpoenas fail under the United States Constitution, they independently violate the Non-Party Movants' right to privacy under the California Constitution, Article 1, section 1.  "The right of privacy is an 'inalienable right' secured by article I, section 1 of the California Constitution.  It protects against the unwarranted, compelled disclosure of various private or sensitive information regarding one's personal life, including his or her . . . political affiliations . . . and confidential personnel information."  *Tien v. Superior Court*, 139 Cal. App. 4th 528, 539 (Cal. Ct. App. 2006).  The right of privacy in California "protects individuals from the invasion of their privacy not only by state actors but also by private parties." *Leonel v. American Airlines, Inc.*, 400 F.3d 702, 711 (9th Cir. 2005).  In order for information to be protected from discovery under the California right to privacy, the Non-Party Movants must demonstrate three elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) a showing that production would lead to a serious invasion of the protected privacy interest.  *Id*. at 712, citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994).  Movants' privacy interests on the one hand, must then be balanced against "right of a civil litigant to discover relevant facts" on the other.  *Tien*, 139 Cal. App. 4th at 539, quoting *Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1004 (Cal. Ct. App. 2000).

The Non-Party Movants have a legally protected privacy interest in their identities and locations, particularly the location of their homes.  *See, e.g., Planned Parenthood Golden Gate v. Superior Court*, 83 Cal. App. 4th 347, 358-60 (Cal. Ct. App. 2000) ("Human experience compels us to conclude that disclosure [of identity and location] carries with it serious risks which include, but are not limited to: the nationwide dissemination of the individual's private information, the offensive and obtrusive invasion of the individual's neighborhood for the purpose of coercing the individual to stop constitutionally-protected associational activities and the infliction of threats,

23

1   force and violence.").  The Non-Party Movants' privacy interests in their identities and locations

2   are particularly potent in the context of a global activism campaign that has included harassment

3   and threats to various Does' personal safety.

4       The Non-Party Movants have a reasonable expectation of privacy in their identity and

5   location information.  The mere fact that some of the Non-Party Movants participated in litigation

6   against Chevron or associated advocacy gave them little reason to expect that their identities and

7   information that could track their location over nearly a decade would be handed to Chevron.  And

8   finally, for all of the reasons discussed above, including harm to the Non-Party Movants' free

9   speech and associational interests, the chilling effects of disclosure, the likelihood of harassment,

10  and the threat to some of the Does' physical safety, disclosure of the information Chevron seeks

11  would lead to a "serious invasion" of the Non-Party Movants' privacy interests.  *See Hill*, 7 Cal.

12  4th at 37.

13      Balanced against Chevron's stated need for the information—to discover whether these

14  email accounts belong to "key figures" in the litigation—the Non-Party Movants' privacy interests

15  prevail.  There are other, better, methods to discover the information Chevron seeks, such as in

16  regular party discovery.  Chevron cannot show that its need for these subpoenas outweighs the

17  privacy interests of those non-parties.  If Chevron is unable to make such a showing, the California

18  Constitution mandates that these subpoenas be quashed. *See Planned Parenthood Golden Gate*, 83

19  Cal. App. 4th at 369.

20
21  **C.**    **The Subpoenas Are Facially Overly Broad and Should be Quashed in Their Entirety.**

22      Finally, the Court should quash these subpoenas under Federal Rule of Civil

23  Procedure 26(c) because they are grossly overbroad as drafted, and are therefore oppressive and

24  unreasonable.  *See, e.g.*, *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335-36

25  (N.D. Cal. 1995) (non-party may contest subpoena on irrelevancy grounds); *Fallon v. Locke,*

26  *Liddell & Sapp, LLP*, 2005 U.S. Dist. LEXIS 46987, at **4-5 (N.D. Cal. Aug. 4, 2005) (same);

27  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (subpoena overly broad where it

28

1    sought 10 years of records); *Xcentric Ventures, LLC v. Arden*, 2010 U.S. Dist. LEXIS 13076, at

2    **5-8 (N.D. Cal. Jan. 27, 2010) (limiting scope of overly broad subpoena for user information

3    served on Google).

4           The subpoenas are overly broad as drafted because they seek nine years of detailed email

5    usage information about 71 separate email addresses, thus demanding a catalog of the account

6    holders' daily movements since 2003.  Even as verbally clarified by Chevron, the data disclosed

7    would include a tremendous amount of information wholly irrelevant to Chevron's claims and

8    defenses.

9           Quashing the subpoenas in their entirety is especially important here, where it is likely that

10   a number of the non-parties whose information is sought are not present in the United States and do

11   not speak English sufficiently to engage in sophisticated American litigation.  Many may not have

12   understood the notices that Google and Yahoo! emailed (which were presumably in English), much

13   less been able to muster the wherewithal to secure counsel in Northern California to represent them

14   here.

15          It is also important because of the reasonable concern that the real purpose of these

16   subpoenas is to harass and intimidate the activists, interns, young lawyers, volunteers and

17   journalists, both in the United States and around the world, who have shown some sympathy for or

18   supported the Ecuadoran plaintiffs who sought judicial recourse against Chevron. Regardless of

19   whether those fears are well founded, the Court should not permit Chevron's unnecessary and

20   unwarranted fishing expedition into these individuals' day-to-day activities without a serious and

21   well-documented showing that each of these individuals was in fact part of the conspiracy it

22   alleges.

23   **V.      CONCLUSION**

24          For the foregoing reasons, the September 19, 2012 subpoenas served by Chevron upon

25   Google and Yahoo! should be quashed in their entirety.

26

27

28

DATED:  December 19, 2012          Respectfully submitted,

ELECTRONIC FRONTIER FOUNDATION

                                   _____/s/ Marcia Hofmann_____
                                   Marcia Hofmann, Esq.
                                   Cindy A. Cohn, Esq.
                                   Nathan Cardozo, Esq.
                                   454 Shotwell Street
                                   San Francisco, CA 94110
                                   Telephone:  (415) 436-9333
                                   Facsimile:   (415) 436-9993

                                   Marco Simons (SBN 237314)
                                   marco@earthrights.org
                                   EARTHRIGHTS INTERNATIONAL
                                   1612 K Street NW, Suite 401
                                   Washington, DC 20006
                                   Telephone: (202) 466-5188

                                   *Counsel For Non-Party Movants*

26