THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

ETHAN DETTMER, SBN 196046
  edettmer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, California 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Plaintiff
CHEVRON CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHEVRON CORP., <br><br> Plaintiff, <br><br> v. <br><br> STEVEN DONZIGER, *et al.*, <br><br> Defendant. | CASE NO. 5:12-80237 MISC CRB NC <br><br> **CHEVRON CORPORATION'S OPPOSITION TO THE RICO DEFENDANTS' MOTION TO QUASH SUBPOENAS TO GOOGLE INC. AND YAHOO! INC.** <br><br> **Hearing:** <br> Date:  January 16, 2013 <br> Time:  1:00 PM <br> Place:  Courtroom A, 15th Floor <br> Judge:  Hon. Nathanael Cousins |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 2

III. ARGUMENT .......................................................................................................................... 4

    A. Defendants Lack Standing to Challenge the Subpoenas in Their Entirety ................... 4

        1. Defendants Lack Standing to Challenge the Subpoenas as to Accounts that They Do Not Own ...................................................................................... 4

        2. Defendants Lack Standing to Challenge the Subpoenas on Grounds of Burden, Overbreadth, or Relevance ................................................................... 5

    B. The Subpoenas Make Reasonable Requests that Courts Routinely Grant .................... 6

        1. Courts Routinely Require Production of the Information that Chevron Seeks ............................................................................................................... 6

        2. The Subpoenaed Information Is Relevant to Chevron's Legal Claims............. 7

    C. The Subpoenas Do Not Call for the Disclosure of Privileged Information. ................. 9

    D. The Subpoenas Do Not Infringe Defendants' Privacy Rights. .................................... 10

IV. CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AF Holdings LLC v. Doe*, No. 12-cv-02416-WHA, 2012 U.S. Dist. LEXIS 75806 (N.D. Cal. May 31, 2012) ................................................................................................................................ 6

*Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240 (D. Me. 2008) ............................................. 6

*Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426 (M.D. Fla. 2005) ........................ 6

*Boyle v. United States*, 556 U.S. 938 (2009) ...................................................................................... 8

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ........................................................................................ 12

*Brown v. Braddick*, 595 F.2d 961 (5th Cir. 1979) .............................................................................. 6

*Chevron Corp. v. Donziger*, No. 11 Civ. 0691 LAK (S.D.N.Y.) .................................................. 1, 2

*Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2581784 (S.D.N.Y. June 24, 2011) ............................................................................................................................................. 3

*Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH (D. Colo. June 27, 2011) ............................................................................................................................................. 3

*Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010) ...................................... 11

*Doe I v. Individuals*, 561 F. Supp. 2d 249 (D. Conn. 2008) ............................................................. 11

*Doe v. SEC*, No. 11-mc-80184 CRB (NJV), 2011 WL 4593181 (N.D. Cal. Oct. 4, 2011) ............ 7, 10

*Erickson v. Microaire Surgical Instruments LLC*, No. 08-cv-5745 BHS, 2010 WL 1881946 (W.D. Wash. May 6, 2010) .......................................................................................................... 5

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148 (D. Nev. Jan. 9, 2007) ............................................................................................... 6

*Griffin v. Maryland*, 19 A.3d 415 (Md. 2011) .................................................................................... 8

*Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003) ................................ 12

*In re Appt. of a Comm'r re Request for Judicial Assistance*, No. 11-mc-80136-RS (MEJ), 2011 WL 2747302 (N.D. Cal. July 13, 2011) .............................................................................. 7

*In re Chevron Corp.*, 749 F. Supp. 2d 170 (S.D.N.Y. 2010) .............................................................. 3

*In re Chevron Corp.*, No. 1:10-mc-00021-JCH-LFG (D.N.M. Sept. 2, 2010) ................................... 2

*In re Chevron Corp.*, No. 10 MC 00002 (LAK) (S.D.N.Y. Dec. 27, 2010) ....................................... 3

*In re Roebers*, No. 12-mc-80145-RS (LB) 2012 WL 2862122 (N.D. Cal. July 11, 2012) ................. 6

*In re United States*, 830 F. Supp. 2d 114 (E.D. Va. 2011) .............................................................. 10

*Insubuy, Inc. v. Cmty. Ins. Agency, Inc.*, No. 11-mc-0008-PHX-FJM, 2011 WL 836886 (D. Ariz. Mar. 9, 2011) .................................................................................................................. 4

*Jerry T. O'Brien, Inc. v. SEC*, 704 F.2d 1065 (9th Cir. 1983) .......................................... 4, 6

*Kadant Johnson Inc. v. D'Amico*, No. 3:12-mc-00126, 2012 WL 1576233 (D. Or. May 4, 2012) ............................................................................................................................. 5

*Kremen v. Cohen*, No. 11-cv-05411-LHK (HRL), 2012 WL 2277857 (N.D. Cal. June 18, 2012) ............................................................................................................................. 4

*Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir. 1975) ...................................... 4

*London v. Does 1-4*, 279 F. App'x 513 (9th Cir. 2008) ......................................................... 6

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, No. 07-cv-03952-JW (HRL), 2008 WL 2783206 (N.D. Cal. July 15, 2008) ......................................................................... 7

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ................................................. 11

*McNaughton-McKay, Elec. Co. v. Linamar Corp.*, No. 09-CV-11165, 2010 WL 2560047 (E.D. Mich. June 15, 2010) ............................................................................................ 9

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) .................................................. 5

*Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238 (S.D.N.Y. 2004) ............................. 6

*Painting Indus. of Haw. Mkt. Recovery Fund v. U.S. Dep't of the Air Force*, 26 F.3d 1479, 1483 (9th Cir. 1994) ..................................................................................................... 11

*People v. Clevenstine*, 891 N.Y.S.2d 511 (N.Y. App. Div. 2009) .......................................... 8

*Rhodes Cos. v. Litig. Trust of the Rhodes Cos. (In re Rhodes Cos.)*, 475 B.R. 733 (D. Nev. 2012) .......................................................................................................................... 5, 6

*San Antonio Cmty. Hosp. v. So. Cal. Dist. Council of Carpenters*, 125 F.3d 1230 (9th Cir. 1997) ............................................................................................................................ 12

*Sterling Merchandising, Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77 (D.P.R. 2006) ................... 6

*Thomas v. Hickman*, 2007 WL 4302974 (E.D. Cal. 2007) ................................................... 9

*TMP Worldwide Adver. & Commc'ns, LLC v. LATCareers, LLC*, No. 08-cv-5019 RBL, 2008 WL 5348180 (W.D. Wash. Dec. 16, 2008) ........................................................... 4

*United States v. Li*, No. 07-cr-2915-JM, 2008 WL 789899 (S.D. Cal. Mar. 20, 2008) ....... 10

*Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346 (S.D.N.Y. 1967) ........... 6

*Xcentric Ventures, LLC v. Karsen, Ltd.*, No. 11-cv-01055-PHX-FJM, 2012 U.S. Dist. LEXIS 121888 (D. Ariz. Aug. 28, 2012) ................................................................................... 6

**Rules**

Fed. R. Civ. P. 26 ................................................................................................................ 1, 7

Fed. R. Evid. 803(6) ................................................................................................................. 8

**Other Authorities**

9A Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2459 (3d ed.) ................................................................................................................................... 9

California Practice Guide:  Federal Civil Procedure Before Trial ("Rutter Guide") ¶ 11:2291 ........... 5

# I. INTRODUCTION

Defendants' motion to quash has no merit, and like Defendants' past efforts to delay or prevent discovery, it should be rejected.

This dispute arises from a fraudulent $19 billion judgment that a group of U.S. plaintiffs' lawyers obtained against Chevron Corporation in Ecuador (the "Ecuador litigation"). In response to the fraud perpetrated against it, Chevron brought suit against those plaintiffs' lawyers under the Racketeer Influenced and Corrupt Organizations Act and New York state law (the "RICO action"). *See Chevron Corp. v. Donziger*, No. 11 Civ. 0691 LAK (S.D.N.Y.). The subpoenas that Defendants seek to quash here—which were served on Google, Inc. and Yahoo! Inc. on September 19, 2012—are part of Chevron's continuing discovery effort. Those subpoenas will provide information relevant to core claims in the RICO action because the individual email account owners listed in those subpoenas were intimately involved with the fraud alleged in that action. The subpoenaed information will provide evidence about the structure and management of Defendants' fraudulent enterprise, will confirm that many of Defendants' fraudulent acts occurred in the United States (thus rebutting Defendants' jurisdictional argument), and will help establish how major acts of fraud (such as the creation of a fraudulent expert report and the ghostwriting of the Ecuadorian court judgment itself) were perpetrated. Because those facts are relevant to claims in the RICO action and are overcome by no privilege, Chevron is entitled to the subpoenaed information. Fed. R. Civ. P. 26.

Defendants' motion to quash lacks merit and is plagued by fatal errors. To begin with, Defendants lack standing to challenge the subpoenas' requests for information about third parties' email accounts. Defendants have not established any privilege regarding the requested information in any but the two accounts they own, and thus their subpoena has no application to the remaining 69 accounts listed in the subpoenas. Even as to the accounts they own, however, Defendants still lack standing to object to any burden imposed on the subpoenaed third parties. And even if Defendants possessed standing to maintain *any* of their arguments, those arguments would fail: The subpoenas request information that is relevant to Chevron's claims, Chevron's requests are narrow and specific, and Defendants have established no privilege or privacy rights in the subpoenaed information.

At bottom, Defendants' motion is their latest effort to impede Chevron's legitimate discovery and to keep hidden details of their fraud. At each stage in the RICO action, Defendants have claimed that Chevron is abusing the discovery process to invade their privacy, violate First Amendment rights, or intimidate Defendants and their allies. Those arguments have been wholly meritless. And, at every stage, once discovery is permitted, more evidence of Defendants' misconduct has come to light. For example:

- Defendants resisted discovery into the outtakes of *Crude*, a documentary film they financed, claiming that discovery would violate privacy rights and journalistic privileges, but when they were revealed, those outtakes "sent shockwaves through the nation's legal communities, primarily because the footage shows, with unflattering frankness, inappropriate, unethical and perhaps illegal conduct." *In re Chevron Corp.*, No. 1:10-mc-00021-JCH-LFG, slip op. at 3-4 (D.N.M. Sept. 2, 2010), Dkt. 77 (footnote omitted).

- Defendants resisted the production of their internal documents on privilege grounds, but when courts found that the privilege had been waived, the resulting documents provided "uncontradicted evidence" that a report filed by a court expert in Ecuador, which Defendants had been promoting for years as "independent" conclusive proof of Chevron's liability, was "not entirely or even predominantly his own work," but in fact had been drafted by Defendants' own team and "tainted by fraud." Ex. 1 at 90-91 (*Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK) (S.D.N.Y. July 31, 2012), Dkt. 550).[1]

- Defendants resisted discovery into the work of their experts in the Ecuadorian litigation, claiming a consultant privilege, but when the documents were revealed, they showed that Defendants' own experts repeatedly concluded that the oil production activities carried out by a Texaco subsidiary in the 1970s (later acquired by Chevron) had not resulted in significant environmental harm or human health effects. Exs. 2, 3, 4, 5.

Defendants' current request to quash the subpoenas here is no different. The subpoenaed material is highly relevant to Chevron's claims and is protected by no privilege. Chevron is entitled to it, and the motion to quash should be denied.

## II. BACKGROUND

As discussed in greater detail in Chevron's simultaneously filed response to a group of non-parties' motion to quash the same subpoenas at issue in this motion, in February 2011 Chevron sued Defendants (who, along with their clients in the Ecuador litigation, are collectively referred to as the "Lago Agrio Plaintiffs" or "LAPs") in the Southern District of New York, contending that the LAPs devised and perpetrated an elaborate, widespread fraudulent scheme to extort billions of dollars from

---

[1] Unless otherwise specified, "Ex." citations herein are to the Declaration of James F. Alexander, filed concurrently herewith.

Chevron through a sham Ecuadorian court judgment. To support its claims, Chevron has pursued discovery to develop evidence of the LAPs' fraud.

As they do here, Defendants have fought discovery exposing their fraud because they know that public revelation of the fraud could have devastating effects. *See, e.g.*, Ex. 6 (email from LAPs' attorney to lead conspirator and RICO action defendant Steven Donziger telling him that if the truth about the "independent" expert were revealed, "apart from destroying the proceeding, all of us, your attorneys, might go to jail"). The LAPs have continually obstructed that effort and have repeatedly failed to comply with basic discovery orders. *See, e.g.*, Ex. 7 at 2 (S.D.N.Y. Order) (noting that Donziger failed to comply with orders requiring him to turn over information regarding an email account on which he had "store[d] documents of obvious possible relevance"); Order at 1, *In re Chevron Corp.*, No. 10 MC 00002 (LAK), Dkt. 151 (S.D.N.Y. signed Dec. 27, 2010) (noting special master's observations regarding Donziger's obstructionist deposition testimony and authorizing the special master "to recommend to the Court the imposition of sanctions, including civil or criminal contempt"); Order on Motions Concerning Allocations of Costs at 4, *Chevron Corp. v. Stratus Consulting, Inc.*, No. 1:10-cv-00047-MSK-MEH, Dkt. 335 (D. Colo. June 27, 2011) (noting that the court "was not given the truth" by attorneys for co-conspirator Stratus Consulting during a discovery hearing); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2581784, at *2 (S.D.N.Y. June 24, 2011) (describing Defendants' "thwart or delay" strategy); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010) (describing strategy "to a gain tactical advantage" through delay), *aff'd*, 409 F. App'x 393 (2d Cir. 2010).

Because the LAPs have intentionally obstructed discovery, Chevron has needed to redouble its efforts to uncover information that the LAPs' have concealed. The subpoenas at issue here are part of that effort. These subpoenas seek identifying information about the user, and usage information such as IP logs and IP address information about the accounts of various individuals who were intimately involved in Defendants' fraudulent scheme. *See* Exs. 8-9. Discovery of such email account information is important—and will produce material that directly supports Chevron's claims—because the LAPs used email accounts to share documents in furtherance of their fraudulent scheme. Moreover, although Defendants' efforts to secure payment from Chevron and its

predecessor have been going on for decades, the subpoenas seek information generated only since the Ecuador litigation was filed, in 2003. Ex. 8 at 2; Ex. 9 at 2.

Defendants now ask this Court to quash the subpoenas—purportedly in their entirety—which would keep concealed important details of their fraudulent scheme. But, as set forth below, Defendants' motion has no basis in law.

### III. ARGUMENT

**A. Defendants Lack Standing to Challenge the Subpoenas in Their Entirety**

**1. Defendants Lack Standing to Challenge the Subpoenas as to Accounts that They Do Not Own**

A litigant lacks standing to challenge a subpoena issued to a third party, unless the litigant possesses a personal right or privilege regarding the documents sought. *Jerry T. O'Brien, Inc. v. SEC*, 704 F.2d 1065, 1068 (9th Cir. 1983), *rev'd on other grounds*, 467 U.S. 735 (1984); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2207555, at *2 n.11 (S.D.N.Y. June 2, 2011) (specifically reminding these very Defendants of this rule) (citing *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975)).

Defendants contend that they own only two of the email accounts listed in the subpoenas—one of Steven Donziger's accounts (sdonziger@gmail.com) and Javier Piaguaje's account (javipi002@gmail.com). *See* Defs.' Br. 4. Defendants have not established any protectable interest as to the remaining accounts. The law is clear that Defendants have no right to challenge a subpoena based on the alleged rights of others. *See TMP Worldwide Adver. & Commc'ns, LLC v. LATCareers, LLC*, No. C08-5019 RBL, 2008 WL 5348180, at *1 (W.D. Wash. Dec. 16, 2008); *Insubuy, Inc. v. Cmty. Ins. Agency, Inc.*, No. 11-mc-0008-PHX-FJM, 2011 WL 836886, at *2 (D. Ariz. Mar. 9, 2011); *see also Kremen v. Cohen*, No. 11-cv-05411-LHK (HRL), 2012 WL 2277857, at *3 (N.D. Cal. June 18, 2012). Defendants therefore lack standing to quash the subpoenas as to accounts they do not own. Their request to quash the subpoenas in their entirety (Defs.' Br. 5) must be denied, and their request must be confined to the two accounts that they own.

### 2. Defendants Lack Standing to Challenge the Subpoenas on Grounds of Burden, Overbreadth, or Relevance

Defendants contend that the subpoenas pose an undue burden. Defs.' Br. 6-8. (Defendants at times couch this argument in terms of relevance or overbreadth. *See* Defs.' Br. 6; Defs.' Br. 8 (citing cases equating relevance and overbreadth with undue burden). But even as to the accounts that they own, Defendants have no standing to quash on the basis of undue burden or relevance because they do not bear the burden of responding to the subpoenas. *See Rhodes Cos. v. Litig. Trust of the Rhodes Cos. (In re Rhodes Cos.)*, 475 B.R. 733, 740 (D. Nev. 2012) ("only the party subject to the subpoena may bring a motion to quash under Rule 45(c)(3)(A)"); *Erickson v. Microaire Surgical Instruments LLC*, No. C08-5745 BHS, 2010 WL 1881946, at *2 (W.D. Wash. May 6, 2010) ("A party generally does not have standing to object to a subpoena served on a nonparty on grounds of the undue burden imposed on the nonparty, especially where the nonparty itself has not objected."); *Kadant Johnson Inc. v. D'Amico*, No. 3:12-mc-00126, 2012 WL 1576233, at *4 (D. Or. May 4, 2012) (rejecting party defendants' arguments that subpoena was "unduly burdensome" and sought "irrelevant" and "confidential" information). This sharply undermines Defendants' motion, which relies substantially on the supposed "undue burden" created by Chevron's subpoenas. *See* Defs.' Br. 6-8.

Ignoring these precedents, Defendants cite *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005), where the court quashed a subpoena as overbroad. Defs.' Br. 7. In that case, the magistrate judge cited Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial ("Rutter Guide") ¶ 11:2291, for the following proposition: "A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash." *See Moon*, 232 F.R.D. at 636. Yet the *same* treatise elaborates: "The general rule is that a party has no standing to move to quash a subpoena served upon a third party except as to *privilege* claims relating to any documents being sought." Rutter Guide ¶ 11:2286 (emphasis in original). The very treatise relied upon by the *Moon* court states the correct rule, but the court apparently erred in its reading of that authority. Indeed, even another case cited by Defendants recognizes: "A party's objection that the subpoena issued to the non-party seeks irrelevant information or imposes an undue burden on the nonparty are not grounds on which a party has

standing to move to quash a subpoena issued to a non-party, especially where the non-party, itself, has not objected." *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, No. 2:04-cv-01199-DAE-GWF, 2007 WL 119148, at *3 (D. Nev. Jan. 9, 2007).   Simply put, *Moon* was mistaken.  The case has neither precedential nor persuasive value, and is overwhelmingly outweighed by cases reaching the opposite conclusion.[2]

**B.     The Subpoenas Make Reasonable Requests that Courts Routinely Grant**

   **1.     Courts Routinely Require Production of the Information that Chevron Seeks**

For each of the subpoenaed accounts, Chevron seeks only two categories of information: (1) user identification information, and (2) usage information such as IP logs and IP address information.  *See* Ex. 8 at 2; Ex. 9 at 2.  Such information is routinely sought from email service providers in civil discovery.  *See, e.g., In re Roebers*, C12-80145 MISC RS (LB), 2012 WL 2862122, at *3 (N.D. Cal. July 11, 2012) ("Internet Service Providers and operators of communications systems are generally familiar with this type of discovery request.").  And courts consistently uphold subpoenas seeking such information.  *See, e.g., London v. Does 1-4*, 279 F. App'x 513, 514-15 (9th Cir. 2008) (affirming denial of motion to quash subpoena on Yahoo! seeking documents disclosing IP address from which email accounts were created); *AF Holdings LLC v. Doe*, No. C 12-02416 WHA, 2012 U.S. Dist. LEXIS 75806, at *2-3 (N.D. Cal. May 31, 2012) (granting early discovery of IP log, for purpose of determining identity of infringing IP address holder); *Xcentric Ventures, LLC v. Karsen, Ltd.*, CV 11-01055-PHX-FJM, 2012 U.S. Dist. LEXIS 121888, at *1-3 (D. Ariz. Aug. 28, 2012) (denying motion to quash subpoena seeking discovery of IP address information from Google); *In re Roebers*, 2012 WL 2862122, at *1, *3 (granting § 1782 discovery of subpoenaing party's IP address information for purpose of proving unauthorized access by estranged husband); *In re Appt. of*

---

[2] *See, e.g., Jerry T. O'Brien, Inc. v. SEC*, 704 F.2d 1065, 1068 (9th Cir. 1983), *rev'd on other grounds*, 467 U.S. 735 (1984); *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979); *Rhodes Cos. v. Litig. Trust of the Rhodes Cos. (In re Rhodes Cos.)*, 475 B.R. 733, 740 (D. Nev. 2012); *Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 253 n.17 (D. Me. 2008); *Sterling Merch., Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 81 (D.P.R. 2006); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426 (M.D. Fla. 2005); *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004); *Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346, 348 (S.D.N.Y. 1967).

*a Comm'r re Request for Judicial Assistance*, No. 11-mc-80136-RS (MEJ), 2011 WL 2747302, at *3 (N.D. Cal. July 13, 2011) (granting discovery of IP addresses and "personally identifying details, such as name, e-mail addresses, physical addresses, age, etc." to identify anonymous blogger); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, No. C07-03952 JW (HRL), 2008 WL 2783206, at *3 (N.D. Cal. July 15, 2008) (granting motion to compel Internet access logs in trademark and copyright infringement case). Critically, the subpoena does not seek the contents of email communications. *See Doe v. SEC*, No. 3:11-mc-80184 CRB (NJV), 2011 WL 4593181, at *4 (N.D. Cal. Oct. 4, 2011) ("addressing information" is less protected than the content of communications).

### 2. The Subpoenaed Information Is Relevant to Chevron's Legal Claims

The information that Chevron seeks, moreover, is well within the bounds of information that it is entitled to pursue in the RICO action. The Federal Rules provide that a party is entitled to discover information "that is relevant to [its] claim[s]." Fed. R. Civ. P. 26(b)(1). Holders of the accounts listed in the subpoena were intimately involved with the fraud alleged in the RICO action. As explained in its memorandum in opposition to the related motion to quash the subpoenas to Google and Yahoo!, some listed account holders managed legal and public relations strategies that furthered the LAPs' fraud, helped the plaintiffs' attorneys use a fraudulent "independent" expert report in the Ecuadorian court, and arranged meetings with key Ecuadorian political figures that helped fix the judgment against Chevron. *See* Mem. in Opp'n to Does' Motion to Quash at 6-8. Other listed account holders are similarly situated. *See id.*

The subpoenaed information about the listed accounts will directly and materially support Chevron's RICO action claims in several ways.

First, the subpoenaed information will show whether certain account holders had access to Defendants' internal documents and data. Defendants and their affiliates established email accounts to store and exchange documents in furtherance of fraud. Ex. 10 ¶ 141; Ex. 15. Such accounts were used to plan the ghostwritten "independent" expert report. *Id.* Whoever ghostwrote the $19 billion judgment, moreover, had access to Defendants' unfiled documents. Information about who had such access—and when they may have accessed those documents—will provide details about how information from those documents came to be filed as the work of the "independent" court expert and

how some of that information was found verbatim in the $19 billion judgment itself.  *See* Exs. 8, 9; Ex. 1 at 27-30.

Second, IP information will prove that substantial portions of the RICO predicate acts originated in the United States.  That is critical because—although Defendants' scheme was designed by U.S. lawyers, carried out largely in the United States, and directed at a U.S. victim—Defendants have contended that Chevron's complaint seeks an extraterritorial application of RICO.  Ex. 11 at 2-5.

Third, identifying information about the owners of the accounts—which were used to further the various RICO predicate acts of extortion, wire fraud, and money laundering—will provide evidence regarding the structure and management of the RICO enterprise.  That evidence is essential to a RICO claim.  *See Boyle v. United States*, 556 U.S. 938, 951 (2009).

Fourth, although Chevron likely knows at least some of these account holders' identities, Chevron remains entitled to regularly collected business records to substantiate those identities at trial.  *See, e.g.*, Fed. R. Evid. 803(6).  Courts have grown increasingly suspicious of internet evidence that is not properly authenticated and have required guarantees of authenticity before admitting such evidence.  *See, e.g.*, *Griffin v. Maryland*, 19 A.3d 415, 421 (Md. 2011); *People v. Clevenstine*, 891 N.Y.S.2d 511 (N.Y. App. Div. 2009).  Chevron is entitled to show the jury who the relevant account users are.  The subpoenaed documents will provide Chevron with the needed evidence.

For all of these reasons, Defendants err in arguing that the subpoenas seek irrelevant material.  *See, e.g.*, Defs.' Br. 7.  Similarly misguided are Defendants' arguments that the subpoenas pose an undue burden or are overly broad.  *See* Defs.' Br. 6-8.  Of course, Defendants have no standing to maintain those complaints.  *See* Part III.A.2, *supra*.  And, in any event, Defendants' arguments are meritless.  Defendants contend that the subpoenas are overbroad and seek irrelevant material because they "call for production of nine years of email usage records regardless of the purpose or subject matter of such usage."  Defs.' Br. 7 (emphases omitted).  That is false.  The subpoenas seek

1  information relevant to the account holders' association with the LAPs while the LAPs were
2  furthering their fraudulent enterprise.  Ex. 8 at 2; Ex. 9 at 2.[3]

3  The party seeking to quash a subpoena bears the burden of demonstrating that the subpoena is
4  overbroad or unduly burdensome.  *See, e.g.*, *Thomas v. Hickman*, No. 1:06-cv-00215-AWI-SMS,
5  2007 WL 4302974, at *6 (E.D. Cal. 2007); 9A Charles Alan Wright, Arthur R. Miller, et al., Federal
6  Practice and Procedure § 2459 (3d ed.) (note 7.1 accompanying text).  Defendants, however, have
7  provided no sworn evidence showing what periods are allegedly relevant and what periods are
8  allegedly irrelevant.  Nor have they made a colorable argument that the subpoena would uncover any
9  irrelevant information if account holders cooperated with Chevron.  As a result, they fail to meet their
10 burden to establish that the subpoena is overbroad.  *See Thomas*, 2007 WL 4302974, at *6.

**C.  The Subpoenas Do Not Call for the Disclosure of Privileged Information.**

12 Defendants' unsubstantiated assertion that the request for IP logs implicates the attorney-
13 client privilege and work product doctrine (Defs.' Br. 5-6) is without merit.  Defendants cite *no*
14 authority holding that IP logs—which are created and maintained in the normal course of business by
15 third-party email service providers—can or should be protected as privileged communications or
16 work product.  This alone is fatal to their argument.  *See McNaughton-McKay, Elec. Co. v. Linamar*
17 *Corp.*, No. 09-CV-11165, 2010 WL 2560047, at *2 (E.D. Mich. June 15, 2010) (denying motion to
18 quash where allegations of privilege were "neither specific nor substantiated").

19 Defendants assert that information about login locations potentially disclosed in the IP logs
20 might reveal information about "enforcement activities and the Ecuadorian Plaintiffs' enforcement

---

[3] Thus, as to Defendants' accounts, Chevron does need records from the date the Ecuador litigation began through the date of the subpoenas because Defendants have been furthering their fraudulent scheme throughout that time period. For the remaining accounts, Chevron has advised that it is willing to narrow its requests to ensure that the subpoenas yield only relevant information. Declaration of Rebecca Gray filed herewith, *passim*. Chevron has agreed, for example, to tailor the time ranges for its request to ensure that the information produced covers only the time periods during which the account holders associated with the LAPs. *Id.* As a result, the subpoenas will yield irrelevant information only if account holders do not object or, if they object, account holders refuse to provide sworn evidence or other information providing the details of the time frame that they worked with the Defendants. Chevron has cooperated with every account holder who has provided this information, and it has removed from the subpoenas one account holder. *See id.*

strategy." Defs.' Br. 6. But Defendants cite no authority that the facts concerning a lawyer's whereabouts constitute a privileged communication or protected work product. Instead, they misstate Judge Kaplan's recent oral ruling in the underlying RICO action. *See* Defs.' Br. 6 ("[T]he Southern District of New York has already ruled that Chevron is not entitled to such information."). In fact, Judge Kaplan sustained an objection from a non-party (not a party) regarding discovery about travel to countries other than the United States and Ecuador. *See* Ex. 12 at 23:20. And Judge Kaplan made clear that he was not passing on the "relevance as a purely legal matter of the material sought" (*id*. at 6:18-23) or on any questions of privilege at all. *See id*. at 4-5, 12:25-13:1 ("But you understand that I'm not passing on privilege questions today."); 17:24-18:2. That ruling does not limit the discovery of IP log information sought here, and provides no basis for a claim of privilege.[4]

**D.     The Subpoenas Do Not Infringe Defendants' Privacy Rights.**

Defendants have no privacy interest in the data Chevron seeks. To the extent Defendants seek to invoke the account holders' privacy rights, *see* Defs.' Br. 9-10, they lack standing to do so. *See* Part III.A.1., *supra*. And, in any event, courts "routinely reject the argument that subscribers have a privacy interest in their account information." *Doe v. SEC*, No. 11-mc-80184 CRB (NJV), 2011 WL 4593181, at *4 (N.D. Cal. Oct. 4, 2011) (denying motion to quash administrative subpoena that "d[id] not seek the content of any of Movant's communications but rather [sought] 'addressing information' that will allow the SEC to identify Movant"); *see also In re United States*, 830 F. Supp. 2d 114, 131-33 (E.D. Va. 2011) (holding that petitioners, through their voluntary transmission of their IP addresses to Twitter, had no expectation of locational privacy in IP logs); *cf. United States v. Li*, No. 07 CR 2915 JM, 2008 WL 789899, at *5 (S.D. Cal. Mar. 20, 2008) ("[T]he [Stored Communications Act] . . . clearly does not communicate to subscribers or customers that they have a reasonable expectation of privacy in their IP addresses and log-in histories.").

---

[4] As set forth in the simultaneously filed Notice of Pendency of Other Actions or Proceedings, Judge Kaplan has been assigned to sit by designation as a judge of the U.S. District Court for the Northern District of New York for the purpose of deciding motions to quash a subpoena that counsel for Chevron served on Microsoft for certain specified email information. Both the subpoena at issue in those motions and the motions themselves are functionally identical to the subpoenas and motions now before this Court.

None of the cases Defendants cite holds to the contrary. They cite *Painting Industry of Hawaii Market Recovery Fund v. U.S. Department of the Air Force*, 26 F.3d 1479, 1483 (9th Cir. 1994), for the proposition that there is a privacy interest in "name, address and financial information." Defs.' Br. 9. But *Painting Industry* involved a request made under the Freedom of Information Act ("FOIA") and therefore did not implicate an interest in relevant discovery in connection with an underlying litigation. *See* 26 F.3d at 1481. Furthermore, the FOIA request sought "particularized information about wages" of the individuals, which Chevron does not seek. *See id.* at 1484. Defendants' reliance on *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010), is likewise unavailing. For purposes of standing, *Crispin* recognized a "personal right in information in [one's] profile and inbox on a social networking site," *id.* at 974, but the court did not hold that user information or IP logs were private or protected. *See id.* at 991 (holding only that the content of webmail and private messages sent via a social networking account are private).

The matter now before this Court makes clear why courts routinely reject privacy arguments like those made by Defendants. The Defendants whose accounts are listed in the subpoena—such as Donziger himself—were integrally involved in the RICO enterprise. And many of the listed account holders used their own names or initials in the email addresses associated with their accounts. And they did so using email services that warn users that their identifying information will not be kept private if it is subpoenaed. Ex. 13 at 6; Ex. 14 at 2. Each account owner agreed to those terms when setting up his or her account. That agreement—particularly when coupled with the account holders' efforts not to keep private their account identifying information—renders their privacy interest "minimal," *Doe I v. Individuals*, 561 F. Supp. 2d 249, 255 (D. Conn. 2008) (so describing the expectation of privacy resulting from a similar internet service provider warning), and overcome by the need for disclosure.[5]

---

[5] In a footnote, Defendants argue that the subpoenas "may" violate users' First Amendment rights "by seeking the identity of anonymous users." Defs.' Br. 10 n.8. But the vast majority of the email addresses covered by the subpoenas are simple variations on the names of the account holders (e.g., simeontegel@hotmail.com for Simeon Tegel). This hardly suggests a protected "decision to remain anonymous." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995) ("[A]n author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment."). To the extent that participants in Defendants' enterprise

*(Cont'd on next page)*

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to quash should be denied.

DATED: January 2, 2013

GIBSON, DUNN & CRUTCHER LLP

By:     /s/ Ethan Dettmer
        Ethan Dettmer

Attorneys for Plaintiff
CHEVRON CORPORATION

---

*(Cont'd from previous page)*

have ever evinced a desire to conceal their identities, moreover, it has been to facilitate fraudulent conduct.  *See* Ex. 10 ¶ 141; Ex. 15.  The First Amendment does not protect fraudulent activity or associations that further a conspiracy.  *See, e.g.*, *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003); *McIntyre*, 514 U.S. at 357; *Branzburg v. Hayes*, 408 U.S. 665, 697 (1972); *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters*, 125 F.3d 1230, 1239 (9th Cir. 1997).