Cindy A. Cohn (SBN 145997)
cindy@eff.org
Marcia Hofmann (SBN 250087)
marcia@eff.org
Nathan Cardozo (SBN 259097)
nate@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Marco Simons (SBN 237314)
marco@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188

Counsel for Non-Party Movants

# UNITED STATES DISTRICT COURT

## FOR THE NOTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHEVRON CORP., | Case No. 3:12-mc-80237 CRB (NC) |
| Plaintiff, | **REPLY IN SUPPORT OF MOTION OF NON-PARTY MOVANTS TO QUASH SUBPOENAS TO GOOGLE, INC. AND YAHOO! INC. SEEKING IDENTITY AND EMAIL USAGE INFORMATION** |
| v. | |
| STEVEN DONZIGER, *et al.* | |
| Defendants. | Date:  January 16, 2013<br>Time: 1:00 PM<br>Place: Courtroom A - 15th Floor<br>Hon. Nathanael Cousins |

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT .................................................................................................................... 1

      A.    THE NON-PARTY MOVANTS HAVE STANDING TO CHALLENGE THE SUBPOENAS IN THEIR ENTIRETY. ............................................................................ 1

      B.    THE SUBPOENAS VIOLATE THE DOES' FIRST AMENDMENT RIGHT TO ANONYMOUS SPEECH. ............................................................................................ 5

      C.    THE SUBPOENAS VIOLATE THE NON-PARTY MOVANTS' FIRST AMENDMENT RIGHT TO ASSOCIATION. ............................................................................. 10

      D.    THE SUBPOENAS VIOLATE THE NON-PARTY MOVANTS' RIGHT TO PRIVACY UNDER THE CALIFORNIA CONSTITUTION. ............................................. 13

III.  CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Commc'ns Ass'n v. Douds,*
    339 U.S. 382 (1950) ................................................................................................ 11

*Arista Records L.L.C. v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010) .................................................................................... 6

*Ariz. Right to Life Political Action Comm. v. Bayless,*
    320 F.3d 1002 (9th Cir. 2003) ................................................................................. 2

*Babbitt v. United Farm Workers Nat'l Union,*
    442 U.S. 289 (1979) ................................................................................................. 3

*Brock v. Local 375, Plumbers Int'l Union of Am., AFL-CIO,*
    860 F.2d 346 (9th Cir. 1988) ............................................................................ 11, 12

*Broome v. Simon,*
    255 F. Supp. 434 (W.D. La. 1965) ......................................................................... 5

*Chevron Corp. v. Berlinger,*
    629 F.3d 297 (2d Cir. 2011) .................................................................................... 9

*Chevron Corp. v. Camp,*
    No. 1:10-mc-00027-GCM-DLH, 2010 U.S. Dist. LEXIS 97440
    (W.D.N.C. Aug. 30, 2010) ...................................................................................... 9

*Chevron Corp. v. E-Tech Int'l,*
    No. 10-cv-1146-IEG-WMc, 2010 U.S. Dist. LEXIS 94396 (S.D. Cal. Sept. 10, 2010) ........ 9

*Chevron Corp. v. Naranjo,*
    667 F.3d 232 (2d Cir. 2012) .................................................................................... 1

*Chevron Corp. v. Salazar,*
    No. 11–0691–LAK, 2011 U.S. Dist. LEXIS 153066 (D. Or. Nov. 30, 2011) ................. 7, 11

*Chevron Corp. v. Shefftz,*
    754 F. Supp. 2d 254 (D. Mass. 2010) .................................................................... 9

*Chevron Corp. v. Stratus Consulting, Inc.,*
    No. 10-cv-00047-MSK-MEH, 2010 U.S. Dist. LEXIS 110023 (D. Colo. Oct. 1, 2010) ...... 9

*Craig v. Boren,*
    429 U.S. 190 (1976) ................................................................................................. 2

*Dept. of Justice v. Reporters Comm. For Freedom of Press,*
    489 U.S. 749 (1989) ............................................................................................... 14

ii

*Doe v. 2TheMart.com*,
    140 F. Supp. 2d 1088 (W.D. Wash. 2001) ................................................ 5, 6, 7, 9

*Doe v. SEC*,
    No. 11-mc-80184 CRB (NJV), 2011 U.S. Dist. LEXIS 114384 (N.D. Cal. Oct. 4, 2011).... 6

*Dole v. Serv. Emps. Union, AFL-CIO, Local 280*,
    950 F.2d 1456 (9th Cir. 1991) ........................................................................ 11

*Ecuadorian Plaintiffs v. Chevron Corp.*,
    619 F.3d 373 (5th Cir. 2010) .......................................................................... 9

*Enterline v. Pocono Med. Ctr.*,
    751 F. Supp. 2d 782 (M.D. Pa. 2008).............................................................. 2

*Gilmore v. City of Montgomery*,
    417 U.S. 556 (1974) ..................................................................................... 10

*Gregg v. Clerk of U.S. Dist. Court*,
    160 F.R.D. 653 (N.D. Fla. 1995)...................................................................... 5

*Illinois ex rel. Madigan v. Telemarketing Assocs.*,
    538 U.S. 600 (2003) ..................................................................................... 10

*In re Chevron Corp. (Bonifaz)*,
    762 F. Supp. 2d 242 (D. Mass. 2010)................................................................ 9

*In re Chevron Corp. (Calmbacher)*,
    No. 1:10-MI-0076-TWT-GGB, 2010 U.S. Dist. LEXIS 114724 (N.D. Ga. Mar. 2, 2010)... 9

*In re Chevron Corp. (Donziger)*,
    749 F. Supp. 2d 141 (S.D.N.Y. 2010),
    *aff'd sub nom Lago Agrio Plaintiffs v. Chevron Corp.*, 409 Fed. Appx. 393 (2d Cir. 2010). 9

*In re Chevron Corp. (Quarles)*,
    No. 3:10-cv-00686-JTN-JB, 2010 U.S. Dist. LEXIS 120798 (M.D. Tenn. Aug. 17, 2010).. 9

*In re Chevron Corp. (Rourke)*,
    753 F. Supp. 2d 536 (D. Md. 2010).................................................................... 9

*In re Chevron Corp. (Scardina)*,
    No. 7:10-mc-00067-JCT, 2010 U.S. Dist. LEXIS 125174 (W.D. Va. Nov. 24, 2010).......... 9

*In re Chevron Corp.*,
    650 F.3d 276 (3d Cir. 2011) ........................................................................... 1

*In re Chevron Corp.*,
    No. 10-mc-00002-LAK (S.D.N.Y. Aug. 16, 2011)........................................... 10

*In re Chevron Corp.*,
    No. 10-mc-00002-LAK (S.D.N.Y. Jan. 13, 2011) ........................................................ 9

*In re Chevron Corp.*,
    No. 10-mc-00002-LAK (S.D.N.Y. Jan. 21, 2011) ........................................................ 9

*In re United States*,
    830 F. Supp. 2d 114 (E.D. Va. 2011) ........................................................................ 6

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2011) ............................................................................. 2, 3

*LSO, Ltd. v. Stroh*,
    205 F.3d 1146 (9th Cir. 2000) ................................................................................ 2

*McVicker v. King*,
    266 F.R.D. 92 (W.D. Pa. 2010) ............................................................................... 2

*Mount Hope Church v. Bash Back!*,
    __ F.3d __, No. 11-35632, 2012 U.S. LEXIS App. 24233 (9th Cir. Nov. 26, 2012)............ 5

*NAACP v. Button*,
    371 U.S. 415 (1963) ........................................................................................... 10

*NAACP v. State of Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) ........................................................................................... 11

*Perry v. Schwarzenegger*,
    591 F.3d 1126 (9th Cir. 2010) ...................................................................... 11, 12, 13

*Sec'y of Maryland v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984) ............................................................................................. 2

*Sony Music Entm't Inc. v. Does 1-40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) ...................................................................... 6

*Thomas v. Collins*,
    323 U.S. 516 (1945) ........................................................................................... 10

*United States v. Jones*,
    565 U.S. ___, 132 S. Ct. 945 (2012) ....................................................................... 14

*Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*,
    536 U.S. 150 (2002) ............................................................................................. 6

*Windsor v. Martindale*,
    175 F.R.D. 665 (D. Colo. 1997) .............................................................................. 5

1

**STATE CASES**

2

*Ind. Newspapers Inc. v. Junior Achievement of Cent. Ind., Inc.*,
    963 N.E.2d 534 (Ind. Ct. App. 2012) ...................................................................... 2

3

*People v. Stipo*,
    195 Cal. App. 4th 664 (2011) ............................................................................... 13

4

5

**FEDERAL RULES**

6

Federal Rule of Civil Procedure 26(c) ................................................................................ 4

7

**FEDERAL CONSTITUTIONAL PROVISIONS**

8

U.S. Const. amend. I.............................................................................................. *passim*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12-mc-80237 CRB (NC)   NON-PARTY MOVANTS' REPLY IN SUPPORT OF MOTION
TO QUASH

## I.      INTRODUCTION

These subpoenas are only the latest salvo in a campaign of discovery by Chevron so extraordinarily extensive as to be called "unique in the annals of American judicial history" by two circuit courts.  *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 236 (2d Cir. 2012); *In re Chevron Corp.*, 650 F.3d 276, 282 n. 7 (3d Cir. 2011).  Chevron asserts that its requests are "routine" and do not violate anyone's rights, but there is nothing routine about these subpoenas. Chevron asks this Court to authorize it to identify and map the whereabouts of 71 internet users—all but two of whom are non-parties to its lawsuit—over the course of nine years. This will reveal their associations, and could expose intimate details such as where each person slept, worshipped, worked, and vacationed for nearly a decade.  Chevron cites no case authorizing civil discovery that approaches in scope or scale the subpoenas at issue here because there is no such case.

Chevron does not deny that it seeks this information. Instead the company argues that this blunderbuss is justified merely because the non-parties had some connection with environmental advocacy efforts in Ecuador and therefore with the defendants. But this assertion fails to meet the exacting legal standards that protect the identities, associations, and privacy of the Non-Party Movants. Far from satisfying those tests, Chevron's subpoenas appear to be a blatant attempt to intimidate and harass the non-parties to discourage them from participating in the policy debate surrounding the environmental consequences of oil extraction—core political expression protected by the First Amendment. The Court should reject Chevron's attempt to abuse the discovery process to silence these non-parties.

## II.     ARGUMENT

### A.      The Non-Party Movants Have Standing to Challenge the Subpoenas in Their Entirety.

Chevron concedes, as it must, that the Non-Party Movants have standing to challenge the subpoenas with respect to their own accounts. But Chevron claims the Non-Party Movants lack standing to challenge the subpoenas as a whole, and cannot assert the rights of others whose email accounts have been named in the subpoenas. Chevron is wrong.

1

First Amendment cases with "unique standing considerations . . . tilt dramatically toward a finding of standing." *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2011) (citing *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) and *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000)) (internal quotation marks omitted). The Supreme Court has long recognized that a third party has standing to assert another's First Amendment rights "[w]here practical obstacles prevent a party from asserting rights on behalf of itself." *Sec'y of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984). Such standing is appropriate when the third party has suffered injury in fact, and when the third party "can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal." *Id.* (citing *Craig v. Boren*, 429 U.S. 190, 193-194 (1976)).

Courts have applied this doctrine to recognize the standing of third parties to move to quash subpoenas seeking the identities of anonymous online speakers who have not directly asserted their own First Amendment rights. *See, e.g.*, *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782 (M.D. Pa. 2008) (finding media company had standing to assert First Amendment rights of anonymous commenters on its website); *Ind. Newspapers Inc. v. Junior Achievement of Cent. Ind., Inc.*, 963 N.E.2d 534, 549 (Ind. Ct. App. 2012) (same); *McVicker v. King,* 266 F.R.D. 92, 95-6 (W.D. Pa. 2010) (same). This Court should follow suit to protect the First Amendment freedoms of dozens of individuals who likewise may not be able to assert their own interests.

First, the holders of the email accounts who have not appeared before the Court face practical obstacles to asserting their rights. Chevron has consistently misstated that account holders who have not reached out to negotiate with Chevron directly or moved to challenge the subpoenas in court have "chosen not to object to Chevron's requests." Chevron Corporation's Opposition to the Non-Party Movants' Motion to Quash Subpoenas to Google Inc. and Yahoo! Inc. ("Chevron Opp.") (ECF No. 46) at 10; Joint Letter Brief (ECF No. 35) at 4. But there is no indication that each affected account owner has received actual notice of Chevron's subpoenas. While the ISPs' efforts to notify their customers about the subpoenas are essential, they are a far cry from effective legal service of process. Some of the account owners may have missed the messages sent by the

12-mc-80237 CRB (NC)       NON-PARTY MOVANTS' REPLY IN SUPPORT OF MOTION
TO QUASH

1  service providers, or may have been slow to read them—indeed, one account holder joined the
2  Non-Party Movants' motion to quash just last week. Supplemental Declaration of Michelle
3  Harrison ("Supp. Harrison Decl.") ¶ 5.

4  Some of the email addresses may no longer be functional, raising serious doubts that their
5  former owners ever learned of Chevron's subpoenas.  The Movants believe that some of the email
6  account holders live and work internationally, which may make it difficult for them to obtain
7  counsel to challenge these subpoenas in federal court in California. Some may not read English and
8  therefore not have understood the notice, and still others may simply have missed the email
9  informing them that Chevron was seeking their information. For all these reasons, a number of the
10  email account holders face practical obstacles to asserting their own interests in this action.

11  Second, the Non-Party Movants have demonstrated sufficient injury in fact. In a First
12  Amendment challenge, a party may establish injury in fact by "demonstrat[ing] a realistic danger
13  of sustaining a direct injury" as a result of the challenged action. *Babbitt v. United Farm Workers*
14  *Nat'l Union*, 442 U.S. 289, 298 (1979); *Lopez*, 630 F.2d at 785 (citing standard). The Does have
15  more than satisfied this standard.  Non-Party Movants' Mot. To Quash at 19-21; Declarations of
16  John Does 1-7 (ECF No. 43).

17  Chevron's aggressive litigation tactics have already chilled the Non-Party Movants'
18  political expression and resulted in membership withdrawal. As two Doe declarants noted, they
19  refused opportunities to work on the Chevron litigation after seeing what Chevron had put others
20  through who participated in the case and related activism.  John Doe 1 Decl. ¶ 10; John Doe 6
21  Decl. ¶ 9.  The Does feel harassed by Chevron's attempt to obtain the information it seeks, and fear
22  further harassment if Chevron actually gains access to personal information about their email use.
23  Some Does state that other individuals have been subjected to harassment, threats, and intimidation
24  for working in connection with the litigation against Chevron in Ecuador or related activism
25  efforts.  *See* John Doe 4 Decl. ¶ 11; John Doe 5 Decl. ¶ 10.  Two declarants expressed concern for
26  their physical safety if Chevron gains access to the information it seeks.  John Doe 4 Decl. ¶ 11;
27  John Doe 5 Decl. ¶ 10.

28

The Does' declarations also reflect a likelihood of chilled expression in the future. Many of the Does state that if they had known that their email usage information and location would be revealed to Chevron, their political expression at the time they were assisting with the litigation or participating in related advocacy efforts would have been chilled. John Doe 1 Decl. ¶ 9; John Doe 2 Decl. ¶ 10; John Doe 3 Decl. ¶ 8; John Doe 7 Decl. ¶ 9. They say their future political and associational activities related to Chevron will be chilled if the company obtains the personal information it seeks. John Doe 1 Decl. ¶ 10; John Doe 2 Decl. ¶ 11; John Doe 3 Decl. ¶ 9; John Doe 4 Decl. ¶ 11; John Doe 6 Decl. ¶ 9, John Doe 7 Decl. ¶ 9. They believe their associational activities will likely be chilled more generally, as well. John Doe 1 Decl. ¶ 11; John Doe 2 Decl. ¶ 10; John Doe 3 Decl. ¶ 10; John Doe 4 Decl. ¶ 12; John Doe 6 Decl. ¶ 11; John Doe 7 Decl. ¶ 11.

The Non-Party Movants have made a *prima facie* showing that the service providers' compliance with Chevron's subpoenas will chill their constitutionally protected associational rights. The burden to justify the subpoenas is therefore Chevron's.

Third, the Non-Party Movants can frame the issues properly and present them with adversarial zeal. The Movants and the owners of the other email accounts listed in the subpoenas are similarly situated. Chevron seeks the same information about each of these individuals, and each account owner has First Amendment interests in the entirety of the information sought by Chevron. The Non-Party Movants have presented the legal issues in a manner that applies to all the affected individuals, and have retained counsel to litigate these questions vigorously.

For these reasons, the Court should find the Non-Party Movants have standing to challenge the subpoenas as they apply to each individual named in them. But even if the Court finds the Non-Party Movants do not have third-party standing to assert the First Amendment rights of the other email account holders,[1] it should exercise its discretion under Federal Rule of Civil

---

[1] In its opposition to the RICO Defendants' Motion to Quash, Chevron asserts that the defendants also lack standing to challenge the subpoenas. Under Chevron's reasoning, no one has standing to challenge the subpoenas as they apply to closed accounts, accounts whose owners do not read *(footnote continued on following page)*

Procedure 26(c) to quash the subpoenas in their entirety because they are grossly overbroad as drafted, and are oppressive and unreasonable. *See* Non-Party Movants Mot. to Quash at 24-25; *see also Windsor v. Martindale*, 175 F.R.D. 665, 670 (D. Colo. 1997) (a court may quash a subpoena *sua sponte* as an exercise of its "inherent power to protect anyone from oppressive use of process") (citing *Gregg v. Clerk of U.S. Dist. Court*, 160 F.R.D. 653, 654 (N.D. Fla. 1995)); *Broome v. Simon*, 255 F. Supp. 434, 437 (W.D. La. 1965) (same).

**B.     The Subpoenas Violate the Does' First Amendment Right to Anonymous Speech.**

The law in the Ninth Circuit is clear. When a party seeks the identity of a *non-party* in civil discovery, *Doe v. 2TheMart.com, Inc.* "sets forth the standard for unmasking a witness." *Mount Hope Church v. Bash Back!*, __ F.3d __, No. 11-35632, 2012 U.S. LEXIS App. 24233, at *7-8 n. 4 (9th Cir. Nov. 26, 2012) (citing *Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088, 1095 (W.D. Wash. 2001)). Throughout its opposition, Chevron attempts to conflate its requests for identifying information for non-parties with requests directed at parties' identities. Applying any test for the discovery of parties' identities to the non-parties here would be inappropriate.

Chevron argues that because some (but not all) of the Non-Party Movants use what appear to be portions of their names in their email addresses, each and every Non-Party Movant has ceased to be anonymous.[2] Chevron Opp. at 14. Chevron cannot have it both ways. Either Chevron already knows who the non-parties are, or it doesn't. If Chevron knows their identities, it does not need this cumulative discovery. If Chevron does not know their identities, then it must satisfy the *2TheMart.com* test. In any event, the law is clear that one need not maintain perfect anonymity to

---

*(footnote continued from preceding page)*
English, or account owners who otherwise failed to receive notice of the subpoenas. This Court should reject Chevron's attempt to ensure that its unconstitutional subpoenas go unchallenged.

[2] The address hueyzactlan@gmail.com, whose owner joins the Non-Party Movants today, *see* Supp. Harrison Decl. ¶ 5, is an example of an email address that indisputably does not contain a name.

NON-PARTY MOVANTS' REPLY IN SUPPORT OF MOTION TO QUASH

1    enjoy the protection of the First Amendment.  *See, e.g., Watchtower Bible & Tract Society of New*
2    *York, Inc. v. Village of Stratton,* 536 U.S. 150, 166-69 (2002).

3         Chevron proposes that this Court apply the Second Circuit's test for unmasking anonymous
4    *defendants* enunciated in *Arista Records L.L.C. v. Doe 3*, 604 F.3d 110 (2d Cir. 2010), to the non-
5    parties.  Yet in that case, as in the other cases cited by Chevron,[3] the plaintiff's suit could not
6    proceed to substantive discovery without first identifying the party against whom the plaintiff was
7    to litigate.  The plaintiff in *Arista Records* alleged that the Doe defendant it sued engaged directly
8    in copyright infringement, so at the outset, the court tested the plaintiff's allegation against the Doe
9    to determine if it had made a *prima facie* case.  *Id.* at 118-19.

10        Chevron has made no allegations of wrongdoing against any of the Non-Party Movants.  It
11   may be that Chevron has made a *prima facie* case against the defendants named in the complaint,
12   but applying this analysis to the Non-Party Movants makes little sense, since Chevron has no *prima*
13   *facie* case against them.  Thus, Chevron's argument fails even under the *Arista Records* test it
14   proposes.

15        Chevron attempts to overcome this fatal defect by repeatedly arguing that the defendants'
16   alleged actions should be imputed to the Non-Party Movants.  Chevron Opp. at 15-18.  While
17   Chevron is correct that the First Amendment does not protect the concealment of illegal activity,
18   Chevron Opp. At 14, Chevron has not alleged any civil causes of action against the Non-Party
19   Movants, much less criminal activity.  Chevron presumably determined who had potential liability
20   when it chose the defendants to name in its 200+ page complaint, and it chose to name many
21   people.  But Chevron did not include the Non-Party Movants as defendants.  That choice has
22   consequences and Chevron cannot now seek to have this Court treat these non-parties as parties for
23   purposes of discovery. Accordingly, the *2TheMart.com* four-part test for the discovery of non-party
24   witnesses' identities is the applicable test.

25

26   [3] *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), *Doe v. SEC*, No. 11-
27   mc-80184 CRB (NJV), 2011 U.S. Dist. LEXIS 114384 (N.D. Cal. Oct. 4, 2011); *In re United States*, 830 F. Supp. 2d 114 (E.D. Va. 2011).

28

As described in Non-Party Movants' Motion to Quash, the *2TheMart.com* test requires that "(1) the subpoena seeking the information was issued in good faith and not for any improper purpose, (2) the information sought relates to a core claim or defense, (3) the identifying information is directly and materially relevant to that claim or defense, and (4) information sufficient to establish or to disprove that claim or defense is unavailable from any other source." *2theMart.com*, 140 F. Supp. 2d at 1095. In its opposition, Chevron has failed to make the required showing under any of the four parts.

First, Chevron has failed to show that the subpoenas were issued in good faith. To the contrary, Chevron issued these subpoenas to harass and discourage non-parties' ongoing participation in the political and legal debate surrounding oil extraction activities in Ecuador. This Court would not be the first to find that Chevron's litigation strategy in the Ecuador litigation, and specifically its behavior in conducting non-party discovery against activists "was, at least in part, meant to harass." *See Chevron Corp. v. Salazar*, No. 11–0691–LAK, 2011 U.S. Dist. LEXIS 153066, at *9 (D. Or. Nov. 30, 2011).

Chevron's Opposition demonstrates blatant disregard for the Non-Party Movants' constitutional concerns, purporting to list on the public record the names of more than a dozen of the movants, including all of the Does who submitted declarations demonstrating the subpoenas are likely to result in harassment, membership withdrawal, and a chilling of the Non-Party Movants' political expression. Chevron Opp. at 7-9.

In a particularly egregious example, Chevron claims to state the legal name of an activist who performs his advocacy exclusively using the pseudonym "Han Shan." Chevron Opp. at 8. In doing so, Chevron misrepresents that he publishes on huffingtonpost.com "under his own name." Chevron's claim is untrue; indeed, only the name "Han Shan" appears in Chevron's exhibits 34 and 35. Attempting to "out" Han Shan and other Non-Party Movants in public court filings suggests that Chevron's real goal is to intimidate, harass, and ultimately silence these individuals in retaliation for their political speech and association.

1    Chevron's lack of good faith is also apparent in its justification for seeking nine years of

2  information.  Instead of explaining why nine years of IP logs is relevant for each account listed in

3  the subpoenas, including those it believes to be owned by individuals whose involvement was

4  limited to a short time period, Chevron attempts to shift the burden to the Non-Party Movants,

5  asserting that they "have failed to offer evidence as to a period of time when they were *not*

6  supporting" the defendants.  Chevron Opp. at 21 (emphasis in original).  This attempt to shift the

7  burden seems aimed at requiring the non-parties to take steps to undermine their own anonymity as

8  a condition of protecting it. But the burden to show good faith is Chevron's alone.

9    Chevron's lack of good faith is especially striking because Google and Yahoo! have

10  represented to counsel for the Non-Party Movants, and presumably to Chevron, that in the ordinary

11  course of business they only retain IP logs for a fraction of the time the subpoenas cover—typically

12  no more than a year. Cohn Decl. ¶¶ 3-5.  Assuming the providers have IP logs up to a year prior to

13  the date of Chevron's subpoenas, the information that would be disclosed in response to Chevron's

14  subpoenas is from roughly October 2011 to October 2012 (when the operative subpoenas were

15  served on Google and Yahoo!). Cohn Decl. ¶¶ 3-4, Ex. A. Chevron offers no explanation why

16  information from the past year alone—which appears to be the only information available—could

17  be in any way necessary to prove, or even relevant to, its RICO claims.  Chevron cannot in good

18  faith argue that this information is necessary for its case.

19    Second, Chevron has failed to show how the identity and IP logs of each and every one of

20  the 69 non-party account owners will go to show the actions the defendants, where the defendants

21  were located when they allegedly committed those actions, or how they did so.  Here again,

22  Chevron confuses parties and non-parties. Chevron asserts that because it has "well-supported

23  RICO claims" against the Defendants, the subpoenas should stand even as to the non-parties.  *See*

24  Chevron Opp. at 19.  Chevron has identified three rationales for issuing these discovery demands:

25  that they will "[1] provide evidence about the structure and management of the *RICO defendants'*

26  fraudulent enterprise, [2] will confirm that many of the *defendants'* fraudulent acts occurred in the

27  United States . . . [and 3] establish how major acts of fraud . . . were perpetrated."  Chevron Opp.

28

at 2 (emphasis added). Chevron has declined to make the required address-by-address showing that it has a good faith belief that the identity of each non-party account owner, along with the full nine years' worth of IP logs it seeks for each account, will contribute to any of the three goals it identified. *See* Chevron Opp. at 7. And it certainly has not made such a showing that IP logs since October 2011—which is the timeframe during which logs likely exist—bear any relationship to these rationales. Declaration of Cindy Cohn ("Cohn Decl.") ¶¶ 2-5. Perhaps Chevron has made such a showing as to those accounts owned by the defendants, but that does not save these subpoenas. The massive overbreadth of the subpoenas and Chevron's failure to narrow them after lengthy negotiations demonstrates that Chevron has not satisfied its burden to demonstrate that the information it seeks is "directly and materially relevant to [a] claim or defense." *See* *2theMart.com*, 140 F. Supp. 2d at 1095.

Finally, Chevron seems to assert that the information it seeks is unavailable from any other source because the defendants fought discovery early on in the litigation. *See* Chevron Opp. at 5-6, 19. But Chevron glosses over the fact that it eventually won most of those battles and has obtained an extraordinary amount of discovery.[4] Among other items in Chevron's possession are all of Steven Donziger's emails, his computer hard drive, work product from his interns and co-counsel, and his personal journals.[5] While Chevron of course cannot obtain Google and Yahoo!'s IP logs

___

[4] *Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011); *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373 (5th Cir. 2010); *In re Chevron Corp. (Calmbacher)*, No. 1:10-MI-0076-TWT-GGB, 2010 U.S. Dist. LEXIS 114724 (N.D. Ga. Mar. 2, 2010); *In re Chevron Corp. (Scardina)*, No. 7:10-mc-00067-JCT, 2010 U.S. Dist. LEXIS 125174 (W.D. Va. Nov. 24, 2010); *Chevron Corp. v. E-Tech Int'l*, No. 10-cv-1146-IEG-WMc, 2010 U.S. Dist. LEXIS 94396 (S.D. Cal. Sept. 10, 2010); *In re Chevron Corp. (Bonifaz)*, 762 F. Supp. 2d 242 (D. Mass. 2010); *In re Chevron Corp. (Quarles)*, No. 3:10-cv-00686-JTN-JB, 2010 U.S. Dist. LEXIS 120798 (M.D. Tenn. Aug. 17, 2010); *Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH, 2010 U.S. Dist. LEXIS 110023 (D. Colo. Oct. 1, 2010); *In re Chevron Corp. (Rourke)*, 753 F. Supp. 2d 536 (D. Md. 2010); *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254 (D. Mass. 2010); *In re Chevron Corp. (Donziger)*, 749 F. Supp. 2d 141 (S.D.N.Y. 2010), *aff'd sub nom Lago Agrio Plaintiffs v. Chevron Corp.*, 409 Fed. Appx. 393 (2d Cir. 2010); *Chevron Corp. v. Camp*, No. 1:10-mc-00027-GCM-DLH, 2010 U.S. Dist. LEXIS 97440 (W.D.N.C. Aug. 30, 2010).

[5] *In re Chevron Corp.*, No. 10-mc-00002-LAK (S.D.N.Y. Jan. 21, 2011) (ordering disclosure of Donziger's hard drive, ECF No. 171); *In re Chevron Corp.*, No. 10-mc-00002-LAK (S.D.N.Y. Jan. 13, 2011) (ordering disclosure of Donziger's email accounts and all of his electronically stored *(footnote continued on following page)*

from other sources, it can certainly obtain evidence of the defendants' identities and locations elsewhere, which is what it represents is ultimately relevant to its claims.  Indeed, it already has.

### C.   The Subpoenas Violate the Non-Party Movants' First Amendment Right to Association.

Chevron's efforts to pierce the Non-Party Movants' right to association also fail.  The Non-Party Movants have made a *prima facie* showing of arguable First Amendment infringement, and Chevron has failed to show that its interest in the information it seeks is significant enough to defeat the account owners' First Amendment rights.

First, Chevron misconstrues the associational interest at issue here. Chevron repeatedly describes the relevant association as the "involvement" between the non-party email account owners and the plaintiffs in the Lago Agrio litigation. Chevron Opp. at 20. In fact, the Non-Party Movants have asserted their right to associate with others engaged in environmental litigation against the oil company and more broadly to environmental activism, all of which is highly protected political speech reaching beyond the Lago Agrio litigation or any alleged RICO enterprise. *See, e.g.*, *NAACP v. Button*, 371 U.S. 415, 429-31 (1963); *Thomas v. Collins*, 323 U.S. 516, 537 (1945).  Chevron may not agree with the Non-Party Movants' viewpoints, but "[t]he freedom to associate applies to the beliefs we share, and to those we consider reprehensible." *Gilmore v. City of Montgomery*, 417 U.S. 556, 321 (1974).  Chevron has never claimed that the Non-Party Movants violated the law, and merely alleging that the defendants carried out a fraud does not nullify the non-parties' First Amendment rights. *See Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 617 (2003) ("Simply labeling an action one for 'fraud,' of course, will not carry the day.").

Next, Chevron focuses myopically on the identities of the Does, arguing that the disclosure of their names will not harm their associational freedoms because "the genie has left the bottle."

*(footnote continued from preceding page)*
information using Chevron's search terms, ECF No. 162); *In re Chevron Corp.*, No. 10-mc-00002-LAK (S.D.N.Y. Aug. 16, 2011) (ordering disclosure of all documents under Donziger's control from interns and attorneys with whom he worked in connection with the Ecuadorian litigation and whom could have documents responsive to Chevron's search terms, ECF No. 199).

1     Chevron Opp. at 20. But this argument sidesteps the proper inquiry. As the Ninth Circuit has held,

2     "[t]he existence of a prima facie case turns not on the type of information sought, but on whether

3     *disclosure of the information will have a deterrent effect on the exercise of protected activities.*"

4     *Perry v. Schwarzenegger*, 591 F.3d 1126, 1141 (9th Cir. 2010) (citing *NAACP v. State of Alabama*

5     *ex rel. Patterson*, 357 U.S. 449, 460-61 (1958) and *Brock v. Local 375, Plumbers Int'l Union of*

6     *Am., AFL-CIO*, 860 F.2d 346, 349-50 (9th Cir. 1988)) (emphasis added).

7        While Chevron complains that the Non-Party Movants have not made an adequate

8     threshold showing of arguable First Amendment infringement, the movants have presented

9     declarations from several Does attesting to the impact compelled disclosure of their identities and

10    email usage information will have on their future expressive activities—which is just what the

11    Ninth Circuit found in *Perry* established the requisite showing. 591 F.3d at 1143 (a small number

12    of declarations "attesting to the impact compelled disclosure would have on participation and

13    formulation of strategy . . . [are sufficient to] create[] a reasonable inference that disclosure would

14    have the practical effects of discouraging political association."). *See also Dole v. Serv. Emps.*

15    *Union, AFL-CIO, Local 280*, 950 F.2d 1456, 1459-61 (9th Cir. 1991) (finding that a union made a

16    *prima facie* case of arguable First Amendment infringement by submitting a declaration from a

17    union official and two letters from members who said they would no longer participate in union

18    meetings if the minutes were disclosed).

19        While Chevron dismisses the Does' concerns about chilling effects as "baseless

20    speculation," the relevant question is whether the disclosure "would have the *practical effect* of

21    discouraging the exercise of constitutionally protected political rights," and the Non-Party Movants

22    have demonstrated it will. *Dole*, 950 F.2d at 1460 (quoting *NAACP v. Alabama*, 357 U.S. at 461

23    and *Am. Commc'ns Ass'n v. Douds,* 339 U.S. 382, 393 (1950)) (internal quotation marks omitted)

24    (emphasis original in *Dole*). And given that the courts in this Circuit have already found that

25    Chevron issued other non-party discovery in order to harass, and awarded substantial attorneys fees

26    as a result, the Non-Party Movants' concerns cannot be waved off as mere speculation. *See*

27    *Salazar*, 2011 U.S. Dist. LEXIS 153066.

28

1    Shifting to the First Amendment standard, Chevron contends that it has a "compelling

2    interest" in the information it seeks, the information sought is "rationally related" to that interest,

3    and the subpoenas are the "least restrictive means of obtaining the desired information." *Brock*, 860

4    F.2d at 350; *Perry*, 591 F.3d at 1140.  This claim does not pass muster.

5    Chevron seeks nine years of information about each of the 71 email accounts listed in the

6    subpoenas.  The company offers little detail about why this massive amount of information is

7    necessary to litigate its claims, summarily concluding that "the fraud at issue has been going on for

8    decades," and the subpoenas request information "for the time period since the Ecuador litigation

9    began." Chevron Opp. at 21.   Chevron makes no effort to show how each account holder's

10   information is relevant to Chevron's RICO claims. The only specific details Chevron offers to link

11   the 69 non-parties to the alleged fraud is to suggest they could have been involved in the

12   "ghostwriting" of an expert's report in the Ecuador litigation and the Ecuador court's judgment.

13   Chevron Opp. at 11.   The final report was submitted to the court on April 1, 2008, and the

14   judgment was issued on February 14, 2011. Chevron Opp. Ex. 2 at 10-12. Assuming *arguendo* that

15   Chevron's bald allegations were sufficient to trump the Non-Party Movants' First Amendment

16   rights—which they are not—this explanation could only justify the disclosure of information from

17   a much shorter period of time ending in February 2011.

18   Chevron implicitly concedes that its subpoenas are overbroad, noting that it offered to tailor

19   the timeframe for Non-Party Movants who would identify themselves and volunteer the time range

20   during which they "associated" with the Lago Agrio plaintiffs. Chevron Opp. at 13. But it is not the

21   non-parties' burden to prove their information is irrelevant to Chevron's case, but rather Chevron's

22   burden to show that it has a "compelling interest" in the information it seeks. Chevron cannot make

23   this showing with respect to *any* of the 69 email addresses associated with non-parties.

24   This is particularly true given the information Google and Yahoo! have explained they are

25   likely to have that is actually responsive to the subpoenas. According to the providers, the IP logs

26   that would be disclosed dates back to roughly October 2011, *after* the specific events in which

27   Chevron suggests the Non-Party Movants' email accounts may have been involved. Cohn Decl.

28

12-mc-80237 CRB (NC)       NON-PARTY MOVANTS' REPLY IN SUPPORT OF MOTION
                                                           TO QUASH

¶¶ 3-4, Ex. A. Chevron cannot have any legitimate interest in IP logs for the short time period Google and Yahoo! keep them, much less a compelling interest.

It follows that the subpoenaed information is not rationally related to the interest Chevron asserts.  Indeed, the vast amount of data Chevron seeks—and the far more time-limited information that the providers might actually have—is not relevant to Chevron's claims at all, much less "highly relevant," as Ninth Circuit precedent requires. *Perry*, 591 F.3d at 1141.

Nor are these subpoenas the least restrictive means of obtaining the desired information. While Chevron complains it has had difficulty obtaining discovery directly from the defendants in the case, it concedes it has "already obtained thousands of emails sent to and from the RICO defendants and those associated with them," Chevron Opp. at 17-18, as well as other extraordinary discovery, *supra* at 9.  While the defendants may not have the exact IP logs possessed by the providers, Chevron is trying to establish the relationships between the non-party email account holders and the RICO defendants. Traditional third-party discovery has already yielded substantial information, as Chevron admits.   This Court should not allow Chevron to leverage this extraordinary discovery request to conduct a fishing expedition into the non-party account holders' private lives and associations.

**D.** **The Subpoenas Violate the Non-Party Movants' Right to Privacy Under the California Constitution.**

Chevron's answer to the Non-Party Movants' assertion of their California constitutional right to privacy boils down to an argument that non-parties have no reasonable expectation of privacy in the requested information, either because they used an email service to begin with or because of the very nature of IP addresses, regardless of context.  Chevron Opp. at 22-23.  The key case Chevron cites for this proposition is easily distinguishable, however, since it involved a government request for a single instance of a criminal defendant's IP address to identify the computer used to commit a crime. *People v. Stipo*, 195 Cal. App. 4th 664 (2011).

That slim authority simply does not support the conclusion that dozens of non-party activists, journalists, interns, volunteers, and attorneys have no expectation of privacy in their legal identities or the IP addresses of every computer or mobile device they used to check their email in

13

1  the last nine years, when that information is being sought to track their physical movements and

2  map their political associations.  Even in the very different context of criminal prosecutions, the

3  Supreme Court has recognized that the long-term collection and compilation of personal

4  information like location, IP address, and criminal records implicates a very different, and much

5  greater, expectation of privacy.  *See Dept. of Justice v. Reporters Comm. For Freedom of Press*,

6  489 U.S. 749, 764 (1989) (there is a "distinction, in terms of personal privacy, between scattered

7  disclosure of the bits of information contained in a rap sheet and revelation of the rap sheet as a

8  whole"); *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945, 964 (2012) ("short-term monitoring

9  of a person's movements on public streets accords with expectations of privacy" but "the use of

10  longer term GPS monitoring in investigations of most offenses impinges on expectations of

11  privacy.") (Alito, J. concurring).

12      In this case, even if a defendant who sent a particular email in furtherance of an alleged

13  fraud had no expectation of privacy in the IP address of the computer from which he sent that

14  email, this Court should find that the 69 non-parties whose information is also sought by Chevron

15  have a reasonable expectation of privacy in the associational and location information attendant in

16  the compilation of nine years' worth—or even one year's worth—of their collective IP logs and

17  subscriber data.

18  **III.    CONCLUSION**

19      For the foregoing reasons, the September 19, 2012 subpoenas served by Chevron upon

20  Google and Yahoo! should be quashed in their entirety.

21

22  DATED:  January 9, 2013                    Respectfully submitted,

23                                             ELECTRONIC FRONTIER FOUNDATION

24                                             _____/s/ Marcia Hofmann_____
                                               Marcia Hofmann, Esq.
25                                             Cindy A. Cohn, Esq.
                                               Nathan Cardozo, Esq.
26                                             454 Shotwell Street
                                               San Francisco, CA 94110
27                                             Telephone:  (415) 436-9333

28

12-mc-80237 CRB (NC)          NON-PARTY MOVANTS' REPLY IN SUPPORT OF MOTION
                                           TO QUASH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Marco Simons
marco@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188

*Counsel For Non-Party Movants*

12-mc-80237 CRB (NC)     NON-PARTY MOVANTS' REPLY IN SUPPORT OF MOTION
TO QUASH