1
2
3
4
5
6
7      **UNITED STATES DISTRICT COURT**
8      **NORTHERN DISTRICT OF CALIFORNIA**
9      **SAN FRANCISCO DIVISION**
10

| | |
|---|---|
| 11  CHEVRON CORP., | Case No. 12-mc-80237 CRB (NC) |
| 12                  Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO QUASH SUBPOENAS** |
| 13       v. | |
| 14  STEVEN DONZIGER, and others, | Re: Dkt. Nos. 42, 43 |
| 15                  Defendants. | |

16

17      Chevron served subpoenas on non-party internet service providers Google and

18  Yahoo!, seeking the subscriber and usage information associated with sixty-eight email

19  addresses.  Defendants moved to quash the subpoenas.  Thirty-two non-parties ("Doe

20  movants"), whose email addresses are among those subpoenaed, also moved to quash the

21  subpoenas.  District Judge Charles R. Breyer referred both motions to this Court.  Dkt. No.

22  24.  The issues are (1) whether defendants and the Doe movants have standing to quash the

23  subpoenas; (2) whether the subpoenas infringe upon the Doe movants' First Amendment

24  rights to speak anonymously and freely associate; (3) whether the subpoenas infringe the

25  Doe movants' right to privacy; and (4) whether the subpoenas are overbroad.  After both

26  motions were briefed, the Court held a hearing on the issues.  For the reasons discussed

27  below, the Court GRANTS IN PART AND DENIES IN PART the motions to quash.

28  //

# I. BACKGROUND

This discovery dispute is just one small part in an elaborate maze of litigation spanning states, countries, and continents. In 2003, plaintiffs in Lago Agrio, Ecuador, represented by attorney Steven Donziger, sued Chevron under Ecuador's Environmental Management Act, seeking damages related to environmental harms alleged in Ecuador. *See Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235, 242-43 (S.D.N.Y. July 31, 2012). The Ecuador Court awarded the Lago Agrio plaintiffs an $18.2 billion judgment against Chevron on February 14, 2011. *Id.* at 245. Then, Chevron brought civil RICO claims against defendants in the Southern District of New York, alleging, among other things, that defendants attempted to defraud and extort Chevron by bringing suit in Ecuador, bribing Ecuadorian judges, ghostwriting opinions and expert reports, and exerting a pressure campaign on Chevron in the United States.

The most recent legal and factual findings regarding the substance of Chevron's claims come from District Judge Lewis A. Kaplan's March 15, 2013 order, in which he ruled on whether documents from the law firm Patton Boggs were protected by the attorney-client privilege. *Chevron Corp. v. Donziger*, No. 11-cv-00691 LAK (JCF), 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013). In assessing whether the crime-fraud exception applied to the documents, Judge Kaplan found that Chevron has established probable cause to believe the RICO defendants have engaged in some fraud in five separate instances. *Id.* at *30. Those five instances are (1) the alleged bribery of an Ecuadorian judge and the writing of the judgment and other judicial documents in the Lago Agrio case; (2) the Lago Agrio Plaintiffs' writing of the expert reports regarding judicial inspection submitted over Calmbacher's signature; (3) the circumstances under which the Lago Agrio court terminated the judicial inspection process; (4) the selection and appointment of Cabrera as a global expert, preparation and submission of his report to the Lago Agrio court, and its representation as his independent work; and (5) the submission of deceptive accounts of the Lago Agrio Plaintiffs' and Stratus Consulting's relationship with Cabrera in the District of Colorado and elsewhere in § 1782 proceedings. *See id.* Judge Kaplan based these findings

1    on evidence that was undisputed or about which he found no dispute of material fact in his

2    previous order granting partial summary judgment and dismissing defendants' affirmative

3    defense of res judicata.  *Id.* at *2, n.9; *see also Chevron Corp. v. Donziger*, 886 F. Supp. 2d

4    at 286-90.  Subsequent discovery orders by Magistrate Judge James C. Francis have

5    continued to rely on these findings by Judge Kaplan.  *See, e.g.*, No. 11-cv-00691 LAK

6    (JCF) (S.D.N.Y.), Dkt. No. 1333 (ordering defendants to amend their privilege logs to

7    include descriptions of withheld documents that give adequate bases from which to accept

8    or challenge privilege and to produce documents reflecting communications with Stratus

9    Consulting relating to the Cabrera report or any work provided to Mr. Cabrera).

10       This Court also relied on these factual findings in its April 5, 2013 order quashing

11    Chevron's subpoena to Amazon Watch.  *Chevron Corp. v. Donziger*, No. 13-mc-80038

12    CRB (NC), 2013 WL 1402727, at *4 (N.D. Cal. Apr. 5, 2013).  In that order, this Court

13    found that Amazon Watch had made a prima facie showing that enforcement of Chevron's

14    subpoena would chill the communications of its core campaign strategists and organizers

15    and result in members withdrawing.  *Id.*  The Court concluded that even assuming Amazon

16    Watch was the mouthpiece of the RICO defendants, there was nothing to suggest that its

17    speech fell outside the scope of the First Amendment's protection.  *Id.*  In reaching this

18    conclusion, the Court relied on the five instances of fraud Judge Kaplan highlighted in his

19    March 15, 2013 order and noted that none of the five instances referenced the alleged

20    pressure campaign or Amazon Watch.  *Id.*

21       On June 6, 2013, Judge Kaplan reiterated that the factual findings in his March 15,

22    2013 order compelled the production of the Patton Boggs documents.  No. 11-cv-00691

23    LAK (JCF) (S.D.N.Y.), Dkt. No. 1216.

24        The RICO case against defendants is set to go to trial on October 15, 2013.[1]

25    *Chevron Corp. v. Donziger*, No. 11-cv-00691 LAK (JCF) (S.D.N.Y.), Dkt. No. 1339.

26    _____

27    [1] One claim was severed and dismissed by the Second Circuit.  *See Chevron Corp. v. Naranjo*, 667
      F.3d 232, 240 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 423 (2012).  In addition, Chevron dismissed
      its claims against Stratus Consulting on April 8, 2013.  *Chevron Corp. v. Donziger*, No. 11-cv-

28    00691 LAK (JCF) (S.D.N.Y.), Dkt. No. 988.

1 Chevron filed a motion for partial summary judgment on August 16, 2013.  No. 11-cv-

2 00691 LAK (JCF) (S.D.N.Y.), Dkt. No. 1348.  Discovery issues persist, however, and

3 Judge Kaplan has issued an order to show cause why the trial dates should not be set back

4 thirty days.  No. 11-cv-00691 LAK (JCF) (S.D.N.Y.), Dkt. Nos. 1344, 1347.

5      At issue here are two motions to quash Chevron's subpoenas of non-parties Google

6 and Yahoo!, one brought by defendants, and one brought by the Doe movants.  Chevron

7 seeks "[a]ll documents related to (A) the identity of the user of the following email

8 addresses, including but not limited to documents that provide all names, mailing addresses,

9 phone numbers, billing information, date of account creation, account information and all

10 other identifying information associated with the email addresses under any and all names,

11 aliases, identities or designations related to the email address; (B) the usage of the following

12 email addresses, including but not limited to documents that provide IP logs, IP address

13 information at time of registration and subsequent usage, computer usage logs, or other

14 means of recording information concerning the email or Internet usage of the email

15 address" since 2003 from both internet service providers ("ISPs").  Dkt. No. 42-1 at 9, 17.

16 Chevron also seeks from Google "IP address information for the email sent by

17 gringograndote@gmail.com to sdonziger@gmail.com on April 1, 2008 at 12:15 pm . . .

18 with the subject 'Fwd: Informe Final.'"  *Id.* at 9.

19      An internet protocol ("IP") address is a number that identifies the network location of

20 a computer connected to the internet.  Dkt. No. 43-1 at 2.  A laptop or mobile device's IP

21 address may change depending on the location at which it connects to the internet.  *Id.* at 4.

22 Every computer on the internet needs an IP address in order to communicate with other

23 computers, visit websites, and send and receive email.  *Id.* at 2.

24      Defendants argue that both subpoenas to the ISPs are overbroad and should be

25 quashed.  Specifically, defendants take issue with the length of time for which Chevron

26 seeks records—nine years—and propose that, at the very least, the subpoenas should be

27 limited to seek only materials up until the date of the Ecuadorian judgment on February 14,

28 2011.  In addition, defendants argue that the subpoenas are not sufficiently tailored to seek

only material that is relevant to the RICO case for which Chevron seeks discovery. And last, defendants argue that Chevron already has tens of thousands of defendant Steven Donziger's emails from a proceeding brought under 28 U.S.C. § 1782 in the Southern District of New York, indicating that the information is available by other means and making these subpoenas duplicative.

The Doe movants, none of whom is a named defendant in the underlying RICO action, move to quash arguing that the subpoenas violate their First Amendment rights to speech and association.[2] The Doe movants claim to be former interns, environmentalists, journalists, and bloggers who, at one point or another, have spoken out about the Ecuadorian rain forest and the alleged impact of Chevron's operations there. They contend that revealing the subscriber information associated with their email accounts will chill their anonymous speech about an issue of public concern. The Doe movants also argue that producing the IP addresses and logs associated with their email accounts will provide a rough itinerary of where and with whom they have been for the last nine years, thus infringing upon their right to associate.

Since Chevron filed its original subpoenas, there have been several changes that affect the scope of its subpoenas. Chevron has withdrawn its request for documents related to the email address kevinjonheller@gmail.com. Dkt. No. 45, Ex. J. John Wotowicz has identified himself to Chevron as the owner of the email address john.wotowicz@gmail.com and has consented to the production of documents in request (B), limited to July 1, 2009

---

[2] The Doe movants are the owners of the following email addresses: cortelyou@gmail.com, sayjay80@gmail.com, kevinkoenigquito@gmail.com, marialya@gmail.com, coldmtn@gmail.com, firger@gmail.com, bandawatch@gmail.com, catmongeon@gmail.com, briansethparker@gmail.com, lupitadeheredia@gmail.com, josephmutti@gmail.com, drewwoods3@gmail.com, katiafachgomez@gmail.com, tegelsimeon@gmail.com, lauragarr@gmail.com, richard.clapp@gmail.com, ampage@gmail.com, goldstein.ben@gmail.com, wilsonaguinda@gmail.com, sara.colon@gmail.com, farihahzaman@gmail.com, jeremylow@gmail.com, courtneyrwong@gmail.com, jenbilbao3@yahoo.com, kshuk22@yahoo.com, eriktmoe66@yahoo.com, drewwoods3@yahoo.com, lupitadeheredia@yahoo.com, lore_gamboa@yahoo.es, and hueyzactlan@gmail.com. John Rodgers (rodgers.john@gmail.com) and Laura Belanger (belanger.laura@gmail.com) have identified themselves to Chevron, but join the Doe movants in quashing the subpoenas to the extent that they infringe on their associational rights, privacy rights, and are overbroad.

Case No. 12-mc-80237 CRB (NC)
ORDER RE: MOTIONS TO QUASH
SUBPOENAS

5

1    through May 31, 2010.  Dkt. No. 45, ¶ 7-9.  Chevron also offered to limit the date range of

2    documents sought from briansethparker@gmail.com, but it appears that that offer was not

3    accepted.  *Id.* ¶¶ 10-11.  The owner of the email address hueyzactlan@gmail.com joined the

4    Doe movants in their motion to quash the subpoenas on January 7, 2013.  Dkt. No. 53, ¶ 5.

5    The Doe movants allege that the email addresses fpenafiel1100@yahoo.com,

6    kshuk22@yahoo.com, sandragrimaldi12@yahoo.com, and rubin.miranda@rocketmail.com

7    are no longer functional or no longer in use.  *Id.* ¶ 6.

8    Another related development is an order by Judge Kaplan denying two motions to

9    quash subpoenas issued to Microsoft in the Northern District of New York brought by

10   defendants and three "Does," who claimed to own email addresses that were the target of

11   the subpoenas.[3]  *Chevron Corp. v. Donziger*, No. 12-mc-00065 LAK (CFH), 2013 WL

12   3228753, (N.D.N.Y. June 25, 2013).  Judge Kaplan denied the Does' motion to quash

13   because the Does had not established that they were United States citizens or part of a

14   community with sufficient connection to the United States that they would be entitled to the

15   protections of the First Amendment.  *Id.* at *4.  Judge Kaplan also found that the three Does

16   who brought the motion did not have standing to assert the rights of the twenty-seven other

17   email address owners who had not joined in bringing the motion.  *Id.*  Regarding

18   defendants' motion, Judge Kaplan found they lacked standing because they did not purport

19   to own any address at issue.  *Id.*  He also rejected their arguments that disclosure would

20   reveal privileged information about the defendants' legal strategy because defendants did

21   not identify any privileged material that would be revealed or demonstrate that any email

22   address belonged to any client or member of the legal team.  *Id.*  The issues decided by

23   Judge Kaplan are not central to the resolution of the two motions before this Court.

24                                   **II. LEGAL STANDARD**

25   Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena.

26   The scope of the discovery that can be requested through a subpoena under Rule 45 is the

27   same as the scope under Rule 34, which in turn is the same as under Rule 26(b).  Fed. R.

28

---

[3] Judge Kaplan sat by designation in the Northern District of New York.

1   Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena

2   is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a)

3   ("A party may serve on any other party a request within the scope of Rule 26(b)."). Rule

4   26(b) allows a party to obtain discovery concerning any nonprivileged matter that is

5   relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1).

6        A party or attorney responsible for issuing and serving a subpoena must take

7   reasonable steps to avoid imposing undue burden or expense on a person subject to the

8   subpoena. Fed. R. Civ. P. 45(c)(1). In turn, the court "must protect a person who is neither

9   a party nor a party's officer from significant expense resulting from compliance." Fed. R.

10  Civ. P. 45(c)(2)(B)(ii). The court must limit the discovery sought if it is unreasonably

11  duplicative, if it can be obtained from a source that is more convenient or less burdensome,

12  or if the burden of producing it outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C).

13       The court may modify or quash a subpoena that subjects a person to undue burden.

14  Fed. R. Civ. P. 45(c)(3)(A)(iv). On a motion to quash a subpoena, the moving party has the

15  burden of persuasion under Rule 45(c)(3), but the party issuing the subpoena must

16  demonstrate the discovery sought is relevant. *EON Corp. IP Holdings, LLC v. T-Mobile*

17  *USA, Inc.*, No. 12-cv-080082 LHK (PSG), 2012 WL 1980361, at *1 (N.D. Cal. June 1,

18  2012).

19                              **III. DISCUSSION**

20  **A.    Defendants and the Doe Movants Have Standing Only to the Extent of Their**
21  **        Personal Stake in the Information Sought.**

22       It is axiomatic that in order to have standing to bring a claim in federal court a party

23  must have a personal stake in the outcome. *See, e.g.*, *Hollingsworth v. Perry*, 133 S. Ct.

24  2652, 2661-62 (2013). This threshold requirement applies with equal force to discovery

25  disputes. *Am. Broadcasting Cos., Inc. v. Aereo, Inc.*, No. 12-mc-80300 RMW (PSG), 2013

26  WL 1508894, at *2 (N.D. Cal. Apr. 10, 2013). "[A] party moving to quash a non-party

27  subpoena has standing when the party has a personal right or privilege in the information

28  sought to be disclosed." *Knoll, Inc. v. Moderno, Inc.*, No. 12-mc-80193 SI, 2012 WL

4466543, at *2 (N.D. Cal. Sept. 26, 2012). Conversely, "[a] party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object." *Kremen v. Cohen*, No. 11-cv-05411 LHK (HRL), 2012 WL 2277857, at *3 (N.D. Cal. June 18, 2012).

Defendants assert that the subpoenas seek documents related to "one of Steven Donziger's primary accounts," sdonziger@gmail.com, as well as the email of defendant Javier Piaguaje, javipi002@gmail.com. Dkt. No. 42 at 4. Defendants also claimed ownership of the email address documents2010@ymail.com when they subpoenaed Yahoo! for the subscriber information, IP logs, and email content related to that account in November 2010, December 2010, and January 2011. Dkt. No. 47, Ex. 44. Chevron's subpoena to Yahoo! requests information about the email addresses sdonziger@yahoo.com and sdonziger2@yahoo.com, but defendants do not specifically claim ownership of these addresses. Defendants have standing to move to quash the subpoenas only with respect to the email addresses they claim to own.

In addition, defendants assert that several of the email addresses belong to "attorneys who worked with Donziger, ampage@gmail.com, lauragarr@gmail.com, drewwoods3@gmail.com, and drewwoods3@yahoo.com." Dkt. No. 42 at 4. Defendants do not specify, however, whether these are Donziger's attorneys, in whose communications he would have a personal stake, or employees, or co-workers, or acquaintances. Defendants have not shown that they have a personal stake in the materials sought from these email addresses. Accordingly, they do not have standing to quash the subpoenas for these addresses.

The Doe movants assert that they own thirty-two of the subpoenaed email addresses. Dkt. No. 43-2 at 2; Dkt. No. 43 at 12 n.5; Dkt. No. 53. Ownership of the email addresses gives the Doe movants a personal stake in the outcome of this dispute, and therefore standing to quash the subpoenas for those thirty-two email addresses.

The Doe movants also assert, however, that they have third-party standing to quash the subpoenas for the documents pertaining to the remaining email addresses that belong to

1   non-parties.  Dkt. No. 52 at 8-10.  There is a limited exception to the standing doctrine

2   which allows a party to assert the rights of others where "the party asserting the right has a

3   close relationship with the person who possesses the right," and where "there is a hindrance

4   to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125,

5   130 (2004).  Both elements must be present.  *Id.*  The Doe movants argue that this

6   prudential test should be relaxed in light of the impact of the subpoenas on the non-parties'

7   First Amendment rights.  *See Sec. of State of Md. v. Joseph H. Munson, Co., Inc.*, 467 U.S.

8   947, 956-57 (1984) (relaxing prudential requirements of third-party standing where societal

9   interest in free and unfettered speech outweighed concern that constitutional issues should

10  be avoided when possible, and allowing third-party to challenge allegedly overbroad

11  statute).  But, a facial challenge to the chilling effect of a statute brought by a third party is

12  not analogous to the Doe movants' motion to quash Chevron's subpoenas.  Although the

13  Doe movants assert First Amendment privileges in opposition to the subpoenas, their

14  arguments do not warrant relaxing the prudential test for standing.  Accordingly, the Court

15  limits its analysis to whether a "close relationship" exists between the Doe movants and the

16  other email address owners, and whether the other email address owners face a "hindrance"

17  in asserting their own rights.  *Kowalski*, 543 U.S. at 130.

18      Beyond subscribing to the same email providers, plaintiffs assert no relationship, let

19  alone a "close relationship," between the Doe movants and the other email address owners.

20  This shortcoming is sufficient to defeat their assertion of third-party standing.  The Doe

21  movants do, however, point to several logistical concerns which suggest that the other email

22  address owners cannot assert their rights or are hindered in their ability to do so.  For

23  example, the Doe movants suggest that the others may not have received the email that

24  Google and Yahoo! sent their subscribers regarding the subpoenas, or that they may not

25  read English and so may be functionally unaware of the subpoenas, or the subscriber may

26  not actively check or use the subpoenaed account.  All of these reasons could possibly pose

27  a hurdle, but it is the same hurdle that the Doe movants managed to overcome.  In light of

28  the fact that half of those whose emails are affected are exercising the right to move to

1   quash the subpoenas, the Court cannot assume that those who did not join in the motion or

2   make a motion of their own did so because it was too difficult.  Because the Doe movants

3   have not shown a close relationship or a hindrance, they do not have standing to move to

4   quash the subpoenas for documents related to email addresses other than their own.

5   **B.   Chevron's Requests Are Proper Under the Stored Communications Act.**

6   The Stored Communications Act prohibits any "person or entity providing an

7   electronic communication service to the public" from "knowingly divulg[ing] to any person

8   or entity the contents of a communication while in electronic storage by that service."

9   18 U.S.C. § 2702(a).  Google and Yahoo!, as ISPs and email service providers, are

10  electronic communication service providers.  *Quon v. Arch Wireless Operating Co., Inc.*,

11  529 F.3d 892, 902 (9th Cir. 2008), *rev'd on other grounds*, *City of Ontario v. Quon*, 130 S.

12  Ct. 2619 (2010).  An electronic communication service provider may, however, "divulge a

13  record or other information pertaining to a subscriber to or customer of such service."  *Id.*

14  § 2702(c).  Among the records electronic communication service providers may reveal are

15  the subscriber's "name, address, . . . records of session times and durations, telephone or

16  instrument number or other subscriber number or identity, including any temporarily

17  assigned network address."  *Id.* § 2703(c)(2); § 2702(c)(1) (allowing disclosure of records

18  as authorized under § 2703).  Such records "are voluntarily turned over in order to direct the

19  [ISP's] servers," and "do not necessarily reveal any more about the underlying contents of

20  communication."  *United States v. Forrester*, 512 F.3d 500, 503 (9th Cir. 2008); *see also*

21  *Obodai v. Indeed, Inc.*, No. 13-mc-80027 EMC (KAW), 2013 WL 1191267, at *3 (N.D.

22  Cal. Mar. 21, 2013) (finding list of IP addresses that accessed gmail account, dates and

23  times of access, were not content under the SCA and ordering discovery produced in

24  response to civil subpoena).

25  Google's privacy policy states that it collects information given to it by a subscriber,

26  such as the subscriber's name, email address, and phone number, and that it collects other

27  information related to a subscriber's use of Google, such as device-specific information,

28  mobile network information, IP addresses, cookies that uniquely identify a user's browser

Case No. 12-mc-80237 CRB (NC)
ORDER RE: MOTIONS TO QUASH                    10
SUBPOENAS

1   or Google account, and location information.  Dkt. No. 47, Ex. 46 at 2-4.  Similarly, Yahoo!

2   keeps records of a subscriber's information given at registration, such as the user's name,

3   email address, date of birth, gender, zip code, occupation, industry, and personal interests.

4   Dkt. No. 47, Ex. 47.  Yahoo! also records a user's IP address, cookie information, the

5   software and hardware attributes of the connecting computer, and the page the user

6   requests.  *Id.*  Yahoo!'s privacy policy states explicitly that "[w]hen you register with

7   Yahoo! and sign in to our services, you are not anonymous to us."  *Id.*

8       Chevron's subpoenas do not seek the contents of any subscriber's emails.  It only

9   seeks identifying information associated with the subscriber as well as the usage

10  information of each account for certain time periods.  Google and Yahoo! already maintain

11  such records for their users.  The Stored Communications Act allows Google and Yahoo! to

12  reveal such records.  18 U.S.C. § 2702(c)(6) (An electronic communication service provider

13  "may divulge a record or other information pertaining to a subscriber to or customer of such

14  service (not including the contents of communications . . .) . . . to any person other than a

15  government entity.").[4]

16  **C.   The Subpoenas Do Not Infringe on the Doe Movants' First Amendment Rights.**

17      The Doe movants assert that the subpoenas infringe on their First Amendment rights

18  to speak anonymously and to associate freely.  Defendants note in a footnote that the

19  subpoenas "may" violate First Amendment rights by seeking the identity of anonymous

20  speakers.  Dkt. No. 42 at 10 n.8.  Because defendants are not anonymous to Chevron, and

21  defendants do not raise a First Amendment argument for quashing the subpoenas for

22  documents related to their own emails, the Court considers the implications of the First

23  Amendment with respect to the Doe movants' email addresses only.

24      **1.     IP logs are not speech, and the Doe movants are not anonymous.**

25      The Doe movants contend that Chevron's subpoenas of the subscriber information

26  associated with their email accounts, particularly their name, violates their right to

27  ───────────────────────────────────────────

28  [4] The Stored Communications Act defines the term "person" to include "partnership, association, joint stock company, trust, or corporation."  18 U.S.C. §§ 2510, 2711(1).

anonymous speech under the First Amendment.  Dkt. No. 43 at 19.  In the Ninth Circuit, "the nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes." *In re Anonymous Online Speakers*, 661 F.3d at 1168, 1177 (9th Cir. 2011).  Here, as discussed above, Chevron's subpoenas do not seek the content of any electronic communication.  They seek the identifying information of the email address owner, as well as information about which computers logged into the email addresses from which internet connections.  The Doe movants cite no case that analogizes IP addresses and logs or email addresses to protected speech.

Other cases to have considered the right to anonymous, online speech have had drastically different facts.  For example, in *In re Anonymous Online Speakers* the Ninth Circuit considered the First Amendment protections afforded to several statements made anonymously and online about a company's business practices.  *Id.* at 1172-73.  The company already knew the content of the speech, which it alleged was defamatory; it sought to subpoena the identity of the speakers.  *Id.* at 1173.  Ultimately, the Ninth Circuit affirmed the district court's decision to apply a summary judgment standard to the subpoenaing party's claims before ordering the identities disclosed.  *Id.* at 1176.

Similarly, in *Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088, 1090 (W.D. Wash. 2001), on which the Doe movants rely heavily, a party issued a subpoena to an online message board host for "all identifying information and documents, including but not limited to, computerized or computer stored records and logs, *electronic mail (E-mail), and postings to your online message boards*" related to twenty-three users.  *Id.* (emphasis added).  The party issuing the subpoena alleged that users of the message board manipulated stock prices through their posts, which were misleading and defamatory.  *Id.* at 1095.  The subpoenaing party was aware of the content of the online messages that formed the basis of its claim, but also sought additional content from the message board host.  *Id.* at 1090.  In deciding to quash the subpoena, the district court applied a four-part test that "provide[d] a flexible framework for balancing the First Amendment rights of anonymous *speakers* with the right

1  of civil litigants to protect their interests through the litigation discovery process." *Id.* at

2  1095 (emphasis added).

3      Conversely, in *Mount Hope Church v. Bash Back!*, No. 11-cv-00536 RAJ, *rev'd on*

4  *other grounds*, 705 F.3d 418 (9th Cir. 2012), the district court for the Western District of

5  Washington considered a subpoena to an ISP that sought the names of seven anonymous

6  email account holders that had received an email about planning an LGBT demonstration at

7  a church. *Id.* at 2.  The court concluded that whether the anonymous speaker's online

8  speech formed the basis of a claim was not dispositive to the issue of whether he could be

9  identified because "[w]hether the identity is sought because the user's online conduct is

10  actionable, or because the user may have discoverable information related to action: either

11  way, the user's ability to anonymously participate in online activities is threatened." *Id.* at

12  3.  Applying a hybrid balancing test, the court ultimately concluded, however, that Mount

13  Hope's need for discovery outweighed the user's right to anonymity. *Id.* at 5.

14      Comparing this case law with the facts at hand, the Court finds that the Doe movants

15  have not shown the circumstances to be the same as in *Anonymous Online Speakers*,

16  *2TheMart.com*, or *Mount Hope*.  First, the Court is not convinced that the subject of the

17  subpoenas is protected speech.  Unlike in *Anonymous Online Speakers* and *2TheMart.com*,

18  Chevron is not seeking the content of emails or a link between the Doe movants' identities

19  and particular statements made by them.  Unlike in *Mount Hope*, Chevron is not seeking to

20  link the identity of the email subscribers with the receipt of particular statements.  In light of

21  these factual differences, the Court cannot conclude that any right to anonymous speech is

22  implicated by Chevron's subpoenas for IP logs.  And the Court is not inclined to find, as the

23  district court in *Mount Hope* did, that the exercise of a civil litigant's subpoena power will

24  encroach upon an online user's activities where no speech is at issue.

25      Last, the Doe movants have also not satisfactorily shown that their actions were

26  anonymous.  Several of their email addresses contain their first and last names, or their first

27  initial and last name, or some other combination of identifying information.  The owners of

28  josephmutti@gmail.com and limcas2002@yahoo.com, two email addresses the Doe

movants seeks to protect, have had direct contact with Chevron's counsel and identified themselves as the owners of their respective addresses. Dkt. No. 45 ¶¶ 6, 13. The owner of lauragarr@gmail.com is identified by name and connected with her email address and the underlying litigation in another court's order. Dkt. No. 47, Ex. 31. Although the Doe movants may believe that using their email addresses will protect their identities, that belief is simply not reflected by the reality of the world we live in. Email addresses are labels we voluntarily present to the outside world, through which we allow the world to contact us, and in that way identify us.

With no speech and with such varying degrees of anonymity at issue, the Court finds that the Doe movants have failed to show that there is an exercise of anonymous speech that Chevron's subpoenas could chill.

## 2.   The subpoenas do not seek the Doe movants' expressive activity.

"[T]he right to engage in activities protected by the First Amendment implies a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 548 (1987) (internal citation and quotation marks omitted). The Doe movants argue that the subpoenaed information will enable Chevron "to identify and track the locations of [the Doe] movants over time, as well as learn when [they] likely met with other people." Dkt. No. 43 at 15. They assert that such tracking infringes upon and will chill their First Amendment right to associate. *Id.* at 25.

In *Perry v. Schwarzenegger*, 591 F.3d 1126, 1139-41 (9th Cir. 2009), the Ninth Circuit established a two-part test for analyzing claims of First Amendment associational privilege in a discovery dispute. *Id.* at 1140. First, the party asserting the privilege must make "a prima facie showing of arguable First Amendment infringement." *Id.* "This prima facie showing requires [a party] to demonstrate that enforcement of the discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights." *Id.* at 1140 (internal citation and quotation marks omitted).

This prima facie showing "turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." *Id.* at 1141; *Chevron Corp. v. Donziger*, 2013 WL 1402727, at *2-*3 (quashing Chevron's subpoena to advocacy group which showed that disclosure of campaign documents would chill activity of organizers and prevent others from joining in cause).

With this test in mind, the Court considers the "protected activity" that the Doe movants claim to engage in. "To determine whether a group is protected by the First Amendment's expressive associational right, we must determine whether the group engages in 'expressive association.'" *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).[5]

The Doe movants acknowledge that "*members of an association* may assert a qualified First Amendment privilege in associational information." Dkt. No. 43 at 28 (emphasis added). They also assert that Chevron's litigation tactics have resulted in "membership withdrawal," but they do not ever specify what group the members have withdrawn from. The Doe movants do not claim to form or be part of one group. On the contrary, they challenge the legality of Chevron's subpoenas for being overbroad and argue that Chevron has cast such a wide net that it has ensnared Google and Yahoo! subscribers who are in no way affiliated with this litigation or with Donziger or with environmental advocacy. Dkt. No. 43 at 13-14. This significantly undercuts their claim to protection under the First Amendment. *See Anderson v. Hale*, No. 00-cv-02021 MCA, 2001 WL 503045, at *6 (N.D. Ill. May 10, 2001) (denying motion to quash subpoena seeking identifying information, activity logs, and address books associated with email accounts in part because subpoena did not target religious group exclusively and would implicate others not affiliated with organization).

---

[5] In addition to the right to associate for the purpose of engaging in expressive activities, the First Amendment "protect[s] certain intimate human relationships," *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188 (9th Cir.1995), "including family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Rotary Club of Duarte*, 481 U.S. 537 at 545. The Doe movants do not argue that Chevron's subpoenas have any impact on their right to intimate association.

The declarations of the Doe movants also state that their associational activities "more generally" will be chilled if they are forced to respond to the subpoenas. Dkt. No. 43 at 29. But the constitution does not "recognize[] a generalized right of 'social association.'" *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). "It is possible to find some kernel of expression in almost every activity a person undertakes . . . but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Id.* Rather, there must be "expressive association" by a "group[] organized to engage in speech." *Id.*

As the Court has already discussed, the Doe movants have not shown that they are engaging in any protected speech or expression by logging into their email accounts. Without any claim to expressive association, the Doe movants' claims that Chevron must meet a higher relevance standard in order to effect its subpoenas fails.

**D.    There Is No Recognized Privacy Interest in IP Logs and Account Information.**

The Doe movants argue that article 1, section 1 of the California constitution protects against invasions of privacy and requires that Chevron's need for discovery be balanced against their privacy interests. Dkt. No. 43 at 32. Unlike its federal counterpart, the right of privacy under article 1, section 1 of the California constitution applies to private action, as well as state action. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 38 (Cal. 1994). California courts also interpret the right of privacy in article 1, section 1 of the California constitution as encompassing rights that the Fourth Amendment does not. *See Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th. 307, 327-28 (Cal. 1997) (collecting cases and listing examples such as the right to live with unrelated persons and women's right to choose whether to continue a pregnancy).

The Doe movants cite no California case addressing the privacy interest under article 1, section 1 in subscriber information and IP logs associated with email addresses. There appears to be no California case law on this point. But, in *Willard v. AT & T Commc'ns of Cal., Inc.*, 204 Cal. App. 4th 53, 62 (Cal. Ct. App. 2012), *review denied* (June 20, 2012), the California Court of Appeal determined, without deciding "whether the privacy of one's telephone listing is a legally protected privacy interest," that no violation of the right to

privacy occurred because "plaintiffs did not expect privacy in the circumstances, as they knew their listing would be public unless they paid a fee to opt out of being listed." And, in *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (Cal. Ct. App. 2011), the Court of Appeal concluded that a company's "obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements" was "not an egregious breach of social norms, but routine commercial behavior." Similarly, the Doe movants accepted the terms of Google's and Yahoo!'s privacy policies, which indicated that the ISPs collect identifying information and log IP addresses and share information in response to a subpoena, court order, or legal process. *See* Dkt. No. 47, Ex. 46 ("Our Privacy Policy applies to all of the services offered by Google Inc. and its affiliates." "As you use our services, we want you to be clear how we're using information and the ways in which you can protect your privacy."); Dkt. No. 47, Ex. 46 ("This policy covers how Yahoo! treats personal information that Yahoo! collects and receives, including information related to your past use of Yahoo! products and services."). In addition, this information is vital to the commercial enterprises of the ISPs, which provide the service of connecting users to the internet and routing their messages to other IP addresses. Thus, existing California cases suggest there is no privacy interest in the subscriber and usage information associated with email addresses.

Federal courts to have addressed whether disclosure of identifying information or routing information, such as device numbers, violates the privacy clause of the California constitution have concluded it does not. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (finding that disclosure to third parties of user code and URL of profiles the user viewed did not violate article 1, section 1); *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1063 (N.D. Cal. 2012) (holding that the disclosure to third parties of unique device identifier number, personal data, and geolocation information did not constitute an egregious breach of privacy under article 1, section 1).

Federal courts have also considered the privacy interests in email subscriber and usage information under the Fourth Amendment. In the context of a search or seizure,

1   article 1, section 1 of the California Constitution does not establish a broader protection

2   than that provided by the Fourth Amendment. *In re York*, 9 Cal. 4th 1133, 1149 (Cal. 1995)

3   (analyzing petitioner's claim of invasion of privacy under article 1, section 1 of the

4   California constitution under Fourth Amendment framework); *see also Sanchez v. Cnty. of*

5   *San Diego*, 464 F.3d 916, 930 (9th Cir. 2006) (same). In fact, a claim under article 1,

6   section 1 requires a plaintiff to show the privacy invasion is serious, thus setting a higher

7   threshold than for a federal claim under the Fourth Amendment. *Norman-Bloodsaw v.*

8   *Lawrence Berkeley Lab.*, 135 F.3d 1260, 1271 (9th Cir. 1998).

9       When analyzing the reasonableness of government requests for subscriber and usage

10  information, the Ninth Circuit held unequivocally that "e-mail and Internet users have no

11  expectation of privacy in the to/from addresses of their messages or the IP addresses of the

12  websites they visit because they should know that this information is provided to and used

13  by Internet service providers for the specific purpose of directing the routing of information.

14  Like telephone numbers, which provide instructions to the 'switching equipment that

15  processed those numbers,' e-mail to/from addresses and IP addresses are not merely

16  passively conveyed through third party equipment, but rather are voluntarily turned over in

17  order to direct the third party's servers." *Forrester*, 512 F.3d at 503 (quoting *Smith v.*

18  *Maryland*, 442 U.S. 735, 744 (1979)). The Court explained that email, like a letter, "has an

19  outside address 'visible' to the third-party carriers." *Id.* at 511. And, "devices that obtain

20  address information also inevitably reveal the amount of information coming and going"

21  and in so doing do not run afoul of the Fourth Amendment. *Id.*

22      Under this same rationale, the Court must conclude that the Doe movants have no

23  privacy interest in the subscriber information, IP addresses, and IP logs associated with their

24  email accounts because "a person has no legitimate expectation of privacy in information he

25  voluntarily turns over to third parties." *Id.* at 509 (quoting *Smith*, 442 U.S. at 743-44). As a

26  condition of using Google and Yahoo!'s email service, the Doe movants voluntarily

27  provided their names, addresses, and other identifying information. This voluntary

28  production to a third party eviscerates any subjective expectation of privacy the Doe

Case No. 12-mc-80237 CRB (NC)
ORDER RE: MOTIONS TO QUASH          18
SUBPOENAS

movants might harbor.  In addition, the IP address and IP logs associated with their email accounts are the addresses visible to the outside world associated with their accounts.  The IP address is the routing information that the Doe movants provide to the ISPs when they choose to connect a computer to their email account, send or receive an email, or even visit a website.  There is no reasonable expectation of privacy in the routing and identifying information given to the ISPs to connect to and relay messages on the internet.  *Forrester*, 512 F.3d at 503, 509.  The Doe movants' motion to quash Chevron's subpoenas for invading their rights to privacy under article 1, section 1 of the California constitution fail.

**E.   Chevron's Subpoenas Seek Relevant Information But Should Be Narrowed.**

Both defendants and the Doe movants move to quash or limit Chevron's subpoenas arguing that they are overbroad and seek irrelevant information.  Although, "[a] party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object," *Kremen*, 2012 WL 2277857, at *3, the Court has an independent obligation "to avoid imposing undue burden or expense on a person subject to the subpoena," Fed. R. Civ. P. 45(c)(1).  In order for materials to be discoverable under Rule 45, they must not be privileged and must be relevant to a party's claim or defense.  Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970).  The party issuing the subpoena must demonstrate the discovery sought is relevant.  *EON Corp. IP Holdings*, 2012 WL 1980361, at *1.  And, the court must limit the extent of the discovery sought if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden of producing it outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C).

The crux of Chevron's claim in the underlying dispute against defendants is that defendants conspired to and succeeded in securing an $18.2 billion fraudulent judgment against Chevron in Ecuador.  Chevron alleges that the Doe movants were "intimately involved with the fraud," by "manag[ing] legal and public relations strategies."  Dkt. No. 46 at 7.  Chevron states that these "email accounts [were] identified principally through review of documents recovered from an image of Donziger's hard drive."  *Id.* at 11.  Chevron

1  claims that "the subpoenaed information will provide evidence about the structure and

2  management" of defendants' alleged fraud scheme, confirm that acts took place in the

3  United States, and establish how the fraud, such as the writing of expert reports and the

4  Ecuadorian judgment, was executed. *Id.* at 7.

5       Chevron states that it is willing to narrow the timeframe of its subpoenas for any

6  account owner who confirms the timeframe during which he communicated with

7  defendants. Dkt. No. 45 ¶ 16. Chevron also offered to withdraw its subpoena for

8  identifying information if an account owner confirmed in writing his identity and exclusive

9  control over the account at issue. *Id.* It appears that only one individual accepted

10 Chevron's offer, although as noted, several others have confirmed that they own particular

11 addresses.

12      Chevron's subpoenas seek documents from 2003 to the present. The subpoenas were

13 issued on September 7, 2012, so that is what the Court considers as the "present."

14 Defendants and the Doe movants argue that nine years of IP logs associated with their email

15 addresses is simply overbroad. They rely in large part on the district court's analysis in

16 *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005), in which the court found

17 that a subpoena to a third party for ten years of business records was overbroad. In *Moon*,

18 the quashed subpoena was overbroad because it was not limited to the three-year period in

19 which the allegedly breached contract gave plaintiff an exclusive right to be defendant's

20 "broker" of winter pool covers. *Id.* There is nothing inherently overbroad about a

21 discovery request that spans multiple years.

22      Here, Chevron seeks materials that would show fraud during the pendency of the

23 Lago Agrio litigation. The litigation against Chevron in Ecuador was filed by the Lago

24 Agiro plaintiffs in 2003. The Lago Agrio court issued its judgment against Chevron on

25 February 14, 2011. Because Chevron seeks these materials in order to piece together

26 defendants' alleged fraud that resulted in that judgment against Chevron, the Court

27 concludes that Chevron's subpoenas for information beyond February 14, 2011 are unlikely

28 to reveal relevant evidence of the alleged conspiracy. The Court suspects that the beginning

date could also be more closely tailored to defendants' alleged actions, for example, starting with the filing of a particular environmental report or the launch of a public relations campaign. But, because neither party has presented the Court with the facts necessary to so limit the subpoenas, it will not do so arbitrarily.

Defendants argue that Chevron has failed to limit its requests by "purpose or subject matter of . . . usage." Dkt. No. 42 at 7. But that is exactly the point. Chevron is not, at this time, entitled to and will not receive the content of any emails. Chevron is only seeking IP logs and subscriber information. The Court also notes that Chevron has offered to curtail the subpoenas for any account owner who will attest to the timeframe of his involvement, or lack thereof, with the defendants or the Ecuador litigation. In the absence of any more limited timeframe based upon, for example, the Doe movants' interactions with defendants or involvement with any party or this suit, Chevron's subpoenas to Google and Yahoo! for documents spanning from the filing of the Lago Agrio lawsuit to the judgment in that case is not overbroad.

Nevertheless, the scope of Chevron's subpoenas must be limited further where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or where] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii). The Court thus turns to the individual email addresses.

**1.     Defendants**

Chevron seeks discovery related to the email addresses of defendants, including Steven Donziger. But Chevron has already conducted immense amounts of discovery in this litigation focused on defendants. It has access to an image of Donziger's hard drive. Dkt. No. 46 at 11. Donziger was the subject of a discovery proceeding under 28 U.S.C. § 1782 and was deposed for sixteen days. Dkt. No. 42 at 9. Chevron has also requested the information it seeks from the ISPs from Javier Piaguaje directly. Dkt. No. 42 at 8. Not only are defendants the more convenient source than the ISPs from which to obtain

information related to their email accounts, but Chevron has had ample opportunity to do so.  Nevertheless, Chevron argues that defendants have not produced discovery in response to several court orders, an argument to which defendants do not respond.  Although a subpoena to Google and Yahoo! imposes some burden on them, neither ISP has objected to it.  Therefore, Google and Yahoo! must produce the requested documents related to sdonziger@gmail.com, javipi002@gmail.com, and documents2010@ymail.com.

### 2.     The Doe movants

#### a.     cortelyou@gmail.com

The owner of cortelyou@gmail.com declares that he "was involved in the litigation against Chevron as a volunteer legal intern for a brief period of time in the summer of 2007."  Dkt. No. 43-3 ¶ 5.  Since that time, the owner has not participated in the litigation. *Id.*  The email account was opened in 2005.  *Id.* ¶ 6.

In support of its subpoena, Chevron submitted two emails from Donziger to cortelyou@gmail.com from February 2007 and June 2007, asking cortelyou@gmail.com to research Chevron's spending, investments, and "to see where they are most politically vulnerable to pressure in other countries."  Dkt. No. 47, Exs. 18, 19.  These emails show the email address owner's involvement with Donziger in 2007 and the relevance of the requested information to Chevron's claims against defendants.  These emails also contradict the declaration of courtelyou@gmail.com, which leaves open the possibility that cortelyou@gmail.com's involvement with defendants is more extensive still.  Google must produce the requested documents about cortelyou@gmail.com from the creation of the address through February 14, 2011.

#### b.     firger@gmail.com

The owner of firger@gmail.com declares that he "was involved in the litigation against Chevron in Ecuador and related activism campaign intermittently between 2006 and 2009, including as a volunteer legal [sic] for a brief period of time in the summer of 2007."  Dkt. No. 43-4, ¶ 5.  Since 2007, firger@gmail.com has "not been connected to the litigation or political campaign."  *Id.*

In support of the relevance of this email address and its IP logs, Chevron submitted two emails from Donziger to firger@gmail.com from February 2007 and June 2007, asking firger@gmail.com to research Chevron's spending, investments, and "to see where they are most politically vulnerable to pressure in other countries." Dkt. No. 47, Exs. 18, 19. These emails corroborate firger@gmail.com's declaration. Google must produce the requested documents about firger@gmail.com from January 1, 2006 through December 31, 2009.

### c. tegelsimeon@gmail.com

The owner of tegelsimeon@gmail.com is a journalist and worked for a non-profit advocacy organization from 2005 to 2008. Dkt. No. 43-5, ¶ 4. The owner of tegelsimeon@gmail.com "was involved in an advocacy campaign concerning the environmental impact of Chevron's former oil concession in the Amazon for around three years, ending in 2008. . . [and although he] was never directly involved in the litigation against Chevron in Ecuador, [he] performed advocacy on behalf of the communities affected by the activities giving rise to that litigation." *Id.* ¶ 5. Tegelsimeon@gmail.com has not been active in the advocacy campaign related to Chevron "for some time." *Id.* ¶ 9. The email account tegelsimeon@gmail.com was created "around 2006," and stopped being used in the fall of 2008. *Id.* ¶ 6.

Chevron submits two emails dating from April 2008 from tegelsimeon@gmail.com to Donziger in support of its subpoena. The emails show that tegelsimeon@gmail.com was the "Director of Communications" of Amazon Watch, a non-party that has campaigned extensively to raise awareness of the environmental situation in Ecuador as it relates to Chevron. Dkt. No. 47, Exs. 20, 21. These emails corroborate the declaration of tegelsimeon@gmail.com. But the emails also show that tegelsimeon@gmail.com communicated frequently with Donziger about press releases, letters to the editor, and public relations pieces about the environmental dispute, suggesting that the requested documents may lead to the discovery of admissible evidence. Accordingly, Google must produce the documents relating to tegelsimeon@gmail.com from the creation of the email account through December 31, 2008.

Case No. 12-mc-80237 CRB (NC)
ORDER RE: MOTIONS TO QUASH          23
SUBPOENAS

1

### d. kevinkoeningquito@gmail.com

2      The owner of kevinkoeningquito@gmail.com is based in Ecuador, works at a non-

3   profit organization, and has been involved for several years in "an activism campaign that

4   encourages Chevron to remediate the environmental impact of its former oil concession in

5   the Amazon." Dkt. No. 43-6, ¶¶ 4, 8. The email account was opened in June 2008. *Id.* ¶ 5.

6   Kevinkoeningquito@gmail.com asserts that this campaign "has no direct relationship to the

7   litigation against Chevron in Ecuador" and that kevinkoeningquito@gmail.com has "never

8   been directly involved in that litigation." *Id.* ¶ 4. In his declaration,

9   kevinkoeningquito@gmail.com states that he fears that the subpoenaed information would

10  "allow [Chevron] to track [his] physical movements" and "would exacerbate the risk of

11  intimidation." *Id.* ¶ 9. The declarant is also concerned that the subpoenaed information

12  would "become public" or "fall into the hands of the wrong people," and fears he will be

13  harassed "should Chevron gain access to [his] physical locations." *Id.* ¶¶ 10-13.

14     Chevron submits three emails between kevinkoeningquito@gmail.com and Donziger

15  from August and September 2008 regarding press releases, shareholder meetings, and an

16  interview with a reporter. Dkt. No. 47, Exs. 22, 23, 29. In one of these emails, Donziger

17  instructs kevinkoeningquito@gmail.com not to tell a reporter that they "cooperate other

18  than occasional communication," or that kevinkoeningquito@gmail.com "work[s] out of

19  our office," and generally to distance "AW"—presumably Amazon Watch, where

20  kevinkoeningquito@gmail.com is the Ecuador Program Coordinator—from the lawsuit.

21  Dkt. No. 47, Ex. 29. These exchanges between kevinkoeningquito@gmail.com and

22  Donziger are sufficient to show that discovery of the subpoenaed information may lead to

23  admissible evidence. Google must produce the documents relating to

24  kevinkoeningquito@gmail.com from the creation of the email account through February 14,

25  2011.

26     The Court takes seriously, however, the declarant's fears and concerns. First, to

27  clarify, the subpoena will not implement any sort of tracking device; it seeks only historical

28  data up to the date of the Ecuadorian judgment on February 14, 2011. The declarant's

current whereabouts and IP addresses are not at issue.  Second, a protective order will ensure that this information does not "fall into the wrong hands."  Counsel for plaintiff, defendants, and the Doe movants must meet and confer and propose the terms of a protective order by September 5, 2013, so that the subpoenaed information remains confidential.

### e.   ampage@gmail.com

The owner of ampage@gmail.com is currently the subject of a discovery proceeding brought under 28 U.S.C. § 1782 in the District of Maryland.  Dkt. No. 58.  In that proceeding, Chevron seeks "all documents related to any electronic repositories of documents used . . . in connection with the Chevron litigations and the Complaint . . . including . . . email accounts."  *Chevron Corp. v. Page*, No. 11-cv-00395 RWT (D. Md.), Dkt. No. 55-1 at 21.  Because Chevron is currently pursuing a more direct means of accessing discovery related to the email account ampage@gmail.com, it may not also request that information from the third party ISPs.  The Court quashes the subpoena for documents related to the email address ampage@gmail.com.

### f.   erikmoe66@yahoo.com

The owner of erikmoe66@yahoo.com declares he has been a "personal friend of Steven Donziger for over thirty years."  Dkt. No. 43-8 ¶ 4.  The declarant states that he considered getting involved with the Chevron litigation "for several months," but decided against it in February 2011.  *Id.* ¶ 5.

Chevron has submitted emails between Donziger and erikmoe66@yahoo.com regarding funding.  Dkt. No. 47, Exs. 24-26.  The owner of erikmoe66@yahoo.com was formerly a corporate finance lawyer.  Dkt. No. 43-8 ¶ 4.  One email dated September 15, 2010 from erikmoe66@yahoo.com to Donziger states that securing a particular investor "would signal to Chevron that we have staying power and are backed by big hitters."  Dkt. No. 47, Ex. 26.  This email suggests that at least as far back as September 2010, erikmoe66@yahoo.com was discussing securing funding for Donziger's activities against Chevron.  It is also sufficient to show that discovery of the subpoenaed information may

1   lead to admissible evidence.  Yahoo! must produce the requested documents about

2   erikmoe66@yahoo.com from January 1, 2010 through February 14, 2011.

3               **g.     richard.clapp@gmail.com**

4          The owner of richard.clapp@gmail.com is an epidemiologist who was involved in the

5   litigation against Chevron in Ecuador in 2008.  Dkt. No. 43-9, ¶¶ 4-5.  The declarant sent

6   several emails to Donziger in November 2008 about a trip to Ecuador.  Dkt. No. 47, Ex. 28.

7   The declarant also authored a five page report for Stratus Consulting.  *Id.*  Judge Kaplan

8   previously found that Chevron had established probable cause to believe that defendants

9   misrepresented the relationship between Stratus Consulting and Richard Stalin Cabrera

10  Vega ("Cabrera"), who was selected by the Lago Agrio court to serve as the independent

11  global expert.[6]  *Chevron Corp. v. Donziger*, 2013 WL 1087236, at *30.

12         A subsequent email from a member of Stratus Consulting to Donziger refers to a need

13  to talk to "Clapp" about "that 5-pager" and emphasizes that its distribution should be

14  limited.  Dkt. No. 47, Ex. 28.  Another email from a member of Stratus Consulting states

15  that "the thing [Dick] wrote for Steven that ended up as an Appendix to the Cabrera report

16  might be cited in there (Clapp et al., 2006)."  Dkt. No. 47, Ex. 27.  These exchanges and the

17  declarant's own admissions indicate that Chevron's subpoenas are likely to lead to the

18  discovery of admissible evidence.  Although the declarant states that he was only involved

19  in the underlying litigation in 2008, the email from Stratus consulting indicates that he may

20  have written reports as early as 2006.  Accordingly, Google must produce the documents

21  related to richard.clapp@gmail.com between January 1, 2006 and February 14, 2011.

22  //

23

24

25

26  ────────────────
    [6] As discussed in Part I., Judge Kaplan analyzed whether the crime-fraud exception to the attorney-
27  client privilege rendered documents discoverable, and thus considered whether there was probable
    cause to believe that a crime or fraud had been committed.  *Chevron Corp. v. Donziger*, 2013 WL
28  1087236, at *3.

    Case No. 12-mc-80237 CRB (NC)
    ORDER RE: MOTIONS TO QUASH                26
    SUBPOENAS

### h.   lauragarr@gmail.com[7]

Magistrate Judge Francis in the Southern District of New York already determined that "Ms. Garr worked intermittently with Mr. Donziger from the spring of 2007 until October of 2012," first as a legal intern and then as a contract attorney.  Dkt. No. 47, Ex. 31 at 25.  Judge Francis also found that Ms. Garr did not maintain a dedicated work email and that "she sent and received e-mails related to the Lago Agrio litigation from her Gmail account . . . lauragarr@gmail.com."  *Id.* at 26.  The subpoena at issue in front of Judge Francis included email data, although Chevron did not specifically seek IP logs in that subpoena.  *Chevron Corp. v. Salazar*, No. 11-cv-03718 LAK (JCF) (S.D.N.Y.), Dkt. No. 27-1.  Moreover, Judge Francis ordered Ms. Garr to produce all of the documents she had previously withheld on the basis of privilege.  Dkt. No. 41, Ex. 31 at 46.  The Court finds that Chevron's subpoena is more properly directed to Ms. Garr, rather than the ISPs, and that Chevron has already had the opportunity to receive all email communications from Ms. Garr related to her involvement with Donziger and the underlying litigation.  The Court therefore quashes Chevron's subpoena for documents related to lauragarr@gmail.com.

### i.   drewwoods3@yahoo.com and drewwoods3@gmail.com

Chevron asserts that the owner(s) of drewwoods3@yahoo.com and drewwoods3@gmail.com are attorneys who worked for Donziger on the Lago Agrio litigation.  Dkt. No. 46 at 13.  Judge Francis considered a subpoena for all documents, including emails, issued to Andrew Woods, an associate who worked for Donziger. *Chevron Corp. v. Salazar*, No. 11-cv-03718 LAK (JCF) (S.D.N.Y.), Dkt. No. 27-2. Nowhere in Judge Francis' order, or in the exhibits Chevron submitted in support of its motion to compel production, is Andrew Woods connected with either drewwoods3@yahoo.com or drewwoods3@gmail.com.  Therefore, unlike Ms. Garr and the previously addressed Doe movants, Chevron has not shown what connection these email

---

[7] The Doe movants claim to represent the owner of the email address lara_garr@gmail.com.  Dkt. Nos. 43-2, 53.  As Chevron's subpoena seeks documents related to lauragarr@gmail.com, and not lara_garr@gmail.com, dkt. no. 42-1, the Court presumes that the Doe movants represent the owner of the email address lauragarr@gmail.com and that the other address is a typo.

Case No. 12-mc-80237 CRB (NC)
ORDER RE: MOTIONS TO QUASH                    27
SUBPOENAS

addresses have to the underlying litigation.  The Court quashes Chevron's subpoena for documents related to the email addresses drewwoods3@yahoo.com and drewwoods3@gmail.com.

### j.    coldmtn@gmail.com

The owner of coldmtn@gmail.com is involved with Amazon Watch and once emailed Donziger about a press release.  Dkt. No. 47, Ex. 33.  He also has a Twitter account and writes for the Huffington Post.  Dkt. No. 47, Exs. 34, 35.  The email to Donziger does not mention the Lago Agrio litigation, or indicate that the press release was part of a coordinated effort, or that coldmtn@gmail.com was acting on behalf of Donziger.  Chevron has not shown that IP logs for coldmtn@gmail.com are relevant to its underlying claims against defendants.  Chevron alleges that the owner of coldmtn@gmail.com is employed by Amazon Watch and coordinated a pressure campaign against it, but merely being associated with the group Amazon Watch does not render a person, or an email address, complicit in defendants' alleged fraud. *See Chevron Corp. v. Donziger*, 2013 WL 1402727, at *4 (finding that Chevron failed to show that Amazon Watch's campaigns were unlawful and noting that Judge Kaplan's findings regarding the probability of defendants' fraud did not include any involvement by Amazon Watch).  The Court quashes Chevron's subpoena for documents related to the email address coldmtn@gmail.com.

### k.    bandawatch@gmail.com

Chevron alleges that the owner of bandawatch@gmail.com is affiliated with Amazon Watch and involved in coordinating pressure campaigns against Chevron.  Dkt. No. 46 at 13.  Chevron has documented that the owner of bandawatch@gmail.com has a Twitter account.  Dkt. No. 47 at 36.  Chevron has not documented how the owner of this email address is connected with the underlying litigation or how its subpoena for documents related to this address will produce discovery relevant to its claims.  The Court quashes Chevron's subpoena for documents related to the email address bandawatch@gmail.com.

//

1

**l.     josephmutti@gmail.com**

Joseph Mutti, the owner of josephmutti@gmail.com, published an article on the status of Chevron's oil concessions in Ecuador. Dkt. No. 47, Ex. 37. He takes a critical view of Chevron in the article. *Id.* He quotes Donziger. *Id.* He references a statement by Atossa Soltani, the Executive Director of Amazon Watch. *Id.* He suggests as plausible that the CIA assassinated Ecuador's former president for trying to stand up to Texaco, Chevron's predecessor-in-interest in Ecuador. *Id.*

Chevron makes no showing of how Mr. Mutti is involved with defendants or their alleged scheme, other than reporting in a way that adds fuel to their fire against Chevron. Chevron also makes no showing regarding how documents about Mr. Mutti's email address will lead to the discovery of relevant evidence. The Court quashes Chevron's subpoena for documents related to the email address josephmutti@gmail.com.

**m.     jenbilbao3@yahoo.com and lore_gamboa@yahoo.es**

Chevron alleges that the owners of jenbilbao3@yahoo.com and lore_gamboa@yahoo.es "drafted materials in the fraudulent Ecuador litigation." Dkt. No. 46 at 13. In support of its allegations, Chevron submits two exhibits. These exhibits show that Jennifer E. Bilbao is the owner of jenbilbao3@yahoo.com and that she enjoys travelling, hiking, watching movies, and reading. Dkt. No. 47, Ex. 38. They also show that the owner of lore_gamboa@yahoo.es is listed as a contact person the website of Forest Garden Certification.com, a site that promotes reforestation of vulnerable ecosystems. Dkt. No. 47, Ex. 42. Chevron has not demonstrated any connection between these email addresses and defendants' alleged conduct. The Court quashes Chevron's subpoena for documents related to the email addresses jenbilbao3@yahoo.com and lore_gamboa@yahoo.es.

**n.     briansethparker@gmail.com**

Chevron asserts that briansethparker@gmail.com worked as an intern for Donziger. Dkt. No. 46 at 13. In support of its subpoena for documents related to this address, Chevron submits an email sent by briansethparker@gmail.com about a screening of "Crude," a film

about Chevron in Ecuador, and a screenshot of a Facebook profile registered to briansethparker@gmail.com.  Dkt. No. 47, Ex. 42.

Brian Parker, who worked as an intern for Donziger and for the Lago Agrio plaintiffs, is the subject of a separate motion to compel brought by Chevron that is currently pending before this Court.  *See* Case No. 11-mc-80217 CRB (NC), Dkt. No. 1.  In its opposition to the Doe movants' motion to quash, Chevron does not state whether this email address belongs to the same former intern that is the subject of its other discovery proceeding.  An exhibit supporting Chevron's motion to compel in 11-mc-80217, contains Parker's privilege log, which includes his email address, briansethparker@gmail.com.  Case No. 11-mc-80217, Dkt. No. 2, Ex. 3.  Notably, in the 11-mc-80217 proceeding, Chevron seeks email communication from Brian Parker.  Because Chevron has the opportunity to gather the information it seeks from the third party ISPs directly from the source, and is in fact taking action to do so, the Court quashes the subpoena to Google for documents related to the email address briansethparker@gmail.com.

> **o.    goldstein.ben@gmail.com, katiafachgomez@gmail.com, and kshuk22@yahoo.com**

Chevron alleges that the owners of goldstein.ben@gmail.com, katiafachgomez@gmail.com, and kshuk22@yahoo.com were interns who worked at Donziger's direction.  Dkt. No. 46 at 13.  Chevron's supporting exhibits show that:

> (1)    the owner of goldstein.ben@gmail.com was in the Class of 2010 at Fordham Law School.  Dkt. No. 47, Ex. 39;
>
> (2)    the owner of katiafachgomez@gmail.com is a law professor in Spain and published an article about Latin American countries' use of the International Center for the Settlement of Investment Disputes.  Dkt. No. 47, Ex. 40; and
>
> (3)    the owner of kshuk22@yahoo.com "just joined Twitter and [doesn't] know how to use it!"  Dkt. No. 47, Ex. 41.

//

1   Chevron has established no involvement in the Lago Agrio litigation by these former

2   interns, in sharp contrast to the interactions Chevron was able to document between other

3   former interns that indicated a subpoena for documents related to those addresses might

4   yield relevant discovery.  The Court quashes Chevron's subpoena for documents related to

5   the email addresses goldstein.ben@gmail.com, katiafachgomez@gmail.com, and

6   kshuk22@yahoo.com.

7   **p.   sayjay80@gmail.com, catmongeon@gmail.com,
        wilsonaguinda@gmail.com, sara.colon@gmail.com,**

8   **farihahzaman@gmail.com, jeremylow@gmail.com,
        courtneyrwong@gmail.com, marialya@gmail.com,**

9   **lupitadeheredia@gmail.com hueyzactlan@gmail.com,**

10  **rodgers.john@gmail.com, and belanger.laura@gmail.com**

11  Chevron alleges that sayjay80@gmail.com, catmongeon@gmail.com,

12  sara.colon@gmail.com, farihahzaman@gmail.com, jeremylow@gmail.com,

13  courtneyrwong@gmail.com were interns who worked at the direction of Donziger.  Beyond

14  this allegation, Chevron has shown no connection between these email addresses and its

15  claims.  The Court quashes Chevron's subpoena for documents related to these addresses.

16  Chevron alleges that marialya@gmail.com and lupitadeheredia@gmail.com

17  coordinated pressure campaign activities against Chevron, but has not shown any

18  connection between these addresses and Donziger, or any other party to this litigation,

19  Amazon Watch, or any advocacy group.  The Court quashes Chevron's subpoena for

20  documents related to these addresses.

21  Chevron does not even mention the addresses hueyzactlan@gmail.com,

22  rodgers.john@gmail.com, belanger.laura@gmail.com, lupitadeheredia@yahoo.com, or

23  wilsonaguinda@gmail.com in its oppositions or declarations and makes no showing of how

24  these email addresses are connected to the underlying dispute or likely to yield relevant

25  discovery.  The Court quashes Chevron's subpoenas related to these addresses.

26  //

27

28

1

## IV. CONCLUSION

2     Only those movants with a personal interest in this discovery dispute have standing to

3 quash.  Therefore, the motions to quash are DENIED as to srd.asst@gmail.com,

4 gringograndote@gmail.com, pafabibi@gmail.com, ingrcabrerav@gmail.com,

5 rcabrerav@gmail.com, casotexaco@gmail.com, grahamrocks@gmail.com,

6 anemachetes@gmail.com, garcesme@gmail.com, echeverra.alejandra@gmail.com,

7 invictusdocs2010@gmail.com, comandocondor88@gmail.com, cara.parks@gmail.com,

8 osimonc@gmail.com, sdonziger@yahoo.com, sdonziger2@yahoo.com,

9 ingrcabrerav@yahoo.com, rcabrerav@yahoo.com, lcoca62@yahoo.com.mx,

10 jdtorres@yahoo.com, elpezkadr@yahoo.com, pedrofreire69@yahoo.es,

11 fpenafiel1100@yahoo.com, champcw1@yahoo.com, robinsoncofan@yahoo.es,

12 juanaulestia@yahoo.com.mx, emu_25@yahoo.com, doug_vilsack@yahoo.com,

13 valeramia@yahoo.com, frente_de_defensa@yahoo.com, ruben.miranda@rocketmail.com,

14 limcas2002@yahoo.com, and sandragrimaldi12@yahoo.com.  Google and Yahoo! are

15 ordered to produce the requested discovery related to these email addresses from January 1,

16 2003 through February 14, 2011.

17     The Doe movants vastly overestimate the amount of legal protection accorded to the

18 subscriber and usage information associated with their email addresses.  The Doe movants

19 have not met their burden to show that Chevron's subpoenas to Google and Yahoo! seek

20 privileged or protected information.  Nevertheless, Chevron's subpoenas must be limited to

21 information relevant to its claims and that appears reasonably calculated to lead to the

22 discovery of admissible evidence.  Because parts of Chevron's subpoenas to the ISPs do not

23 seek relevant discovery, the Court narrows them as follows:

24     • Google must produce the requested documents related to the email address

25       cortelyou@gmail.com from the creation of the address through February 14,

26       2011;

27     • Google must produce the requested documents related to the email address

28       firger@gmail.com from January 1, 2006 through December 31, 2009;

Case No. 12-mc-80237 CRB (NC)
ORDER RE: MOTIONS TO QUASH          32
SUBPOENAS

- Google must produce the requested documents related to the email address tegelsimeon@gmail.com from the creation of the email account through December 31, 2008;

- Google must produce the requested documents related to the email address kevinkoeningquito@gmail.com from the creation of the email account through February 14, 2011;

- Yahoo! must produce the requested documents related to the email address erikmoe66@yahoo.com from January 1, 2010 through February 14, 2011; and

- Google must produce the requested documents related to the email address richard.clapp@gmail.com from January 1, 2006 through February 14, 2011.

In addition, the Court QUASHES the subpoenas for documents related to the email addresses: ampage@gmail.com, lauragarr@gmail.com, drewwoods3@yahoo.com, drewwoods3@gmail.com, coldmtn@gmail.com, bandawatch@gmail.com, josephmutti@gmail.com, jenbilbao3@yahoo.com, lore_gamboa@yahoo.es, goldstein.ben@gmail.com, katiafachgomez@gmail.com, kshuk22@yahoo.com, briansethparker@gmail.com, sayjay80@gmail.com, catmongeon@gmail.com, wilsonaguinda@gmail.com, sara.colon@gmail.com, farihahzaman@gmail.com, jeremylow@gmail.com, courtneyrwong@gmail.com, marialya@gmail.com, lupitadeheredia@gmail.com, hueyzactlan@gmail.com, rodgers.john@gmail.com, and belanger.laura@gmail.com.

Because defendants have not shown that the subpoenas are redundant or irrelevant under Rule 26, the Court DENIES defendants' motion to quash. Google and Yahoo! are ordered to produce the requested discovery related to the email addresses sdonziger@gmail.com, javipi002@gmail.com, and documents2010@ymail.com from January 1, 2003 through February 14, 2011.

All documents produced by the ISPs will be subject to the terms of a protective order to be entered by the Court. Plaintiff's counsel, defendants' counsel, and counsel for the Doe movants must meet and confer and submit either a proposed protective order, or if no

consensus is reached, separate proposed orders, that will adequately protect the use and distribution of the subpoenaed information, in particular the information of non-parties, by September 5, 2013.  If needed, the Court will set a hearing on the matter.  The parties may wish to use the standard protective order, available on the Court's website at http://www.cand.uscourts.gov/stipprotectorder.

Any party may object to this order by September 5, 2013.  Fed. R. Civ. P. 72(a).

IT IS SO ORDERED.

Date: August 22, 2013

_____
Nathanael M. Cousins
United States Magistrate Judge