THEODORE J. BOUTROUS JR., SBN 132009
tboutrous@gibsondunn.com
ETHAN D. DETTMER, SBN 196046
edettmer@gibsondunn.com
ENRIQUE A. MONAGAS, SBN 239087
emonagas@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile: 415.393.8306

*Attorneys for Plaintiff Chevron Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHEVRON CORP., <br><br> Plaintiff, <br><br> v. <br><br> STEVEN DONZIGER, and others, <br><br> Defendants. | CASE NO. 12-mc-80237 CRB (NC) <br><br> **CHEVRON CORPORATION'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** <br><br> **[FED. R. CIV. P. 72(A); CIV. L.R. 72-2]** |

Pursuant to Fed. R. Civ. P. 72(a) and Civil Local Rule 72-2, Chevron Corporation respectfully submits limited objections to an order entered by Magistrate Judge Nathaniel Cousins substantially denying motions to quash subpoenas that Chevron served on Google Inc. and Yahoo! Inc. *See* Dkt. 70 (Aug. 22, 2013) ("Order"). The majority of Magistrate Judge Cousins' Order is well reasoned, consistent with controlling precedent, and substantively correct. Chevron submits these discrete objections to ensure that the record is clear that each and every email address at issue was used in connection with the fraudulent activity that is the subject of the underlying litigation.

The subpoenas at issue seek only limited identifying and login information for several email accounts that were identified in the course of investigating and litigating a suit that Chevron brought in New York against the main parties responsible for a scheme to defraud Chevron of billions of dollars using the vehicle of a lawsuit in Ecuador. *See Chevron Corp. v. Donziger*, No. 11 Civ. 0691 LAK (S.D.N.Y.) (the "RICO action"). The subpoenas seek information relevant to core claims in that action, because the email accounts at issue were used to further that fraud by helping the responsible parties engineer and publicize a fraudulent expert report and judgment in the Ecuador litigation, pressure Chevron into accepting a fraudulent settlement, and otherwise facilitate the work of the defendants in the RICO action.

Magistrate Judge Cousins correctly denied the Does' motion to quash with respect to many of the records at issue and concluded: (1) that the account holders had no First Amendment interest at stake, (2) that they had no privacy interest in the information sought, and (3) that the information sought is relevant to Chevron's claims. Order at 11-21. Despite reaching these indisputably correct legal conclusions, Magistrate Judge Cousins nevertheless quashed the subpoenas with respect to the accounts of 25 individuals who claim to be "John Does." Because the Magistrate Judge reached incorrect factual conclusions with respect to these 25 accounts, this Court should reject the August 22 Order to the extent it granted the motion to quash.

**A.  The Existence of Other Discovery Proceedings Does Not Diminish Chevron's Right to Discovery through These Subpoenas**

The Magistrate Judge concluded that Chevron was not entitled to information about three accounts—ampage@gmail.com, briansethparker@gmail.com, and lauragarr@yahoo.com—because

Chevron obtained or may obtain discovery from the apparent holders of those accounts in other proceedings. Order at 25, 27, 30. The Magistrate Judge erred in concluding that Chevron could obtain the subpoenaed information from those account holders themselves. IP address logs are kept by Internet service providers ("ISPs") themselves—*not* by account holders. Chevron's effort to obtain discovery of certain *other* information from the account holders themselves does not diminish Chevron's entitlement to obtain additional information that is exclusively maintained by third party ISPs. *See WPIX, Inc. v. Broadcast Music, Inc.*, No. 11-cv-4052 SJO (JEM), 2011 WL 9753912, at *7 (C.D. Cal. July 5, 2011) (upholding third party subpoena where it sought information that was "likely distinct" from that produced by the party to the underlying proceeding). Indeed, the record in this case shows that one of the defendants in the underlying action needed to use the identical mechanism—a subpoena to Yahoo!—to obtain this type of information about *his own* email account. *See* Dkt. 47-45 (Ex. 44), Dkt. 55-2 (Ex. B). Accordingly, the discovery sought is not duplicative of discovery sought from the owners of these accounts, and the motion to quash should be denied as to these accounts.

**B.    The Remaining Quashed Email Addresses Are Relevant to Chevron's Claims**

For the remaining accounts at issue, the Magistrate Judge found that Chevron had not established a heightened standard of relevance—particularized evidence proving the specific involvement of each account in the conduct giving rise to the claims in the RICO action. *See* Order at 27-31. This was error. The law does not impose such a heightened standard, and Chevron satisfied the burden that the law does impose.

Chevron had a duty to show that the subpoenaed information is relevant to its claims. *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 12-cv-080082 LHK (PSG), 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012). The Magistrate Judge correctly held that the subpoenas seek relevant information. Order at 19-21. That alone satisfied Chevron's burden.

Once Chevron established that the subpoenaed information is relevant, the Doe movants had the burden of demonstrating that the subpoenas are unreasonable. *F.D.I.C. v. Garner*, 126 F.3d 1138, 1144 (9th Cir. 1997). The Does' counsel, however, did not submit any sworn testimony or other evidence with respect to the majority of the account owners that they purport to represent. Rather

than hold the Does to the consequences of that tactical decision, however, the Magistrate Judge required *Chevron* to make *an additional showing*: that its subpoenas are reasonable as to each individual email account. Order at 27-31. That was error.

The Magistrate Judge's analysis of relevance was flawed in a second respect. In its opposition to the Does' motion to quash, Chevron submitted exhibits demonstrating that each of the purported Does who had submitted evidence related to the use of their email accounts was, in fact, involved in the underlying fraud, *see* Dkt. 46 at 7-8 (citing record evidence), and then separate exhibits showing that the remaining "Does"—who had not submitted any evidence—were not anonymous. *See id.* at 8-9 (same). In analyzing the relevance of each email address, the Magistrate Judge apparently assumed that this latter set of exhibits—which was submitted merely to demonstrate that the purported Does had themselves disclosed their identities—was the only evidence of the Does' roles in, and how their email addresses related to, the Ecuador litigation. *See* Order at 27-31. That assumption was incorrect; each "Doe" has an extensive role in the Ecuador litigation, as described briefly here:

- Drewwoods3@gmail.com; drewwoods3@yahoo.com: Andrew Woods, an attorney for the Ecuadorian plaintiffs who are defendants in the RICO action (the "LAPs"), used these addresses to communicate with lead defendant Steven Donziger and others about the Ecuador litigation. *See* Exs. 1-2;[1] Dkt. 47-32 (Ex. 31).

- Coldmtn@gmail.com: Charles Buchanan, who often goes by the nickname "Han Shan," used this address to communicate with Donziger and others about his work on behalf of the LAPs. This included travel to Ecuador "to coordinate media strategy with [LAPs' attorney] Pablo [Fajardo]." Exs. 3-4.[2]

- Bandawatch@gmail.com: Thomas Cavanagh, who performed extensive work related to the Ecuador litigation for Amazon Watch, apparently used this address to communicate with Donziger about fronting expenses for anti-Chevron propaganda, among other things. Ex. 5.

---

[1]  Unless otherwise indicated, citations are to the Declaration of Alexander Marx, filed herewith.

[2]  The holders of the accounts coldmtn@gmail.com, bandawatch@gmail.com, josephmutti@gmail.com, marialya@gmail.com, and hueyzactlan@gmail.com are all apparently affiliated with Amazon Watch, an organization whose involvement in the LAPs' extortionate scheme has been demonstrated. *See Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 248-49 (S.D.N.Y. 2012). The Magistrate Judge notes that "merely being associated with the group Amazon Watch does not render a person, or an email address, complicit in the defendants' alleged fraud." Order at 28. But a party is not required to demonstrate complicity in fraud in order to obtain discovery. All that is required is that discovery be "reasonably calculated lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

- Josephmutti@gmail.com:  Joseph Mutti worked with the LAPs in Ecuador, and apparently used this address to communicate with Donziger about this work.  Ex 6.  Mutti also apparently tried to arrange meetings with Ecuadorian presidential candidates, including President Rafael Correa, on Donziger's behalf.  Ex. 7.  Mutti also apparently was responsible for building websites disseminating the LAPs' propaganda.  Ex. 8.

- Jenbilbao3@yahoo.com:  Jennifer Bilbao worked on the LAPs' first judicial inspection report and apparently used this address to communicate with Donziger about this work.  She expressed concern that the LAPs' experts' conclusions were not "good enough."  Ex. 9.

- Lore_gamboa@yahoo.es:  Lore Gamboa worked extensively on the LAPs' environmental sampling efforts in Ecuador, apparently worked under the direction of Pablo Fajardo, and apparently used this address for that purpose.  Ex. 10.

- Goldstein.ben@gmail.com:  Ben Goldstein, an intern who worked on the Ecuador litigation at Donziger's direction, apparently used this address to communicate with Donziger about various matters related to the litigation, including pressuring Chevron to settle the litigation.  Ex. 11.

- Katiafachgomez@gmail.com:  Katia Fach Gomez, an intern who worked on the Ecuador litigation at Donziger's direction, including traveling to Ecuador to perform work, apparently used this address to communicate with Donziger about the litigation.  Ex. 12.

- Kshuk@22@yahoo.com:  Kush Shukla, an intern who worked on the Ecuador litigation at Donziger's direction, including traveling to Ecuador to perform work, apparently used this address to communicate with him about the litigation.  Ex. 13.

- Sayjay80@gmail.com:  Sarah Jaffe Singh, an intern who worked on the Ecuador litigation at Donziger's direction, including traveling to Ecuador to perform work, apparently used this address to communicate with Donziger about the litigation.  Ex. 14.

- Catmongeon@gmail.com:  Catherine Mongeon, an intern who worked on the Ecuador litigation at Donziger's direction, including traveling to Ecuador to perform work, apparently used this address to communicate with Donziger about the litigation.  Ex. 15.

- Wilsonaguinda@gmail.com:  Patricio Wilson Aguinda is one of the LAPs.  He apparently used this address to communicate with Donziger about the litigation.  Ex. 16.

- Sara.colon@gmail.com:  Sara Colon, an intern who worked on the Ecuador litigation at Donziger's direction, apparently used this address to communicate with him about the litigation.  Ex. 17.

- Farihahzaman@gmail.com:  Farihah Zaman, an assistant who worked on the Ecuador litigation at Donziger's direction, apparently used this address to communicate with Donziger about the litigation.  Ex. 18.

- Jeremylow@gmail.com:  Jeremy Low, an assistant who worked on the Ecuador litigation at Donziger's direction, apparently used this address to communicate with him about the litigation.  Ex. 19.

- Courtneyrwong@gmail.com:  Courtney Wong, an assistant who worked on the Ecuador litigation at Donziger's direction, apparently used this address to communicate with Donziger about the litigation.  Ex. 20.

- Marialya@gmail.com:  Maria Ramos worked with Amazon Watch and apparently used this address to communicate with Donziger about the Ecuador litigation.  She reacted to news of the LAPs' forgery of an expert report by stating the need to "wrest as much as we can from this weakening hand."  Ex. 21.

- Lupitadeheredia@gmail.com:  Guadalupe de Heredia was employed by the LAPs' enterprise, worked extensively with Donziger on the Ecuador litigation, and was responsible for assigning work to Donziger's interns.  She apparently used this address for her work on the Ecuador litigation.  Ex. 22.

- Hueyzactlan@gmail.com:  Mitch Anderson worked with Amazon Watch and was heavily involved in coordinating pressure campaigns against Chevron with Donziger, reaching out to public officials in the U.S. such as the New York City Comptroller.  He apparently used this address for this work.  Ex. 23.

- Rodgers.john@gmail.com:  John Rodgers collaborated with his wife, Laura Belanger in performing technical work for the LAPs related to the Ecuador litigation.  He apparently used this address to communicate with Donziger and others regarding this work.  Ex. 24.

- Belanger.laura@gmail.com:  Laura Belanger worked extensively for the LAPs on the Ecuador litigation.  She apparently used this address to communicate with Donziger and others about records she possessed related to this work.  Ex. 25.

Importantly, apart from the final two accounts on this list, the Does did not submit *any evidence* to substantiate that their accounts were *not* used in connection with the underlying fraud.  So there was no evidence for Chevron to respond to.  And the only submissions made for Ms. Belanger and Mr. Rodgers *confirm* that they worked with defendant Donziger on the Ecuador litigation.  Dkt. 18, 19.

In short, the Magistrate Judge erred in denying discovery based on other proceedings and by requiring Chevron to make an additional showing when it had already established the relevance of the subpoenaed information and the "Does" submitted no evidence to the contrary.  To the extent the Magistrate Judge quashed the subpoenas, Chevron respectfully requests relief.

Dated:  September 5, 2013                          GIBSON, DUNN & CRUTCHER LLP

By:  _____/s/ Ethan D. Dettmer_____
         Ethan D. Dettmer

Attorneys for Plaintiff Chevron Corporation