THEODORE J. BOUTROUS JR., SBN 132009
  tboutrous@gibsondunn.com
ETHAN D. DETTMER, SBN 196046
  edettmer@gibsondunn.com
ENRIQUE A. MONAGAS, SBN 239087
  emonagas@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

*Attorneys for Plaintiff Chevron Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHEVRON CORP.,<br><br>                    Plaintiff,<br><br>     v.<br><br>STEVEN DONZIGER, and others,<br><br>                    Defendants. | CASE NO. 12-mc-80237 CRB (NC)<br><br>**CHEVRON CORPORATION'S OPPOSITION TO *EX PARTE* APPLICATION FOR STAY OF ORDER PENDING APPEAL**<br><br>[FED. R. CIV. P. 62; CIV. L.R. 7-10] |

The non-party "John Doe" movants' *ex parte* application to stay this Court's order requiring Google Inc. and Yahoo! Inc. to comply with subpoenas ("August 22 Order," Dkt. 70) is an attempt to stall and relitigate issues that have been decided—repeatedly. Those issues have been resolved both in disposing of various unsuccessful motions to quash these subpoenas (Dkts. 1, 4, 18, 19, 30, 42, 43) and, most recently, in rejecting the Does' September 5, 2013 motion for relief from the August 22 Order (Dkt. 72) pursuant to Local Rule 72-2. The Does' attempt to rehash their rejected arguments again is improper. The application to stay, moreover, was filed *ex parte* in violation of the Local Rules of this Court, only after it became clear that there is no good faith defense to Chevron's request for compliance with the August 22 Order (Dkts. 88, 89). Because every Court that has considered these subpoenas has agreed that the requested discovery is appropriate and relevant to a trial that starts in New York on October 15, Chevron respectfully requests that the Does' application to stay be denied as expeditiously as possible, and that the Court order immediate compliance with the August 22 Order.

Even on its merits, the application to stay cannot withstand scrutiny. The subpoenas at issue seek only limited identifying and login information for several email accounts that were identified in the course of investigating and litigating a suit that Chevron brought in New York against the main parties (the "LAPs") responsible for a scheme to defraud Chevron of billions of dollars using the vehicle of a lawsuit in Ecuador. *See Chevron Corp. v. Donziger*, No. 11 Civ. 0691 LAK (S.D.N.Y.) (the "RICO action"). The subpoenas request information relevant to core claims in that action, because the email accounts at issue were used to further that fraud by helping the responsible parties engineer and publicize a fraudulent expert report and judgment in the Ecuador litigation, pressure Chevron into accepting a fraudulent settlement, and otherwise facilitate the work of the LAPs. Such basic information is routinely produced in lawsuits consistent with the Stored Communications Act. *See*, *e.g.*, 18 U.S.C. § 2702(c)(6).

This is precisely why this Court has already correctly concluded: (1) that the account holders had no First Amendment interest at stake, (2) that they had no privacy interest in the information sought, and (3) that the information sought is relevant to Chevron's claims. Dkt. 70 at 11-21. After the August 22 Order became final on September 22, the law required the third-party Internet service

providers to "compl[y] . . . promptly" with the subpoenas. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) (internal quotation marks omitted).

The Does' *ex parte* application to stay the August 22 Order (Dkt. 90) offers nothing but heated rhetoric to contest this Court's conclusions that the movants have "not satisfactorily shown that their actions were anonymous," Dkt. 70 at 13; that the "subpoenas do not seek the Doe movants' expressive activity," *id.* at 14; and that "[t]here is no reasonable expectation of privacy in the" information requested, *id.* at 19. Indeed, the Judge presiding over the RICO action has separately reached similar conclusions multiple times. *See* Dkts. 66, 68, 87. As a result, there is no reasonable chance that the Does will be able to make the required "strong showing" of success in overturning the Court's order, much less a showing of harm absent a stay. In contrast, Chevron has a pressing need for this information, and the public interest favors discovery that will be helpful to a trier of fact. Accordingly, because all relevant considerations militate against a stay, this Court should simply confirm its prior order that Google and Yahoo! must comply with the subpoenas forthwith.

## I.  ARGUMENT

**A.  The Non-Party Movants Have Failed To Satisfy The Rigorous Rules Governing *Ex Parte* Submissions.**

As an initial matter, the *ex parte* application should be denied because the Does failed to comply with this Court's Local Rules. In this District, a party may file a motion *ex parte* "only if a statute, Federal Rule, local rule or Standing Order authorizes the filing of an *ex parte* motion in the circumstances and the party has complied with the applicable provisions allowing the party to approach the Court on an *ex parte* basis. The motion must include a citation to the statute, rule or order which permits the use of an *ex parte* motion to obtain the relief sought." Civ. L.R. 7-10. The Doe movants have not even attempted to provide authority supporting their use of an *ex parte* filing. This is reason enough to deny their application.

Moreover, the Does' filing fails to disclose—much less grapple with—a number of threshold weaknesses in their position.

First, although the Does continue to claim they are seeking to protect anonymity, two U.S. district courts have now found that there is no legitimate question as to who owns the email addresses

at issue. As this Court explained, "[s]everal of [the Does'] email addresses contain their first and last names, or their first initial and last name, or some other combination of identifying information." Dkt. 70 at 13. In a parallel proceeding involving a subpoena to Microsoft, Judge Kaplan similarly observed: "It does not take a rocket scientist to figure out, as Chevron thinks it has done, that simeontegel@hotmail.com quite likely is owned by Simeon Tegel, mey_1802@hotmail.com by Maria Eugenia Yepez, and lupitadeheredia@hotmail.com by Lupita (or Guadalupe) de Heredia." Dkt. 60-1, Ex. A at 5-6. The Does' continuing pretense that these users are somehow "anonymous" is inexplicable. *See infra* Part B-1.

Second, the Does twice contend that, unless a stay is issued, their appeal "could be mooted." Dkt. 90 at 3; *see id.* at 1. The Does fail to cite any authority for that ominous claim. That is because the law is to the contrary, as the U.S. Supreme Court recognized in *Church of Scientology of California v. United States* in holding that compliance with an order enforcing a subpoena did not moot an appeal from that order. 506 U.S. 9, 12-13 (1992).

The Does therefore failed to satisfy basic prerequisites in filing their *ex parte* application. *See, e.g., D.C.I. Computer Sys., Inc. v. Pardini*, CV-F-89-268 REC, 1990 WL 180251, at *3 (E.D. Cal. June 20, 1990) ("an *ex parte* proceeding[] requir[es] more candor towards the court than [some] counsel may be accustomed to providing").

**B.     The Non-Party Movants Have Not Satisfied The Standard For A Stay Pending Appeal.**

The Does' stay application also fails on the merits. The Does bear the burden of establishing their entitlement to a stay based on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties . . . ; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (internal quotation marks omitted); *see id.* at 433-34 (stating burden). The Does have failed to carry their burden. Indeed, each of those factors militates firmly against a stay.

**1.     The Movants Have Not Made A Strong Showing Of Success On The Merits.**

The Court correctly ruled that the subpoenas do not implicate any First Amendment right of anonymity, any First Amendment right of expressive association, or any right to privacy under

California law. Dkt. 70 at 11-19. In short: the Does are not in any meaningful sense anonymous (and, to the contrary, have publicly and openly identified themselves in connection with their email accounts) and thus can claim no right to anonymity, *see id.* at 13; the Does' right of expressive association is not at issue because "the Doe movants have not shown that they are engaging in any protected speech or expression by logging into their email accounts," *id.* at 16; and California law does not recognize a privacy interest in IP logs and account information, *id.* at 16-19. *See also* Dkt. 46 at 14-23 (Chevron's memorandum, rebutting each of the Does' arguments). The Court also correctly ruled that Chevron was not required to further limit its subpoenas and that the Does lacked standing to challenge the subpoenas as to accounts they do not own. Dkt. 70 at 7-10, 21; *see also* Dkt. 46 at 9-13 (rebutting Does' arguments).

Trying to manufacture *some* stay-worthy ground, the Does attack each of these conclusions. None of the Does' arguments has merit, and thus the Does have failed to show a substantial likelihood of success on appeal.

*First*, the Does again contend that the First Amendment protects their right to speak anonymously. Dkt. 90 at 4-5. This argument is inapposite, however, because the Does are not anonymous and thus cannot invoke any right to anonymity. Indeed, a significant majority of the email addresses consist of the names or initials of the Does. And, as explained above, many Does have long publicized their use of these particular email addresses or their association with the LAPs. *See also* Dkt. 70 at 11-14; Dkt. 46 at 7-9. Because the Does are not anonymous, there is no need to prevent the disclosure of information that will merely substantiate well-known identities. Anonymity is meant to shield from tyranny of the majority and foster robust debate. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995); *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999). Those rationales for protecting anonymity disappear where, as here, a speaker's identity is known. Here, the Does have not made the protected "decision to remain anonymous." *McIntyre*, 514 U.S. at 342. This case, therefore, does not present the question whether anonymity "can" *ever* "attach to email addresses." Dkt. 90 at 4.

Beyond ignoring the dispositive fact that the Does are not anonymous, the Does also wrongly rely on cases recognizing a protectable speech interest when a party is seeking to tie someone's

identity to his statements. *See*, *e.g.*, *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1090-91 (W.D. Wash. 2001); *Doe v. SEC*, No. C 11-80209 CRB, 2011 WL 5600513, at *1-2 (N.D. Cal. Nov. 17, 2011). As the Does are well aware (having litigated this issue for months and having been repeatedly reminded by Chevron), Chevron is not seeking to tie the Does' identities to the contents of their communications; rather, Chevron is seeking to confirm who used these email accounts and when to corroborate their use as part of a fraudulent RICO enterprise and to confirm the locations from which that enterprise operated. Dkt. 46 at 11-12, 17-18; Dkt. 49 at 7-8.

*Second*, the Does contend that the subpoenas implicate their right of association. Dkt. 90 at 5-6. This argument fails, however, because the Does cannot make and have not tried to make a "prima facie showing of arguable [F]irst [A]mendment infringement" that would result from the disclosure of information about their email accounts. *Brock v. Local 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 349 (9th Cir. 1988) (internal quotation marks omitted). As already explained, the Does' identities have been disclosed, and the Does freely associated themselves and their identities with the LAPs for long spans of time during which the LAPs were perpetrating massive fraud. Dkt. 70 at 13-14; Dkt. 46 at 20-21. Nothing about *re*-disclosure of the Does' identities could hamper their associational freedom. Indeed, if disclosure could have harmed the Does at all, that (self-inflicted) harm would have already occurred.

Although Chevron explained all of this in its opposition to the Does' motion to quash (*see* Dkt. 46 at 20), the Does never cite *Brock* and identify no harm of disclosure in their *ex parte* application. Thus, even if the Does were correct that the right of association applies beyond formal associations (*see* Dkt. 90 at 5-6) and even if the Does might belong to a group to which First Amendment rights would apply (*see id.* at 6), those facts would not matter: The Does were required to establish that disclosure would harm them. But they have not proffered ***any*** evidence of harm, let alone persuasive evidence. They have—again—failed to carry their burden and are not entitled to a stay based on the right of association.

*Third*, the Does contend that the request for IP logs implicates their California law right of privacy. Dkt. 90 at 7. But to prevail on a privacy claim under California law, the Does would need to establish: (1) that they have a protected privacy interest in the subpoenaed information; (2) that

they have a reasonable expectation of privacy in that information; and (3) that the subpoenas are a serious invasion of their privacy. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994). Again, the Does make *no attempt* to satisfy those criteria—indeed, the Does do not even identify the correct legal standard or cite any California state case law (*see* Dkt. 90 at 7), even though they know that Chevron argued—and the Court concluded—that there is no privacy interest at stake. *See* Dkt. 70 at 16-19; Dkt. 46 at 22-23. In any event, the Does flunk each requirement of a privacy claim: (1) the Does have waived any privacy interest in the requested information because, "without coercion," each Doe disclosed all of the information at issue to Google and Yahoo! when they created their accounts, *Heda v. Supeior Court*, 225 Cal. App. 3d 525, 530 (Cal. Ct. App. 1990) (internal quotation marks omitted); (2) the Does "ha[ve] no legitimate expectation of privacy" in "subscriber information conveyed to Internet providers," *People v. Stipo*, 195 Cal. App. 4th 664, 668 (Cal. Ct. App. 2011) (internal quotation marks omitted); and (3) the subpoenas make reasonable, routine requests that do not invade privacy, *see* 18 U.S.C. § 2702(c)(6).

*Fourth*, the Does contend that the Court erred because it did not require *Chevron* to present facts necessary to limit the subpoenas. Dkt. 90 at 8. The Does cite no authority holding that, absent an adequate First Amendment showing, Chevron had this burden. To the contrary, Chevron merely had a duty to show that the subpoenaed information is relevant to its claims. *EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 12-cv-080082 LHK (PSG), 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012). The Court correctly held that the subpoenas seek relevant information. Dkt. 70 at 19-21. Once Chevron established that the subpoenaed information is relevant, the Does had the burden of demonstrating that the subpoenas are unreasonable. *FDIC v. Garner*, 126 F.3d 1138, 1144 (9th Cir. 1997). The Does made no effort to do so, however, and their failure to satisfy their obligation cannot be grounds for a stay.

*Fifth*, the Does contend that the Court erred in concluding that the Does lack standing to challenge Chevron's subpoenas as to accounts that they do not own. Dkt. 90 at 8. Again, the Does cite no authority demonstrating that they should have been afforded such standing. The one case the Does cite *rejected* a claim of third-party standing, and recognized the basic principle that a party seeking relief "bears the burden of establishing standing." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th

1  Cir. 2010); *see id.* at 792-93.  Here, the Does failed to satisfy their burden—despite having multiple
2  opportunities to do so.  *See* Dkts. 43, 52, 72.  They have again failed to do so, and should not be
3  saved from themselves with a stay pending appeal.  *See*, *e.g.*, *In re N. Plaza, LLC*, 395 B.R. 113, 126
4  (S.D. Cal. 2008) (rejecting stay where, as here, multiple courts had rejected movant's arguments).

5  **2.   The Movants Will Face No Cognizable Harm Without A Stay.**

6  The Does' plea of "irreparable harm" (*see* Dkt. 90 at 3-4) also fails.  Indeed, a desire to avoid
7  discovery "does not show irreparable harm or prejudice."  *See*, *e.g.*, *Grant v. Capital Mgmt. Servs.*,
8  *L.P.*, 10CV2471 WQH (BGS), 2011 WL 3653770, at *2 (S.D. Cal. Aug. 19, 2011).  That is
9  particularly true here for largely the same reasons that the Does' merits arguments fail.  The Does
10 insist that compliance with the subpoenas will cause them to "los[e]" their "confidentiality," cause
11 them to lose their "privacy," and violate their constitutional rights.  Dkt. 90 at 3.  As explained above,
12 however, compliance with the subpoenas will not cause any such harms.  The Does already
13 themselves disclosed their identities to the public and have willingly disclosed all of the other
14 information requested by the subpoenas to third-party Internet service providers.  If disclosure could
15 have harmed the Does, it would have already done so (and such harm would be self-inflicted).  The
16 mere re-disclosure occasioned by compliance with the subpoenas will not cause harm.

17 The cases invoked by the Does, moreover, do not support their position.  In *Center for*
18 *International Environmental Law v. Office of the United States Trade Representative*, 240 F. Supp.
19 2d 21 (D.D.C. 2003), the district court ordered a conditional stay pending appeal but directed the
20 appellants to seek to expedite their appeal in order to prevent harming the parties requesting
21 information.  *Id.* at 23-24.  The circumstances here are materially different, because a stay could not
22 be imposed without harming Chevron, which faces a trial that starts October 15.  *See also infra* Part
23 B-3.  And the statement in *United States v. Phillip Morris, Inc.* that the Does quote—that "disclosure
24 of privileged documents to an adverse party" can be "irreparable harm," 314 F.3d 612, 621-22 (D.C.
25 Cir. 2003)—is inapposite here because the Does have established no privilege or protected interest in
26 the subpoenaed information.  The Does have therefore failed to establish that they will face
27 irreparable harm if the Court orders the ISPs to comply with the subpoenas.
28

**3.      A Stay Would Risk Harm To Chevron.**

Chevron issued the subpoenas here to obtain information relevant to its claims in a trial that is now only a week away.  If the Does obtain a stay, Chevron will be harmed because it will be effectively unable to obtain that information in time to use it at trial.

The Does make two arguments in contending that "a stay will cause *no* harm to Chevron." Dkt. 90 at 3 (emphasis added); *see id.* at 8-9.  Neither has merit.

First, the Does contend that "Chevron has no pressing need for the [subpoenaed] information" because (1) as to the movants' identities, Chevron "have [sic] claimed that they already know who the Movants are," and (2) as to the Internet Protocol ("IP") information, it is unlikely that the ISPs still have much of the information requested in the subpoenas and, moreover, it could be necessary to combine what information they have with other information to make it useful.  Dkt. 90 at 9.  Both arguments are beside the point.  As to the Does' identities, Chevron stated the following in its opposition to the Does' motion to quash:  "[A]lthough Chevron likely knows the Does' identities, Chevron remains entitled to regularly collected business records to substantiate those identities at trial."  Dkt. 46 at 12 (citing Fed. R. Evid. 803(6)).  The Does never acknowledge this basic point in their application; to the contrary, they repeatedly act as though this information could be of no use to Chevron.  *See*, *e.g.*, Dkt. 90 at 3, 5 & n.2.  Moreover, the potential unavailability of certain IP information—and the potential need to combine that with other information—both militate *against* a stay.  Because Chevron will need to gather whatever information it can and combine it with other information, Chevron needs the information as soon as possible so that it can make use of it at trial.

Second, the Does fault Chevron for not seeking to expedite the appeal.  That argument ignores that Chevron is not the appealing party and is entitled to the subpoenaed information now.  Black-letter law requires Google and Yahoo! to "compl[y] . . . promptly" with the subpoenas and not wait until all appeals are resolved.  *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) (internal quotation marks omitted).  Chevron is thus entitled to *immediate* production under the subpoenas unless the Does obtain a stay.  *See id.*  This is all well-illustrated in the main case the Does rely upon in suggesting that Chevron should seek to expedite the appeal.  In *Center for International Environmental Law*, the district court ordered a stay pending appeal requested by the

*appellants* on the *express* "condition that" the parties requesting the stay "seek expedited consideration from the court of appeals." 240 F. Supp. 2d at 24. The court imposed that requirement in order "to prevent unreasonable delay and to minimize the risk that the documents sought will be useless to [the requesting parties] by the time they are obtained." *Id.* In harmony with *Center of International Environmental Law*, then, this Court should deny a stay because a stay would impose unreasonable delay and would prevent the use of the information sought at trial. If the Does were earnest about resolving this dispute, *they* should have sought expedited consideration. They did not.

### 4. The Public Interest Favors Immediate Compliance With This Court's Order.

Finally, there is a strong public interest in timely compliance with well-reasoned court orders—particularly where, as here, an order supports a party's well-grounded legal claims and that party has diligently pursued enforcement of the order. The public interest thus favors swift compliance with the August 22 Order.

The Does contend (with waning enthusiasm) that the public interest counsels otherwise because this case involves important constitutional interests. Dkt. 90 at 9-10. As already explained, the dispute before this Court does not implicate such interests. *See supra* Parts B-1, B-2. The Does themselves have made sure of that, by shedding any anonymity they might once have enjoyed and by engaging in activities that do not implicate expressive association or the right of privacy. *See supra* Part B-1.

## II. CONCLUSION

The Does' *ex parte* application for a stay pending appeal should be denied.

Dated: October 9, 2013       GIBSON, DUNN & CRUTCHER LLP

By:    */s/ Ethan D. Dettmer*
        Ethan D. Dettmer

Attorney for Plaintiff Chevron Corporation