Cindy A. Cohn (SBN 145997)
cindy@eff.org
Nathan D. Cardozo (SBN 259097)
nate@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:  (415) 436-9333
Facsimile:   (415) 436-9993

Marco Simons (SBN 237314)
marco@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC 20006
Telephone: (202) 466-5188

Attorneys for Non-Party Movants

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CHEVRON CORP.,<br><br>                       Plaintiff,<br><br>     v.<br><br>STEVEN DONZIGER, *et al.*<br><br>                       Defendants. | Case No. 3:12-mc-80237 CRB (NC)<br><br>**MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Fed. R. Civ. P. 72(a)<br>Civ. L. R. 72-2<br><br>Place:  Courtroom 6, 17th Floor<br>Hon. Charles R. Breyer |

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  RELEVANT BACKGROUND AND PROCEDURAL HISTORY ............................ 1

III. ARGUMENT .................................................................................................................... 3

   A. ABSENT A STAY, THE NON-PARTY MOVANTS WILL SUFFER IRREPARABLE HARM. ................ 3

   B. MOVANTS HAVE SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS. .................................. 4

      1. Email Addresses Are Protected by the First Amendment Right to Speak Anonymously. ............................................................................................................. 5

      2. Chevron's Request for the IP Logs of Its Critics in Order to Inquire into the Critics' Associations Clearly Implicates Those Critics' Right to Free Association. .............. 6

      3. Chevron's Request for the IP Logs of Its Critics in Order to Track Its Critics' Movements Over Years Clearly Implicates Those Critics' California Right to Privacy. ...................................................................................................................... 8

      4. The Magistrate Judge Erred in Finding that Chevron's Subpoenas are Overbroad but Failing to Require Chevron to Present Facts Necessary to Limit Them. ........... 9

      5. The Magistrate Judge's Finding that the Non-Party Movants Lack Third-Party Standing to Challenge Chevron's Subpoenas as a Whole Is Contrary to the Law. ... 9

   C. CHEVRON WILL NOT BE HARMED SIGNIFICANTLY BY A STAY. ............................................. 10

   D. THE PUBLIC INTEREST FAVORS A STAY. .................................................................................. 11

IV. CONCLUSION ............................................................................................................... 12

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Abbassi v. I.N.S.*,
  143 F.3d 513 (9th Cir. 1998)..................................................................................................4

*Anonymous Online Speakers v. United States Dist. Court*,
  661 F.3d 1168 (9th Cir. 2011)................................................................................................8

*Britt v. Superior Court*,
  20 Cal. 3d 844 (1978)............................................................................................................6

*Cate v. Oldham*,
  707 F.2d 1176 (11th Cir. 1983)............................................................................................11

*Center for Int'l Environmental Law v. OUSTR*,
  240 F. Supp. 2d 21 (D.D.C. 2003) ...................................................................................4, 11

*Chevron Corp. v. Donziger, et al.*,
  Case No. 11-cv-0691 (LAK) (S.D.N.Y., Feb. 1, 2011). ........................................................1

*Chevron Corp. v. Donziger*,
  No. 13-mc-80038, 2013 WL 1402727 (N.D. Cal., Apr. 5, 2013).......................................7, 9

*Church of Scientology v. United States*,
  506 U.S. 9 (1992)...................................................................................................................4

*Doe v. 2theMart.com, Inc.*,
  140 F. Supp. 2d 1088 (W.D. Wash. 2001)............................................................................5

*Doe v. S.E.C.*,
  No. 11-cv-80209 CRB, 2011 WL 5600513 (N.D. Cal. Nov. 17, 2011) ................................5

*Doe v. S.E.C.*,
  No. 11-mc-80184 CRB, 2011 U.S. Dist. LEXIS 132983 (N.D. Cal., Nov. 17, 2011) ...........9

*Elam Constr., Inc. v. Regional Transp. Dist.*,
  129 F.3d 1343 (10th Cir. 1997)............................................................................................11

*Elrod v. Burns*,
  427 U.S. 347 (1976) ..............................................................................................................1

*G & V Lounge, Inc. v. Mich. Liquor Control Com'n*,
  23 F.3d 1071 (6th Cir. 1994)................................................................................................11

*Gilder v. PGA Tour, Inc.*,
  936 F.2d 417 (9th Cir. 1991).................................................................................................5

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) ............................................................................................................ 3, 4, 12

*Homans v. Albuquerque*,
    264 F.3d 1240 (10th Cir. 2001) .................................................................................................. 11

*Iowa Right to Life Comm'e, Inc. v. Williams*,
    187 F.3d 963 (8th Cir. 1999) ...................................................................................................... 11

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ..................................................................................................... 3, 4

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2011) ........................................................................................................ 10

*Mount Hope Church v. Bash Back!*,
    No. 11-cv-00536 RAJ, *rev'd on other grounds,* 705 F.3d 418 (9th Cir. 2012) ....................... 6

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................................................................... 3, 10, 11, 12

*Perry v. Schwarzenegger*,
    602 F.3d 976 (9th Cir. 2010) ......................................................................................................... 6

*Providence Journal Co. v. FBI*,
    595 F.2d 889 (1st Cir. 1979) ................................................................................................... 4, 11

*Roberts v. United States Jaycees*,
    468 U.S. 609 (1984) ....................................................................................................................... 6

*Sammartano v. First Judicial Dist. Court, in & for Cnty. of Carson City*,
    303 F.3d 959 (9th Cir. 2002) ........................................................................................................ 11

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) ......................................................................................................... 8

*United States v. Jones*,
    565 US ___, 132 S.Ct. 945 (2012) ................................................................................................. 8

*United States v. Phillip Morris, Inc.*,
    314 F.3d 612 (D.C. Cir. 2003) ....................................................................................................... 4

*Wildlife Fed'n v. Coston*,
    773 F.2d 1513 (9th Cir. 1985) ....................................................................................................... 5

**FEDERAL RULES**

Civil Local Rule 72-2 ................................................................................................................. 1

Federal Rule of Civil Procedure 26 ............................................................................................ 6

Federal Rule of Civil Procedure 72 ............................................................................................ 1

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ........................................................................................................ *passim*

Pursuant to Federal Rule of Civil Procedure 72(a) and Civil Local Rule 72-2, the Non-Party Movants respectfully request relief from the Magistrate Judge's October 21, 2013 Order Denying the Non-Party Movants' Ex-Parte Application for a Stay Pending Appeal ("Order"). ECF No. 97.

## I. INTRODUCTION

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The Non-Party Movants hereby move the Court for relief from the Magistrate Judge's order of October 21, 2013, denying the Non-Party Movants' motion for a stay pending appeal of production pursuant to subpoenas issued by Chevron to their email service providers. The subpoenas seek two things: 1) confirmation of identities of nonparties that Chevron has repeatedly claimed it already knows and can prove, and 2) location information for the nonparties that is highly unlikely to still exist and is not likely to lead to the discovery of admissible evidence since additional discovery would be needed to tie the location to defendants and not only is discovery closed, but the trial of this case began on October 15, 2013. Neither is a compelling interest.

The factors considered by this Court in determining whether a stay is appropriate strongly favor the Non-Party Movants, and the Non-Party Movants respectfully ask this Court to grant such a stay.

## II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

On September 19, 2012, Chevron Corp. ("Chevron") issued Rule 45 subpoenas to non-parties Google Inc. ("Google") and Yahoo! Inc. ("Yahoo!") in the Northern District of California in support of *Chevron Corp. v. Donziger, et al.*, Case No. 11-cv-0691 (LAK), pending in the Southern District of New York since February 1, 2011 and which went to trial on October 15, 2013. The subpoenas seek identity information and nine years' of detailed computer "IP logs"

associated with 71 email addresses, 44 Gmail addresses and 27 Yahoo! addresses. The IP logs track the location of the users over time.

The Non-Party Movants are not parties to the underlying case, but instead are environmental activists, journalists, bloggers, volunteers, interns, and attorneys who have worked (or associated with those who have worked) to expose and create accountability for the environmental harms caused in Ecuador by Chevron and its predecessor company, Texaco (the "Ecuador campaign"). Chevron admits that it obtained the email addresses largely from the hard drive of defendant Steven Donziger, that it seeks the identity information for the 71 email addresses to connect those individuals with the "legal and public relations strategies" in the Ecuador campaign and that it seeks the IP log information to track the location of participants the Ecuador campaign. Chevron's Opposition to Non-Party Motion to Quash, ECF No. 46 at 2.

The Non-Party Movants moved to quash Chevron's subpoenas because they (1) violate the Non-Party Movants' First Amendment rights to anonymous speech and association, (2) violate the Non-Party Movants' right to privacy under the California Constitution, and (3) are facially overbroad. The Magistrate quashed Chevron's subpoenas to Google and Yahoo! as to twenty-five of the thirty-two email addresses owned Non-Party Movants and narrowed the subpoenas as to the remaining email addresses. ECF No. 70.

Movants timely appealed on September 24, 2013.

Despite the pending appeal, Chevron, by letter briefs dated October 4, 2013, asked the Magistrate Judge to compel the ISPs to produce the information no later than October 15, 2013. Also on October 4, 2013, the Non-Party Movants moved for a stay from the Magistrate Judge, which was decided on October 21, 2013.

### III. ARGUMENT

This Court considers four factors in determining whether to grant a stay pending appeal: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether [he] will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties . . .; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 419 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). The first two factors "are the most critical." *Nken*, 556 U.S. at 419.

To preserve the status quo, the Court should stay its Order. Absent a stay, movants will suffer irreparable constitutional harm: if their records are disclosed in the interim, their appeal could be mooted and their identities and location information will have been conveyed to Chevron and cannot be then unlearned by them, in violation of their First Amendment rights of anonymity and association. By contrast, a stay will cause no harm to Chevron, especially since it claims it already knows the identity of the individuals and their IP addresses alone are of little assistance at this point, when the trial has already begun. The public interest will be served by the preservation of constitutional rights pending full appellate consideration of the substantial issues this case presents. As such, the balance of hardships tips sharply in favor of staying enforcement of the Order until the Ninth Circuit can consider the important constitutional issues presented by the appeal.

**A. Absent a Stay, the Non-Party Movants Will Suffer Irreparable Harm.**

To be granted a stay pending appeal, a moving party must show a particularized harm, "for example, that removal would effectively prevent her from pursuing her petition for review, or that, even if she prevails, she could not be afforded effective relief." *Leiva-Perez*, 640 F.3d at 969 (citing *Nken*, 556 U.S. at 435). Movants easily satisfy this requirement: if their ISPs are required to

disclose the information, their privacy can never be fully regained and their constitutional rights will have been violated.

An immediate stay is necessary to prevent the disclosure of the information. If the ISPs are forced to disclose the requested information, Movants will suffer irreparable harm because their confidentiality will be lost forever. As one court observed in another context, "the irreparable harm to [movants] lies in the fact that 'once the documents are surrendered pursuant to [this Court's] order, confidentiality will be lost for all time. The status quo could never be restored . . . . Failure to grant a stay will entirely destroy appellants' rights to secure meaningful review.'" *Center for Int'l Environmental Law v. OUSTR*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003) (quoting *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979)) (granting stay pending appeal in FOIA case); *see also, e.g., United States v. Phillip Morris, Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003) ("disclosure of privileged documents to an adverse party" constitutes "irreparable harm").[1] This case clearly meets the standard for irreparable harm.

**B.     Movants Have Shown a Likelihood of Success on the Merits.**

The "likelihood of success on the merits" factor "does not require the moving party to show that [his or] her ultimate success is probable," *Leiva-Perez*, 640 F.3d at 967; rather, the movant must show "'a substantial case on the merits,'" *id*. (quoting *Hilton*, 481 U.S. at 778), or that "'serious legal questions are raised'" by the appeal. *Id.* at 968 (quoting *Abbassi v. I.N.S.*, 143 F.3d 513, 514 (9th Cir. 1998)). "Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Gilder*

---

[1] The Supreme Court has held in a case involving improper disclosure of personal records that the existence of a partial remedy, such as destruction of that data, could be "effectual relief" and avoid mootness. *Church of Scientology v. United States*, 506 U.S. 9 (1992). However, the Court also confirmed irreparable harm, "it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred." *Id.*

*v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *National Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)).

Movants unquestionably satisfy these tests as well: there are serious questions about the court's underlying ruling in four key ways. First, the Magistrate Judge erred in holding that the anonymity of people using email addresses cannot be protected by the First Amendment. Second, it erred in holding that the individuals' associations with the Ecuador campaign are not protected by the First Amendment. Third, it erred legally in holding that the fact that IP logs are collected by ISPs eliminates the privacy interests users have in their locations and erred factually in asserting that IP logs are public. Finally, the Magistrate Judge erred in finding that the subpoenas as a whole could not be quashed, regardless of their validity and constitutionality, unless all those named in the subpoena participate in the motion to quash.

**1.    Email Addresses Are Protected by the First Amendment Right to Speak Anonymously.**

In sharp contrast to settled case law, the Magistrate Judge here erred by asserting, with no supporting authority, that no anonymity can attach to email addresses. The Magistrate Judge asserted: "Although the Doe movants may believe that using their email addresses will protect their identities, that belief is simply not reflected by the reality of the world we live in." Order at 14.

In the first published case addressing Internet anonymity of non-parties, *Doe v. 2theMart.com, Inc.,* the court observed, "Internet anonymity facilitates the rich, diverse, and far ranging exchange of ideas," 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001); *see also Doe v. S.E.C.*, No. 11-cv-80209 CRB, 2011 WL 5600513 (N.D. Cal. Nov. 17, 2011) ("the Ninth Circuit [has] recognized a protectable speech interest in ISP subscriber information"). Notably, in both cases, as here, the question was when an ISP can be required to identify a user from an email address. The Magistrate Judge mistakenly contrasted this situation with the one in *Mount Hope Church v. Bash Back!*, No. 11-cv-00536 RAJ, *rev'd on other grounds,* 705 F.3d 418 (9th Cir.

2012), where the Court held that a subpoena that seeks to tie anonymous critics' identities to their statements must be scrutinized closely so as not to chill expressive activity. Order at 13. The Magistrate Judge asserted that, unlike *Mount Hope Church*, Chevron was not seeking to link the Movants' names to any particular statement. But this is simply not true. Chevron's discovery is admittedly *precisely intended* to tie the Movants' specific identities to the content of their communications it already obtained from Mr. Donziger's hard drive, so that it can demonstrate their alleged role in the "legal and public relations strategies." Indeed, if the Movants' identities are not to be tied to their specific speech about Ecuador campaign, it is difficult to imagine how their identities qualify as "likely to lead to discoverable evidence" as required by Rule 26.[2]

**2. Chevron's Request for the IP Logs of Its Critics in Order to Inquire into the Critics' Associations Clearly Implicates Those Critics' Right to Free Association.**

The Supreme Court has made clear that infringements on freedom of association may survive constitutional scrutiny only when they "serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984). The Magistrate Judge erred in assuming that all of the Non-Party Movants had to be a part of the same formal association. Order at 15. There is no such requirement in the law. *Perry v. Schwarzenegger,* 602 F.3d 976, 981 (9th Cir. 2010) (association protection can stretch across multiple entities); *Britt v. Superior Court*, 20 Cal. 3d 844, 858 (1978) (association protection applied to numerous individuals "who have merely attended" any of multiple organizations' "numerous meetings").

---

[2] Chevron also seeks to have it both ways: claiming that it knows the identities of the individuals for purposes of saying that the individuals have no right to anonymity, even going so far as attempting to individually name them, while at the same time claiming that it does not know the identities for purposes of whether they actually need the information. This inconsistency alone should be a basis for quashing the subpoenas.

Even more troubling, the Magistrate Judge mistakenly held that the fact that Chevron's subpoenas are so broad that they ensnare "subscribers who are in no way affiliated with this litigation" somehow "undercuts" everyone's claim to First Amendment protection. Yet the protection for associations cannot turn on the scope of the subpoena that seeks to identify them. To hold otherwise, as the Magistrate Judge did, rewards Chevron for issuing an overbroad subpoena.

In fact, Judge Cousins has already specifically recognized the First Amendment rights of Amazon Watch ("AW"), several of whose employees have been identified by Chevron among the Doe account holders. *See Chevron Corp. v. Donziger*, No. 13-mc-80038, 2013 WL 1402727, ECF No. 59 (N.D. Cal., Apr. 5, 2013). In quashing subpoenas issued to AW, the Magistrate concluded that "there is nothing to suggest that [AW]'s campaigns and speech were more than mere advocacy" protected by the First Amendment. *See* ECF No. 59 at 6. The decision focused on the five areas Judge Kaplan had determined justified discovery – all of which specifically related to the Ecuadorian judgment – and noted that "[i]mportantly, none of those five instances had anything to do with the alleged pressure campaign or [AW]." *Id.* at 7, 8. Here, however, the Magistrate Judge would allow Chevron to circumvent that order and obtain information it was previously prohibited from seeking, and Chevron here admits that it seeks this information because of the participation of the Movants in "legal and public relations strategies."[3] But as the Magistrate Judge previously found, communications about public relations and advocacy work do not fall within the areas Judge Kaplan found warranted discovery, and allowing such discovery here would be inconsistent with the Court's prior orders and clear error.

---

[3] For example, the Magistrate Judge indicates that owners of two of the email addresses at issue may be employees of Amazon Watch, "a non-party that has campaigned extensively to raise awareness of the environmental situation in Ecuador as it relates to Chevron." Order at 23. But the Magistrate Judge concluded Chevron is entitled to discovery because they communicated with Donziger about press releases, letters to the editor, and the like. *Id.* at 23-24.

### 3. Chevron's Request for the IP Logs of Its Critics in Order to Track Its Critics' Movements Over Years Clearly Implicates Those Critics' California Right to Privacy.

Chevron seeks IP logs specifically because they would reveal the location where its critics were every time they logged into their email accounts over the course of nine years. Tracking one's critics' movements over the course of nearly a decade, including in private homes, surely implicates the right to privacy. The Magistrate Judge did note that no court has found a privacy interest in similar IP logs over a long period of time, Order at 16, and while it seems that this is a question of first impression in this District, that is because Chevron's attempt here is unprecedented.[4] And while addressing a different technology, a GPS device, a majority of the Supreme Court has recognized that longer term monitoring of a person's public movements could trigger privacy concerns even if short-term monitoring did not. *United States v. Jones*, 565 US ___, 132 S.Ct. 945, 964 (2012) (Alito, J. concurring in the judgment).

More importantly, the Magistrate Judge incorrectly relied on the statement in the ISP's privacy policies that the ISPs would provide IP logs in response to a valid subpoena to find that the Non-Party Movants have waived any expectation of privacy. Far from being a waiver, however, the terms of service merely beg the question of whether this subpoena is valid, something to be decided according to the large body of case law concerning standards for the protection of information in the possession of ISPs from civil subpoenas. *See, e.g., Anonymous Online Speakers v. United States Dist. Court*, 661 F.3d 1168, 1173 (9th Cir. 2011) (the right to speak anonymously online "promotes the robust exchange of ideas and allows individuals to express themselves freely"); *see also Doe v. S.E.C.*, No. 11-mc-80184 CRB (NJV), 2011 U.S. Dist. LEXIS 132983, at

---

[4] The Magistrate Judge's reliance on *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008), to find that there can be no privacy interest in IP addresses is inappropriate here. *Forrester* involved a search of a suspect's outgoing Internet connections, not the production of information tending to show where that suspect had been for the last nine years.

\*8 (N.D. Cal. Nov. 17, 2011) (finding a "protectable speech interest in ISP subscriber information").

Finally, the Magistrate Judge made a factual error in holding that "IP logs associated with their email accounts are the addresses visible to the outside world associated with their accounts." Order at 19. This is untrue. The IP logs of Google and Yahoo! are not publicly visible. A single IP address may be visible to a single recipient of a message, but the flow of IP addresses over nine years collected by an ISP is simply not available from any public place. Indeed, if IP logs were in fact public, Chevron would have no need for these subpoenas.

### 4. The Magistrate Judge Erred in Finding that Chevron's Subpoenas are Overbroad but Failing to Require Chevron to Present Facts Necessary to Limit Them.

The Magistrate Judge "suspected" that Chevron could have "more closely tailored [its subpoenas] to defendants' alleged actions, for example, starting with the filing of a particular environmental report or the launch of a public relations campaign," instead seeking everything for nine years. Order at 21. But despite Chevron's failure to "present[] the Court with the facts necessary to so limit the subpoenas," the Court did not require Chevron to more narrowly tailor the subpoenas. Order at 21. Particularly in light of the First Amendment and privacy interests at stake, the Magistrate Judge erred. *See Chevron Corp.*, No. 13-mc-80038, 2013 WL 1402727, at \*5 (once a party makes a prima facie case that a subpoena seeks discovery into First Amendment protected activity, the burden seeks to the party seeking discovery to show that the subpoena is carefully tailored).

### 5. The Magistrate Judge's Finding that the Non-Party Movants Lack Third-Party Standing to Challenge Chevron's Subpoenas as a Whole Is Contrary to the Law.

Finally, the Magistrate Judge erred in finding that the Non-Party Movants could challenge Chevron's subpoenas only as to the email addresses they own. It is well-settled law that, in First

9

Amendment cases, there are "unique standing considerations . . . that tilt dramatically toward a finding of standing." *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2011) (citations omitted). The subpoenas clearly impact speech – they were issued to identify and track the location of those who participated in the Ecuador campaign's "legal and public relations strategies" as to all of those whose information is sought. And the chilling effect of this strategy is clear even as to those who could not move to quash. As with other First Amendment cases, these unconstitutional subpoenas should not be enforced by this Court regardless of who the movants are.

### C. Chevron Will Not Be Harmed Significantly By a Stay.

The third factor the Court must consider in determining whether a stay is appropriate is whether issuance of the stay will substantially injure the other parties interested in the proceeding. *See, e.g., Nken*, 556 U.S. at 426. For two principal reasons, Chevron will not be harmed by a stay pending appeal.

First, Chevron has no pressing need for the information. As to the movants' identities, they have claimed that they already know who the Movants are – repeatedly and confidently. They have made no showing that they will be unable to carry their burden of proof with regard to these unnamed parties in the ongoing trial if needed (which seems unlikely). As to the Non-Party Movants' IP addresses, both Google and Yahoo! have indicated that it is very unlikely that they actually have the responsive information, given their standard retention practices. But even should they happen to still have some fraction of what is sought here, Chevron would need several additional steps to link that information with the defendants in order to use it to support its conspiracy theories. **Yet the case is in trial and discovery is closed**. This information was sought just at the very end of discovery by Chevron, yet to be useful in even the most marginal way, it must be combined with additional information (to prove, for instance as Chevron suggests, that these accounts were actually used by Defendants in some way that is relevant to the conspiracy).

Second, the minimal impediment that a stay will cause to the investigation can be reduced further by Chevron seeking to expedite the appeal, something it has not done. *See e.g., Center for International Environmental Law*, 240 F. Supp. 2d at 24. "Weighing this . . . hardship against the total and immediate divestiture of [movants'] rights to have effective review in [the court of appeals]," there is no doubt that "the balance of hardship . . . favor[s] the issuance of a stay." *Providence Journal Co.*, 595 F.2d at 890. Because the Non-Party Movants would clearly suffer irreparable injury in the absence of a stay, while Chevron will suffer at most a minor inconvenience if this Court stays its Order, the balance of hardships tips sharply in favor of a stay pending appeal.

### D. The Public Interest Favors a Stay.

The fourth stay factor the Court must consider in determining whether a stay is appropriate is whether issuance of the stay is in the public interest. *See, e.g., Nken*, 556 U.S. at 426. A compelling interest exists in protecting against the loss of constitutionally-protected rights. *See, e.g., Sammartano v. First Judicial Dist. Court, in & for Cnty. of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002) (noting the "significant public interest in upholding First Amendment principles").[5] While Chevron certainly has an interest in seeking information relevant to its case, it has not even alleged, much less proven that this information is of more than marginal relevance to its case. In the absence of a specific showing of a compelling interest in this information that trumps the

---

[5] *See also*, *e.g.*, *Homans v. Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) ("[W]e believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression."); *Iowa Right to Life Comm'e, Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) (finding that a district court did not abuse its discretion in granting a preliminary injunction because "the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms"); *Elam Constr., Inc. v. Regional Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir. 1997) (stating, in context of a request for injunctive relief, that "[t]he public interest ... favors plaintiffs' assertion of their First Amendment rights"); *G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) (noting "it is always in the public interest to prevent the violation of a party's constitutional rights"); *Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983) (holding the "strong public interest in protecting First Amendment values" favored preliminary injunctive relief).

interest of the Movants in enjoying the protection of the constitution, the public interest favors preserving the status quo until a final determination of Movants claims has been made.

### IV. CONCLUSION

The four *Hilton* and *Nken* factors weigh in favor of staying this Court's Order pending appeal. The Non-Party Movants have appealed the ruling and respectfully request a stay pending determination of their appeal.

DATED: October 22, 2013          Respectfully submitted,

                                         ELECTRONIC FRONTIER FOUNDATION

                                         /s/ Nathan D. Cardozo
                                        Nathan D. Cardozo
                                        Cindy Cohn
                                        ELECTRONIC FRONTIER FOUNDATION
                                        815 Eddy Street
                                        San Francisco, CA 94109

                                        Marco Simons
                                        EARTHRIGHTS INTERNATIONAL
                                        1612 K Street NW, Suite 401
                                        Washington, DC 20006

                                        Counsel For Non-Party Movants